# UNITED STATES COURT OF APPEALS

## FOR THE FIFTH CIRCUIT

U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FILED   DEC 1 2 2002   dy

LORETTA G. WHYTE
CLERK

No. 01-30389

D.C. Docket No. 00-CV-1986-K
00-MDL-1321-K
00-CV-2002-K
00-MDL-1322-K

U.S. COURT OF APPEALS

FILED

NOV 2 0 2002

CHARLES R. FULBRUGE III
CLERK

In Re: MASTERCARD INTERNATIONAL INC INTERNET GAMBLING
LITIGATION

-------------------------

LARRY THOMPSON, On behalf of himself and all others
similarly situated

          Plaintiff - Appellant


     v.

MASTERCARD INTERNATIONAL INC; FLEET BANK, (RHODE ISLAND)
N A; FLEET CREDIT CARD SERVICES L P

          Defendants - Appellees

---

In Re: VISA INTERNATIONAL ASSOCIATION INTERNET GAMBLING
LITIGATION

---------------------------

LAWRENCE BRADLEY, On behalf of himself and all others
similarly situated

          Plaintiff - Appellant


     v.

VISA INTERNATIONAL SERVICE ASSOCIATION; TRAVELERS BANK
USA CORP

          Defendants - Appellees


          Appeal from the United States District Court for the
          Eastern District of Louisiana, New Orleans.



Before DeMOSS, STEWART, and DENNIS, Circuit Judges.

J U D G M E N T

     This cause was considered on the record on appeal and was argued by counsel.

     It is ordered and adjudged that the judgment of the District Court is affirmed.

     IT IS FURTHER ORDERED that plaintiffs-appellants pay to defendants-appellees the costs on appeal to be taxed by the Clerk of this Court.

ISSUED AS MANDATE:  DEC 1 2 2002

A true copy
Test
Clerk, U. S. Court of Appeals, Fifth Circuit

By _____
Deputy
New Orleans, Louisiana    DEC 1 2 2002

UNITED STATES COURT OF APPEALS
For the Fifth Circuit

U.S. COURT OF APPEALS
**FILED**

NOV 2 0 2002

---

No. 01-30389

CHARLES R. FULBRUGE III
CLERK

In Re: MASTERCARD INTERNATIONAL INC. INTERNET GAMBLING LITIGATION

--------------------------

LARRY THOMPSON, On behalf of himself and all others similarly situated,

Plaintiff-Appellant,


VERSUS


MASTERCARD INTERNATIONAL INC.; FLEET BANK, (RHODE ISLAND) N A; and FLEET CREDIT CARD SERVICES L P,

Defendants-Appellees.


-----------------------------------------------------------------


In Re: VISA INTERNATIONAL ASSOCIATION INTERNET GAMBLING LITIGATION

--------------------------

LAWRENCE BRADLEY, On behalf of himself and all others similarly situated,

Plaintiff-Appellant,


VERSUS


VISA INTERNATIONAL SERVICE ASSOCIATION; TRAVELERS BANK USA CORP,

Defendants-Appellees.

1

Appeal from the United States District Court
For the Eastern District of Louisiana

Before DeMOSS, STEWART, and DENNIS, Circuit Judges.

DENNIS, Circuit Judge:

In this lawsuit, Larry Thompson and Lawrence Bradley ("Thompson," "Bradley," or collectively "Plaintiffs") attempt to use the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968, to avoid debts they incurred when they used their credit cards to purchase "chips" with which they gambled at on-line casinos and to recover for injuries they allegedly sustained by reason of the RICO violations of MasterCard International, Visa International, and banks that issue MasterCard and Visa credit cards (collectively "Defendants").[1] The district court granted the Defendants' motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. We AFFIRM.

