

U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2003 APR 10 AM 10: 13

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:

MASTERCARD
INTERNATIONAL, INC.
INTERNET GAMBLING
LITIGATION

THIS DOCUMENT RELATES TO:
ALL CASES

CIVIL ACTION

MDL NOS. 1321 AND 1322

SECTION (K)

JUDGE DUVAL
MG. JUDGE CHASEZ

## MOTION FOR LEAVE TO AMEND COMPLAINT

Come now counsel for Plaintiffs in MDL 1321 and 1322 and move this Honorable Court for leave to amend each remaining case by filing the claims in the proposed First Amendment to Complaint attached hereto.

As grounds for this motion, Plaintiffs assert the following:

1. As a preliminary matter, many of the cases which comprise this MDL have been settled on an individual basis, subject to this Court's approval and the preparation of the settlement documents. The proposed amended complaint does not apply to those cases.

2. The amended complaint includes Federal claims which clearly fall within the jurisdiction of this Court. These claims, for the sake of judicial economy and expediency, should be adjudicated in this MDL.

3. Further, this Court has jurisdiction to adjudicate the declaratory judgment claims concerning the enforceability and collectibility of the Internet gambling debt. In each case which comprises this MDL, the Plaintiff and the Defendant reside in different states. Plaintiffs seek to represent a nationwide class of those who have incurred Internet

gambling debt with an issuing bank defendant, and seek an adjudication regarding the enforceability of such debt. Plaintiffs claim attorney's fees, damages available under state law, and any equitable relief available under state law. Clearly, the amount in controversy concerning this putative nationwide class easily exceeds $75,000.00, bestowing jurisdiction on this Court. Even if this Court had any concern about the jurisdictional amount, the additional Federal claims included in Plaintiff's amended complaint are interwined with the state claims in such a fashion that the Court should exercise its supplemental jurisdiction for those claims.

4.  Plaintiffs do not wish to pursue the RICO claims which were decided in the "test" cases by the Fifth Circuit. Plaintiffs do wish to pursue an injunctive relief claim under RICO, as set forth in the proposed amended complaint.

5.  Hence, with the dismissal of MasterCard and Visa from this MDL, coupled with the Fifth Circuit's affirmance of this Court's dismissal of the RICO claims, the legal landscape in this MDL has changed. While Defendants may object to Plaintiff's attempts to adjudicate these new claims, it make sense that the claims in the amended complaint be addressed in this MDL as opposed to transferor courts around the country.

6.  Plaintiffs respectfully request that this Honorable Court accept the proposed complaint filed herewith.

_____
W. LEWIS GARRISON, JR. (GAR008)

OF COUNSEL:

GARRISON SCOTT GAMBLE & ROSENTHAL, P.C.
2224 First Avenue North
Birmingham, AL 35203
205-326-3336
205-326-3332 - facsimile

_____
BARRY G. REED

OF COUNSEL:

ZIMMERMAN REED
14646 N. Kierland Blvd., Suite 145
Scottsdale, AZ 85254-2762
480-358-6400
480-348-6415 - facsimile

### CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the above and foregoing upon all counsel of record this 9th day of April, 2003:

_____
Of Counsel

S:\l1\Internet Gambling\Pleadings\Motion for Leave to Amend Complaint.wpd

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: | CIVIL ACTION<br>MDL NOS. 1321 AND 1322 |
| MASTERCARD<br>INTERNATIONAL, INC.<br>INTERNET GAMBLING<br>LITIGATION | SECTION (K) |
| THIS DOCUMENT RELATES TO:<br>ALL CASES | JUDGE DUVAL<br>MG. JUDGE CHASEZ |

### PLAINTIFF'S FIRST AMENDMENT TO COMPLAINT

### Violations of 12 U.S.C. §§85 and 86, The National Bank Act

Plaintiff expressly adopts and incorporates all factual allegations and state and common law causes of action included in the original Complaint, and further avers as follows:

1. 12 U.S.C. §85 establishes a ceiling on the rate of interest a national bank may charge, which is based on the usury law in the state where such bank is located.

2. 12 U.S.C. §86 provides a remedy for those who have paid interest in excess of that allowed under §85 to bring an action to recover from the bank twice the amount of interest paid:

> The taking, receiving, reserving, or charging a rate of interest greater than is allowed by §85 of this Title, when knowingly done, shall be deemed a forfeiture of the entire interest which the note, bill, or other evidence of debt carries with it. . .[the debtor] may recover back, in an action in the nature of an action of debt, twice the amount of the interest thus paid from the association taking or receiving the same. . .

