FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2003 MAY 27 PM 4: 15

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:<br><br>MASTERCARD INTERNATIONAL, INC.<br>INTERNET GAMBLING LITIGATION, | CIVIL ACTION<br><br>MDL Nos. 1321 and 1322<br><br>SECTION K<br><br>**JUDGE DUVALL** |

## DEFENDANTS' CONSOLIDATED OPPOSITION
## TO MOTION TO AMEND

The Issuing Bank Defendants[1] ("Defendants") in these consolidated actions jointly submit this opposition to Plaintiffs' Motion to Amend.

### INTRODUCTION

Plaintiffs' motion for leave to file an ill-fitting one-size-fits-all First Amendment To Complaint ("FAC") should be denied. The Court afforded Plaintiffs an opportunity to attempt to salvage the RICO claims found by this Court and the Fifth Circuit to have been inadequately alleged. Rather than attempt to meet the deficiencies identified by the courts, Plaintiffs have ignored the failure of the original complaint to allege adequately a

---

[1] Associates National Bank, Associates First Capital Corporation, Traveler's Bank USA Corp., Citibank, Citigroup Inc., Citibank (South Dakota) N.A., AT&T Credit Consumer Finance Corp., Fidelity Federal Bank, Heritage Bank of Commerce, Pentagon Federal Credit Union, Providian Bank, People's Bank Corp., M&T Bank Corp., KeyBank USA, N.A., Fleet Bank (Rhode Island), N.A., Fleet Credit Card Services, L.P., Capital One, First Citizens Bank & Trust Co., First Citizens Bank & Trust Co. of South Carolina, First Citizens Bank, Wachovia Bank N.A, f/k/a First Union National Bank., Wachovia Bank Card Services, MBNA American Bank, Central Carolina Bank & Trust Co., and Chase Manhattan Corp.

{N0982626.1}                                1

RICO "enterprise," have concocted a new series of frivolous federal claims, and have bundled them into a complaint that ignores the differing allegations of Plaintiffs' original Defendant-specific complaints. Finally, Plaintiffs now attempt to assert claims under the National Bank Act against *all* Defendants, despite the fact that many of the remaining Defendants are not national banks and hence are not regulated under the National Bank Act.

As the FAC fails to allege any cognizable federal claim, Plaintiffs' motion for leave to amend should be denied in each of the remaining cases, and each such case should be dismissed for want of federal jurisdiction.

## ARGUMENT

### I. A MOTION TO AMEND SHOULD BE DENIED WHERE THE AMENDMENT WOULD BE FUTILE.

All of Plaintiffs' newly minted federal theories, although inventive, are fatally flawed because they hinge upon legal conclusions that this Court and the Fifth Circuit already rejected in the test cases. Those rulings are now binding as the "law of the case." *See Arizona v. California*, 460 U.S. 605 (1983) ("[W]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."). Because the FAC would be subject to a dismissal under Federal Rule 12(b), the motion for leave to amend should be denied as futile. *Martin's Herend Imps., Inc. v. Diamond & Gem Trading United States of Am. Co.*, 195 F.3d 765, 771 (5th Cir. 1999) ("A district court acts within its discretion when dismissing a motion to amend that is frivolous or futile."); *Jamieson v. Shaw*, 772 F.2d 1205, 1209-11 (5th Cir. 1985) (observing that amendments are futile if the theory presented lacks legal foundation or was presented in a prior version of the complaint).

## II. PLAINTIFFS' USURY CLAIM UNDER THE NATIONAL BANK ACT IS FUTILE BECAUSE THEIR CREDIT CARD CHARGES WERE NOT UNLAWFUL DEBTS.

Plaintiffs' first new theory alleged in the FAC is that Defendants violated the National Bank Act's[2] prohibition on usury, 12 U.S.C. § 85, when they attempted to collect the credit card advances made by Defendants at Plaintiffs' request so that Plaintiffs could engage in internet gambling. (FAC ¶¶ 1-8.) Plaintiffs' usury theory is premised upon the legal conclusion that the credit card charges at issue are "gambling debt[s]" which are "unenforceable and uncollectible in the state where Plaintiff resides, and in the state where Defendant is located." (FAC ¶ 3.) Plaintiffs contend that any interest charged on such "illegal" debt is "usurious, and constitutes a violation of 12 U.S.C. §85." (FAC ¶ 6.)

