

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: MASTERCARD INT'L, INC.              CIVIL ACTION
INTERNET GAMBLING LITIG.
                                            NOs. 00MD-1321 & 00-1322

                                            SECTION "K" (5)


## ORDER AND REASONS

Before this Court is plaintiffs' Motion for Leave to Amend the Complaint, Rec. Doc. 57.

For the following reasons the Court **DENIES** the motion.


### I.   FACTS AND BACKGROUND

This multidistrict litigation arises from allegations that MasterCard International, Visa

International, and several banks that issue MasterCard and Visa credit cards have interacted with

a number of internet casinos in a manner that violates United States law.[1] Numerous putative

class actions were filed in district courts around the country and were transferred to the Eastern

District of Louisiana by order of the Judicial Panel on Multidistrict Litigation on March 1, 2000.

---

[1] Defendants MasterCard International and Visa International are no longer defendants in this case. *See* Order of Dismissal, Rec. Doc. 53.

In the original complaint, plaintiffs attempted to use the Racketeer Influenced and Corrupt Organizations Act ("RICO") to avoid debts they incurred when they used their credit cards to purchase "chips" they subsequently wagered at on-line casinos. Plaintiffs attempted to recover injuries they allegedly sustained by reason of the RICO violations of the defendants.

On June 13, 2000, this Court ordered the plaintiffs in two "test" cases to file, respond, and reply to motions pursuant to Federal Rule of Civil Procedure 12 and Federal Rule of Civil Procedure 19 with respect to the federal claims only. The Court granted the 12(b)(6) motion brought by defendants on February 23, 2001. A copy of the opinion detailing the disposition of the case can be found at *In re Mastercard Int'l Inc., Internet Gambling Litig.*, 132 F.Supp. 468 (E.D. La. 2001). Plaintiffs appealed and the Fifth Circuit affirmed the Court's decision. *See In re MasterCard Int'l, Inc. Internet Gambling Litig.*, 313 F.3d 257 (5th Cir. 2002). In summary, this Court concluded and the Fifth Circuit affirmed that plaintiffs did not allege facts showing a pattern of racketeering activity or the collection of an unlawful debt; a RICO enterprise; or participation in the management of the enterprise. *In re Mastercard Int'l Inc.*, 313 F.3d at 261.

On May 27, 2003 plaintiffs filed the instant Motion for Leave to Amend Complaint which asks the Court to permit the plaintiffs to allege the following additional claims: 1) violations of the National Bank Act, 12 U.S.C. §§85, 86 and 25(a); 2) violations of the Truth in Lending Act, 15 U.S.C. §1637(b)(2)(B); 3) injunctive relief under RICO, 18 U.S.C. §1961, et seq., and; 4) declaratory relief determining that debt incurred while gambling over the internet constitutes gambling debt that is unenforceable and uncollectible under state law, and enjoining defendants from collecting the debt.

## II. DISCUSSION

### A. Standard for Motion for Leave to Amend

A trial court is required to "freely" give leave to amend "when justice so requires." Fed. R. Civ. P. 15(a). *Meyer v. Foti*, 720 F.Supp. 1234, 1239 (E.D. La. 1989). Among the acceptable justifications for denying leave to amend are undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by prior amendment, undue prejudice to the opposing party, and the futility of the amendment. *Jamieson v. Shaw*, 772 F.2d 1205, 1209-11 (5th Cir. 1985). When a party advances the argument that amendment is futile, courts usually deny leave on the ground that the theory presented in the amendment lacks legal foundation or because the theory has been adequately presented in a prior version of the complaint. *Jamieson*, 772 F.2d at 1209; *Meyer*, 720 F. Supp. at 1239.

The suggestion that an amendment is futile requires the court to analyze the sufficiency of the complaint. *CNG Producing Co. v. Indeck Gas Supply Corp.*, No. 93-0378, 1993 WL 455650, * 1 (E.D. La. 11/4/93). In analyzing the sufficiency of the complaint, the court must accept the allegations in the complaint as true, viewing them in the light most favorable to the plaintiff; and the complaint must stand unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle them to relief. *CNG Producing*, 1993 WL 455650 at *1. Leave to amend should be denied for futility if the proposed amendment is clearly insufficient on its face. *Id.*

Defendants argue that in this case, the amendments are futile because the amendments reassert legal conclusions that this Court and the Fifth Circuit have already rejected. Pursuant to

"the law of the case" theory, a rule of law previously decided should continue to govern the same issues in subsequent stages of the same case. *Arizona v. California,* 460 U.S. 605 (1983). With this legal premise and the sufficiency of the complaint standard in mind, the Court will analyze plaintiffs' additional theories of recovery. If the Court finds that the amendments are futile because plaintiffs merely reassert claims or legal theories that this Court has already dismissed, then the motion for leave shall be denied.

