

FILED
U.S. DISTRICT COURT
EASTERN DIST OF LA

2003 SEP 29 P 4: 50

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW ORLEANS

IN RE: MASTERCARD INTERNATIONAL, INC. INTERNET GAMBLING LITIGATION,

:
:

CIVIL ACTION NO. MDL NOS. 1321 AND 1322

SECTION K (5)

---

MARK D. EISELE, on behalf of himself and all others SIMILARLY situated,

Plaintiffs,

vs.

MASTERCARD INTERNATIONAL, INC. and FIRST UNION NATIONAL BANK

Defendants.

:
:
:
:
:
:
:
:
:
:
:
:
:

JUDGE STANWOOD R. DUVALL, JR.

This document relates to:

Civil Action No. 00-0660 (S.D.N.Y.)
Original docket no. 99-8784 (S.D.N.Y.)

## MOTION OF WACHOVIA BANK, N.A. (F/K/A FIRST UNION NATIONAL BANK) TO DISMISS PLAINTIFF MARK D. EISELE'S COMPLAINT

PLEASE TAKE NOTICE that Defendant Wachovia Bank, N.A. (formerly known as First Union National Bank) moves this Court for an Order dismissing Plaintiff Mark D.

___ Fee _____
___ Process _____
___ Dktd _____
___ CtRmDep. _____
___ Doc. No. 105

Eisele's Complaint in the above referenced matter in its entirety pursuant to Federal Rules of

Civil Procedure 12(b)(1) and 12(b)(6) for the reasons more fully set forth in the Memorandum of

Law and Exhibits submitted herewith.

Respectfully submitted,

R. Patrick Vance (La. Bar No. 13008)
JONES, WALKER, WAECHTER, POITEVENT,
    CARRERE & DENEGRE, L.L.P.
201 St. Charles Avenue, 49th Floor
New Orleans, Louisiana 70170-5100
Telephone (504) 582-8194
Telefax (504) 589-8194


Lawrence E. Miller
Kevin R.J. Schroth
LeBOEUF, LAMB, GREENE & MacRAE, L.L.P.
One Riverfront Plaza
Newark, NJ  07102-5490
Telephone (973) 643-8000
Telefax (973) 643-6111

*Counsel for Defendant Wachovia Bank, N.A.*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Motion of Wachovia

Bank, N.A. (f/k/a First Union National Bank) to Dismiss Plaintiff Mark D. Eisele's Complaint

has been served on the below-named parties via U. S. Mail on this 29th day of September, 2003.

W. Lewis Garrison, Jr.
Garrison, Scott, Gamble & Rosenthal, P.C.
2224 1st Avenue North
Post Office Box 11310
Birmingham, Alabama 35202

Barry G. Reed
Zimmerman Reed L.L.P.
651 Nicollet Mall, Suite 501
Minneapolis, Minnesota 55402

NW 195248.1 38551 00426

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW ORLEANS

| | |
|---|---|
| IN RE: MASTERCARD INTERNATIONAL, : INC. INTERNET GAMBLING LITIGATION, : | CIVIL ACTION NO. MDL NOS. 1321 AND 1322 |
| _____ : | SECTION K (5) |
| MARK D. EISELE, on behalf of himself and all : others SIMILARLY situated, | JUDGE STANWOOD R. DUVALL, JR. |
| Plaintiffs, : | |
| vs. : | |
| MASTERCARD INTERNATIONAL, INC. and : FIRST UNION NATIONAL BANK : | |
| Defendants. : | |
| _____ : | |

This Document Relates To:

Civil Action No. 00-0660 (S.D.N.Y.)
Original docket no. 99-8784 (S.D.N.Y.)

**NOTICE OF HEARING**

PLEASE TAKE NOTICE that Defendant Wachovia Bank, N.A. (formerly known

as First Union National Bank) will bring for hearing the attached Motion to Dismiss Plaintiff

Mark D. Eisele's Complaint before this Court at the United States District Court, 500 Camp

Street, Room C352, New Orleans, Louisiana, on the 3rd day of December, 2003, at 10:00 a.m.,

or as soon thereafter as can be heard.

Respectfully submitted,

R. Patrick Vance (La. Bar No. 13008)
JONES, WALKER, WAECHTER, POITEVENT,
    CARRERE & DENEGRE, L.L.P.
201 St. Charles Avenue, 49th Floor
New Orleans, Louisiana 70170-5100
Telephone (504) 582-8194
Telefax (504) 589-8194


Lawrence E. Miller
Kevin R.J. Schroth
LeBOEUF, LAMB, GREENE & MacRAE, L.L.P.
One Riverfront Plaza
Newark, NJ  07102-5490
Telephone (973) 643-8000
Telefax (973) 643-6111

*Counsel for Defendant Wachovia Bank, N.A.*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Notice of Hearing has

been served on the below-named parties via U. S. Mail on this 29th day of September, 2003.


W. Lewis Garrison, Jr.
Garrison, Scott, Gamble & Rosenthal, P.C.
2224 1st Avenue North
Post Office Box 11310
Birmingham, Alabama 35202

Barry G. Reed
Zimmerman Reed L.L.P.
651 Nicollet Mall, Suite 501
Minneapolis, Minnesota 55402

NW 195246 1 38551 00426

-3-

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF NEW ORLEANS

|  |  |
|---|---|
| IN RE: MASTERCARD INTERNATIONAL, : INC. INTERNET GAMBLING LITIGATION, : | CIVIL ACTION NO. MDL NOS. 1321 AND 1322 |
| : | SECTION K |
| MARK D. EISELE, on behalf of himself and all : others SIMILARLY situated, | JUDGE STANWOOD R. DUVALL, JR. |
| : | |
| Plaintiffs, : | |
| : | |
| vs. : | |
| : | |
| MASTERCARD INTERNATIONAL, INC. and : FIRST UNION NATIONAL BANK | |
| : | |
| Defendants. : | |

This Document Relates To:

Civil Action No. 00-0660 (S.D.N.Y.)
Original Docket No. 99-8784 (S.D.N.Y.)

