

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF L.

2003 SEP 29 P 4: 49

LORETTA G. WHYTE
CLERK

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW ORLEANS

|  |  |
|---|---|
| IN RE: MASTERCARD INTERNATIONAL, INC. INTERNET GAMBLING LITIGATION, | CIVIL ACTION NO. MDL NOS. 1321 AND 1322 |
|  | SECTION K |
| LARRY A. THOMPSON, on behalf of himself and all others similarly situated, | JUDGE STANWOOD R. DUVALL, JR. |
| Plaintiffs, |  |
| vs. |  |
| VISA INTERNATIONAL SERVICE ASSOCIATION, WACHOVIA BANK, N.A. WACHOVIA BANK CARD SERVICES |  |
| Defendants. |  |

This Document Relates To:

Civil Action No. 00-1171 (N.D. Ca.)
Original Docket No. 99-5069 (N.D. Ca.)

### MOTION OF WACHOVIA BANK, N.A. TO DISMISS
### PLAINTIFF LARRY A. THOMPSON'S COMPLAINT

PLEASE TAKE NOTICE that Defendant Wachovia Bank, N.A. moves this Court

for an Order dismissing Plaintiff Larry A. Thompson's Complaint in the above referenced matter

Fee_____
Process_____
X Dktd_____
___ CtRmDep_____
___ Doc. No. 106

in its entirety pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for the reasons

more fully set forth in the Memorandum of Law and Exhibits submitted herewith.

Respectfully submitted,

R. Patrick Vance (La. Bar No. 13008)
JONES, WALKER, WAECHTER, POITEVENT,
  CARRERE & DENEGRE, L.L.P.
201 St. Charles Avenue, 49th Floor
New Orleans, Louisiana 70170-5100
Telephone (504) 582-8194
Telefax (504) 589-8194


Lawrence E. Miller
Kevin R.J. Schroth
LeBOEUF, LAMB, GREENE & MacRAE, L.L.P.
One Riverfront Plaza
Newark, NJ  07102-5490
Telephone (973) 643-8000
Telefax (973) 643-6111

*Counsel for Defendant Wachovia Bank, N.A.*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Motion of Wachovia

Bank, N.A. to Dismiss Plaintiff Larry A. Thompson's Complaint has been served on the below-

named parties via U. S. Mail on this 29th day of September, 2003.


W. Lewis Garrison, Jr.
Garrison, Scott, Gamble & Rosenthal, P.C.
2224 1st Avenue North
Post Office Box 11310
Birmingham, Alabama 35202

Barry G. Reed
Zimmerman Reed L.L.P.
651 Nicollet Mall, Suite 501
Minneapolis, Minnesota 55402

NW 195251.1 38551 00841

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW ORLEANS

| | |
|---|---|
| IN RE: MASTERCARD INTERNATIONAL, INC. INTERNET GAMBLING LITIGATION, : | CIVIL ACTION NO. MDL NOS. 1321 AND 1322 |
| : | SECTION K |
| LARRY A. THOMPSON, on behalf of himself : and all others similarly situated, | JUDGE STANWOOD R. DUVALL, JR. |
| Plaintiffs, | |
| vs. | |
| VISA INTERNATIONAL SERVICE ASSOCIATION, WACHOVIA BANK, N.A. WACHOVIA BANK CARD SERVICES | |
| Defendants. | |

This Document Relates To:

Civil Action No. 00-1171 (N.D. Ca.)
Original Docket No. 99-5069 (N.D. Ca.)

### NOTICE OF HEARING

PLEASE TAKE NOTICE that Defendant Wachovia Bank, N.A. will bring for

hearing the attached Motion to Dismiss Plaintiff Larry A. Thompson's Complaint before this

Court at the United States District Court, 500 Camp Street, Room C352, New Orleans, Louisi-

ana, on the 3rd day of December, 2003, at 10:00 a.m., or as soon thereafter as can be heard.

Respectfully submitted,

R. Patrick Vance (La. Bar No. 13008)
JONES, WALKER, WAECHTER, POITEVENT,
    CARRERE & DENEGRE, L.L.P.
201 St. Charles Avenue, 49th Floor
New Orleans, Louisiana 70170-5100
Telephone (504) 582-8194
Telefax (504) 589-8194


Lawrence E. Miller
Kevin R.J. Schroth
LeBOEUF, LAMB, GREENE & MacRAE, L.L.P.
One Riverfront Plaza
Newark, NJ  07102-5490
Telephone (973) 643-8000
Telefax (973) 643-6111

*Counsel for Defendant Wachovia Bank, N.A.*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Notice of Hearing has

been served on the below-named parties via U. S. Mail on this 29th day of September, 2003.


W. Lewis Garrison, Jr.
Garrison, Scott, Gamble & Rosenthal, P.C.
2224 1st Avenue North
Post Office Box 11310
Birmingham, Alabama 35202

Barry G. Reed
Zimmerman Reed L.L.P.
651 Nicollet Mall, Suite 501
Minneapolis, Minnesota 55402

NW 195253 1 38551 00841

-3-

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW ORLEANS

|  |  |
|---|---|
| IN RE: MASTERCARD INTERNATIONAL, INC. INTERNET GAMBLING LITIGATION, : | CIVIL ACTION NO. MDL NOS. 1321 AND 1322 |
| : | SECTION K |
| LARRY A. THOMPSON, on behalf of himself : and all others similarly situated, | JUDGE STANWOOD R. DUVALL, JR. |
| Plaintiffs, : |  |
| vs. : |  |
| VISA INTERNATIONAL SERVICE : ASSOCIATION, WACHOVIA BANK, N.A. WACHOVIA BANK CARD SERVICES : | |
| Defendants. : |  |

This Document Relates To:

Civil Action No. 00-1171
Original Docket No. 99-5069 (N.D. Ca.)

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS WACHOVIA BANK, N.A. AND WACHOVIA BANK CARD SERVICES' MOTION TO DISMISS PLAINTIFF LARRY A. THOMPSON'S COMPLAINT

---

On the brief:
    Lawrence E. Miller
    Kevin R.J. Schroth
    Laura A. Dwyer

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...........................................................................................1

PROCEDURAL HISTORY...............................................................................................2

FACTUAL BACKGROUND..............................................................................................3

ARGUMENT .....................................................................................................................4

    I.     THOMPSON'S COMPLAINT FAILS TO ALLEGE A BASIS FOR
          JURISDICTION ..............................................................................................4

          A.     This Court and the Fifth Circuit have Dismissed Thompson's Bases
                  for Federal Question Jurisdiction..................................................................5

          B.     The Declaratory Judgment Act Does Not Provide an Independent
                  Basis for Jurisdiction....................................................................................5

          C.     The Thompson Complaint Does Not Satisfy the Requirements for
                  Diversity Jurisdiction ...................................................................................6

          D.     This Court Should Exercise Supplemental Jurisdiction and Decide
                  the Case on its Merits....................................................................................7

    II.    IF THIS COURT EXERCISES SUPPLEMENTAL JURISDICTION,
          THOMPSON'S REMAINING CAUSES OF ACTION SHOULD BE
          DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH
          RELIEF CAN BE GRANTED ........................................................................9

          A.     Thompson's Declaratory Judgment Claims Have Already Been
                  Rejected By The Court...................................................................................9

          B.     The Court's Rationale for Rejecting the Declaratory Judgment
                  Count in Plaintiffs' Proposed Amended Complaint Should Apply
                  to Thompson's Virtually Identical Declaratory Judgment Counts.............10

    III.   WHEN FEDERAL COURT LACKS JURISDICTION OVER AN MDL
          CASE AND DECLINES TO EXERCISE SUPPLEMENTAL
          JURISDICTION, DISMISSAL IS APPROPRIATE............................................12

CONCLUSION.................................................................................................................13

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Baker v. Farmers Electric Cooperative Inc.*, 34 F.3d 274 (5th Cir. 1994)..........................6