---

[1] Thirty-three virtually identical cases were transferred to the Eastern District of Louisiana through multidistrict litigation. Of these, the two on appeal were selected as test cases and consolidated for pre-trial purposes. See In re Mastercard Int'l Inc., Internet Gambling Litigation and Visa Int'l Internet Serv. Ass'n Internet Gambling Litigation, 132 F. Supp. 2d 468, 471 n.1 (E.D. La. 2001).

2

I.

Thompson and Bradley allege that the Defendants, along with unnamed Internet casinos, created and operate a "worldwide gambling enterprise" that facilitates illegal gambling on the Internet through the use of credit cards. Internet gambling works as follows. A gambler directs his browser to a casino website. There he is informed that he will receive a gambling "credit" for each dollar he deposits and is instructed to enter his billing information. He can use a credit card to purchase the credits.[2] His credit card is subsequently charged for his purchase of the credits. Once he has purchased the credits, he may place wagers. Losses are debited from, and winnings credited to, his account. Any net winnings a gambler might accrue are not credited to his card but are paid by alternate mechanisms, such as wire transfers.

Under this arrangement, Thompson and Bradley contend, "[t]he availability of credit and the ability to gamble are inseparable."[3] The credit card companies facilitate the enterprise, they say, by authorizing the casinos to accept credit cards, by making credit available to gamblers, by encouraging the use of that credit through the placement of their logos on the websites, and by

---

[2] Gamblers can purchase the credits through online transactions or by authorizing a purchase via a telephone call. Gamblers also can purchase the credits via personal check or money order using the mails.

[3] The Plaintiffs state that 95% of Internet gambling business involves the use of credit cards.

3

processing the "gambling debts" resulting from the extension of credit. The banks that issued the gamblers' credit cards participate in the enterprise, they say, by collecting those "gambling debts."

Thompson holds a MasterCard credit card issued by Fleet Bank (Rhode Island) NA. He used his credit card to purchase $1510 in gambling credits at two Internet gambling sites. Bradley holds a Visa credit card issued by Travelers Bank USA Corporation. He used his credit card to purchase $16,445 in gambling credits at seven Internet gambling sites. Thompson and Bradley each used his credits to place wagers. Thompson lost everything, and his subsequent credit card billing statements reflected purchases of $1510 at the casinos. Bradley's winning percentage was higher, but he fared worse in the end. He states his monthly credit card billing statements included $7048 in purchases at the casinos.

Thompson and Bradley filed class action complaints against the Defendants on behalf of themselves and others similarly situated. They state that the Defendants participated in and aided and abetted conduct that violated various federal and state criminal laws applicable to Internet gambling. Through their association with the Internet casinos, the Defendants allegedly "directed, guided, conducted, or participated, directly or indirectly, in the conduct of an enterprise through a pattern of racketeering and/or the unlawful collection of unlawful debt," in violation of 18

4

U.S.C. § 1962(c).[4]  They seek damages under RICO's civil remedies provision,[5] claiming that they were injured by the Defendants' RICO violations.    They also seek declaratory judgment that their gambling debts are unenforceable because they are illegal.

Upon motions by the Defendants, the district court dismissed the Plaintiffs' complaints.  In a thorough and careful opinion, the court determined that the Plaintiffs not only could not satisfy the necessary prerequisites to a RICO claim but also could not establish their standing to bring such a claim.  The Plaintiffs now appeal.

                                II.

We review a district court's grant of a Rule 12(b)(6) motion de novo, applying the same standard used below.[6]  "In so doing, we accept the facts alleged in the complaint as true and construe the allegations in the light most favorable to the plaintiffs."[7]  But

---

[4] "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c).

[5] 18 U.S.C. § 1964.

[6] Nolen v. Nucentrix Broadband Networks, Inc., 293 F.3d 926, 928 (5th Cir. 2002); see also Rubinstein v. Collins, 20 F.3d 160, 166 (5th Cir. 1994) ("Such dismissals may be upheld only if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations." (internal quotation and citation omitted)).