12 U.S.C. §86.

3.   Plaintiff has incurred debt as a consequence of gambling on various web sites over the Internet. Such gambling debt is unenforceable and uncollectible in the state where Plaintiff resides, and in the state where Defendant is located.

4.   Defendant has created monthly billing statements in which it seeks to collect such gambling debt from Plaintiff. Defendant charges interest on the gambling debt it seeks to collect, and has collected this interest, in such forms as numeric periodic rates, late fees, overlimit fees, annual fees, cash advance fees, and membership fees, all of which constitute interest under Office of the Comptroller of Currency Regulation 7.4001.

5.   In the state where Defendant is located, gambling debts are unenforceable and uncollectible. Defendant charges, and collects, interest on illegal gambling debt.

6.   The charge of a rate of interest on a debt which is illegal, unenforceable, and uncollectible is usurious, and constitutes a violation of 12 U.S.C. §85. Defendant has knowledge that the collection of interest on an illegal and unenforceable debt violates §85, which gives rise to the remedies included in §86.

7.   Further, Plaintiff, as well as the class described in the Complaint, is entitled to recover from Defendant "twice the amount of interest paid" during the class period described herein, up to the present date, which includes all numeric interest, late fees, overlimit fees, annual fees, cash advance fees, and other fees connected with the extension of credit to Plaintiff and those similarly situated.

8.   Plaintiff prays for the following relief:

   a. twice the amount of interest paid to Defendant by Plaintiff and the class, derived from gambling debt incurred over the Internet;

   b. any additional relief, including equitable relief, to which the Plaintiff may be entitled in the premises;

   c. attorney's fees and court costs.

### Violations of 12 U.S.C. §25a, The National Bank Act

Plaintiff expressly adopts and incorporates all factual allegations and state and common law causes of action included in the original Complaint, and further avers as follows:

  9. Defendant's actions violate 12 U.S.C. §25a which prohibits participation by national banks in lotteries and related activities.

  10. 12 U.S.C. §25a provides in relevant part that:

> A national bank may not–
>
> (1) deal in lottery tickets;
>
> (2) deal in bets used as a means or substitute for participation in a lottery.

  11. By collecting gambling debt incurred over the Internet, Defendant is "dealing in bets" in contravention of 12 U.S.C. §25a.

  12. The disregard of a command by a statute is a wrongful act and a tort. Defendant's participation and *de facto* partnership with Internet casinos disregards the command of §25a, violates public policy, and constitutes a prohibited activity. Defendants

have breached the duties owed to Plaintiffs, as members of the public, to refrain from dealing in bets, which cause Plaintiffs' injuries and damages.

13. The Restatement of the Law Second: Torts §286, provides:

The court may adopt as the standard of conduct of a reasonable man the requirements of a legislative enactment or an administrative regulation whose purpose is found to be exclusively or in part

a. To protect a class of persons which includes the one whose interest is invaded, and

b. To protect the particular interest which is invaded, and

c. To protect that interest against the kind of harm which has resulted, and

d. To protect that interest against the particular hazard from which the harm results.

14. 12 U.S.C. §25a creates a standard of conduct as its purpose is to prevent Defendants from dealing in lotteries and bets as evidenced by their participation in Internet gambling, and the collection of Internet gambling debts. Plaintiffs have sustained injuries and damages as a direct and proximate cause of Defendants' participation in these prohibited activities.

15. Plaintiff prays for the following relief:

a. a refund of the entirety of the gambling debt collected by Defendant from Plaintiff and the class;

b. any additional relief, including equitable relief, to which the Plaintiff may be entitled in the premises;

c. attorney's fees and court costs.

### **Violations of 15 U.S.C. §1601, *et seq.***

Plaintiff expressly adopts and incorporates all factual allegations and state and common law causes of action included in the original Complaint, and further avers as follows:

16. Defendant's actions in the course and conduct of their business in the billing of credit card charges for gambling debt incurred over the Internet violate the Truth in Lending Act, 15 U.S.C. §1637(b)(2)(B), as interpreted in Regulation Z, 12 C.F.R. §226.8. TILA was intended to protect consumers against inaccurate and unfair billing and credit card practices and creates specific duties for creditors, such as Defendant, and specific rights to information for debtors such as the Plaintiff.

17. Duties owed by creditors under open end consumer credit plans to the obligors of those plans are described in §1637(b)(2)(B):

> (b) Statement required with each billing cycle:
>
> The creditor of any account under an open end consumer credit plan shall transmit to the obligor, for each billing cycle at the end of which there is an outstanding balance in that account or with respect to which a finance charge is imposed, a statement setting forth each of the following items to the extent applicable: . . .
>
> (2)  The amount and date of each extension of credit during the period, and a brief identification, on or accompanying the statement of each extension of credit in a form prescribed by the Board sufficient to enable the obligor either to identify the transaction or to relate it to copies of sales vouchers or similar instruments previously furnished. . .