This Court and the Fifth Circuit have already rejected the fundamental premise of Plaintiffs' usury claim: that the credit card charges are illegal gambling debts. Concluding in the test cases that Plaintiffs failed to state a cause of action for violation of state law, the Court explained:

> As applied to the complaint, plaintiff makes no allegation that either the credit card company or issuing bank collected the proceeds of a gambling device. What plaintiff does state is that he purchased credits using his credit card before he gambled. *See* Thompson Complaint at ¶¶ 23-29. It is a temporal impossibility for the defendants to have completed their transaction with the plaintiff before he gambled and to then be prosecuted for collecting the proceeds of a gambling device, which can only take place after some form of gambling is completed.

*In re MasterCard Int'l Inc.,* 132 F. Supp. 2d 468, 479 (E.D. La. 2001). The Fifth Circuit concurred that "Plaintiffs' allegations do not show . . . the collection of unlawful debt." *In re MasterCard Int'l Inc.,* 313 F.3d 257, 261 (5th Cir. 2002).

---

[2] The National Bank Act applies only to institutions chartered by the United States pursuant to the Act's terms. The following defendants, chartered either by a state, or by the United States under different enabling legislation, are not subject to the National Bank Act: Capital One Bank, Central Carolina Bank & Trust, Pentagon Federal Credit Union, and People's Bank.

Proof of Plaintiffs' new usury claim would require relitigation of an issue Plaintiffs have already lost. As there are no "illegal gambling debts," the Court need not trouble itself resolving whether, under the laws of each state in which a Defendant resides, an attempt to charge interest on an improper debt renders the interest rate on such debt usurious. As the claim is futile for reasons that the Court has already articulated, the motion to amend to add this claim should be denied.

### III. PLAINTIFFS HAVE NO PRIVATE RIGHT OF ACTION UNDER THE NATIONAL BANK ACT BECAUSE THE ALLEGATIONS DO NOT CONSTITUTE DEALING IN LOTTERY BETS.

Plaintiffs' other National Bank Act claim alleging an implied private right of action under 12 U.S.C. § 25a is similarly untenable. Section 25a provides in pertinent part that a national bank may not:

> (1) deal in lottery tickets;
>
> (2) deal in bets used as a means or substitute for participation in a lottery.

12 U.S.C. § 25a(a). Plaintiffs contend that Defendants impermissibly "'deal[t] in bets'" when they sought to recover advances Defendants made at Plaintiffs' request so that Plaintiffs could purchase credits capable of use in internet gambling. (FAC ¶ 11.) Plaintiffs further allege that the statute creates an implied private right of action allowing them to seek restitution and other relief from the Defendants. (FAC ¶¶ 13-14.)

Plaintiffs' claim is futile because section 25a is not a general anti-gambling statute, requiring banks to scrutinize their customers' accounts for any gambling activity, but rather an enactment targeted at preventing a specific practice: bank-run lotteries. The statute defines the relevant terms as follows:

> As used in this section –
>
> (1) The term "deal in" includes making, taking, buying, selling, redeeming, or collecting.
>
> (2) The term "lottery" includes any arrangement whereby three or more persons (the "participants") advance money or credit to another in exchange for the possibility

>or expectation that one or more but not all of the participants (the "winners") will receive by reason of their advances more than the amounts they have advanced, the identity of the winners being determined by any means which includes –
>
>>(A) a random selection;
>>
>>(B) a game, race, or contest; or
>>
>>(C) any record or tabulation of the result of one or more events in which any participant has no interest except for its bearing upon the possibility that he may become a winner.

12 U.S.C. § 25a(c).

Plaintiffs' claim under section 25a is futile because the internet gambling in which they claim to have participated does not constitute a "lottery." The alleged gambling transactions were between two parties – a plaintiff and a casino – not three or more. Furthermore, there is no allegation that the games in which Plaintiffs participated involved the "raffle"-like characteristic of a "lottery" – that three or more persons advanced funds with the expectation that at least one of them would win the "pot." *See In re MasterCard*, 313 F.3d at 260 (describing plaintiffs' gambling allegations). Absent allegations of a lottery, section 25a is simply inapplicable.

Moreover, even if the internet gambling constituted a "lottery" for purposes of the statute, the Defendants' alleged acts do not constitute "dealing in bets." The only allegations regarding Defendants' involvement in gambling are that they made advances at Plaintiffs' request for Plaintiffs' purchase of credits that could be used at the internet casinos, and that having made the requested advances, Defendants sought to collect those amounts from Plaintiffs. *Id.* As Defendants' involvement ended with Plaintiffs' purchase of credit before any gambling occurred, their actions did not include "making, taking, buying, selling, redeeming, or collecting" bets. *See In re MasterCard*, 132 F. Supp. 2d at 475 ("Plaintiffs do not allege that the defendants received or transmitted any bets or that they have an ownership interest in the online casinos.").