**B. National Bank Act 12 U.S.C. §§85 and 86**

In plaintiffs' First Amended Complaint they allege that defendants have violated the National Bank Act's prohibition on usury when they attempted to collect the credit card advances plaintiffs requested from defendant banks so that plaintiffs could engage in internet gambling. *See* 12 U.S.C. §85; (Complaint ¶1 & 2). Plaintiffs contend that they may maintain an action to recover from the bank pursuant to 12 U.S.C. §86 which provides remedies for individuals who have paid interest in excess of the amount allowed under 12 U.S.C. §85. The gravamen of plaintiff's new theory of relief is that plaintiffs incurred debt as a result of gambling, that defendants have collected interest on this debt, and that because the debt is illegal and unenforceable, defendants' collection of interest on the gambling debt is a violation of 12 U.S.C. §85.

Defendants counter that this Court and the Fifth Circuit have already rejected the fundamental premise of plaintiff's usury claim: that the credit card charges are illegal gambling

debts.[2]  In its opinion this Court stated:

> As applied to the complaint, plaintiff makes no allegation that either the credit card company or issuing bank collected the proceeds of a gambling device. What plaintiff does state is that he purchased credits using his credit card before he gambled. See Thompson Complaint at ¶¶ 23-29. It is a temporal impossibility for the defendants to have completed their transaction with the plaintiff before he gambled and to then be prosecuted for collecting the proceeds of a gambling device, which can only take place after some form of gambling is completed.

*In re MasterCard Int'l Inc.*, 132 F.Supp. at 479.  The Fifth Circuit upheld this reasoning stating that "Plaintiffs' allegations do not show. . .the collection of unlawful debt." *In re MasterCard Int'l Inc.*, 313 F.3d at 261.  Because plaintiffs' allegations of usury rest on the notion that the interest is usurious because the underlying debt is illegal, plaintiffs' Motion for Leave to Amend adding a claim under section 85, must fail.  Plaintiffs have no chance of recovery because this Court has already decided that defendants did not engage in the collection of an unlawful debt. Consequently, plaintiffs may not maintain their allegations under the National Bank Act, 12 U.S.C. §§85 and 86, because the allegation is premised upon the defendants' collection of unlawful debts–a circumstance contrary to "the law of the case," i.e., the previous findings of this Court that defendants' activities did not constitute the collection of unlawful debts.

### C.    National Bank Act 12 U.S.C. §25(a)

In paragraphs nine through fifteen, plaintiffs allege that the defendants violated the National Bank Act 12 U.S.C. §25(a).  Section 25(a) states that a national bank may not:

---

[2] The Court acknowledges defendants' assertion that the National Bank Act applies only to institutions chartered by the United States pursuant to the terms of the National Bank Act. Defendants assert that several defendants, Capital One Bank, Central Carolina Bank & Trust, Pentagon Federal Credit Union, and Peoples Bank, are not subject to the National Bank Act because they were either chartered by a state or by the United States under different enabling legislation.

>   (1) deal in lottery tickets;
>   (2) deal in bets used as a means or substitute for participation in a lottery.

12 U.S.C. §25a(a). Plaintiffs assert that "by collecting gambling debt incurred over the Internet, Defendant is 'dealing in bets' in contravention of §25a." Additionally, plaintiffs assert that the defendants' participation and *de facto* partnership with internet casinos constitutes tortious conduct.

Defendants counter-argue that plaintiffs' claim is futile because section 25a is not a general anti-gambling statute, but rather a law intended to prevent bank-run lotteries. Defendants dissect section 25a and contest its applicability to the alleged conduct.

The statute defines the relevant terms as follows:

> As used in this section–
> (1)   The term "deal in" includes making, taking, buying selling, redeeming, or collecting.
> (2)   The term "lottery" includes any arrangement whereby three or more persons (the "participants") advance money or credit to another in exchange for the possibility or expectation that one or more but not all of the participants (the "winners") will receive of their advances more than the amounts they have advanced, the identity of the winners being determined by any means which includes:
>   (A)   a random selection;
>   (B)   a game, race, or contest; or
>   (C)   any record or tabulation of the result of one or more events in which any participant has no interest except for its bearing on the possibility that he may become a winner.