---

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT WACHOVIA BANK, N.A.'S MOTION TO DISMISS PLAINTIFF MARK D. EISELE'S COMPLAINT

---

On the brief:
    Lawrence E. Miller
    Kevin R.J. Schroth
    Laura A. Dwyer

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...................................................................................................1

PROCEDURAL HISTORY.........................................................................................................2

FACTUAL BACKGROUND.......................................................................................................3

ARGUMENT................................................................................................................................4

    I.      EISELE'S COMPLAINT FAILS TO ALLEGE A BASIS FOR
          JURISDICTION ................................................................................................4

         A.     This Court and the Fifth Circuit have Dismissed Eisele's Bases for
               Federal Question Jurisdiction ...................................................................5

         B.     The Declaratory Judgment Act Does Not Provide an Independent
               Basis for Jurisdiction................................................................................5

         C.     The Eisele Complaint Does Not Allege Diversity Jurisdiction ..................6

         D.     This Court Should Exercise Supplemental Jurisdiction and Decide
               the Case on its Merits................................................................................6

    II.     IF THIS COURT EXERCISES SUPPLEMENTAL JURISDICTION,
          EISELE'S REMAINING CAUSES OF ACTION SHOULD BE
          DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH
          RELIEF CAN BE GRANTED .........................................................................9

         A.     Eisele's Declaratory Judgment Claims Have Already Been
               Rejected By The Court................................................................................9

         B.     The Court's Rationale for Rejecting the Declaratory Judgment
               Count in Plaintiffs' Proposed Amended Complaint Should Apply
               to Eisele's Virtually Identical Declaratory Judgment Counts ...................10

    III.    WHEN FEDERAL COURT LACKS JURISDICTION OVER AN MDL
          CASE AND DECLINES TO EXERCISE SUPPLEMENTAL
          JURISDICTION, DISMISSAL IS APPROPRIATE............................................11

CONCLUSION ..........................................................................................................................12

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Baker v. Farmers Electric Cooperative Inc.*, 34 F.3d 274 (5th Cir. 1994)..........................7

*Commercial Metas Co. v. Balfour Guthrie, and Co.*,
577 F.2d 264 (5th Cir. 1978) ..................................................................................5

*Guzzino v. Felterman*, 191 F.3d 588 (5th Cir. 1999)............................................................7

*Hudak v. Economic Research Analysts, Inc.*, 499 F.2d 996 (5th Cir. 1974)
    *questioned on other grounds by McNeal v. Paine Webber, Jackson & Curtis,
    Inc.*, 598 F.2d 888 (5th Cir. 1979) ..................................................................8

*Korzen v. Local Union 705*, 75 F.3d 285 (7th Cir. 1996) .....................................................7

*In re Mastercard*, 132 F. Supp. 2d 468 (E.D. La. 2001).........................................2, 3, 7, 10

*In re Mastercard*, 2003 U.S. Dist. LEXIS 13534 (E.D. La. 2003)...........................3, 5, 7, 8

*In re Mastercard Litigation*, 313 F.3d 257 (5th Cir. 2002) ..........................................1, 2, 7

*Morris v. Dillard Department Stores, Inc.*, 277 F.3d 743 (5th Cir. 2001)...........................8

*Newport Ltd. v. Sears, Roebuck & Co.*, 941 F.2d 302 (5th Cir. 1991) .......................6, 7, 8

*Niagara Mohawk Power Corp. v. Tonawanda Band of Seneca Indians*,
94 F.3d 747 (2d Cir. 1996)........................................................................................5

*Panalpina Welttransport GMBH v. Geosource, Inc.*, 764 F.2d 352 (5th Cir.
    1985), *vacated in part and remanded on other grounds sub nom. Kuehne &
    Nagel v. Geosource, Inc.*, 874 F.2d 283 (5th Cir. 1989)...........................................6

*Parker & Parsley Petroleum Co. v. Dresser Industries*,
    972 F.2d 580 (5th Cir. 1992) ...............................................................................7, 8

*St. Paul Mercury Insurance Co. v. Williamson*, 332 F.2d 304 (5th Cir. 2003) .................10

*Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806) ........................................................6

*TTEA v. Ysleta Del Sur Pueblo*, 181 F.3d 676 (5th Cir. 1999)............................................5

## FEDERAL STATUTES

18 U.S.C. § 1961 *et seq.*........................................................................................................1

28 U.S.C. §1331.....................................................................................................................4

28 U.S.C. §1332 .................................................................................................................4, 6

28 U.S.C. § 1367..............................................................................................................4, 6

28 U.S.C. § 1407 ...................................................................................................................12

28 U.S.C. § 2201.............................................................................................................3, 5, 11

## STATE STATUTES

N.C. Gen. Stat. § 14-292...................................................................................................11

N.C. Gen. Stat. § 16-1.......................................................................................................11

N.Y. Gen. Oblig. Law § 5-411...........................................................................................11

N.Y. Gen. Oblig. Law § 5-413...........................................................................................11

N.Y. Penal Law § 225.05...................................................................................................11

N.Y. Penal Law § 225.10...................................................................................................11

## MISCELLANEOUS

16 *Moore's Federal Practice* § 108.04[2] (Matthew Bender 3d ed. 2003) .........................4

## PRELIMINARY STATEMENT

Defendant Wachovia Bank, N.A. ("Wachovia") (formerly known as First Union

National Bank, "First Union") respectfully moves to dismiss the remaining claims in Plaintiff

Mark D. Eisele's complaint, which is one of several cases pending before this Court in a

Multidistrict Litigation proceeding (the "MDL") involving virtually identical Internet gambling

cases.

Plaintiff Eisele used a MasterCard credit card issued by First Union to purchase

Internet gambling "chips" and then voluntarily used those "chips" to place wagers with Internet

casinos. When he did not win, he commenced actions against certain banks and other financial

institutions that issue or issued Mastercard and Visa credit cards, including First Union, alleging

a conspiracy and violations of federal and state laws. The Court decided to entertain motions to

dismiss on two "test cases" representative of all cases comprising the MDL, including Eisele's

case. Through the test cases, Eisele (and the other plaintiffs in the MDL) have suffered a series

of losses before this Court and the United States Court of Appeals for the Fifth Circuit. As the

Fifth Circuit explained, Eisele and his fellow plaintiffs engaged in this conduct voluntarily and

"got exactly what they bargained for -- gambling 'chips' with which they could place wagers." *In

re Mastercard Litigation*, 313 F.3d 257, 264 (5th Cir. 2002).

The central allegations in all of the plaintiffs' complaints, including Eisele's, were

based on alleged violations of the Racketeer Influenced and Corrupt Organizations Act

("RICO"), 18 U.S.C. § 1961 *et seq.* However, in a major defeat for plaintiffs' cases, this Court

dismissed the RICO claims. The Fifth Circuit affirmed this decision. Plaintiffs' attempt to

salvage their litigation by amending the complaints was denied. As a result, Eisele's complaint

does not allege a viable basis for subject matter jurisdiction.