*Commercial Metas Co. v. Balfour Guthrie, and Co.*,
577 F.2d 264 (5th Cir. 1978) ...........................................................5

*Guzzino v. Felterman*, 191 F.3d 588 (5th Cir. 1999)...........................................6

*Hudak v. Economic Research Analysts, Inc.*, 499 F.2d 996 (5th Cir. 1974)
    *questioned on other grounds by McNeal v. Paine Webber, Jackson & Curtis,
    Inc.*, 598 F.2d 888 (5th Cir. 1979) ..................................................8

*Korzen v. Local Union 705*, 75 F.3d 285 (7th Cir. 1996) ....................................7

*In re Abbott Laboratories*, 51 F.3d 524 (5th Cir. 1995) ......................................6

*In re Mastercard*, 132 F. Supp. 2d 468 (E.D. La. 2001).......................................2, 4, 7, 10

*In re Mastercard*, 2003 U.S. Dist. LEXIS 13534 (E.D. La. 2003).........................3, 5, 7, 9

*In re Mastercard Litigation*, 313 F.3d 257 (5th Cir. 2002) .........................................1, 2, 7

*Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720 (5th Cir. 2002) ...............5, 6

*Morris v. Dillard Department Stores, Inc.*, 277 F.3d 743 (5th Cir. 2001)..........................8

*Newport Ltd. v. Sears, Roebuck & Co.*, 941 F.2d 302 (5th Cir. 1991) ......................6, 7, 8

*Niagara Mohawk Power Corp. v. Tonawanda Band of Seneca Indians*,
94 F.3d 747 (2d Cir. 1996)..............................................................5

*Panalpina Welttransport GMBH v. Geosource, Inc.*, 764 F.2d 352 (5th Cir.
    1985), *vacated in part and remanded on other grounds sub nom. Kuehne &
    Nagel v. Geosource, Inc.*, 874 F.2d 283 (5th Cir. 1989)................................5

*Parker & Parsley Petroleum Co. v. Dresser Industries*,
    972 F.2d 580 (5th Cir. 1992) ..................................................7, 8

*St. Paul Mercury Insurance Co. v. Williamson*, 332 F.2d 304 (5th Cir. 2003) .................10

*Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806) ........................................5

*TTEA v. Ysleta Del Sur Pueblo*, 181 F.3d 676 (5th Cir. 1999)...........................................5

## FEDERAL STATUTES

18 U.S.C. § 1961 *et seq.*.................................................................1

28 U.S.C. §1331.........................................................................4

28 U.S.C. §1332 .......................................................................4, 5, 6

28 U.S.C. § 1367.................................................................................................4, 6

28 U.S.C. § 1407 ....................................................................................................11

28 U.S.C. § 2201................................................................................................3, 10

## STATE STATUTES

Ga. Code Ann. §§ 13-8-1 through -3 ...............................................................10

Kan. Stat. Ann. §§ 21-4302 through -4304.......................................................10

Kan. Stat. Ann. § 21-3104 ................................................................................10

## MISCELLANEOUS

16 *Moore's Federal Practice* § 108.04[2] (Matthew Bender 3d ed. 2003) .........................4

## PRELIMINARY STATEMENT

Defendants Wachovia Bank, N.A. and Wachovia Bank Card Services (collectively "Wachovia") respectfully move to dismiss the remaining claims in Plaintiff Larry A. Thompson's complaint, which is one of several cases pending before this Court in a Multidistrict Litigation proceeding (the "MDL") involving virtually identical Internet gambling cases.

Plaintiff Thompson used a Visa credit card issued by Wachovia to purchase Internet gambling "chips" and then voluntarily used those "chips" to place wagers with Internet casinos. When he did not win, he commenced actions against certain banks and other financial institutions that issue or issued Mastercard and Visa credit cards, including Wachovia, alleging a conspiracy and violations of state laws. The Court decided to entertain motions to dismiss on two "test cases" representative of all cases comprising the MDL, including Thompson's case. Through the test cases, Thompson (and the other plaintiffs in the MDL) have suffered a series of losses before this Court and the United States Court of Appeals for the Fifth Circuit. As the Fifth Circuit explained, Thompson and his fellow plaintiffs engaged in this conduct voluntarily and "got exactly what they bargained for -- gambling 'chips' with which they could place wagers." *In re Mastercard Litigation*, 313 F.3d 257, 264 (5th Cir. 2002).

The central allegations in all of the plaintiffs' complaints, including Thompson's, were based on alleged violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* However, in a major defeat for plaintiffs' cases, this Court dismissed the RICO claims. The Fifth Circuit affirmed this decision. Plaintiffs' attempt to salvage their litigation by amending the complaints was denied. As a result, Thompson's complaint does not allege a viable basis for subject matter jurisdiction.

Remnants of Thompson's complaint, specifically declaratory judgment claims, are still pending and are the subject of this motion to dismiss. The Court has already assessed the merits of the remaining claims stating, "there is no possibility that plaintiffs can prevail on their claim that the defendants violated state law by 'gambling over the Internet.'" Because Thompson alleged a basis for subject matter jurisdiction that has been dismissed and has not satisfied any other bases for jurisdiction, the Court has the discretion to exercise supplemental jurisdiction over Thompson's remaining state claims. For the reasons set forth below and as a matter of judicial economy, convenience and fairness to the litigants, the Court should exercise supplemental jurisdiction over Thompson's remaining claims and dismiss them on the merits.[1] Alternatively, Thompson's remaining claims should be dismissed for lack of subject matter jurisdiction.

## PROCEDURAL HISTORY

The procedural history reflects a series of adverse decisions in both this Court and in the Fifth Circuit. On November 22, 1999, Thompson commenced this action against Wachovia in the Northern District of California alleging RICO and other claims.[2] On March 1, 2000, this action, along with 33 "virtually identical" cases, was transferred to this Court as part of the MDL. *In re Mastercard*, 313 F.3d 257, 260 (5th Cir. 2002) ("In re Mastercard II").

Plaintiffs then selected two "test cases" from the MDL, and the Court entertained motions to dismiss concerning plaintiffs' RICO claims. On February 23, 2001, the Court dismissed plaintiffs' RICO claims, and on November 20, 2002 the Fifth Circuit affirmed. *In re*

---

[1]    To avoid unnecessary repetition, Wachovia adopts and joins in the legal arguments, to the extent they apply to this motion, made by other defendant banks in the MDL.

[2]    Thompson's case was originally captioned, *Thompson v Visa International Service Association, et al.*, 99-CV-5069 (VRW) (the "Thompson Complaint").

2

*Mastercard*, 132 F.Supp. 2d 468 (E.D. La 2001) (*"In re Mastercard I"*); *In re Mastercard II*, 313 F.3d at 257.

As those decisions stripped plaintiffs' test cases of any basis for federal question jurisdiction, plaintiffs moved to amend their complaints by alleging additional federal causes of action and by amending their declaratory judgment claims. On July 30, 2003, Your Honor denied plaintiffs' motion. *In re Mastercard*, 2003 U.S. Dist. LEXIS 13534 (E.D. La. July 30, 2003) (*"In re Mastercard III"*). Your Honor's Order filed on September 4, 2003 applied *In re Mastercard I* (dismissing RICO claims) and *In re Mastercard III* (denying plaintiffs' motion to amend) to Thompson's case. On August 29, 2003, Your Honor invited motions to dismiss or for summary judgment addressing jurisdiction and the merits of each plaintiffs' remaining claims.

The two remaining claims in Thompson's Complaint seek a declaratory judgment under federal and state law. Thompson's Count I attempts to invoke federal law by referencing the Declaratory Judgment Act, 28 U.S.C. § 2201. It seeks a declaratory judgment that defendants have sought to collect unenforceable, illegal gambling debts from Thompson. Thompson Complaint ¶¶ 59-63. Thompson also seeks a judgment declaring that certain contracts are void and/or voidable, that they should be cancelled, and that Thompson should be reimbursed all payments made upon such gambling debts. *Id.* ¶ 63. Count II seeks the same basic relief under Kansas and Georgia law. *Id.* ¶¶ 64-68.[3]

## FACTUAL BACKGROUND

Thompson alleges that in January and February of 1999 he placed wagers via the Internet with the "English Harbor Casino" and the "Golden Palace Casino." Thompson

---

[3] Counts III and IV, which allege violations of RICO, were dismissed. *In re Mastercard I*, 132 F.Supp 2d at 473, 497.