[7] Nolen, 293 F.3d at 928 (citing Rubinstein, 20 F.3d at 166).

"conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."[8]

### III.

All RICO violations under 18 U.S.C. § 1962 entail "(1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment, conduct, or control of an enterprise."[9] As to the second element, a RICO plaintiff may show that the defendant engaged in the collection of unlawful debt as an alternative to showing the defendant engaged in a pattern or racketeering activity.[10] A RICO claim alleging a violation of § 1962(c), as here, also requires that the defendant "participate[d] in the operation or management of the enterprise itself."[11] Of these required elements, the district court concluded that Thompson and Bradley failed to plead facts showing a pattern of racketeering activity or the collection of unlawful debt; a RICO enterprise; or participation in the operation of management of the enterprise. We agree that the Plaintiffs' allegations do not show

---

[8] Id. (citing Fernandez-Montes v. Allied Pilots Ass'n, 987 F.2d 278, 284 (5th Cir. 1993)).

[9] Crowe v. Henry, 43 F.3d 198, 204 (5th Cir. 1995) (citing Delta Truck & Tractor, Inc. v. J. I. Case Co., 855 F.2d 241, 242 (5th Cir. 1988)).

[10] 18 U.S.C. § 1962(a)-(c); see also Nolen, 293 F.3d at 928-29.

[11] Reves v. Ernst & Young, 507 U.S. 170, 185 (1993).

a pattern of racketeering activity or the collection of unlawful debt. Because this conclusion, alone, is dispositive, we need not consider whether the Plaintiffs sufficiently alleged the other elements.

"A pattern of racketeering activity requires two or more predicate acts and a demonstration that the racketeering predicates are related and amount to or pose a threat of continued criminal activity." [12] The predicate acts can be either state or federal crimes. [13] Thompson and Bradley allege both types of predicate acts.

On appeal, Thompson alleges that the Defendants' conduct violated a Kansas statute that criminalizes five types of commercial gambling activity. [14] Only two sections of the statute—sections (c) and (e)—are even remotely relevant here. Neither implicates the Defendants' conduct. Because the Defendants completed their transaction with the Plaintiffs <u>before</u> any gambling

---

[12] <u>St. Paul Mercury Ins. Co. v. Williamson</u>, 224 F.3d 425, 441 (5th Cir. 2000) (citing <u>Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer</u>, 90 F.3d 118, 122 (5th Cir. 1996)).

[13] 18 U.S.C. § 1961(1).

[14] Kan. Stat. Ann. § 21-4304. This statute, which states that commercial gambling is a "level 8, nonperson felony," defines commercial gambling as: "(a) Operating or receiving all or part of the earnings of a gambling place; (b) Receiving, recording, or forwarding bets or offers to bet or, with intent to receive, record, or forward bets or offers to bet, possessing facilities to do so; (c) For gain, becoming a custodian of anything of value bet or offered to be bet; (d) Conducting a lottery, or with intent to conduct a lottery possessing facilities to do so; or (e) Setting up for use or collecting the proceeds of any gambling device."

occurred, that transaction cannot have involved taking custody of something bet or collecting the proceeds of a gambling device. Both of those activities, which constitute commercial gambling under Kansas law, necessarily "can only take place after some form of gambling [has been] completed."[15]    Accordingly, we find that Thompson fails to identify a RICO predicate act under Kansas law.[16]

Bradley alleges on appeal that the Defendants' conduct violated a New Hampshire gambling statute aimed at persons who operate or control places where gambling occurs.[17] Bradley did not, however, allege a violation of the statute in his complaint.    In any event, this statute is patently inapplicable to the Defendants under the facts alleged.    Indeed, Bradley makes no effort in his briefs to explain its applicability.    Accordingly, we find that Bradley, too, fails to identify a RICO predicate act under a state criminal law.[18]

---

[15] See In re Mastercard, 132 F. Supp. 2d at 479.