18. The regulations adopted by the Federal Reserve Board, Regulation Z, specify the manner in which credit transactions should be identified. 12 C.F.R §226.8 - Identification of Transactions, provides thusly:

> . . .(3) copy of credit document not provided - creditor and seller not same or related person(s). *When the creditor and seller are not the same or related persons, and an actual copy of the receipt or other credit document is not provided with the periodic statement, the creditor shall disclose the amount and date of the transaction; the seller's name; and the city, and state or foreign country where the transaction took place.* (Emphasis added.)

19. Defendants have violated the specific statutory duties owed to Plaintiffs under 15 U.S.C. §1637 and 12 C.F.R. §226.8.

20. Defendants' credit card statements fail to provide Plaintiffs with the name of the seller, the name of the city, and the foreign country where the Internet gambling transaction took place. Instead of providing the identity of the seller, which would be the web site or casino owner, Defendant instead includes the name of an e-commerce company which essentially acts as the financing arm for the gambling chips purchased by the Plaintiff. The foreign country where the seller resides is not disclosed.

21. Plaintiff is entitled under TILA to be informed of the identity of the seller of the goods or services purchased, and the state or foreign country where the transaction occurred. By failing to provide this information, Defendant has violated TILA.

22. As a consequence of Defendant's multiple breaches of its specific statutory duties, Plaintiffs are entitled to all damages, actual and statutory, allowed under TILA for each violation, plus costs and attorney's fees.

### Injunctive Relief under RICO, 18 U.S.C. §1961, *et seq.*

Plaintiff expressly adopts and incorporates all factual allegations and causes of action included in the original Complaint, and further avers as follows:

23. Plaintiffs seek injunctive and equitable relief under RICO, 18 U.S.C. §1961, *et seq.*, to prevent and enjoin Defendant, a member of the enterprise previously described in the Complaint, from collecting and/or initiating efforts to collect, sports betting debt incurred as a consequence of gambling over the Internet.

24. The Fifth Circuit has expressly declined to determine whether injunctive relief is available under RICO. *See Price v. Pinnacle Brands, Inc.*, 138 F.3rd 602 (5th Cir. 1998).

25. This Court should enjoin Defendants from collecting sports betting gambling debt, which is clearly a violation of the Wire Act, 18 U.S.C. §1084(a).

### Declaratory Judgment - Internet Gambling Debt Unenforceable and Uncollectible Under State Law

Plaintiff expressly adopts and incorporates all factual allegations and state and common law causes of action included in the original Complaint, and further avers as follows:

26. As an amendment to the declaratory judgment claims previously described in the Complaint, Plaintiff makes the following averments.

27. Gambling debt is unenforceable under the law of the state of Plaintiffs' residence, as well as the law of the state where Defendant is located.

28.  Plaintiff asserts this claim on behalf of a class as described in the Complaint of each person who has incurred Internet gambling debt which was collected, or attempted to be collected, by Defendant.

29.  A justiciable controversy exists between the parties as to whether: (1) debt incurred while gambling over the Internet is unenforceable and uncollectible as a matter of state law; (2) whether Defendant has collected gambling debt which was unenforceable and uncollectible under state law; (3) whether, to the extent gambling debt remains unpaid, Plaintiff is entitled to an adjudication that such debt need not be paid to Defendant; and (4) to the extent that gambling debt has been paid to Defendant, whether Plaintiff is entitled to a refund of any gambling debt paid to Defendant.

30.  Plaintiff prays for the following relief:

    a.  a declaratory judgment from this Court determining that debt incurred while gambling over the Internet constitutes gambling debt unenforceable and uncollectible under state law;

    b.  for a permanent injunction enjoining Defendant from collecting any additional Internet gambling debt, or initiating efforts to collect same;

    c.  For all damages, and other relief, available under state law;

    d.  Attorney's fees;

    e.  Interest and costs.

_____
W. LEWIS GARRISON, JR. (GAR008)

OF COUNSEL:

GARRISON SCOTT GAMBLE & ROSENTHAL, P.C.
2224 First Avenue North
Birmingham, AL 35203
205-326-3336
205-326-3332 - facsimile

_____
BARRY G. REED

OF COUNSEL:

ZIMMERMAN REED
14646 N. Kierland Blvd., Suite 145
Scottsdale, AZ 85254-2762
480-358-6400
480-348-6415 - facsimile

### CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the above and foregoing upon all counsel of record this 9th day of April, 2003:

_____
Of Counsel