Although the Court need not reach the issue, it is unlikely Plaintiffs could establish that they are entitled to a private right of action under section 25a. The statute only provides for enforcement by the Office of the Comptroller of the Currency ("OCC"). 12 U.S.C. § 25a(e). "A plaintiff asserting an implied right of action under a federal statute bears the relatively heavy burden of demonstrating that Congress affirmatively contemplated private enforcement when it passed the statute." *Casas v. Am. Airlines, Inc.*, 304 F.3d 517, 521-22 (5th Cir. 2002). "'[A]ffirmative' evidence of congressional intent must be provided *for* an implied remedy, not against it." *Alexander v. Sandoval*, 532 U.S. 275, 293 n.8 (2001) (emphasis in original). Here, Plaintiffs have made no allegations regarding Congressional intent to allow private enforcement, and it is unlikely they would be able to show such intent given the statute's provision for enforcement by the OCC. "The express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others." *Id.* at 290.

As Plaintiffs have no claim under section 25a, the motion for leave to amend to state such a claim should be denied as futile.

IV. **PLAINTIFFS' TRUTH IN LENDING ACT CLAIM IS FUTILE BECAUSE THEY WERE PROVIDED THE INFORMATION RELEVANT TO THEIR CREDIT CARD TRANSACTION AND BECAUSE THE CLAIM IS TIME-BARRED.**

Plaintiffs' allegation that the credit card statements provided by Defendants to Plaintiffs did not comply with the disclosure requirements of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1637(b)(2)(B), and Regulation Z, 12 C.F.R. § 226.8, is also without basis. TILA requires a credit card statement to provide a name and location for each vendor for whom charges are reflected on the statement. (FAC ¶ 21.) Plaintiffs complain that their statements provided the identifying information for the e-commerce companies where Plaintiffs purchased credits that could be used for internet gambling, and not the name and location of the internet casinos at which Plaintiffs used the purchased credits. (FAC ¶ 20.)

Plaintiffs' TILA claim is predicated on their continued refusal to acknowledge what this Court and the Fifth Circuit have already recognized — that their credit card-financed purchases of credits from e-commerce companies took place before, and were separate from, their gambling at the internet casino. *See In re MasterCard*, 132 F. Supp. 2d at 474 ("The credit cards are used to purchase credits which the bettor may then use, or not use, as he pleases."). Plaintiffs do not dispute that Defendants provided the pertinent information for the entity from which they purchased the credits. (FAC ¶ 20 ("Defendant instead includes the name of an e-commerce company which essentially acts as the financing arm for the gambling chips purchased by the Plaintiff.").) That is all TILA requires Defendants to provide on Plaintiffs' credit card statements. Plaintiffs identify no provision of TILA or Regulation Z that directs Defendants to track and analyze how Plaintiffs dispose of whatever goods or services they purchase through use of a credit card.

Moreover, any individual claims under TILA that Plaintiffs would have are now time-barred. Any claim under TILA must be brought "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). The alleged violations in this case – Plaintiffs' receipt of the allegedly improper credit card statements – all took place more than a year prior to the filing of the FAC. As Plaintiffs' purported TILA claim is based on an entirely different set of facts – Defendants' alleged failure to provide identifying information on a credit statement – than Plaintiffs' original claims regarding Defendants' alleged involvement in illegal gambling, the claims would not relate back to the filing of Plaintiffs' original complaints. *See FDIC v. Conner*, 20 F.3d 1376, 1385 (5th Cir. 1994) ("If a plaintiff attempts to interject entirely different conduct or different transactions or occurrences into a case, then relation back is not allowed.").

As Plaintiffs received the disclosures required by TILA, and any claim they may have is barred by the applicable statute of limitations, the Court should deny leave to amend to add the claim as futile.