12 U.S.C. §25a(c).

Plaintiffs cannot prevail under section 25a for three reasons: 1) the internet gambling activities plaintiffs allegedly participated in do not constitute a lottery; 2) the defendants' alleged acts cannot be characterized as "dealing in bets"; and 3) plaintiffs have not established that they possess a private right of action under 25a.

First, plaintiffs' participation in internet gambling does not constitute a lottery. The

alleged gambling transactions were between two parties, the casino and the bettor, not three or more parties as the statute requires. 12 U.S.C. §25a(c)(2). Moreover, plaintiffs have not alleged facts that establish that they engaged in lottery or raffle type activities as contemplated by the statute.[3] Further, contrary to the gambling scenario where all of the participants may win, a lottery requires "one or more but not all of the participants ("the winners") [to] receive by reason of their advances more than the amounts they have advanced." *Id.* Hence, plaintiffs' gambling activities in no way resemble a lottery or raffle as contemplated by the statute.

Secondly, defendants' acts cannot be accurately characterized as "dealing in bets" as defined by section 25a(c). According to the statute, to "deal in" includes "making, taking, buying selling, redeeming, or collecting" bets. 12 U.S.C. §§25a(a) and 25a(c). Defendants merely advanced money and plaintiffs used the money to purchase credits that could be used at the internet casinos. The defendants' actions were complete before the betting took place. As stated in this Court's previous Order and Reasons, "plaintiff[s] [make] no allegation that either the credit card company or issuing bank collected the proceeds of a gambling device. What plaintiff[s] [do] state is that [they] purchased credits using [their] credit card before [they] gambled." *In re MasterCard Int'l, Inc.,* 132 F.Supp. 2d at 479. Thus, defendants' actions did not constitute "making, taking, buying, selling, redeeming, or collecting" lottery tickets or bets as contemplated by the statute.

Finally, as defendants point out, the plaintiff has not established that they are even

---

[3]In the internet gambling scenario, the gambler directs his browser to a casino website that informs him that he will receive a gambling credit for each dollar he deposits. *In re MasterCard Int'l, Inc.,* 313 F.3d at 260. The bettor may use his credit card to charge his purchases, but may also purchase credits through a credit card via telephone, personal check or money order. *Id.* His purchases take the form of credits that entitle him to place wagers. *Id.* Losses are debited from and winnings are credited to his account. *Id.* The websites pay the gambler through wire transfers, not through credits to the account. *Id.*

entitled to a private right of action under section 25a. On its face, the statute only provides for enforcement by the Office of the Comptroller of the Currency. 12 U.S.C. §25a(e). Defendants correctly note that "[a] plaintiff asserting an implied right of action under a federal statute bears the relatively heavy burden of demonstrating that Congress affirmatively contemplated private enforcement when it passed the statute." *Casas v. Am. Airlines, Inc.*, 304 F.3d 517, 521-22 (5th Cir. 2002). Further, "[t]he express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others." *Alexander v. Sandoval*, 532 U.S. 275, 293, n.8 (2001). For the above reasons, plaintiffs have no claim under section 25a and therefore the amendment is futile and therefore, denied as to this claim.

**D.  Truth in Lending Act Claim**

Plaintiffs also assert a claim pursuant to the Truth in Lending Act ("TILA"), 15 U.S.C. §1637(b)(2)(B), and Regulation Z, 12 C.F.R. §226.8.

Title 15 U.S.C. §1637(b)(2)(B) provides that a statement is required with each billing cycle and that:

> (b) . . .The creditor of any account under an open end consumer credit plan shall transmit to the obligor, for each billing cycle. . .a statement setting forth each of the following items to the extent applicable:
>
> > (2)  The amount and date of each extension of credit during the period, and a brief identification, on or accompanying the statement of each extension of credit in a from prescribed by the Board sufficient to enable the obligor either to identify the transaction or to relate it to copies of sales vouchers or similar instruments previously furnished . . .

15 U.S.C. §1637(b)(2)(B). Regulation Z, adopted by the Federal Reserve Board states that

> (3) *Copy of credit document not provided–creditor and seller not same or related*

>  *person(s):* When the creditor and seller are not the same or related persons, and an actual copy of the receipt or other credit document is not provided with the periodic statement, the creditor shall disclose the amount and date of the transaction; the seller's name; and the city, and state or foreign country where the transaction took place.