Remnants of Eisele's complaint, specifically declaratory judgment claims, are still pending and are the subject of this motion to dismiss. The Court has already assessed the merits of the remaining claims stating, "there is no possibility that plaintiffs can prevail on their claim that the defendants violated state law by 'gambling over the Internet.'" Because Eisele alleged a basis for subject matter jurisdiction that has been dismissed, the Court has the discretion to exercise supplemental jurisdiction over Eisele's remaining state claims. For the reasons set forth below and as a matter of judicial economy, convenience and fairness to the litigants, the Court should exercise supplemental jurisdiction over Eisele's remaining claims and dismiss them on the merits.[1] Alternatively, Eisele's remaining claims should be dismissed for lack of subject matter jurisdiction.

## PROCEDURAL HISTORY

The procedural history reflects a series of adverse decisions in both this Court and in the Fifth Circuit. On August 10, 1999, Eisele commenced this action against First Union in the Southern District of New York alleging RICO and other claims.[2] On March 1, 2000, this action, along with 33 "virtually identical" cases, was transferred to this Court as part of the MDL. *In re Mastercard*, 313 F.3d 257, 260 (5th Cir. 2002) ("*In re Mastercard II*").

Plaintiffs then selected two "test cases" from the MDL, and the Court entertained motions to dismiss concerning plaintiffs' RICO claims. On February 23, 2001, the Court dismissed plaintiffs' RICO claims, and on November 20, 2002 the Fifth Circuit affirmed. *In re Mastercard*, 132 F.Supp. 2d 468 (E.D. La 2001) (*"In re Mastercard I"*); *In re Mastercard II*, 313 F.3d at 257.

---

[1]    To avoid unnecessary repetition, Wachovia adopts and joins in the legal arguments, to the extent they apply to this motion, made by other defendant banks in the MDL.

[2]    Eisele's case was originally captioned, *Eisele v. Mastercard International, Inc., et al.*, 99-CV-8784 (HV). Eisele filed an amended complaint on September 8, 1999 (the "Eisele Complaint").

As those decisions stripped plaintiffs' test cases of any basis for federal question jurisdiction, plaintiffs moved to amend their complaints by alleging additional federal causes of action and by amending their declaratory judgment claims. On July 30, 2003, Your Honor denied plaintiffs' motion. *In re Mastercard*, 2003 U.S. Dist. LEXIS 13534 (E.D. La. July 30, 2003) *("In re Mastercard III")*. Your Honor's Order filed on September 4, 2003 applied *In re Mastercard I* (dismissing RICO claims) and *In re Mastercard III* (denying plaintiffs' motion to amend) to Eisele's case. On August 29, 2003, Your Honor invited motions to dismiss or for summary judgment addressing jurisdiction and the merits of each plaintiffs' remaining claims.

The two remaining claims in Eisele's Complaint seek a declaratory judgment under federal and state law. Eisele's Count I attempts to invoke federal law by referencing the Declaratory Judgment Act, 28 U.S.C. § 2201. It seeks a declaratory judgment that defendants have sought to collect unenforceable, illegal gambling debts from Eisele. Eisele Complaint ¶ 56-57. Eisele also seeks a judgment declaring that certain contracts are void and/or voidable, that they should be cancelled, and that Eisele should be reimbursed all payments made upon such gambling debts. *Id.* ¶ 59. Count II seeks the same basic relief under New York law and under "the statutory and common law of the other states in which class members reside...." *Id.* ¶¶ 62, 65.[3]

### FACTUAL BACKGROUND

Eisele alleges that in May of 1998 he placed wagers via telephone with the "Oasis Casino." Eisele Complaint ¶ 23. In August of 1998, Eisele placed wagers via the Internet with the same casino. *Id.* Eisele alleges that his wagers totaled $4,992. He does not allege that he lost any or all of his wagers. *Id.*

---

[3]    Count III, which alleges violations of RICO, was dismissed. *In re Mastercard I*, 132 F.Supp 2d at 473, 497.

Eisele is a resident of North Carolina. Eisele Complaint ¶ 5. He filed this action against First Union. Thereafter, First Union merged with Wachovia, with First Union being the surviving entity. The merged First Union then changed its name to Wachovia. At the time the Eisele Complaint was filed and afterwards, First Union was a national banking corporation, duly organized and existing under and by virtue of the laws of the United States, with its principal place of business in Charlotte, North Carolina.

## ARGUMENT

### I.    EISELE'S COMPLAINT FAILS TO ALLEGE A BASIS FOR JURISDICTION

Since the outset of this litigation, Eisele and the other plaintiffs in the MDL have been actively searching for a jurisdictional foothold in federal court. Subject matter jurisdiction in federal court may be based on federal question jurisdiction, 28 U.S.C. §1331, or diversity jurisdiction, 28 U.S.C. §1332. 16 *Moore's Federal Practice* § 108.04[2] (Mathew Bender 3d ed. 2003).

In *In re Mastercard I* and *III*, this Court rejected each of plaintiffs' alleged bases for federal question jurisdiction by dismissing plaintiffs' RICO claims and denying plaintiffs' motion to amend. Eisele does not allege diversity jurisdiction. Consequently, this Court would only have jurisdiction if it opts to exercise supplemental jurisdiction over his remaining claims.

Where a district court has original jurisdiction over a cause of action, as discussed below, the district court has discretion to exercise supplemental jurisdiction over all other claims so related to the action that they form the same case or controversy. 28 U.S.C. § 1367(a). *See infra.*

**A.    This Court and the Fifth Circuit have Dismissed Eisele's Bases for Federal Question Jurisdiction**

The Eisele Complaint alleges that this Court has federal question jurisdiction under RICO.  Recognizing that without a RICO claim plaintiffs did not have a basis for federal question jurisdiction, plaintiffs moved to amend the complaint by alleging several novel federal causes of action, along with a restated RICO count seeking injunctive relief.[4]  The Court's well-reasoned decision of July 30, 2003 rejected plaintiffs' proposed amended complaint as futile.  *In re Mastercard III,* 2003 U.S. Dist. LEXIS 13534, at *18.

As noted above, the Court's September 4, 2003 Order applied its decisions dismissing the RICO claims and denying the motion to amend to Eisele's case.  Thus, the Court "determined that the RICO claims in all pending cases in the [MDL] proceeding shall be dismissed as the Court has determined that the RICO issue has been fully adjudicated." Therefore, Eisele does not have a basis for federal question jurisdiction.

**B.    The Declaratory Judgment Act Does Not Provide an Independent Basis for Jurisdiction**

Eisele may argue that the Declaratory Judgment Act, 28 U.S.C. § 2201, provides a basis for original jurisdiction in federal court.  Eisele Complaint ¶ 9.  However, it is well settled that "the declaratory judgment statute offers no independent ground for jurisdiction.  Rather, it permits the award of declaratory relief only when other bases for jurisdiction are present." *TTEA v. Ysleta Del Sur Pueblo*, 181 F.3d 676, 681 (5th Cir. 1999); *Commercial Metas Co. v. Balfour Guthrie, and Co.*, 577 F.2d 264, 269 (5th Cir. 1978) ("The Declaratory Judgment Act, furthermore, was not intended to be used as a contrivance to create jurisdiction which does not otherwise exist."); *Niagara Mohawk Power Corp. v. Tonawanda Band of Seneca Indians*, 94

---

[4]    Plaintiffs proposed amended complaint alleged violations of the National Bank Act, 12 U.S.C. §§ 85, 86, and 25a, the Truth in Lending Act, 15 U.S.C. § 1637, and RICO, 18 U.S.C. § 1961.