Complaint ¶¶ 24-29. Thompson alleges that his wagers totaled $3,380. *Id.* ¶¶ 27, 29. His credit card account was charged $1,600, of which he has partially paid. *Id.* ¶¶ 31-32.

Thompson is a resident of Kansas. Thompson Complaint ¶ 5. He filed this action against Wachovia. Thereafter, Wachovia merged with First Union National Bank ("First Union"), with First Union being the surviving entity. The merged entity then changed its name to Wachovia. At the time the Thompson Complaint was filed and afterwards, Wachovia was a national banking association, with its principal place of business in Georgia.

## ARGUMENT

### I.  THOMPSON'S COMPLAINT FAILS TO ALLEGE A BASIS FOR JURISDICTION

Since the outset of this litigation, Thompson and the other plaintiffs in the MDL have been actively searching for a jurisdictional foothold in federal court. Subject matter jurisdiction in federal court may be based on federal question jurisdiction, 28 U.S.C. §1331, or diversity jurisdiction, 28 U.S.C. §1332. 16 *Moore's Federal Practice* § 108.04[2] (Mathew Bender 3d ed. 2003).

In *In re Mastercard I* and *III*, this Court rejected each of plaintiffs' alleged bases for federal question jurisdiction by dismissing plaintiffs' RICO claims and denying plaintiffs' motion to amend. Thompson, in alleging diversity jurisdiction, fails to meet the amount in controversy requirement. Consequently, this Court would only have jurisdiction if it opts to exercise supplemental jurisdiction over his remaining claims.

Where a district court has original jurisdiction over a cause of action, as discussed below, the district court has discretion to exercise supplemental jurisdiction over all other claims so related to the action that they form the same case or controversy. 28 U.S.C. § 1367(a). *See infra.*

### A.    This Court and the Fifth Circuit have Dismissed Thompson's Bases for Federal Question Jurisdiction

The Thompson Complaint alleges that this Court has federal question jurisdiction under RICO.  Recognizing that without a RICO claim plaintiffs did not have a basis for federal question jurisdiction, plaintiffs moved to amend the complaint by alleging several novel federal causes of action, along with a restated RICO count seeking injunctive relief.[4]  The Court's well-reasoned decision of July 30, 2003 rejected plaintiffs' proposed amended complaint as futile.  *In re Mastercard III,* 2003 U.S. Dist. LEXIS 13534, at *18.

As noted above, the Court's September 4, 2003 Order applied its decisions dismissing the RICO claims and denying the motion to amend to Thompson's case.  Thus, the Court "determined that the RICO claims in all pending cases in the [MDL] proceeding shall be dismissed as the Court has determined that the RICO issue has been fully adjudicated."  Therefore, Thompson does not have a basis for federal question jurisdiction.

### B.    The Declaratory Judgment Act Does Not Provide an Independent Basis for Jurisdiction

Thompson may argue that the Declaratory Judgment Act, 28 U.S.C. § 2201, provides a basis for original jurisdiction in federal court.  Thompson Complaint ¶ 9.  However, it is well settled that "the declaratory judgment statute offers no independent ground for jurisdiction.  Rather, it permits the award of declaratory relief only when other bases for jurisdiction are present."  *TTEA v. Ysleta Del Sur Pueblo,* 181 F.3d 676, 681 (5th Cir. 1999); *Commercial Metas Co. v. Balfour Guthrie, and Co.,* 577 F.2d 264, 269 (5th Cir. 1978) ("The Declaratory Judgment Act, furthermore, was not intended to be used as a contrivance to create jurisdiction which does not otherwise exist."); *Niagara Mohawk Power Corp. v. Tonawanda Band of Seneca Indians,* 94 F.3d 747, 752 (2d Cir. 1996).  Therefore, if the Court declines to

exercise supplemental jurisdiction, *see infra* I. D, it must dismiss the declaratory judgment claims for lack of jurisdiction.

If the Court exercises supplemental jurisdiction over Thompson's remaining claims, the Court should dismiss the declaratory judgment claims on the merits for the reasons discussed below. *See* Section II.

### C.    The Thompson Complaint Does Not Satisfy the Requirements for Diversity Jurisdiction

Thompson cannot satisfy the requirements for diversity jurisdiction. For this Court to have diversity jurisdiction under 28 U.S.C. § 1332, the matter in controversy must be between "citizens of different States" and "exceed the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a)(1). *See Manguno v Prudential Prop. & Cas. Ins. Co.,* 276 F.3d 720, 723 (5th Cir. 2002) ("diversity jurisdiction, which, in a class action, requires complete diversity of citizenship of the named parties and an amount in controversy in excess of $75,000, exclusive of interest and costs"). At the time the complaint was filed, Thompson was a citizen of Kansas, and Wachovia was a national banking association with its principal place of business located in Georgia.

Thompson's claim, however, amounts to less than $1,600, far below the required amount of $75,000. 28 U.S.C. § 1332(a). The $75,000 threshold is met if "(1) it is apparent from the face of the petition that the claims are likely to exceed $75,000, or alternatively, (2) the [party] sets forth 'summary judgment type evidence' of facts in controversy that support a finding of the requisite amount." *Manguno,* 276 F.3d at 723. Neither of these alternatives has been satisfied by Thompson. He alleges that his credit card was charged $1,600 but then vaguely states that part of that $1,600 has been paid by him. Thompson Complaint ¶¶ 31-32. Thus, on

---

[4]       Plaintiffs proposed amended complaint alleged violations of the National Bank Act, 12 U.S.C. §§ 85, 86,

its face, his claim is less than $1,600 -- far less than the requisite $75,000. Nor has Thompson

established any summary judgment type evidence that would support a finding of the requisite

amount. Even if a class were to be certified, Thompson's claim cannot be aggregated with

potential unnamed members of the class. Aggregation, if permitted, requires that the claim of the

named representative, *i.e.*, Thompson, satisfy the $75,000 threshold. *See generally In re Abbott*

*Laboratories*, 51 F.3d 524 (5th Cir. 1995). Thus, diversity jurisdiction does not exist here.

**D.     This Court Should Exercise Supplemental Jurisdiction and Decide the
        Case on its Merits**

There is no diversity jurisdiction and, with the dismissal of Thompson's RICO

claim, no federal question jurisdiction; however, this Court must still decide whether to exercise

supplemental jurisdiction over the state-law claims, pursuant to 28 U.S.C. § 1367. *Newport Ltd.*

*v. Sears, Roebuck & Co.*, 941 F.2d 302, 307 (5th Cir. 1991). Supplemental jurisdiction may

continue "even after the federal claims upon which jurisdiction is based have been dismissed or

rendered moot." *Baker v. Farmers Electric Cooperative Inc.*, 34 F.3d 274, 283 (5th Cir. 1994).

A district court has broad discretion in deciding whether to retain jurisdiction.

*Newport Ltd.*, 941 F.2d at 307. A court must conduct a fact-specific inquiry that considers the

totality of the circumstances of each case, *Guzzino v. Felterman*, 191 F.3d 588, 594-95 (5th Cir.

1999), including judicial economy, convenience and fairness to the litigants, and comity. *Parker*

*& Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 586 (5th Cir. 1992); *Newport Ltd.*,

941 F.2d at 307.

Where a plaintiff's state law claims are without merit, a district court may retain

jurisdiction to dismiss those claims on the merits. *Korzen v. Local Union 705*, 75 F.3d 285 (7th

---

and 25a, the Truth in Lending Act, 15 U.S.C. § 1637, and RICO, 18 U.S.C. § 1961.