[16] Thompson has abandoned his reliance on three other violations of Kansas law he alleged below.    Violations of those statutes cannot serve as predicates because they identify only misdemeanor offenses.    See 18 U.S.C. § 1961(1)(A).

[17] N.H. Rev. Stat. Ann. § 647:2(I-a)(b).    This statute provides that "[a] person is guilty of a class B felony if such person conducts, finances, manages, supervises, directs, or owns all or part of a business and such person knowingly and unlawfully conducts, finances, manages, supervises, or directs any gambling activity on the business premises . . . ."

[18] Bradley has abandoned his previous reliance on various New Hampshire civil statutes, each of which was obviously inadequate to identify a predicate crime under 18 U.S.C. § 1961(1)(A).

8

Thompson and Bradley both identify three substantive federal crimes as predicates—violation of the Wire Act, mail fraud, and wire fraud.[19]    The district court concluded that the Wire Act concerns gambling on sporting events or contests and that the Plaintiffs had failed to allege that they had engaged in internet sports gambling.[20]    We agree with the district court's statutory interpretation, its reading of the relevant case law, its summary of the relevant legislative history, and its conclusion.    The Plaintiffs may not rely on the Wire Act as a predicate offense here.[21]

The district court next articulated several reasons why the Plaintiffs may not rely on federal mail or wire fraud as predicates.[22]    Of these reasons, two are particularly compelling. First, Thompson and Bradley cannot show that the Defendants made a false or fraudulent misrepresentation.[23]    Because the Wire Act does

---

[19] 18 U.S.C. §§ 1084, 1341, 1343.

[20] In re Mastercard, 132 F. Supp. 2d at 480 ("[A] plain reading of the statutory language [of the Wire Act] clearly requires that the object of the gambling be a sporting event or contest.").

[21] Bradley criticizes the district court for ignoring his identification of an Internet site named "Sportsbook" in his complaint.  The name of the site is irrelevant, for Bradley nowhere alleges that he gambled on sporting events or contests at that or any other site.

[22] Id. at 481-83.

[23] See In re Burzynski, 989 F.2d 733, 742 (5th Cir. 1993) (stating that an element of a RICO mail fraud claim is "a scheme to defraud by means of false or fraudulent representation").

9

not prohibit non-sports internet gambling, any debts incurred in connection with such gambling are not illegal. Hence, the Defendants could not have fraudulently represented the Plaintiffs' related debt as legal because it was, in fact, legal. We agree that "the allegations that the issuing banks represented the credit charges as legal debts is not a scheme to defraud."[24] Second, Thompson and Bradley fail to allege that they relied upon the Defendants' representations in deciding to gamble.[25] The district court correctly stated that although reliance is not an element of statutory mail or wire fraud, we have required its showing when mail or wire fraud is alleged as a RICO predicate.[26] Accordingly, we conclude that Thompson and Bradley cannot rely on the federal mail or wire fraud statutes to show RICO predicate acts.[27]

---

[24] In re Mastercard, 132 F. Supp. 2d at 482.

[25] Based in part on this same failure, the district court correctly determined that the Plaintiffs could not establish standing to sue under 18 U.S.C. § 1964(c). See id. at 495-96 (explaining that standing requires a showing of both factual and proximate causation).

[26] Summit Props., Inc. v. Hoechst Celanese Corp., 214 F.3d 556, 562 (5th Cir. 2000) (stating that the element of reliance is required to recover damages in a RICO fraud claim); see also In re Mastercard, 132 F. Supp. 2d at 482, 496 (explaining that the element of reliance is also key to the issue of standing).

[27] Because we find neither the Wire Act nor the mail and wire fraud statutes may serve as predicates here, we need not consider the other federal statutes identified by the Plaintiffs: § 1952 (Travel Act); § 1955 (illegal gambling businesses); and § 1957 (money laundering). As the district court correctly explained, these sections may not serve as predicates here because the Defendants did not violate any applicable federal or state law.