Finally, Plaintiffs' TILA claim is also fatally deficient because they can obtain neither actual nor statutory damages as a matter of law. Plaintiffs cannot obtain actual damages as a matter of law because they cannot satisfy the prerequisites to such allegedly improper disclosure. *See, e.g., In re Smith*, 289 F.3d 1155, 1156-57 (9th Cir. 2002); *Turner v. Beneficial Corp.*, 242 F.3d 1023, 1026 (11th Cir.), *cert. denied*, 534 U.S. 820 (2001); *Perrone v. General Motors Acceptance Corp.*, 232 F.3d 433, 436-40 (5th Cir. 2000), *cert. denied*, 532 U.S. 971 (2001); *Stout v. J.D. Byride*, 228 F.3d 709, 718 (6th Cir. 2000); *Peters v. Jim Lupient Oldsmobile Co.*, 220 F.3d 915, 917 (8th Cir. 2000). Plaintiffs have alleged that defendants did not properly identify the transactions on their periodic statements but they have not alleged any reliance on the defendants' disclosure of the e-commerce company as the seller in these transactions. Since they were certainly aware that they were gambling with internet casinos, they cannot possibly allege such reliance. Plaintiffs also cannot obtain statutory damages as a matter of law because such damages are not available for a failure to properly identify a transaction on a periodic statement. That disclosure is required by Section 127(b)(2) of TILA, 15 U.S.C. 1637(b)(2), and statutory damages are only available for violations of subsections (4), (5), (6), (7), (8), (9), or (10) of Section 127(b), as noted in Section 130 of TILA, 15 U.S.C. 1640.

V.  **PLAINTIFFS' RICO CLAIM FOR INJUNCTIVE RELIEF IS FUTILE FOR THE REASONS IDENTIFIED IN THE COURT'S SUMMARY JUDGMENT ORDER.**

The RICO claim alleged in the proposed FAC fails for some of the same reasons identified in this Court's summary judgment order. This Court concluded that Plaintiffs had failed to allege a RICO enterprise, a necessary element of any RICO claim. *See In re Mastercard*, 132 F. Supp. 2d at 487 ("Plaintiffs' failure to plead an ongoing organization evidenced by a hierarchical or consensual decision making structure is yet

another defect fatal to their RICO claim.")[3] Because the FAC does not even attempt to address this fatal defect in Plaintiffs' original complaints, the Court need not waste further time on Plaintiffs' new RICO claim.

Restyling the RICO claim as a request for injunctive relief as to sports betting (FAC ¶ 23)[4] does not solve the "enterprise" problem, and creates additional Defendant-specific problems as well. In the majority of the cases, Plaintiffs have not alleged they engaged in any sports betting. As the Court previously recognized in rejecting Plaintiffs' Wire Act claim as a RICO predicate:

> The sole reference to "sports betting" is a conclusory allegation that the alleged enterprise engaged in sports betting. However, nowhere does either plaintiff allege personal participation in sports gambling. Such an allegation is not enough to survive a motion to dismiss where there is no claim that plaintiffs themselves, or the defendants they have sued, participated in sports gambling.

*In re MasterCard*, 132 F. Supp. 2d at 481 (citations omitted). Absent any injury resulting from sports betting arising from use of credits purchased using funds from a specific Defendant, Plaintiffs are not proper parties to seek injunctive relief against such Defendant.

### VI. THE COURT SHOULD NOT RETAIN JURISDICTION SOLELY TO DECIDE MATTERS OF STATE LAW.

The FAC's final claim is for declaratory judgment that the contested credit card charges are "unenforceable and uncollectible under state law."[5] The Court should decline Plaintiffs' invitation to utilize its resources construing the laws of the fifty states,

---

[3] In dismissing without leave to amend Plaintiffs' RICO allegations in the test cases, this Court noted that "[t]he defects in plaintiffs' complaints appear insurmountable." *In re Mastercard*, 132 F.Supp.2d at 497.

[4] Plaintiffs acknowledge that the Fifth Circuit has never found injunctive relief available under RICO. (FAC ¶ 24.)

[5] Plaintiffs' statement of the specific judgment sought "that debt incurred while gambling over the Internet constitutes gambling debt unenforceable and uncollectible under state law" again ignores the Court's determination in the test cases that the relevant credit card transactions occurred prior to any gambling.

particularly in the absence of any viable federal claim. *See* 28 U.S.C. § 1367(c)(3) (district court may decline to exercise supplemental jurisdiction over state law claims where it has dismissed all claims over which it has original jurisdiction).