12 C.F.R. §226.8(a)(3). Plaintiffs allege that defendants' credit card statements failed to provide plaintiffs with the name of the seller, the name of the city, and the foreign country where the internet gambling transactions took place. Instead of supplying the identity of the seller, such as the website or casino owner, defendants included the names of e-commerce companies that acted as "financing arms" for the gambling chips plaintiffs purchased. Plaintiffs allege that they are entitled to be informed of the identity of the seller of the goods or services purchased and the state or foreign country where the transaction occurred, i.e. the addresses of the web-casinos.

Defendants counter-argue that the TILA claim is predicated on plaintiffs' continued refusal to acknowledge that this Court and the Fifth Circuit have already recognized that their credit card financed purchases took place before and were separate from their gambling at the internet casinos. Defendants maintain that they fulfilled their obligations under the TILA by including information for the e-commerce sites, the entities from which plaintiffs purchased the credits. Further, defendants argue that the TILA and Regulation Z do not require them to track and disclose how plaintiffs disposed of whatever goods or services they purchased through the use of their credit card.

The Court agrees with Defendants. The amendment adding the TILA claim would be futile because defendants have disclosed the entities that sold the credits to plaintiffs. As previously stated, the Court must apply the "law of the case" through all stages of the same litigation. Because this Court and the Fifth Circuit have held that "the credit cards are used to

purchase credits which the bettor may then use, or not use, as he pleases," such a finding requires the Court to hold that defendants are only responsible for providing the address of the e-commerce sites, not the address of entities with which plaintiffs have subsequently decided to do business. *See In re MasterCard Int'l Inc.,* 132 F.Supp.2d at 474. This conclusion is consistent with this Court's reasoning that defendants' exchange with plaintiffs ended at the time they extended credit to plaintiffs (i.e. before the plaintiffs wagered the credits at the Internet casino websites). *In re MasterCard Int'l Inc.,* 132 F.Supp.2d at 479.

### E.  RICO claim for injunctive relief

The plaintiffs also contend in their First Amendment to Complaint that they are entitled to equitable relief under RICO, 18 U.S.C. §1961 to enjoin defendants, alleged members of the enterprise previously described in the Complaint, from "collecting and/or initiating efforts to collect sports betting debts."

This amendment is also futile as this Court and the Fifth Circuit have expressly found that plaintiffs have failed to plead a RICO enterprise which is a necessary element of any RICO claim. *In re MasterCard Int'l,* 132 F.Supp. 2d at 487. A plaintiff asserting a RICO claim must allege the existence of an enterprise. *Id.* at 483-84. This Court previously held that no enterprise existed because under the test formulated in *Handeen v. Lemaire,* 112 F.3d 1339, 1352 (8th Cir. 1997), the alleged enterprise "has an ascertainable structure distinct from that inherent in a pattern of racketeering" and "the enterprise would still exist were the predicate acts removed from the equation." *In re MasterCard Int'l,* 132 F.Supp. 2d at 485 (citing *Handeen*). In its previous opinion, this Court found that internet gambling would still exist worldwide even if the

alleged violations of the Wire Act, fraud, and other statutes terminated. *Id.* Thus, when weighing the sufficiency of the evidence and viewing plaintiffs' allegations as true, plaintiffs' amendment alleging a sports gambling enterprise is futile because this Court has already found that an enterprise does not exist.

### F.  Declaratory Judgment

Finally, plaintiffs contend that the Court should declare the gambling debts unenforceable under the law of the states in which plaintiffs reside. The Court declines to allow this amendment as well. First, plaintiffs request that the Court find that the "debt incurred while gambling over the Internet constitutes gambling debt unenforceable and uncollectible under state law." This allegation ignores the express language of this Court that the relevant credit card transactions occurred prior to any gambling and thus there is no possibility that plaintiffs can prevail on their claim that the defendants violated state law by "gambling over the Internet." Accordingly,

**IT IS ORDERED** that plaintiffs' Motion for Leave to Amend Complaint, Rec. Doc. 57, is hereby, **DENIED.**

New Orleans, Louisiana, this _____ day of July, 2003.

_____
STANWOOD R. DUVAL, JR.
UNITED STATES DISTRICT COURT JUDGE

11