F.3d 747, 752 (2d Cir. 1996).  Therefore, if it declines to exercise supplemental jurisdiction (*see*

*infra* section I. D) the Court must dismiss the declaratory judgment claims for lack of

jurisdiction.

If the Court exercises supplemental jurisdiction over Eisele's remaining claims,

the Court should dismiss the declaratory judgment claims on the merits for the reasons discussed

below.  *See* Section II.

> **C.**     **The Eisele Complaint Does Not Allege Diversity Jurisdiction**

Eisele cannot satisfy the requirements for diversity jurisdiction.  For this Court to

have diversity jurisdiction under 28 U.S.C. § 1332, the matter in controversy must be between

"citizens of different States" and "exceed the sum or value of $75,000, exclusive of interest and

costs."  28 U.S.C. § 1332(a)(1).  It is well settled that "diversity of citizenship between plaintiffs

and defendants must be complete to confer jurisdiction."  *Panalpina Welttransport GMBH v.*

*Geosource, Inc.*, 764 F.2d 352 (5th Cir. 1985) (citing *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch)

267 (1806)), *vacated in part and remanded on other grounds sub nom. Kuehne & Nagel v.*

*Geosource, Inc.*, 874 F.2d 283 (5th Cir. 1989).  At the time the complaint was filed, Eisele was a

citizen of North Carolina, and First Union was a national banking corporation with its principal

place of business located in North Carolina.  Because both Eisele and First Union are citizens of

North Carolina, diversity jurisdiction does not exist.  Similarly, Eisele's claim is for $4,992, far

below the required amount of $75,000.  28 U.S.C. § 1332(a).

> **D.**     **This Court Should Exercise Supplemental Jurisdiction and Decide the**
> **Case on its Merits**

There is no diversity jurisdiction and, with the dismissal of Eisele's RICO claim,

no federal question jurisdiction; however, this Court must still decide whether to exercise

supplemental jurisdiction over the state-law claims, pursuant to 28 U.S.C. § 1367.  *Newport Ltd.*

*v. Sears, Roebuck & Co.*, 941 F.2d 302, 307 (5th Cir. 1991). Supplemental jurisdiction may continue "even after the federal claims upon which jurisdiction is based have been dismissed or rendered moot." *Baker v. Farmers Electric Cooperative Inc.*, 34 F.3d 274, 283 (5th Cir. 1994).

A district court has broad discretion in deciding whether to retain jurisdiction. *Newport Ltd.*, 941 F.2d at 307. A court must conduct a fact-specific inquiry that considers the totality of the circumstances of each case, *Guzzino v. Felterman*, 191 F.3d 588, 594-95 (5th Cir. 1999), including judicial economy, convenience and fairness to the litigants, and comity. *Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 586 (5th Cir. 1992); *Newport Ltd.*, 941 F.2d at 307.

Where a plaintiff's state law claims are without merit, a district court may retain jurisdiction to dismiss those claims on the merits. *Korzen v. Local Union 705*, 75 F.3d 285 (7th Cir. 1996). Indeed, far from intruding into an area of state law, it is better for the district court to retain jurisdiction to decide the case on its merits as a matter of judicial economy. *Id.* at 289.

This Court has already determined that the transactions at issue are two separate events that do not implicate gambling statutes: Eisele's first transaction with the credit card company ended upon receipt of the credit; his second transaction was the gambling itself. *In re Mastercard I*, 132 F. Supp. 2d at 479, *aff'd*, *In re Mastercard II*, 313 F.3d at 262; *In re Mastercard III*, 2003 U.S. Dist. LEXIS 13534 at *18. Indeed, this Court stated, in dismissing plaintiffs' RICO claims, "It is a temporal impossibility for the defendants to have completed their transaction with the plaintiff before he gambled and to then be prosecuted for collecting the proceeds of a gambling device, which can only take place after some form of gambling is completed." *In re Mastercard I*, 132 F. Supp. at 479, *aff'd*, *In re Mastercard II*, 313 F.3d at 262. In denying plaintiffs' motion to amend their complaints, this Court repeated that "the relevant

credit card transactions occurred prior to any gambling and thus there is no possibility that plaintiffs can prevail on their claim that the defendants violated state law by gambling over the Internet." *In re Mastercard III*, 2003 U.S. Dist. LEXIS 13534, at *18. Since it is a "temporal impossibility" for First Union to be implicated in a violation of a gambling statute, Eisele's state law claims are plainly without merit.

Moreover, because the relevant transactions occurred before any gambling took place, no novel issues of state law are implicated. *Morris v. Dillard Dep't Stores, Inc.*, 277 F.3d 743 (5th Cir. 2001). First Union was simply not involved in the gambling aspects of Eisele's transactions. Thus, this case does not involve novel issues regarding state gambling statutes, jurisdiction over cyberspace, or internet gambling. Similarly, comity is not a concern since First Union's actions do not fall within the states' gambling statutes. *Parker & Parsley Petroleum Co.*, 972 F.2d at 586; *Newport Ltd.*, 941 F.2d at 307.

Judicial economy would best be served if the District Court retains jurisdiction. *Newport Ltd.*, 941 F.2d at 307; *Hudak v. Economic Research Analysts, Inc.*, 499 F.2d 996 (5th Cir. 1974) *questioned on other grounds by McNeal v. Paine Webber, Jackson & Curtis, Inc.*, 598 F.2d 888 (5th Cir. 1979). Eisele's and plaintiffs' cases have been in the Fifth Circuit for approximately three and a half years (since March 2000), a significant period of time. The Court has invested a considerable amount of time and resources by drafting two extensive written opinions and holding various court conferences. Also, the Court has substantial knowledge of the facts and legal claims of all of the plaintiffs. Similar to the plaintiffs in the test cases, Eisele used a credit card to purchase credits and then acquired "chips" to place wagers with internet casinos. Now Eisele, in an attempt to recoup his supposed losses, is crying foul.

8

Finally, retaining jurisdiction is fair to the litigants as the case has been in this District for several years. If this case were dismissed, state courts may issue inconsistent rulings that are based on substantially similar law and the same set of facts. Retention would avoid that possibility.