Cir. 1996). Indeed, far from intruding into an area of state law, it is better for the district court to

retain jurisdiction to decide the case on its merits as a matter of judicial economy. *Id.* at 289.

This Court has already determined that the transactions at issue are two separate

events that do not implicate gambling statutes: Thompson's first transaction with the credit card

company ended upon receipt of the credit; his second transaction was the gambling itself. *In re*

*Mastercard I*, 132 F. Supp. 2d at 479, *aff'd*, *In re Mastercard II*, 313 F.3d at 262; *In re*

*Mastercard III*, 2003 U.S. Dist. LEXIS 13534 at *18. Indeed, this Court stated, in dismissing

plaintiffs' RICO claims, "It is a temporal impossibility for the defendants to have completed their

transaction with the plaintiff before he gambled and to then be prosecuted for collecting the

proceeds of a gambling device, which can only take place after some form of gambling is

completed." *In re Mastercard I*, 132 F. Supp. at 479, *aff'd*, *In re Mastercard II*, 313 F.3d at 262.

In denying plaintiffs' motion to amend their complaints, this Court repeated that "the relevant

credit card transactions occurred prior to any gambling and thus there is no possibility that

plaintiffs can prevail on their claim that the defendants violated state law by gambling over the

Internet." *In re Mastercard III*, 2003 U.S. Dist. LEXIS 13534, at *18. Since it is a "temporal

impossibility" for Wachovia to be implicated in a violation of a gambling statute, Thompson's

state law claims are plainly without merit.

Moreover, because the relevant transactions occurred before any gambling took

place, no novel issues of state law are implicated. *Morris v. Dillard Dep't Stores, Inc.*, 277 F.3d

743 (5th Cir. 2001). Wachovia was simply not involved in the gambling aspects of Thompson's

transactions. Thus, this case does not involve novel issues regarding state gambling statutes,

jurisdiction over cyberspace, or internet gambling. Similarly, comity is not a concern since

Wachovia's actions do not fall within the states' gambling statutes. *Parker & Parsley Petroleum Co.*, 972 F.2d at 586; *Newport Ltd.*, 941 F.2d at 307.

Judicial economy would best be served if the District Court retains jurisdiction. *Newport Ltd.*, 941 F.2d at 307; *Hudak v. Economic Research Analysts, Inc.*, 499 F.2d 996 (5th Cir. 1974) *questioned on other grounds by McNeal v. Paine Webber, Jackson & Curtis, Inc.*, 598 F.2d 888 (5th Cir. 1979). Thompson's and plaintiffs' cases have been in the Fifth Circuit for approximately three and a half years (since March 2000), a significant period of time. The Court has invested a considerable amount of time and resources by drafting two extensive written opinions and holding various court conferences. Also, the Court has substantial knowledge of the facts and legal claims of all of the plaintiffs. Similar to the plaintiffs in the test cases, Thompson used a credit card to purchase credits and then acquired "chips" to place wagers with internet casinos. Now Thompson, in an attempt to recoup his losses, is crying foul.

Finally, retaining jurisdiction is fair to the litigants as the case has been in this District for several years. If this case were dismissed, state courts may issue inconsistent rulings that are based on substantially similar law and the same set of facts. Retention would avoid that possibility.

For the foregoing reasons, Wachovia respectfully requests that this Court retain jurisdiction and dismiss Thompson's claims on the merits.

## II. IF THIS COURT EXERCISES SUPPLEMENTAL JURISDICTION, THOMPSON'S REMAINING CAUSES OF ACTION SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

### A. Thompson's Declaratory Judgment Claims Have Already Been Rejected By The Court

Counts I and II of the Thompson Complaint seek a declaratory judgment that any debt Thompson owes the defendants is "void and/or voidable" and the cancellation of such debts,

and return of monies paid by him.  These counts are practically identical to the declaratory

judgment count in plaintiffs' proposed amended complaint, which was rejected by this Court on

July 30, 2003 (the "Rejected Complaint").  *See* Exhibit A.

   Plaintiffs' proposed amendment to the declaratory judgment claims requested that

the Court find the debt plaintiffs "incurred while gambling over the Internet constitutes gambling

debt unenforceable and uncollectible under state law."  Rejected Complaint ¶ 30(a); *In re*

*Mastercard III*, 2003 U.S. Dist. LEXIS 13534, at *18.  In denying plaintiffs' motion to amend,

the Court stated **"[t]his allegation ignores the express language of this Court that the**

**relevant credit card transactions occurred prior to any gambling and thus there is no**

**possibility that plaintiffs can prevail on their claim that the defendants violated state law**

**by gambling over the Internet."**  *In re Mastercard III*, 2003 U.S. Dist. LEXIS 13534, *18

(emphasis added).  In the face of such unequivocal language, Thompson cannot credibly

maintain that Counts I and II are still viable.

  **B.** **The Court's Rationale for Rejecting the Declaratory Judgment Count**
    **in Plaintiffs' Proposed Amended Complaint Should Apply to**
    **Thompson's Virtually Identical Declaratory Judgment Counts**

   A close comparison between the Thompson Complaint and the Rejected

Complaint reveals that Thompson seeks the same basic relief that the Court rejected when it

denied plaintiffs' motion to amend.

   The Rejected Complaint alleges that gambling "debt is unenforceable under the

law of the state of Plaintiffs' residence, as well as the law where Defendant is located."  Rejected

Complaint ¶ 27.  Similarly, the Thompson Complaint alleges that all gaming contracts are illegal

and unenforceable under Kansas and Georgia state law and the "common and statutory laws of

the various states."  Thompson Complaint ¶¶ 65-67.  In each instance, the complaints assume the

existence of gambling contracts or gambling debt.  However, that assumption is misplaced.  The

law of the case -- as decided by this Court and the 5th Circuit -- is that the transactions in question involved the purchase of "chips;" those transactions necessarily took place before Thompson chose to gamble. *In re Mastercard I*, 132 F. Supp. 2d at 479 ("It is a temporal impossibility for the defendants to have completed their transaction with the plaintiff before he gambled....").[5] Because Thompson's argument is based on a false premise, it is untenable no matter what state law applies.

At different stages in this litigation, plaintiffs have argued that various state laws are implicated. Focusing on Thompson's Complaint, either Kansas law or Georgia law could apply.

The Thompson Complaint alleges that defendants violated the common and statutory law of Kansas and Georgia. *See* Kan. Stat. Ann. §§ 21-4302 through 4304, and § 21-3104;[6] and Ga. Code Ann. § 13-8-3; *see also* §§ 13-8-1 & -2.[7] However, regardless of the state law that applies, Thompson's declaratory judgment must fail because his case does not involve gaming contracts or the collection of gambling debt.

Furthermore, in both complaints, plaintiffs allege that an actual controversy exists between the parties under 28 U.S.C. § 2201 because the defendants sought to collect or collected an unenforceable gambling debt. This allegation fails for the reasons explained above and in light of the law of the case. Finally, the Rejected Complaint incorporates the Thompson Complaint by reference, which reinforces the similarity between them, and further warrants that they should suffer the same fate of dismissal. Rejected Complaint ¶ 26.

---

[5]      "Under the law of the case doctrine, an issue of fact or law decided on appeal may not be reexamined either by the district court on remand or by the appellate court on a subsequent appeal." *St. Paul Mercury Ins. Co. v. Williamson*, 332 F.2d 304, 309 (5th Cir. 2003).

[6]      The referenced Kansas statutes are attached as Exhibit B.

[7]      The referenced Georgia statutes are attached as Exhibit C.

Notwithstanding the foregoing, in the absence of a viable RICO claim, this Court lacks subject matter jurisdiction over Thompson's Counts I and II.  Therefore, the Court has the option of dismissing them for lack of jurisdiction or to dismiss on the merits if the Court exercises supplemental jurisdiction.