10

In the alternative, Thompson and Bradley allege that the Defendants engaged in the collection of unlawful debt. Under § 1961, a RICO plaintiff may attempt to show that the debt is unlawful because it was incurred or contracted in an illegal gambling activity or in connection with the illegal business of gambling or because it is unenforceable under usury laws or was incurred in connection with the business of lending at usurious rates.[28] Neither Thompson nor Bradley raise the specter of usury. And, as we have already found, the Defendants' conduct did not involve any violation of a state or federal gambling law. Thus, we agree with the district court's conclusion that the Plaintiffs have not sufficiently alleged "the collection of unlawful debt."[29]

Because Thompson and Bradley cannot prove a necessary element of a civil RICO claim, namely that the Defendants engaged in a pattern of racketeering activity or the collection of unlawful debt, we hold that dismissal is proper under Rule 12(b)(6).[30]

---

See In re Mastercard, 132 F. Supp. 2d at 482-83 & n.6. The Plaintiffs' reliance on § 1960 fails because it is not an authorized RICO predicate under § 1961(1)(B).

[28] 18 U.S.C. § 1961(6).

[29] In re Mastercard, 132 F. Supp. 2d at 483.

[30] We need not analyze the validity or merit of Plaintiffs' claim based on aiding and abetting liability because (assuming it is valid) it necessarily falls along with the underlying RICO claim. Likewise, we need not consider the merits of the Defendants' motions to join the Internet casinos pursuant to Rule 19 of the Federal Rules of Civil Procedure. We agree with the district court that those motions are moot.

Finally, we reiterate the district court's statement that "RICO, no matter how liberally construed, is not intended to provide a remedy to this class of plaintiff."[31]  Thompson and Bradley simply are not victims under the facts of these cases. Rather, as the district court wrote, "they are independent actors who made a knowing and voluntary choice to engage in a course of conduct."[32]  In engaging in this conduct, they got exactly what they bargained for—gambling "chips" with which they could place wagers. They cannot use RICO to avoid meeting obligations they voluntarily took on.

IV.

For the foregoing reasons, we AFFIRM the judgment of the district court.

---

[31] Id. at 497.

[32] Id.

12

# United States Court of Appeals

**FIFTH CIRCUIT**
**OFFICE OF THE CLERK**

**CHARLES R. FULBRUGE III**
**CLERK**

**TEL. 504-310-7700**
**600 CAMP STREET**
**NEW ORLEANS, LA 70130**

December 12, 2002



RECEIVED

DEC 1 2 2002

U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DEPUTY CLERK

Ms Loretta Whyte, Clerk
Eastern District of Louisiana, New Orleans
United States District Court
Room C-151
500 Camp Street
New Orleans, LA 70130

No. 01-30389 Thompson v. Mastercard Intl Inc
USDC No. 00-CV-1986-K
          00-MDL-1321-K
          00-CV-2002-K
          00-MDL-1322-K

Enclosed, for the district court only, is a certified copy of the
judgment issued as the mandate.

Enclosed, for the district court only, is a copy of the court's
opinion.

Record/original papers/exhibits are returned:

( 8 ) Volumes

Sincerely,

CHARLES R. FULBRUGE III, Clerk

By: Timothy D. Beckstrom, Deputy Clerk
    504-310-7653

cc: (letter only)
    Honorable Stanwood R Duval Jr
    Mr Barry Grant Reed
    Mr W Lewis Garrison Jr
    Honza J Prchal
    Mr William S Weisberg
    Mr James W Johnson
    Mr M Scott Barrett

Mr Stephen B Murray
Mr Anthony Joseph Rollo Jr
Ms Eileen S Simon
Mr Jay N Fastow
Mr R Patrick Vance
Mr Michael J Beck
Mr Phillip A Wittmann
Mr Barry Weldon Ashe
Mr Daniel H Bookin
Mr Christopher R Lipsett

MDT-1