Plaintiffs cannot contend diversity jurisdiction allows their state law claims to remain before this Court. Even if all the Plaintiffs were diverse from the Defendants (and they are not),[6] Plaintiffs cannot allege that each member of the purported class can establish the requisite $75,000 amount in controversy. Multiple plaintiffs may not aggregate separate and distinct claims to satisfy the amount in controversy requirement of federal diversity jurisdiction. *Zahn v. Int'l Paper Co.*, 414 U.S. 291, 294 (1973); *Snyder v. Harris*, 394 U.S. 332, 336-37 (1969); *Grant v. Chevron Phillips Chemical Co. L.P.*, 309 F.3d 864, 873 (5th Cir. 2002). The non-aggregation rule applies alike to joinder of multiple plaintiffs and class actions. *Zahn, supra; Snyder, supra; H&D Tire & Auto. Hardware Inc. v. Pitney Bowes, Inc.*, 227 F.3d 326, 330 (5th Cir. 2000) ("punitive damages claims of the putative class cannot be aggregated"), *cert. denied*, 534 U.S. 894 (2001).

## CONCLUSION

This Court has generously permitted Plaintiffs to attempt to plead around prior decisions that are adverse to them, and Plaintiffs have failed to do so. Defendants respectfully suggest that the Court determine the federal claims to be futile, and deny the motion to amend. Defendants further suggest that the Court decline to exercise supplemental jurisdiction as to the state law claims, and dismiss the actions.

---

[6] The plaintiff and remaining defendant are not diverse in *Silverleib v. Mastercard Int., et al.*, C.A. 00-1990 (original docket no. 00-3715 S.D.N.Y.) and *Silverleib v. Visa Int. Svc. Assoc., et al.*, C.A. 00-1995 (original docket no. 00-1773, N.D. Cal.).

Respectfully submitted,

*[signature]*

R. PATRICK VANCE (LA Bar No. 13008)
Jones, Walker, Waechter, Poitevent,
   Carrère & Denègre, L.L.P.
201 St. Charles Avenue, 49th Floor
New Orleans, Louisiana 70170-5100
Telephone (504) 582-8194
Telefax (504) 589-8194
Counsel for Fidelity Federal Bank, Capital One
   Bank, Associates National Bank, Associates
   First Capital Corporation, Pentagon Federal
   Credit Union, Providian National Bank,
   Prudential Bank & Trust Co., Fleet Credit
   Card Services, Fleet Bank, Heritage Bank of
   Commerce, Wachovia Bank N.A., f/k/a First
   Union National Bank, Wachovia Bank Card
   Services, MBNA American Bank, Central
   Carolina Bank & Trust, KeyBank USA,
   People's Bank Corp., Traveler's Bank USA
   Corp., Citibank, Citigroup Inc., Citibank
   (South Dakota) N.A., M&T Bank Corp.,
   and AT&T Credit Consumer Finance Corp.

JAMES F. McCABE
STEPHEN E. PAFFRATH
Morrison & Foerster, L.L.P.
425 Market Street
San Francisco, California 94105-2482
Telephone (415) 268-7011
Telefax (415) 268-7522
Counsel for Capital One, First Citizens Bank &
   Trust Co., First Citizens Bank & Trust Co.
   of South Carolina, First Citizens Bank,
   MBNA American Bank, Central Carolina
   Bank & Trust Co., Chase Manhattan Corp.,
   and M&T Bank Corp.

JOE B. NORMAN
Liskow & Lewis
701 Poydras Street, 50th Floor
New Orleans, Louisiana 70139
Telephone (504) 566-4143
Telefax (504) 556-4108
Counsel for First Citizens Bank

{N0982626.1}            11

JOHN FAHNESTOCK
M&T Bank Corp.
One M&T Plaza, 12th Floor
Buffalo, New York 14203-2399
Telephone (716) 842-5488
Telefax (716) 842-5376
Counsel for M&T Bank Corp.

LAWRENCE E. MILLER
KEVIN R. J. SCHROTH
LeBoeuf, Lamb, Greene & MacRae, L.L.P.
One Riverfront Plaza
Newark, New Jersey 07102-5490
Telephone (973) 643-8000
Telefax (973) 643-6111
Counsel for Wachovia Bank, N.A., f/k/a First
    Union National Bank, and Wachovia Bank
    Card Services

THOMAS J. KAVALER
Cahill Gordon & Reindel L.L.P.
80 Pine Street
New York, New York 10005
Telephone (212) 701-3000
Telefax  (212) 269-5420
Counsel for Pentagon Federal Credit Union

WILLIAM H. MORROW
Lightfoot, Franklin & White, L.L.C.
400 20th Street North
Birmingham, Alabama 35203
Telephone (205) 581-0700
Telefax (205) 581-0799
Counsel for Providian National Bank

CHRISTOPHER LIPSETT
Wilmer, Cutler & Pickering
2445 M Street, N.W.
Washington, D.C. 20037
Telephone (202) 663-6077
Telefax  (202) 663-6363
Counsel for Associates National Bank,
    Associates First Capital Corporation,
    Traveler's Bank USA Corp., Citibank,
    Citigroup Inc., Citibank (South Dakota)
    N.A., and AT&T Credit Consumer Finance
    Corp.