For the foregoing reasons, First Union respectfully requests that this Court retain jurisdiction and dismiss Eisele's claims on the merits.

## II.    IF THIS COURT EXERCISES SUPPLEMENTAL JURISDICTION, EISELE'S REMAINING CAUSES OF ACTION SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

### A.    Eisele's Declaratory Judgment Claims Have Already Been Rejected By The Court

Counts I and II of the Eisele Complaint seek a declaratory judgment that any debt Eisele owes the defendants is "void and/or voidable" and the cancellation of such debts, and return of monies paid by him. These counts are practically identical to the declaratory judgment count in plaintiffs' proposed amended complaint, which was rejected by this Court on July 30, 2003 (the "Rejected Complaint"). *See* Exhibit A.

Plaintiffs' proposed amendment to the declaratory judgment claims requested that the Court find the debt plaintiffs "incurred while gambling over the Internet constitutes gambling debt unenforceable and uncollectible under state law." Rejected Complaint ¶ 30(a); *In re Mastercard III*, 2003 U.S. Dist. LEXIS 13534, at *18. In denying plaintiffs' motion to amend, the Court stated **"[t]his allegation ignores the express language of this Court that the relevant credit card transactions occurred prior to any gambling and thus there is no possibility that plaintiffs can prevail on their claim that the defendants violated state law by gambling over the Internet."** *In re Mastercard III*, 2003 U.S. Dist. LEXIS 13534, *18

9

(emphasis added). In the face of such unequivocal language, Eisele cannot credibly maintain that Counts I and II are still viable.

### B. The Court's Rationale for Rejecting the Declaratory Judgment Count in Plaintiffs' Proposed Amended Complaint Should Apply to Eisele's Virtually Identical Declaratory Judgment Counts

A close comparison between the Eisele Complaint and the Rejected Complaint reveals that Eisele seeks the same basic relief that the Court rejected when it denied plaintiffs' motion to amend.

The Rejected Complaint alleges that gambling "debt is unenforceable under the law of the state of Plaintiffs' residence, as well as the law where Defendant is located." Rejected Complaint ¶ 27. Similarly, the Eisele Complaint alleges that all gaming contracts are void and unenforceable under New York state law and under the law of "other states in which class members reside...." Eisele Complaint ¶¶ 62, 63. In each instance, the complaints assume the existence of gambling contracts or gambling debt. However, that assumption is misplaced. The law of the case -- as decided by this Court and the 5th Circuit -- is that the transactions in question involved the purchase of "chips;" those transactions necessarily took place before Eisele chose to gamble. *In re Mastercard I*, 132 F. Supp. 2d at 479 ("It is a temporal impossibility for the defendants to have completed their transaction with the plaintiff before he gambled....").[5] Because Eisele's argument is based on a false premise, it is untenable no matter what state law applies.

---

[5]      "Under the law of the case doctrine, an issue of fact or law decided on appeal may not be reexamined either by the district court on remand or by the appellate court on a subsequent appeal." *St. Paul Mercury Ins. Co. v. Williamson*, 332 F.2d 304, 309 (5th Cir. 2003).

At different stages in this litigation, plaintiffs have argued that various state laws are implicated. Focusing on Eisele's Complaint, either New York law or North Carolina law could apply (because Eisele alleged that he resides in North Carolina).

The Eisele Complaint alleges that defendants violated the following New York statutes: N.Y. Gen. Oblig. Law §§ 5-411, 5-413 (2003) and N.Y. Penal Law §§ 225.05, 225.10 (2003),[6] as well as N.C. Gen. Stat. § 16-1 and N.C. Gen. Stat. § 14-292.[7] However, regardless of the state law that applies, Eisele's declaratory judgment must fail because his case does not involve gaming contracts or the collection of gambling debt.

Furthermore, in both complaints, plaintiffs allege that an actual controversy exists between the parties under 28 U.S.C. § 2201 because the defendants sought to collect or collected an unenforceable gambling debt. This allegation fails for the reasons explained above and in light of the law of the case. Finally, the Rejected Complaint incorporates the Eisele Complaint by reference, which reinforces the similarity between them, and further warrants that they should suffer the same fate of dismissal. Rejected Complaint ¶ 26.

Notwithstanding the foregoing, in the absence of a viable RICO claim, this Court lacks subject matter jurisdiction over Eisele's Counts I and II. Therefore, the Court has the option of dismissing them for lack of jurisdiction or to dismiss on the merits if the Court exercises supplemental jurisdiction.

## III.    WHEN FEDERAL COURT LACKS JURISDICTION OVER AN MDL CASE AND DECLINES TO EXERCISE SUPPLEMENTAL JURISDICTION, DISMISSAL IS APPROPRIATE

Dismissal is appropriate relief for this Court under these circumstances. The Rules of Procedure governing the Judicial Panel on Multidistrict Litigation provide that when the

---

[6]    The referenced New York statutes are attached as Exhibit B.
[7]    The referenced North Carolina statutes are attached as Exhibit C.

transferee district court terminates a case, the terminated action is not remanded back to the transferor district court. Rather the transferee court shall dismiss the action. *See* Rule 7.6 of the General Rules/Rules For Multidistrict Litigation under 28 U.S.C. 1407.

Therefore, Eisele's case should not be transferred back to the Southern District of New York. It should be dismissed in this District on the merits.

## CONCLUSION

For the foregoing reasons, the remaining claims in the Eisele Complaint against Wachovia should be dismissed on the merits if they are not dismissed for lack of jurisdiction.

Respectfully submitted,

By: _____

R/ Patrick Vance (LA Bar No. 13008)
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, L.L.P.
201 St. Charles Avenue, 49th Floor
New Orleans, Louisiana 70170-5100
Telephone (504) 582-8194
Facsimile (504) 589-8194


Lawrence E. Miller
Kevin R.J. Schroth
LeBoeuf, Lamb, Greene & MacRae, L.L.P.
One Riverfront Plaza
Newark, NJ 07102-5490
Telephone (973) 643-8000
Facsimile (973) 643-6111

*Counsel for Defendant Wachovia Bank, N.A.*

Dated:  New Orleans, Louisiana
        September 29, 2003

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Memorandum of Law has

been served on the below-named parties through U. S. Mail on this 29th day of September, 2003.