### III. WHEN FEDERAL COURT LACKS JURISDICTION OVER AN MDL CASE AND DECLINES TO EXERCISE SUPPLEMENTAL JURISDICTION, DISMISSAL IS APPROPRIATE

Dismissal is appropriate relief for this Court under these circumstances.  The Rules of Procedure governing the Judicial Panel on Multidistrict Litigation provide that when the transferee district court terminates a case, the terminated action is not remanded back to the transferor district court.  Rather the transferee court shall dismiss the action.  *See* Rule 7.6 of the General Rules/Rules For Multidistrict Litigation under 28 U.S.C. 1407.

Therefore, Thompson's case should not be transferred back to the Southern District of New York.  It should be dismissed in this District on the merits.

## CONCLUSION

For the foregoing reasons, the remaining claims in the Thompson Complaint against Wachovia should be dismissed on the merits if they are not dismissed for lack of jurisdiction.

Respectfully submitted,

By: _____

R. Patrick Vance (LA Bar No. 13008)
Jones, Walker, Waechter, Poitevent, Carrere
& Denegre, L.L.P.
201 St. Charles Avenue, 49th Floor
New Orleans, Louisiana 70170-5100
Telephone (504) 582-8194
Facsimile (504) 589-8194
Counsel for Defendant
Wachovia Bank, N.A.


Lawrence E. Miller
Kevin R.J. Schroth
LeBoeuf, Lamb, Greene & MacRae, L.L.P.
One Riverfront Plaza
Newark, NJ  07102-5490
(973) 643-8000
(973) 643-6111
Counsel for Defendant
Wachovia Bank, N.A.

Dated:  New Orleans, Louisiana
        September 29, 2003

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Memorandum of Law has

been served on the below-named parties through U. S. Mail on this 29th day of September, 2003.

W. Lewis Garrison, Jr.
Garrison, Scott, Gamble & Rosenthal, P.C.
2224 1st Avenue North
Post Office Box 11310
Birmingham, Alabama 35202

Barry G. Reed
Zimmerman Reed L.L.P.
651 Nicollet Mall, Suite 501
Minneapolis, Minnesota 55402

NW 195245 3 38551 00841

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:                                                    CIVIL ACTION
                                                    MDL NOS. 1321 AND 1322
MASTERCARD
INTERNATIONAL, INC.                                       SECTION (K)
INTERNET GAMBLING
LITIGATION

THIS DOCUMENT RELATES TO:                            JUDGE DUVAL
ALL CASES                                         MG. JUDGE CHASEZ

## **PLAINTIFF'S FIRST AMENDMENT TO COMPLAINT**

### **Violations of 12 U.S.C. §§85 and 86, The National Bank Act**

Plaintiff expressly adopts and incorporates all factual allegations and state and common law causes of action included in the original Complaint, and further avers as follows:

1.      12 U.S.C. §85 establishes a ceiling on the rate of interest a national bank may charge, which is based on the usury law in the state where such bank is located.

2.      12 U.S.C. §86 provides a remedy for those who have paid interest in excess of that allowed under §85 to bring an action to recover from the bank twice the amount of interest paid:

> The taking, receiving, reserving, or charging a rate of interest greater than is allowed by §85 of this Title, when knowingly done, shall be deemed a forfeiture of the entire interest which the note, bill, or other evidence of debt carries with it. . .[the debtor] may recover back, in an action in the nature of an action of debt, twice the amount of the interest thus paid from the association taking or receiving the same. . .

12 U.S.C. §86.



3.    Plaintiff has incurred debt as a consequence of gambling on various web sites over the Internet. Such gambling debt is unenforceable and uncollectible in the state where Plaintiff resides, and in the state where Defendant is located.

4.    Defendant has created monthly billing statements in which it seeks to collect such gambling debt from Plaintiff. Defendant charges interest on the gambling debt it seeks to collect, and has collected this interest, in such forms as numeric periodic rates, late fees, overlimit fees, annual fees, cash advance fees, and membership fees, all of which constitute interest under Office of the Comptroller of Currency Regulation 7.4001.

5.    In the state where Defendant is located, gambling debts are unenforceable and uncollectible. Defendant charges, and collects, interest on illegal gambling debt.

6.    The charge of a rate of interest on a debt which is illegal, unenforceable, and uncollectible is usurious, and constitutes a violation of 12 U.S.C. §85. Defendant has knowledge that the collection of interest on an illegal and unenforceable debt violates §85, which gives rise to the remedies included in §86.

7.    Further, Plaintiff, as well as the class described in the Complaint, is entitled to recover from Defendant "twice the amount of interest paid" during the class period described herein, up to the present date, which includes all numeric interest, late fees, overlimit fees, annual fees, cash advance fees, and other fees connected with the extension of credit to Plaintiff and those similarly situated.

8.    Plaintiff prays for the following relief:

a.  twice the amount of interest paid to Defendant by Plaintiff and the

class, derived from gambling debt incurred over the Internet;

b.  any additional relief, including equitable relief, to which the Plaintiff

may be entitled in the premises;

c.  attorney's fees and court costs.

### Violations of 12 U.S.C. §25a, The National Bank Act

Plaintiff expressly adopts and incorporates all factual allegations and state and

common law causes of action included in the original Complaint, and further avers as

follows:

9.  Defendant's actions violate 12 U.S.C. §25a which prohibits participation by

national banks in lotteries and related activities.

10.  12 U.S.C. §25a provides in relevant part that:

A national bank may not–

(1) deal in lottery tickets;

(2) deal in bets used as a means or substitute for participation in a lottery.

11.  By collecting gambling debt incurred over the Internet, Defendant is "dealing

in bets" in contravention of 12 U.S.C. §25a.

12.  The disregard of a command by a statute is a wrongful act and a tort.

Defendant's participation and *de facto* partnership with Internet casinos disregards the

command of §25a, violates public policy, and constitutes a prohibited activity. Defendants

have breached the duties owed to Plaintiffs, as members of the public, to refrain from

dealing in bets, which cause Plaintiffs' injuries and damages.

13.    The Restatement of the Law Second: Torts §286, provides:

> The court may adopt as the standard of conduct of a reasonable man the requirements of a legislative enactment or an administrative regulation whose purpose is found to be exclusively or in part
>
>      a.    To protect a class of persons which includes the one whose interest is invaded, and
>
>      b.    To protect the particular interest which is invaded, and
>
>      c.    To protect that interest against the kind of harm which has resulted, and
>
>      d.    To protect that interest against the particular hazard from which the harm results.

14.    12 U.S.C. §25a creates a standard of conduct as its purpose is to prevent

Defendants from dealing in lotteries and bets as evidenced by their participation in Internet

gambling, and the collection of Internet gambling debts. Plaintiffs have sustained injuries

and damages as a direct and proximate cause of Defendants' participation in these

prohibited activities.

15.    Plaintiff prays for the following relief:

      a.    a refund of the entirety of the gambling debt collected by Defendant

from Plaintiff and the class;

      b.    any additional relief, including equitable relief, to which the Plaintiff

may be entitled in the premises;

      c.    attorney's fees and court costs.

## Violations of 15 U.S.C. §1601, *et seq.*

Plaintiff expressly adopts and incorporates all factual allegations and state and common law causes of action included in the original Complaint, and further avers as follows:

16.     Defendant's actions in the course and conduct of their business in the billing of credit card charges for gambling debt incurred over the Internet violate the Truth in Lending Act, 15 U.S.C. §1637(b)(2)(B), as interpreted in Regulation Z, 12 C.F.R. §226.8. TILA was intended to protect consumers against inaccurate and unfair billing and credit card practices and creates specific duties for creditors, such as Defendant, and specific rights to information for debtors such as the Plaintiff.