ALAN S. KAPLINSKY
MARTIN C. BRYCE, JR.
Ballard Spahr Andrews & Ingersoll L.L.P.
1735 Market Street, 51st Floor
Philadelphia, Pennsylvania 19103-7599
Telephone (215) 864-8544
Telefax (215) 864-9488
Counsel for KeyBank USA, N.A., Fleet Bank
   (Rhode Island), N.A., and Fleet Credit Card
   Services, L.P.

T. R. SCARBOROUGH
Sidley Austin Brown & Wood
Bank One Plaza
Chicago, Illinois 60603
Telephone (312) 853-2236
-- and --
JOHN VAN DE WEERT
Sidley Austin Brown & Wood
555 West Fifth Street
Los Angeles, California 90013
Telephone (213) 896-6627
Telefax (213) 896-6600
Counsel for Heritage Bank of Commerce

ROGER L. BATES
Hand Arendall, L.L.C.
2001 Park Place North, Suite 2900
Birmingham, Alabama 35203
Counsel for Fidelity Federal Bank

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Consolidated Opposition to Motion to Amend has been served on counsel of record listed below, by placing same in the U.S. Mail, postage prepaid and properly addressed, this 27th day of May, 2003.

*[signature]*

| | |
|---|---|
| Stephen B. Murray, Esquire<br>The Murray Firm<br>909 Poydras Street, Suite 2550<br>New Orleans, Louisiana 70130 | Thomas J. Kavaler, Esquire<br>Cahill, Gordon & Reindel<br>80 Pine Street<br>New York, New York 10005-1702 |
| Barry G. Reed, Esquire<br>Zimmerman Reed L.L.P.<br>651 Nicollet Mall, Suite 501<br>Minneapolis, Minnesota 55402 | William H. Morrow, Esquire<br>Lightfoot, Franklin & White<br>400 20th Street North<br>Birmingham, Alabama 35203 |
| W. Lewis Garrison, Jr., Esquire<br>Garrison, Scott, Gamble & Rosenthal, P.C.<br>Post Office Box 11310<br>Birmingham, Alabama 35202 | Alan S. Kaplinsky, Esquire<br>Martin C. Brice, Jr., Esquire<br>Ballard Spahr Andrews & Ingersoll L.L.P.<br>1735 Market Street, 51st Floor<br>Philadelphia, Pennsylvania 19103-7599 |
| James F. McCabe, Esquire<br>Morrison & Foerster, L.L.P.<br>425 Market Street<br>San Francisco, California 94105-2482 | Roger L. Bates, Esquire<br>Hand Arendall, L.L.C.<br>2001 Park Place North, Suite 900<br>Birmingham, Alabama 35203 |
| Joe B. Norman, Esquire<br>Liskow & Lewis<br>701 Poydras Street, 50th Floor<br>New Orleans, Louisiana 70139 | T. R. Scarborough, Esquire<br>Sidley Austin Brown & Wood<br>Bank One Plaza<br>Chicago, Illinois 60603 |
| Christopher Lipsett, Esquire<br>Wilmer, Cutler & Pickering<br>2445 M Street, N.W.<br>Washington, D.C. 20037 | John Van de Weert, Esquire<br>Sidley Austin Brown & Wood<br>555 West Fifth Street<br>Los Angeles, California 90013 |
| Lawrence E. Miller, Esquire<br>Kevin Schroth, Esquire<br>LeBoeuf, Lamb, Greene & MacRae, L.L.P.<br>One Riverfront Plaza<br>Newark, New Jersey 07102-5490 | William J. Wenzel, Esquire<br>Pullman & Comley L.L.C.<br>850 Main Street<br>Bridgeport, Connecticut 06601-7006 |
| John Fahnestock, Esquire<br>M&T Bank Corp.<br>One M&T Plaza, 12th Floor<br>Buffalo, New York 14203-2399 | |