W. Lewis Garrison, Jr.
Garrison, Scott, Gamble & Rosenthal, P.C.
2224 1st Avenue North
Post Office Box 11310
Birmingham, Alabama 35202

Barry G. Reed
Zimmerman Reed L.L.P.
651 Nicollet Mall, Suite 501
Minneapolis, Minnesota 55402

NW 195192.4 38551 00426

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:                                                    CIVIL ACTION
                                              MDL NOS. 1321 AND 1322

MASTERCARD
INTERNATIONAL, INC.                                    SECTION (K)
INTERNET GAMBLING
LITIGATION

THIS DOCUMENT RELATES TO:                            JUDGE DUVAL
ALL CASES                                       MG. JUDGE CHASEZ

## PLAINTIFF'S FIRST AMENDMENT TO COMPLAINT

### Violations of 12 U.S.C. §§85 and 86, The National Bank Act

Plaintiff expressly adopts and incorporates all factual allegations and state and common law causes of action included in the original Complaint, and further avers as follows:

1.      12 U.S.C. §85 establishes a ceiling on the rate of interest a national bank may charge, which is based on the usury law in the state where such bank is located.

2.      12 U.S.C. §86 provides a remedy for those who have paid interest in excess of that allowed under §85 to bring an action to recover from the bank twice the amount of interest paid:

> The taking, receiving, reserving, or charging a rate of interest greater than is allowed by §85 of this Title, when knowingly done, shall be deemed a forfeiture of the entire interest which the note, bill, or other evidence of debt carries with it. . .[the debtor] may recover back, in an action in the nature of an action of debt, twice the amount of the interest thus paid from the association taking or receiving the same. . .

12 U.S.C. §86.



3.     Plaintiff has incurred debt as a consequence of gambling on various web sites over the Internet. Such gambling debt is unenforceable and uncollectible in the state where Plaintiff resides, and in the state where Defendant is located.

4.     Defendant has created monthly billing statements in which it seeks to collect such gambling debt from Plaintiff. Defendant charges interest on the gambling debt it seeks to collect, and has collected this interest, in such forms as numeric periodic rates, late fees, overlimit fees, annual fees, cash advance fees, and membership fees, all of which constitute interest under Office of the Comptroller of Currency Regulation 7.4001.

5.     In the state where Defendant is located, gambling debts are unenforceable and uncollectible. Defendant charges, and collects, interest on illegal gambling debt.

6.     The charge of a rate of interest on a debt which is illegal, unenforceable, and uncollectible is usurious, and constitutes a violation of 12 U.S.C. §85. Defendant has knowledge that the collection of interest on an illegal and unenforceable debt violates §85, which gives rise to the remedies included in §86.

7.     Further, Plaintiff, as well as the class described in the Complaint, is entitled to recover from Defendant "twice the amount of interest paid" during the class period described herein, up to the present date, which includes all numeric interest, late fees, overlimit fees, annual fees, cash advance fees, and other fees connected with the extension of credit to Plaintiff and those similarly situated.

8.     Plaintiff prays for the following relief:

S:\I1\Internet Gambling\Pleadings\First Amendment to Complaint.wpd

2

      a.     twice the amount of interest paid to Defendant by Plaintiff and the class, derived from gambling debt incurred over the Internet;

      b.     any additional relief, including equitable relief, to which the Plaintiff may be entitled in the premises;

      c.     attorney's fees and court costs.

### Violations of 12 U.S.C. §25a, The National Bank Act

Plaintiff expressly adopts and incorporates all factual allegations and state and common law causes of action included in the original Complaint, and further avers as follows:

9.     Defendant's actions violate 12 U.S.C. §25a which prohibits participation by national banks in lotteries and related activities.

10.     12 U.S.C. §25a provides in relevant part that:

A national bank may not—

(1) deal in lottery tickets;

(2) deal in bets used as a means or substitute for participation in a lottery.

11.     By collecting gambling debt incurred over the Internet, Defendant is "dealing in bets" in contravention of 12 U.S.C. §25a.

12.     The disregard of a command by a statute is a wrongful act and a tort. Defendant's participation and *de facto* partnership with Internet casinos disregards the command of §25a, violates public policy, and constitutes a prohibited activity. Defendants

S.\I1\Internet Gambling\Pleadings\First Amendment to Complaint.wpd

3

have breached the duties owed to Plaintiffs, as members of the public, to refrain from

dealing in bets, which cause Plaintiffs' injuries and damages.

13.    The Restatement of the Law Second: Torts §286, provides:

> The court may adopt as the standard of conduct of a reasonable man
> the requirements of a legislative enactment or an administrative regulation
> whose purpose is found to be exclusively or in part

> a.    To protect a class of persons which includes the one whose
> interest is invaded, and

> b.    To protect the particular interest which is invaded, and

> c.    To protect that interest against the kind of harm which has
> resulted, and

> d.    To protect that interest against the particular hazard from
> which the harm results.

14.    12 U.S.C. §25a creates a standard of conduct as its purpose is to prevent

Defendants from dealing in lotteries and bets as evidenced by their participation in Internet

gambling, and the collection of Internet gambling debts. Plaintiffs have sustained injuries

and damages as a direct and proximate cause of Defendants' participation in these

prohibited activities.

15.    Plaintiff prays for the following relief:

a.    a refund of the entirety of the gambling debt collected by Defendant

from Plaintiff and the class;

b.    any additional relief, including equitable relief, to which the Plaintiff

may be entitled in the premises;

c.    attorney's fees and court costs.

S:\I1\Internet Gambling\Pleadings\First Amendment to Complaint wpd

4

## Violations of 15 U.S.C. §1601, *et seq.*

Plaintiff expressly adopts and incorporates all factual allegations and state and common law causes of action included in the original Complaint, and further avers as follows:

16.    Defendant's actions in the course and conduct of their business in the billing of credit card charges for gambling debt incurred over the Internet violate the Truth in Lending Act, 15 U.S.C. §1637(b)(2)(B), as interpreted in Regulation Z, 12 C.F.R. §226.8. TILA was intended to protect consumers against inaccurate and unfair billing and credit card practices and creates specific duties for creditors, such as Defendant, and specific rights to information for debtors such as the Plaintiff.

17.    Duties owed by creditors under open end consumer credit plans to the obligors of those plans are described in §1637(b)(2)(B):

(b) Statement required with each billing cycle:

The creditor of any account under an open end consumer credit plan shall transmit to the obligor, for each billing cycle at the end of which there is an outstanding balance in that account or with respect to which a finance charge is imposed, a statement setting forth each of the following items to the extent applicable: . . .

(2)    The amount and date of each extension of credit during the period, and a brief identification, on or accompanying the statement of each extension of credit in a form prescribed by the Board sufficient to enable the obligor either to identify the transaction or to relate it to copies of sales vouchers or similar instruments previously furnished. . .

18.    The regulations adopted by the Federal Reserve Board, Regulation Z, specify the manner in which credit transactions should be identified. 12 C.F.R §226.8 - Identification of Transactions, provides thusly:

> . . .(3) copy of credit document not provided - creditor and seller not same or related person(s). *When the creditor and seller are not the same or related persons, and an actual copy of the receipt or other credit document is not provided with the periodic statement, the creditor shall disclose the amount and date of the transaction; the seller's name; and the city, and state or foreign country where the transaction took place.* (Emphasis added.)