17.     Duties owed by creditors under open end consumer credit plans to the obligors of those plans are described in §1637(b)(2)(B):

> (b) Statement required with each billing cycle:
>
> The creditor of any account under an open end consumer credit plan shall transmit to the obligor, for each billing cycle at the end of which there is an outstanding balance in that account or with respect to which a finance charge is imposed, a statement setting forth each of the following items to the extent applicable: . . .
>
> (2)     The amount and date of each extension of credit during the period, and a brief identification, on or accompanying the statement of each extension of credit in a form prescribed by the Board sufficient to enable the obligor either to identify the transaction or to relate it to copies of sales vouchers or similar instruments previously furnished. . .

S \I1\Internet Gambling\Pleadings\First Amendment to Complaint.wpd

5

18.    The regulations adopted by the Federal Reserve Board, Regulation Z, specify the manner in which credit transactions should be identified. 12 C.F.R §226.8 - Identification of Transactions, provides thusly:

> . . .(3) copy of credit document not provided - creditor and seller not same or related person(s). *When the creditor and seller are not the same or related persons, and an actual copy of the receipt or other credit document is not provided with the periodic statement, the creditor shall disclose the amount and date of the transaction; the seller's name; and the city, and state or foreign country where the transaction took place.* (Emphasis added.)

19.    Defendants have violated the specific statutory duties owed to Plaintiffs under 15 U.S.C. §1637 and 12 C.F.R. §226.8.

20.    Defendants' credit card statements fail to provide Plaintiffs with the name of the seller, the name of the city, and the foreign country where the Internet gambling transaction took place. Instead of providing the identity of the seller, which would be the web site or casino owner, Defendant instead includes the name of an e-commerce company which essentially acts as the financing arm for the gambling chips purchased by the Plaintiff. The foreign country where the seller resides is not disclosed.

21.    Plaintiff is entitled under TILA to be informed of the identity of the seller of the goods or services purchased, and the state or foreign country where the transaction occurred. By failing to provide this information, Defendant has violated TILA.

22.    As a consequence of Defendant's multiple breaches of its specific statutory duties, Plaintiffs are entitled to all damages, actual and statutory, allowed under TILA for each violation, plus costs and attorney's fees.

S \l1\Internet Gambling\Pleadings\First Amendment to Complaint.wpd

### Injunctive Relief under RICO, 18 U.S.C. §1961, *et seq.*

Plaintiff expressly adopts and incorporates all factual allegations and causes of action included in the original Complaint, and further avers as follows:

23.    Plaintiffs seek injunctive and equitable relief under RICO, 18 U.S.C. §1961, *et seq.*, to prevent and enjoin Defendant, a member of the enterprise previously described in the Complaint, from collecting and/or initiating efforts to collect, sports betting debt incurred as a consequence of gambling over the Internet.

24.    The Fifth Circuit has expressly declined to determine whether injunctive relief is available under RICO. *See Price v. Pinnacle Brands, Inc.*, 138 F.3rd 602 (5th Cir. 1998).

25.    This Court should enjoin Defendants from collecting sports betting gambling debt, which is clearly a violation of the Wire Act, 18 U.S.C. §1084(a).

### Declaratory Judgment - Internet Gambling Debt
### Unenforceable and Uncollectible Under State Law

Plaintiff expressly adopts and incorporates all factual allegations and state and common law causes of action included in the original Complaint, and further avers as follows:

26.    As an amendment to the declaratory judgment claims previously described in the Complaint, Plaintiff makes the following averments.

27.    Gambling debt is unenforceable under the law of the state of Plaintiffs' residence, as well as the law of the state where Defendant is located.

28.     Plaintiff asserts this claim on behalf of a class as described in the Complaint of each person who has incurred Internet gambling debt which was collected, or attempted to be collected, by Defendant.

29.     A justiciable controversy exists between the parties as to whether: (1) debt incurred while gambling over the Internet is unenforceable and uncollectible as a matter of state law; (2) whether Defendant has collected gambling debt which was unenforceable and uncollectible under state law; (3) whether, to the extent gambling debt remains unpaid, Plaintiff is entitled to an adjudication that such debt need not be paid to Defendant; and (4) to the extent that gambling debt has been paid to Defendant, whether Plaintiff is entitled to a refund of any gambling debt paid to Defendant.

30.     Plaintiff prays for the following relief:

a.     a declaratory judgment from this Court determining that debt incurred while gambling over the Internet constitutes gambling debt unenforceable and uncollectible under state law;

b.     for a permanent injunction enjoining Defendant from collecting any additional Internet gambling debt, or initiating efforts to collect same;

c.     For all damages, and other relief, available under state law;

d.     Attorney's fees;

e.     Interest and costs.

W. LEWIS GARRISON, JR. (GAR008)

OF COUNSEL:

GARRISON SCOTT GAMBLE & ROSENTHAL, P.C.
2224 First Avenue North
Birmingham, AL 35203
205-326-3336
205-326-3332 - facsimile


_____
BARRY G. REED


OF COUNSEL:

ZIMMERMAN REED
14646 N. Kierland Blvd., Suite 145
Scottsdale, AZ 85254-2762
480-358-6400
480-348-6415 - facsimile

## CERTIFICATE OF SERVICE

       I hereby certify that I have served a copy of the above and foregoing upon all
counsel of record this 9th day of April, 2003:

_____
Of Counsel

LEXSTAT kan stat ann 21-4302

KANSAS STATUTES ANNOTATED

*** THIS DOCUMENT IS CURRENT THROUGH THE 2002 SUPPLEMENT ***

CHAPTER 21. CRIMES AND PUNISHMENTS
ARTICLE 43. CRIMES AGAINST THE PUBLIC MORALS

**GO TO CODE ARCHIVE DIRECTORY FOR THIS JURISDICTION**

K.S.A. § 21-4302 (2002)

21-4302. Gambling, definitions.

(a) "Bet" means a bargain in which the parties agree that, dependent upon chance, one stands to win or lose something of value specified in the agreement. A bet does not include:

(1) Bona fide business transactions which are valid under the law of contracts including, but not limited to, contracts for the purchase or sale at a future date of securities or other commodities, and agreements to compensation for loss caused by the happening of the chance including, but not limited to, contracts of indemnity or guaranty and life or health and accident insurance;

(2) offers of purses, prizes or premiums to the actual contestants in any bona fide contest for the determination of skill, speed, strength, or endurance or to the bona fide owners of animals or vehicles entered in such a contest;

(3) a lottery as defined in this section;

(4) any bingo game by or for participants managed, operated or conducted in accordance with the laws of the state of Kansas by an organization licensed by the state of Kansas to manage, operate or conduct games of bingo;

(5) a lottery operated by the state pursuant to the Kansas lottery act;

(6) any system of parimutuel wagering managed, operated and conducted in accordance with the Kansas parimutuel racing act; or

(7) tribal gaming.

(b) "Lottery" means an enterprise wherein for a consideration the participants are given an opportunity to win a prize, the award of which is determined by chance. A lottery does not include:

(1) A lottery operated by the state pursuant to the Kansas lottery act; or

(2) tribal gaming.

(c) "Consideration" means anything which is a commercial or financial advantage to the promoter or a disadvantage to any participant.

Mere registration without purchase of goods or services; personal attendance at places or events, without payment of an admission price or fee; listening to or watching radio and television programs; answering the telephone or making a telephone call and acts of like nature are not consideration.

As used in this subsection, consideration does not include:

(1) Sums of money paid by or for participants in any bingo game managed, operated or conducted in accordance with the laws of the state of Kansas by any bona fide nonprofit religious, charitable, fraternal, educational or veteran organization licensed to manage, operate or conduct bingo games under the laws of the state of Kansas and it shall be conclusively presumed that such sums paid by or for such participants were intended by such participants to be for the benefit of the sponsoring organizations for the use of such sponsoring organizations in furthering the purposes of such sponsoring organizations, as set forth in the appropriate paragraphs of subsection (c) or (d) of section 501 of the internal



revenue code of 1986 and as set forth in K.S.A. 79-4701 and amendments thereto;

(2) sums of money paid by or for participants in any lottery operated by the state pursuant to the Kansas lottery act;

(3) sums of money paid by or for participants in any system of parimutuel wagering managed, operated and conducted in accordance with the Kansas parimutuel racing act; or

(4) sums of money paid by or for a person to participate in tribal gaming.