19.    Defendants have violated the specific statutory duties owed to Plaintiffs under 15 U.S.C. §1637 and 12 C.F.R. §226.8.

20.    Defendants' credit card statements fail to provide Plaintiffs with the name of the seller, the name of the city, and the foreign country where the Internet gambling transaction took place. Instead of providing the identity of the seller, which would be the web site or casino owner, Defendant instead includes the name of an e-commerce company which essentially acts as the financing arm for the gambling chips purchased by the Plaintiff. The foreign country where the seller resides is not disclosed.

21.    Plaintiff is entitled under TILA to be informed of the identity of the seller of the goods or services purchased, and the state or foreign country where the transaction occurred. By failing to provide this information, Defendant has violated TILA.

22.    As a consequence of Defendant's multiple breaches of its specific statutory duties, Plaintiffs are entitled to all damages, actual and statutory, allowed under TILA for each violation, plus costs and attorney's fees.

S \l1\Internet Gambling\Pleadings\First Amendment to Complaint wpd

6

## Injunctive Relief under RICO, 18 U.S.C. §1961, *et seq.*

Plaintiff expressly adopts and incorporates all factual allegations and causes of action included in the original Complaint, and further avers as follows:

23.    Plaintiffs seek injunctive and equitable relief under RICO, 18 U.S.C. §1961, *et seq.*, to prevent and enjoin Defendant, a member of the enterprise previously described in the Complaint, from collecting and/or initiating efforts to collect, sports betting debt incurred as a consequence of gambling over the Internet.

24.    The Fifth Circuit has expressly declined to determine whether injunctive relief is available under RICO. *See Price v. Pinnacle Brands, Inc.*, 138 F.3rd 602 (5th Cir. 1998).

25.    This Court should enjoin Defendants from collecting sports betting gambling debt, which is clearly a violation of the Wire Act, 18 U.S.C. §1084(a).

## Declaratory Judgment - Internet Gambling Debt Unenforceable and Uncollectible Under State Law

Plaintiff expressly adopts and incorporates all factual allegations and state and common law causes of action included in the original Complaint, and further avers as follows:

26.    As an amendment to the declaratory judgment claims previously described in the Complaint, Plaintiff makes the following averments.

27.    Gambling debt is unenforceable under the law of the state of Plaintiffs' residence, as well as the law of the state where Defendant is located.

S:\I1\Internet Gambling\Pleadings\First Amendment to Complaint wpd

28.    Plaintiff asserts this claim on behalf of a class as described in the Complaint of each person who has incurred Internet gambling debt which was collected, or attempted to be collected, by Defendant.

29.    A justiciable controversy exists between the parties as to whether: (1) debt incurred while gambling over the Internet is unenforceable and uncollectible as a matter of state law; (2) whether Defendant has collected gambling debt which was unenforceable and uncollectible under state law; (3) whether, to the extent gambling debt remains unpaid, Plaintiff is entitled to an adjudication that such debt need not be paid to Defendant; and (4) to the extent that gambling debt has been paid to Defendant, whether Plaintiff is entitled to a refund of any gambling debt paid to Defendant.

30.    Plaintiff prays for the following relief:

a.    a declaratory judgment from this Court determining that debt incurred while gambling over the Internet constitutes gambling debt unenforceable and uncollectible under state law;

b.    for a permanent injunction enjoining Defendant from collecting any additional Internet gambling debt, or initiating efforts to collect same;

c.    For all damages, and other relief, available under state law;

d.    Attorney's fees;

e.    Interest and costs.

_____
W. LEWIS GARRISON, JR. (GAR008)

S:\l1\Internet Gambling\Pleadings\First Amendment to Complaint.wpd

8

OF COUNSEL:

GARRISON SCOTT GAMBLE & ROSENTHAL, P.C.
2224 First Avenue North
Birmingham, AL 35203
205-326-3336
205-326-3332 - facsimile

_____
BARRY G. REED

OF COUNSEL:

ZIMMERMAN REED
14646 N. Kierland Blvd., Suite 145
Scottsdale, AZ 85254-2762
480-358-6400
480-348-6415 - facsimile

### CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the above and foregoing upon all counsel of record this 9th day of April, 2003:

_____
Of Counsel

LEXSTAT N.Y. Gen. Oblig. Law 5-411

NEW YORK CONSOLIDATED LAW SERVICE
Copyright (c) 2003 Matthew Bender & Company, Inc.,
one of the LEXIS Publishing (TM) companies
All rights reserved

*** THIS SECTION IS CURRENT THROUGH CH. 401, 08/19/2003 ***
*** WITH THE EXCEPTION OF CHS. 1-3, 282-283 and 385 ***

GENERAL OBLIGATIONS LAW

ARTICLE 5.  CREATION, DEFINITION AND ENFORCEMENT OF CONTRACTUAL OBLIGATIONS

TITLE 4.  CONTRACTS RELATING TO WAGERING; FORFEITURE AND RECOVERY OF CERTAIN PROPERTY

**GO TO CODE ARCHIVE DIRECTORY FOR THIS JURISDICTION**

NY CLS Gen Oblig § 5-411 (2003)

§ 5-411.  Contracts on account of money or property wagered, bet or staked are void

   All contracts for or on account of any money or property, or thing in action wagered, bet or staked, as provided in section 5-401, shall be void.

HISTORY:    Add, L 1965, ch 1031, § 99, eff Sept 1, 1967.
   Derived from *Penal Law § 992.*



LEXSTAT NY CLS Gen Oblig § 5-413

NEW YORK CONSOLIDATED LAW SERVICE
Copyright (c) 2003 Matthew Bender & Company, Inc.,
one of the LEXIS Publishing (TM) companies
All rights reserved

*** THIS SECTION IS CURRENT THROUGH CH. 401, 08/19/2003 ***
*** WITH THE EXCEPTION OF CHS. 1-3, 282-283 and 385 ***

GENERAL OBLIGATIONS LAW

ARTICLE 5.  CREATION, DEFINITION AND ENFORCEMENT OF CONTRACTUAL OBLIGATIONS

TITLE 4.  CONTRACTS RELATING TO WAGERING; FORFEITURE AND RECOVERY OF CERTAIN PROPERTY

**GO TO CODE ARCHIVE DIRECTORY FOR THIS JURISDICTION**

NY CLS Gen Oblig § 5-413 (2003)

§ 5-413  Securities for money lost at gaming, void

All things in action, judgments, mortgages, conveyances, and every other security whatsoever, given or executed, by any person, where the whole or any part of the consideration of the same shall be for any money or other valuable thing won by playing at any game whatsoever, or won by betting on the hands or sides of such as do play at any game, or where the same shall be made for the repaying any money knowingly lent or advanced for the purpose of such gaming or betting aforesaid, or lent or advanced at the time and place of such play, to any person so gaming or betting aforesaid, or to any person who during such play, shall play or bet, shall be utterly void, except where such securities, conveyances or mortgages shall affect any real estate, when the same shall be void as to the grantee therein, so far only as hereinafter declared.