(d) (1) "Gambling device" means:

(A) Any so-called "slot machine" or any other machine, mechanical device, electronic device or other contrivance an essential part of which is a drum or reel with insignia thereon, and (i) which when operated may deliver, as the result of chance, any money or property, or (ii) by the operation of which a person may become entitled to receive, as the result of chance, any money or property;

(B) any other machine, mechanical device, electronic device or other contrivance (including, but not limited to, roulette wheels and similar devices) which is equipped with or designed to accommodate the addition of a mechanism that enables accumulated credits to be removed, is equipped with or designed to accommodate a mechanism to record the number of credits removed or is otherwise designed, manufactured or altered primarily for use in connection with gambling, and (i) which when operated may deliver, as the result of chance, any money or property, or (ii) by the operation of which a person may become entitled to receive, as the result of chance, any money or property;

(C) any subassembly or essential part intended to be used in connection with any such machine, mechanical device, electronic device or other contrivance, but which is not attached to any such machine, mechanical device, electronic device or other contrivance as a constituent part; or

(D) any token, chip, paper, receipt or other document which evidences, purports to evidence or is designed to evidence participation in a lottery or the making of a bet.

The fact that the prize is not automatically paid by the device does not affect its character as a gambling device.

(2) Gambling device does not include:

(A) Any machine, mechanical device, electronic device or other contrivance used or for use by a licensee of the Kansas racing commission as authorized by law and rules and regulations adopted by the commission or by the Kansas lottery or Kansas lottery retailers as authorized by law and rules and regulations adopted by the Kansas lottery commission;

(B) any machine, mechanical device, electronic device or other contrivance, such as a coin-operated bowling alley, shuffleboard, marble machine (a so-called pinball machine), or mechanical gun, which is not designed and manufactured primarily for use in connection with gambling, and (i) which when operated does not deliver, as a result of chance, any money, or (ii) by the operation of which a person may not become entitled to receive, as the result of the application of an element of chance, any money;

(C) any so-called claw, crane, or digger machine and similar devices which are designed and manufactured primarily for use at carnivals or county or state fairs; or

(D) any machine, mechanical device, electronic device or other contrivance used in tribal gaming.

(e) A "gambling place" is any place, room, building, vehicle, tent or location which is used for any of the following: Making and settling bets; receiving, holding, recording or forwarding bets or offers to bet; conducting lotteries; or playing gambling devices. Evidence that the place has a general reputation as a gambling place or that, at or about the time in question, it was frequently visited by persons known to be commercial gamblers or known as frequenters of gambling places is admissible on the issue of whether it is a gambling place.

(f) "Tribal gaming" has the meaning provided by K.S.A. 74-9802 and amendments thereto.

(g) "Tribal gaming commission" has the meaning provided by K.S.A. 74-9802 and amendments thereto.

HISTORY: L. 1969, ch. 180, § 21-4302; L. 1971, ch. 111, § 1; L. 1977, ch. 341, § 1; L. 1987, ch. 292, § 23; L. 1987, ch. 112, § 35; L. 1994, ch. 257, § 1; L. 1996, ch. 256, § 11; July 1.

LEXSTAT K.S.A. § 21-4304

KANSAS STATUTES ANNOTATED

*** THIS DOCUMENT IS CURRENT THROUGH THE 2002 SUPPLEMENT ***

CHAPTER 21. CRIMES AND PUNISHMENTS

ARTICLE 43. CRIMES AGAINST THE PUBLIC MORALS

**GO TO CODE ARCHIVE DIRECTORY FOR THIS JURISDICTION**

K.S.A. § 21-4304 (2002)

21-4304.  Commercial gambling.

Commercial gambling is:

(a) Operating or receiving all or part of the earnings of a gambling place;

(b) Receiving, recording, or forwarding bets or offers to bet or, with intent to receive, record, or forward bets or offers to bet, possessing facilities to do so;

(c) For gain, becoming a custodian of anything of value bet or offered to be bet;

(d) Conducting a lottery, or with intent to conduct a lottery possessing facilities to do so; or

(e) Setting up for use or collecting the proceeds of any gambling device.

Commercial gambling is a severity level 8, nonperson felony.

HISTORY:   L. 1969, ch. 180, § 21-4304; L. 1992, ch. 239, § 215; L. 1993, ch. 291, § 163; July 1.

LEXSTAT K.S.A. § 21-3104

KANSAS STATUTES ANNOTATED

**\*\*\* THIS DOCUMENT IS CURRENT THROUGH THE 2002 SUPPLEMENT \*\*\***

CHAPTER 21. CRIMES AND PUNISHMENTS

ARTICLE 31. PRELIMINARY

**GO TO CODE ARCHIVE DIRECTORY FOR THIS JURISDICTION**

K.S.A. § 21-3104 (2002)

21-3104.   Territorial applicability.

(1) A person is subject to prosecution and punishment under the law of this state if:

(a) He commits a crime wholly or partly within this state; or

(b) Being outside the state, he counsels, aids, abets, or conspires with another to commit a crime within this state; or

(c) Being outside the state, he commits an act which constitutes an attempt to commit a crime within this state.

(2) An offense is committed partly within this state if either an act which is a constituent and material element of the offense, or the proximate result of such act, occurs within the state. If the body of a homicide victim is found within the state, the death is presumed to have occurred within the state.

(3) A crime which is based on an omission to perform a duty imposed by the law of this state, is committed within the state, regardless of the location of the person omitting to perform such duty at the time of the omission.

(4) It is not a defense that the defendant's conduct is also a crime under the laws of another state or of the United States or of another country.

(5) This state includes the land and water and the air space above such land and water with respect to which the state has legislative jurisdiction.

HISTORY:   L. 1969, ch. 180, § 21-3104; July 1, 1970.

Source:  Legal > States Legal - U.S > Kansas > Agency & Administrative Materials > **KS Agencies & Attorney General Opinions, Combined** ↳
Terms:  **96-31**  (Edit Search)

*1996 Kan. AG LEXIS 31, \**

OFFICE OF THE ATTORNEY GENERAL OF THE STATE OF KANSAS

ATTORNEY GENERAL OPINION No. **96-31**

1996 Kan. AG LEXIS 31

March 25, 1996

**CORE TERMS:** bet, lottery, gambling, forwarding, conducting, nonperson, partly, win, gambling device, participating, misdemeanor, prosecuted, possessing, recording, telephone, severity, felony, commit

**SYLLABUS:**
**[\*1]**

Re: Crimes and Punishments; Kansas Criminal Code--Crimes Against the Public Morals--Gambling; Internet Gambling

Synopsis: Placing, receiving or forwarding a bet and participating in or conducting a lottery on the Internet violates Kansas criminal gambling statutes. If a bet is placed or a lottery is engaged in from a computer. 0 located in Kansas any person or entity participating in such crime may be prosecuted in this state. Cited herein: K.S.A. 21-3104; 21-4302; 21-4303; 21-4304; 21-4305; 21-4308; 22-2612

\* \* \*

**REQUESTBY:**

The Honorable Lana Oleen
State Senator, 22nd District
State Capitol, Room 136-N
Topeka, Kansas 66612

**OPINIONBY:**
CARLA J. STOVALL, Attorney General of Kansas; Julene L. Miller, Deputy Attorney General

**OPINION:**
As chairperson for the senate committee on federal and state affairs, you request our opinion regarding the legality of gambling via telephone lines. Specifically you question whether gambling over the Internet at virtual casinos located outside Kansas would be legal if the computer from which the bet is made is located within this state.

K.S.A. 21-4303 defines gambling as:

"(a) Making a bet; or

"(b) Entering or remaining in a gambling place with intent to make a bet,  **[\*2]** to participate in a lottery, or to play a gambling device.

"Gambling is a class B nonperson misdemeanor."