When any securities, mortgages or other conveyances, executed for the whole or part of any consideration specified in the preceding paragraph shall affect any real estate, they shall inure for the sole benefit of such person as would be entitled to the said real estate, if the grantor or person incumbering the same, had died, immediately upon the execution of such instrument, and shall be deemed to be taken and held to and for the use of the person who would be so entitled  All grants, covenants and conveyances, for preventing such real estate from coming to, or devolving upon, the person hereby intended to enjoy the same as aforesaid, or in any way incumbering or charging the same, so as to prevent such person from enjoying the same fully and entirely, shall be deemed fraudulent and void.

HISTORY    Add, L 1965, ch 1031, § 99, eff Sept 1, 1967.
  Derived from *Penal Law § 993*.

LEXSTAT NY CLS Penal § 225.05

NEW YORK CONSOLIDATED LAW SERVICE
Copyright (c) 2003 Matthew Bender & Company. Inc.,
one of the LEXIS Publishing (TM) companies
All rights reserved

*** THIS SECTION IS CURRENT THROUGH CH. 401, 08/19/2003 ***
*** WITH THE EXCEPTION OF CHS. 1–3, 282–283 and 385 ***

PENAL LAW

PART THREE. SPECIFIC OFFENSES

TITLE M. OFFENSES AGAINST PUBLIC HEALTH AND MORALS

ARTICLE 225. GAMBLING OFFENSES

**GO TO CODE ARCHIVE DIRECTORY FOR THIS JURISDICTION**

NY CLS Penal § 225.05 (2003)

§ 225.05. Promoting gambling in the second degree

   A person is guilty of promoting gambling in the second degree when he knowingly advances or profits from unlawful gambling activity.

Promoting gambling in the second degree is a class A misdemeanor.

HISTORY:   Add, L 1965, ch 1030, § 1, eff Sept 1, 1967, with substance derived from §§ 970, 973, 974, 980, 986, 1372, 1373, 1376, 1377, 1378, 1381, 1388.

LEXSTAT NY CLS Penal § 225.10

NEW YORK CONSOLIDATED LAW SERVICE
Copyright (c) 2003 Matthew Bender & Company, Inc.,
one of the LEXIS Publishing (TM) companies
All rights reserved

*** THIS SECTION IS CURRENT THROUGH CH. 401, 08/19/2003 ***
*** WITH THE EXCEPTION OF CHS. 1-3, 282-283 and 385 ***

PENAL LAW

PART THREE.  SPECIFIC OFFENSES

TITLE M.  OFFENSES AGAINST PUBLIC HEALTH AND MORALS

ARTICLE 225.  GAMBLING OFFENSES

**GO TO CODE ARCHIVE DIRECTORY FOR THIS JURISDICTION**

NY CLS Penal § 225.10 (2003)

§ 225.10  Promoting gambling in the first degree

A person is guilty of promoting gambling in the first degree when he knowingly advances or profits from unlawful gambling activity by:

1. Engaging in bookmaking to the extent that he receives or accepts in any one day more than five bets totaling more than five thousand dollars; or

2. Receiving, in connection with a lottery or policy scheme or enterprise, (a) money or written records from a person other than a player whose chances or plays are represented by such money or records, or (b) more than five hundred dollars in any one day of money played in such scheme or enterprise.

Promoting gambling in the first degree is a class E felony.

HISTORY.   Add, L 1965, ch 1030, § 1, eff Sept 1, 1967, with substance derived from §§ 974-a, 986-c.

LEXSTAT NC Gen Stat 16-1

GENERAL STATUTES OF NORTH CAROLINA
Copyright © 2003 by Matthew Bender & Company. Inc.
a member of the LexisNexis Group.
All rights reserved.

**\*\*\* STATUTES CURRENT THROUGH THE 2002 SESSION \*\*\***
**\*\*\* ANNOTATIONS CURRENT THROUGH APRIL 1, 2003 \*\*\***

CHAPTER 16.  GAMING CONTRACTS AND FUTURES

ARTICLE 1.  GAMING CONTRACTS

**GO TO CODE ARCHIVE DIRECTORY FOR THIS JURISDICTION**

N.C. Gen. Stat. § 16-1  (2003)

§ 16-1. Gaming and betting contracts void

All wagers, bets or stakes made to depend upon any race, or upon any gaming by lot or chance, or upon any lot, chance, casualty or unknown or contingent event whatever, shall be unlawful; and all contracts, judgments, conveyances and assurances for and on account of any money or property, or thing in action, so wagered, bet or staked, or to repay, or to secure any money, or property, or thing in action, lent or advanced for the purpose of such wagering, betting, or staking as aforesaid. shall be void.

HISTORY: 1810. c. 796, P.R.; R.C., c. 51, ss. 1, 2; Code, ss. 2841, 2842; Rev., s. 1687; C.S., s. 2142.



EXHIBIT
C

LEXSTAT N.C. Gen. Stat. § 14-292

GENERAL STATUTES OF NORTH CAROLINA
Copyright © 2003 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

\*\*\* STATUTES CURRENT THROUGH THE 2002 SESSION \*\*\*
\*\*\* ANNOTATIONS CURRENT THROUGH APRIL 1, 2003 \*\*\*

CHAPTER 14. CRIMINAL LAW

SUBCHAPTER 11 . GENERAL POLICE REGULATIONS

ARTICLE 37. LOTTERIES, GAMING, BINGO AND RAFFLES

PART 1. LOTTERIES AND GAMING

**GO TO CODE ARCHIVE DIRECTORY FOR THIS JURISDICTION**

N.C. Gen. Stat. § 14-292  (2003)

§ 14-292. Gambling

  Except as provided in Part 2 of this Article, any person or organization that operates any game of chance or any person who plays at or bets on any game of chance at which any money, property or other thing of value is bet, whether the same be in stake or not, shall be guilty of a Class 2 misdemeanor.

HISTORY: 1891, c. 29; Rev., s. 3715; C.S., s. 4430; 1979, c. 893, s. 1; 1983, c. 896, s. 1; 1993, c. 539, s. 204; 1994, Ex. Sess., c. 24. s. 14(c).