Commercial gambling is defined at K.S.A. 21-4304 as:

"(a) Operating or receiving all or part of the earnings or a gambling place;

"(b) **Receiving, recording, or forwarding bets or offers to bet** or, with intent to receive, record, or forward bets or offers to bet, possessing facilities to do so;

"(c) For gain, becoming a custodian of anything of value bet or offered to be bet;

"(d) **Conducting a lottery**, or with intent to conduct a lottery possessing facilities to do so; or

"(e) Setting up for use or collecting the proceeds of any gambling device.

"Commercial gambling is a severity level 8, nonperson felony." (Emphasis added.)

Installing communication facilities for gamblers is also a severity level 8, nonperson felony and permitting premises to be used for commercial gambling is a class B nonperson misdemeanor. K.S.A. 21-4308; 21-4305.

A bet is defined in K.S.A. 21-4302(a) as "a bargain in which the parties agree that, dependent upon chance, one stands to win or lose something of value specified in the agreement." The definition excludes **[*3]** certain conduct, such as lotteries conducted under the Kansas lottery act and wagering conducted in accordance with the Kansas parimutuel racing act. A lottery is defined as "an enterprise wherein for a consideration the participants are given an opportunity to win a prize, the award of which is determined by chance," but does not include a lottery operated by the state pursuant to the Kansas lottery act. K.S.A. 21-4302(b). **See State ex rel. Stephan v. Finney,**, 254 Kan. 632 (1994). Finally, a gambling place is defined as:

"Any place, room, building, vehicle, tent or location which is used for any of the following: Making and settling bets; receiving, holding, recording or forwarding bets or offers to bet; conducting lotteries; or playing gambling devices...." K.S.A. 21-4302(e).

Clearly, placing, receiving or forwarding a bet, or conducting a lottery, over the telephone or the Internet is illegal, with few exceptions, just as if the bet were exchanged or lottery conducted in person. There is no requirement that the participants be in each other's presence. However, it may appear more difficult to determine where the crime occurs if the commercial establishment is **[*4]** outside the state of Kansas and the bet is placed or the lottery entered from a computer terminal within the state.

K.S.A. 21-3104 establishes the criminal jurisdiction of this state as follows:

"(1) A person is subject to prosecution and punishment under the law of this

state if:

"(a) He commits a crime wholly or partly within this state; or

"(b) Being outside the state, he counsels, aids, abets, or conspires with another to commit a crime within this state; or

"(c) Being outside the state, he commits an act which constitutes an attempt to commit a crime within this state."

"(2) An offense is committed partly within this state if either an act which is a constituent and material element of the offense, or the proximate result of such act, occurs within the state...." *See State v. Grissom*, 251 Kan. 851, 886, 887 (1992). *See also* K.S.A. 22-2619.

In our opinion, if a bet is placed or a lottery entered into via a computer located in the state of Kansas, then the crime is committed partly within this state and participants in the crime may **[*5]** be prosecuted in this state.

Source: Legal > States Legal - U.S. > Kansas > Agency & Administrative Materials > **KS Agencies & Attorney General Opinions, Combined** ⓘ
Terms: **96-31** (Edit Search)
View: Full
Date/Time: Friday, September 26, 2003 - 6:53 PM EDT

About LexisNexis | Terms and Conditions

Copyright © 2003 LexisNexis, a division of Reed Elsevier Inc. All rights reserved

LEXSTAT ga code ann 13–8–1

OFFICIAL CODE OF GEORGIA ANNOTATED
Copyright © 2003 by The State of Georgia
All rights reserved.

*** CURRENT THRU THE 2003 REGULAR SESSION OF THE GENERAL ASSEMBLY ***

TITLE 13.  CONTRACTS

CHAPTER 8.  ILLEGAL AND VOID CONTRACTS GENERALLY

ARTICLE 1.  GENERAL PROVISIONS

*GO TO CODE ARCHIVE DIRECTORY FOR THIS JURISDICTION*

O.C.G.A. § 13–8–1  (2002)

§ 13–8–1.  Contracts to do immoral or illegal things

A contract to do an immoral or illegal thing is void. If the contract is severable, however, the part of the contract which is legal will not be invalidated by the part of the contract which is illegal.

HISTORY: Orig. Code 1863, § 2713; Code 1868, § 2707; Code 1873, § 2749; Code 1882, § 2749; Civil Code 1895, § 3666; Civil Code 1910, § 4251; Code 1933, § 20–501.



LEXSTAT O.C.G.A. § 13-8-2

OFFICIAL CODE OF GEORGIA ANNOTATED
Copyright © 2003 by The State of Georgia
All rights reserved.

*** CURRENT THRU THE 2003 REGULAR SESSION OF THE GENERAL ASSEMBLY ***

TITLE 13. CONTRACTS

CHAPTER 8. ILLEGAL AND VOID CONTRACTS GENERALLY

ARTICLE 1. GENERAL PROVISIONS

*GO TO CODE ARCHIVE DIRECTORY FOR THIS JURISDICTION*

O.C.G.A. § 13-8-2 (2002)

§ 13-8-2. Contracts contravening public policy generally

(a) A contract which is against the policy of the law cannot be enforced. Contracts deemed contrary to public policy include but are not limited to.

(1) Contracts tending to corrupt legislation or the judiciary;

(2) Contracts in general restraint of trade, as distinguished from contracts in partial restraint of trade as provided for in Code Section 13-8-2.1;

(3) Contracts to evade or oppose the revenue laws of another country;

(4) Wagering contracts;

(5) Contracts of maintenance or champerty.

(b) A covenant, promise, agreement, or understanding in or in connection with or collateral to a contract or agreement relative to the construction, alteration, repair, or maintenance of a building structure, appurtenances, and appliances, including moving, demolition, and excavating connected therewith, purporting to indemnify or hold harmless the promisee against liability for damages arising out of bodily injury to persons or damage to property caused by or resulting from the sole negligence of the promisee, his agents or employees, or indemnitee is against public policy and is void and unenforceable, provided that this subsection shall not affect the validity of any insurance contract, workers' compensation, or agreement issued by an admitted insurer.

HISTORY: Orig. Code 1863, § 2714; Code 1868, § 2708; Code 1873, § 2750; Code 1882, § 2750; Civil Code 1895, § 3668; Civil Code 1910, § 4253; Code 1933, § 20-504; Ga. L. 1970, p. 441, § 1, Ga. L. 1982, p. 3, § 13; Ga. L. 1989, p. 14, § 13; Ga. L. 1990, p. 1676, § 1.

LEXSTAT O.C.G.A. § 13-8-3

OFFICIAL CODE OF GEORGIA ANNOTATED
Copyright © 2003 by The State of Georgia
All rights reserved.

*** CURRENT THRU THE 2003 REGULAR SESSION OF THE GENERAL ASSEMBLY ***

TITLE 13. CONTRACTS

CHAPTER 8. ILLEGAL AND VOID CONTRACTS GENERALLY

ARTICLE 1. GENERAL PROVISIONS

***GO TO CODE ARCHIVE DIRECTORY FOR THIS JURISDICTION***

O.C.G.A. § 13-8-3 (2002)

§ 13-8-3. Gambling contracts

(a) Gambling contracts are void; and all evidences of debt, except negotiable instruments in the hands of holders in due course or encumbrances or liens on property, executed upon a gambling consideration, are void in the hands of any person.

(b) Money paid or property delivered upon a gambling consideration may be recovered from the winner by the loser by institution of an action for the same within six months after the loss and, after the expiration of that time, by institution of an action by any person, at any time within four years, for the joint use of himself and the educational fund of the county.

HISTORY Laws 1764, Cobb's *1851 Digest, p. 725;* Laws 1765, Cobb's *1851 Digest, p. 727;* Code 1863, § 2717; Code 1868, § 2711; Code 1873, § 2753; Code 1882, § 2753; Civil Code 1895, § 3671; Civil Code 1910, § 4256; Ga. L. 1924, p. 126. § 57; Code 1933, § 20-505.