

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2003 SEP 29  P 4: 46

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

IN RE: MASTERCARD INT'L, INC.       CIVIL ACTION
INTERNET GAMBLING                NO.  00-1321 & 00-1322
                                    SECTION "K" (5)

---

### FROM THE UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF ALABAMA

EVELYN L. BROWN

vs.                                    CV-99-A-778-N

MASTERCARD INTERNATIONAL
AND FIDELITY FEDERAL BANK

---

### DEFENDANT FIDELITY FEDERAL BANK'S
### MOTION TO DISMISS FIRST AMENDED COMPLAINT
### OR ALTERNATIVELY, MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P., Rules 12(b)(6), 12(b)(7), 19, and 56, Fidelity Federal

Bank ("Fidelity") hereby moves the Court to dismiss the remaining declaratory judgment

claims of plaintiff Evelyn L. Brown ("Brown"), as well as the claims of the putative class

she purports to represent. Fidelity asserts that there are no justiciable claims in this case

which survive the orders entered in this case. Fidelity further shows unto the Court that

there are no material disputes of fact or law related or pertaining to the claims in this case

and that it is entitled to a judgment as a matter of law.

Process
X  Dktd
CtRmDep
Doc. No.

Respectfully submitted,

R. PATRICK VANCE (LA Bar 13008)
Jones, Walker, Waechter, Poitevent,
    Carrère & Denègre L.L.P.
201 St. Charles Avenue, 49th Floor
New Orleans, Louisiana 70170-5100
Telephone (504) 582-8194
Telefax (504) 589-8194

ROGER L. BATES
TRACY R. DAVIS
Hand Arendall, L.L.C.
900 Park Place Tower
2001 Park Place North
Birmingham, Alabama 35203
Telephone (205) 324-4400

**Attorneys for Fidelity Federal Bank**

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Motion of Fidelity Federal Bank to Dismiss First Amended Complaint Or Alternatively, Motion for Summary Judgment, has been served by United States Mail, properly addressed and postage affixed, this the 29 day of September, 2003, upon all counsel of record, to-wit:

W. Lewis Garrison, Jr., Esq.
Kathryn H. Sumrall, Esq.
Honza J. Prchal, Esq.
Garrison and Sumrall, P.C.
2117 Magnolia Avenue South
Birmingham, Alabama 35205

Zimmerman Reed, P.L.L.P.
901 North Third Street
Minneapolis, Minnesota 55401

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

```
------------------------------------------------------------x
                                              :
                                              :    Civil Action
                                              :    MDL Nos. 1321 and 1322
IN RE: MASTERCARD INTERNATIONAL,              :
INC. INTERNET GAMBLING LITIGATION,            :    Section "K" (5)
                                              :
                                              :    Judge Duval
                                              :    Mag. Judge Chasez
                                              :
                                              :
                                              :
------------------------------------------------------------x
```

### FROM THE UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF ALABAMA

EVELYN L. BROWN

Vs.                                          CV-99-A-778-N

MASTERCARD INTERNATIONAL
AND FIDELITY FEDERAL BANK

<u>NOTICE OF HEARING</u>

PLEASE TAKE NOTICE that defendant, Fidelity Federal Bank, will bring

hearing the attached Motion to Dismiss First Amended Complaint or Alternatively, Motic

Summary Judgment, before this Court at the United States District Court, 500 Camp Str

Room C352, New Orleans, Louisiana, on the 3rd day of December, 2003, at 10:00 a.m

soon thereafter as can be heard.

{N1042570.1}                                 -1-

_[signature]_

R. Patrick Vance (La. Bar No. 13008)
JONES, WALKER, WAECHTER, POITEVENT,
   CARRERE & DENEGRE, L.L.P.
201 St. Charles Avenue, 49th Floor
New Orleans, Louisiana 70170-5100
Telephone (504) 582-8194
Telefax (504) 589-8194


ROGER L. BATES
TRACY R. DAVIS
Hand Arendall, L.L.C.
900 Park Place Tower
2001 Park Place North
Birmingham, Alabama 35203
Telephone (205) 324-4400
Telefax (205) 322-1163

_Attorneys for Defendant  Fidelity Federal Bank_


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Notice of Hearing has been served on the below-named parties by placing a copy of same in the U. S. Mail, postage prepaid and properly addressed, this 29th day of September, 2003.

W. Lewis Garrison, Jr.
Garrison, Scott, Gamble & Rosenthal, P.C.
2224 1st Avenue North
Post Office Box 11310
Birmingham, Alabama 35202

Barry G. Reed
Zimmerman Reed L.L.P.
651 Nicollet Mall, Suite 501
Minneapolis, Minnesota 55402

_[signature]_

### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

IN RE: MASTERCARD INT'L, INC.          CIVIL ACTION
INTERNET GAMBLING                      **NO. 00-1321 & 00-1322**
                                       SECTION "K" (5)

---

### FROM THE UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF ALABAMA

EVELYN L. BROWN

vs.                                    CV-99-A-778-N

MASTERCARD INTERNATIONAL
AND FIDELITY FEDERAL BANK

---

### BRIEF OF DEFENDANT FIDELITY FEDERAL BANK'S
### IN SUPPORT OF ITS MOTION TO DISMISS FIRST AMENDED COMPLAINT
### OR ALTERNATIVELY, MOTION FOR SUMMARY JUDGMENT

This Court ordered Defendant Fidelity to file a Motion to Dismiss or Motion for

Summary Judgment, addressing jurisdiction and the merits in this case. This brief is in

written in support of its motion that complies with the order.

## STATEMENT OF JURISDICTION

In her Complaint, as amended, Plaintiff Brown has pled four causes of action against Defendant Fidelity:[1] two were alleged RICO violations, 18 U.S.C. §§ 1961-1968, which were dismissed by this Court's order of September 3, 2003. The two remaining counts are declaratory judgment actions sought under the Federal Declaratory Judgment Act, 28 U.S.C. 2201, based on alleged violations of federal and state law.

Through her Complaint, as amended, the plaintiff acknowledged that the Alabama federal district court had original and supplemental jurisdiction over the claims she asserted. *Complaint*, at ¶ 8. Following the filing of her complaint, Brown requested that all of her claims be consolidated and coordinated under the authority of 28 U.S.C. § 1407.[2] Based in part upon the plaintiff's request, this case, along with other similar putative class actions, was ultimately referred to the MultiDistrict Litigation Panel for consolidation and coordination of pretrial proceedings.[3]

---

[1] Brown announced that "[t]his is an action brought for [RICO] violations ... and declaratory relief." *First Amended Class Action Complaint ("Complaint")*, at ¶ 7.

[2] 28 U.S.C. § 1407 provides:
When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings, Such transfers shall be made by the judicial panel on multidistrict litigation authorized by this section upon its determination that transfers of such proceedings will be for the convenience of the parties and witnesses and will promote the just and efficient conduct of such actions.

[3] By its nature, complex multidistrict litigation presents the potential for conflicting and duplicative discovery and other pretrial procedures. The transfer to a single jurisdiction, for pretrial proceedings, of numerous cases pending in various district courts, affords the opportunity for centralized, coordinated, and consolidated management, thereby avoiding the chaos of conflicting decisions and fostering economy and efficiency in judicial administration. *In re Air Crash off Long Island*, 965 F. Supp. 5, 7 (S.D.N.Y. 1997). As requested by the *Brown* plaintiff, the Panel originally consolidated these internet gambling pretrial proceedings in order to "prevent duplicative discovery, eliminate the possibility of conflicting rulings and substantially conserve the time and efforts of the parties, the witnesses and the federal judiciary." *In re Resource Exploration, Inc. Securities Litigation*, 483 F. Supp. 817, 821 (J.P.M.L. 1980).

Undisputedly, this Court exercised federal question or original jurisdiction to decide the numerous RICO issues in Brown's Complaint. This Court is authorized to continue exercising jurisdiction under its supplemental authority as shown below.

**A.    This Court retains supplemental jurisdiction over this matter.**

28 U.S.C.S. § 1367(a) provides that a federal district court shall have supplemental jurisdiction over all other claims that are so related to claims in the action within the court's original jurisdiction that they form part of the same case or controversy. Because Plaintiff Brown invoked this supplemental jurisdiction statute in her own Complaint, it would be disingenuous to now argue that her declaratory judgment actions are not so related to her RICO allegations to form part of the same case or controversy.

Should she attempt to do so, the federal court should find that the claims comprise the "same case or controversy" for purposes of supplemental jurisdiction because the multiple remedies stem from a single wrong. *ITT Commercial Fin. Corp. v. Unlimited Automotive, Inc.*, 814 F. Supp. 664 (N.D. Ill. 1992). Brown alleges that Fidelity's unlawful actions with regard to a credit transaction entitle her to monetary and declaratory relief. Brown's declaratory judgment action is simply an alternative remedy to the RICO allegations. When claims in the complaint arise from the same conduct, and are controlled by the same legal issues, the court has supplemental jurisdiction over related claims even if it lacks independent basis for federal subject matter jurisdiction. *Patterson Enterprises v. Bridgestone/Firestone, Inc.*, 812 F. Supp. 1152 (D. Kan. 1993).

It is inconsequential that the plaintiff has asserted violations of state law as a basis for her declaratory judgment action. In *Miller v. Brooks (In re Am. Honda Motor Co.)*, 315 F.3d 417 (4th Cir. 2003), the district court determined that it possessed subject-

matter jurisdiction over the MDL Proceedings under the federal question statute and the supplemental jurisdiction statute when the class action complaint raised claims under both federal and state law. Federal courts may exercise jurisdiction over a state claim if the state and federal claims "derive from a common nucleus of operative fact." *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966). In *Gibbs*, the Supreme Court held that jurisdiction may properly be exercised if "plaintiff's claims are such that he ordinarily be expected to try them all in one judicial proceeding." *Id.*

Brown seeks, in her remaining Counts I and II, declaratory relief under the Federal Declaratory Judgment Act, 28 U.S.C. 2201, premised upon alleged violations and both federal and state law. This Court has broad discretion on whether to exercise jurisdiction on declaratory judgment actions brought under the Federal Declaratory Judgment Act. *American Cas. Co. v. Continisio*, 819 F. Supp. 385 (D.N.J. 1993).

The exercise of supplemental jurisdiction is not always mandatory as Section 1367(c) provides that the district court "may decline to exercise supplemental jurisdiction" when:

> (1)    if the claim raises a novel or complex issue of state law; or
>
> (2)    if the state law claim substantially predominates; or
>
> (3)    if all federal claims have been dismissed; or
>
> (4)    if, in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

Only section (3) could arguably be at issue. And, even then there exists a question as to whether all the federal claims have been dismissed, as the plaintiff seeks a remedy under a federal statute: the Federal Declaratory Judgment Act. Nevertheless, even if the plaintiff could successfully argue that dismissal of the RICO claims was a dismissal of all

federal claims, this Court is not required to decline jurisdiction.   28 U.S.C.A. §

1367(c)(3) (Supp. 1992); Jon D. Corey, 1995 B.Y.U.L.Rev. 1263, *COMMENT: The*

*Discretionary Exercise of Supplemental Jurisdiction Under the Supplemental Jurisdiction*

*Statute* (stating "most courts have...held that dismissal of the federal claim does not

mandate dismissal or remand of the supplemental claims").

Indeed, Fidelity argues that the interests of judicial economy and efficiency in

multidistrict proceedings are best served by retaining supplemental jurisdiction over the

declaratory judgment counts in Brown's Complaint, just as in the case of *In re Ford*

*Motor Co. Ignition Switch Prods. Litig.*:

> [T]he court denied the Veideman plaintiffs' motion, finding that it had
> always had federal subject matter jurisdiction over the case and that it
> continued to do so. The court noted that it...had federal question
> jurisdiction under 28 U.S.C. § 1331 after the Veideman plaintiffs asserted
> their Magnuson-Moss Act claims in the Consolidated First Amended
> Class Action Complaint. The court also noted that it had always had
> supplemental jurisdiction over the pendent state law claims under 28
> U.S.C. § 1367(a), and that it continued to have supplemental jurisdiction
> to decide defendants' motions to dismiss those claims after it dismissed the
> Veideman plaintiffs' Magnuson-Moss Act claims on September 30, 1997.
> The court specifically considered whether it should decline to exercise
> supplemental jurisdiction over the Veideman plaintiffs' state law claims
> after dismissing the Magnuson-Moss Act claim over which it had original
> jurisdiction, see 28 U.S.C. § 1367(c)(3), exercising its discretion in favor
> of maintaining supplemental jurisdiction; the court also found that its
> continued exercise of supplemental jurisdiction under § 1367 over the
> remaining state law claims would further the goals of multidistrict
> litigation under § 1407.

39 F. Supp. 2d 458, 464-65 (D.N.J. 1999) (citations omitted).

The Courts consider various factors when exercising its supplemental jurisdiction,

such as the length of time the case has been pending, the procedural posture of the case,

complexity of supplemental claims, convenience to parties, and judicial economy.  Each

of these factors weighs heavily in favor of the Court exercising its supplemental

jurisdictional authority.  In this case, like *Taylor v. First of Am. Bank-Wayne*, 973 F.2d 1284, 1287-89 (6th Cir. 1992), the district court has held this case for over three years and it has been hotly contested.  Prior to its transfer to this Court, the parties had merely filed a 12(b)(6) motion, which was never heard.  There had been no answer filed or discovery taken.

This Court has recently determined many of the issues related to federal statutes that have been implicated by the Brown plaintiff in her remaining declaratory judgment action.  Remand would waste judicial resources and result in additional delay for the parties in concluding this matter.  "[A]fter there has been substantial expenditure in time, effort, and money in preparing the dependent claims, knocking them down with a belated rejection of supplemental jurisdiction may not be fair.  Nor is it by any means necessary." *Purgess v. Sharrock*, 33 F.3d 134, 138 (2d Cir. 1994) (upholding the district court's weighing of economy, convenience and fairness with respect to supplemental claims after dismissal of federal claim).

The Alabama state gambling laws that have been cited by plaintiff in support of her declaratory judgment action are straightforward. *Timm v. Mead Corp.*, 32 F.3d 273, 277 (7th Cir. 1994); *ITT Commercial Fin. Corp.*, 814 F. Supp. at 669 (relying on judicial economy and efficiency).  In addition, if these cases are remanded back to their respective district courts, the possibility that courts in two or more states might certify different actions covering the same nationwide class poses significant concerns.  Accordingly, this Court not only has the authority but should exercise supplemental jurisdiction in this case in order to "promote the just and efficient conduct" and further goals of multidistrict litigation.

**B.    Alternatively, this Court has diversity jurisdiction according to the plaintiff's Complaint.**

Though never tested in any court, Brown has pled that she is an Alabama resident; Fidelity is a California corporation with its principal place of business in California. *Complaint*, at ¶ 4, 6. She further states that that the "amount in controversy exceeds $75,000 exclusive of interest, costs and attorneys' fees." *Id.* at ¶ 9. Brown's own Complaint cites diversity under 28 U.S.C. 1332 as a basis for the district court's jurisdiction over her claims. *Id.* at ¶ 8.

Irrespective of which authority this Court utilizes to exercise jurisdiction, the jurisdictional grant of Section 1407 is intended to grant multidistrict judges in the transferee court the ability to decide upon all pretrial motions. 28 U.S.C. § 1407 (providing for the remand of the case to the district from which it was transferred, at or before conclusion of pretrial proceedings, "unless it shall have been previously terminated."); *Kaiser Industries Corp. v. Wheeling-Pittsburgh Steel Corp.*, 328 F. Supp. 365 (D.C. De. 1971). Specifically, judges acting for the multidistrict panel have the authority and power to hear and decide dispositive motions like motions for summary judgment. *Id.*; *see also In re Agent Orange Prod. Liability Litigation*, 597 F. Supp. 740 (D.C.N.Y. 1984) (may handle all matters related to class certifications and other dispositive motions); *Humphreys v. Tann*, 487 F.2d 666, 668 (6th Cir. 1973). Thus, this Court has the ability to hear and adjudge this dispositive motion.

## STATEMENT OF FACTS

Upon the transfer of the multidistrict litigation to this Court, this Court requested that plaintiffs' counsel present its two best cases for its consideration of the RICO claims. The factual and legal allegations by Brown are virtually identical to those presented by

the "test" plaintiffs, Thompson and Bradley, whose Complaints this Court have dismissed by Judgment with Order and Reasons dated February 23, 2001.

Brown similarly sued, Fidelity, an issuing bank, alleging violations of federal and state law with respect to Fidelity's "involvement" in internet casinos. For the purposes of this motion, Fidelity shall assume the facts alleged in Brown's Complaint as accurate: On July 1, 1999, Brown voluntarily placed bets by activating an internet gambling website called Easybets. *Complaint*, ¶ 23. Brown disclosed her MasterCard number, issued by Fidelity, "authorized bets" on that number, and "placed wagers" on major league baseball games in the amount of $24. *Id.* Brown paid for the $24 transaction on her Fidelity Mastercard account. *Id.*

Brown brings a putative nationwide class action on behalf of all voluntary participants in the internet gambling industry against Fidelity, the bank which simply issued Brown a credit line. *Id.* at ¶ 11-17. The RICO claims have been dismissed and two declaratory judgment counts remain.

> ### A.    Brown's claims under the Declaratory Judgment Act should be dismissed because Fidelity has not engaged in conduct that violates the federal statutes cited in the Complaint and thus no actual controversy exists for purposes of  28 U.S.C. § 2201.

In support of her first declaratory judgment action, Brown states that an

> actual controversy exists between the parties within the meaning of 28 U.S.C. § 2201. [Fidelity has] alleged that Plaintiff is indebted to them in varying amounts. Plaintiff denies owing any such obligation because such obligations are unenforceable illegal gaming debts....Plaintiff is entitled to a declaratory judgment declaring said contracts to be void and/or voidable, and to their outright cancellation, and to reimbursement of all payments made upon such debts and all interest and penalties collected by [Fidelity].

Based on her Complaint's caption, "COUNT I--DECLARATORY JUDGMENT: UNLAWFUL CONTRACT VOID AND/OR VOIDABLE UNDER FEDERAL LAW", Brown apparently seeks declaratory judgment under federal law. The federal statutes that Brown has cited against Fidelity include:

   (1)   18 U.S.C. § 1084 (Wire Act),

   (2)   18 U.S.C. § 1952 (Travel Act),

   (3)   18 U.S.C. § 1955 (Prohibition of Illegal Gambling Business)

   (4)   18 U.S.C. § 1957 (Engaging in Monetary Transactions in Criminally-Derived Property)

   (5)   18 U.S.C. § 1962(a) (RICO Enterprise Liability)

   (6)   18 U.S.C. § 1962(c) (RICO Aiding and Abetting Liability).

The complaint must, at a minimum, set forth specific facts which give the Court reason to believe that the plaintiff may be able to establish her legal claims. Brown cannot do so and therefore her request for declaratory relief fails.

### 1.   The Wire Act, 18 U.S.C. § 1084

The Wire Act provides:

> (a)  Whoever being engaged in the business of betting or wagering knowingly uses a wire communication facility for the transmission in interstate or foreign commerce of bets or wagers or information assisting in the placing of bets or wagers on any sporting event or contest, or for the transmission of a wire communication which entitles the recipient to receive money or credit as a result of bets or wagers, or for information assisting in the placing of bets or wagers, shall be fined under this title or imprisoned...

### a.   Brown cannot show that Fidelity is "in the business of betting or wagering" as required by the Wire Act.

Fidelity is a federally chartered savings association organized and operating under

the Home Owners' Loan Act of 1933, as amended, 12 U.S.C. §§ 1461 *et seq.* ("HOLA").

As such, Fidelity is a "federal instrumentality" created under federal law to serve the

important federal purposes specified by Congress of making home mortgage, credit card,

and other consumer loans and certain other specified services available to the public.

Fidelity is chartered, regulated, and examined by the Office of Thrift Supervision

("OTS"). It is <u>not</u> "engaged in the business of betting or wagering," which is a prerequisite

under the Wire Act.

The Fifth Circuit Pattern Jury Instructions reveal that to be in the business of

betting or wagering, a defendant must accept bets placed by others on a regular basis.

Pattern Jury Instructions (Criminal Cases) -- Fifth Circuit § 2.50 (West 1990). Fidelity

did not place a bet, the plaintiff did. Fidelity also did not "accept" a bet, the internet

casino did. Fidelity simply issued a line of credit to the plaintiff Brown, who voluntarily

participated in illegal activities with that line of credit. This Court has previously decided

that "making those credits available is not a violation of law." Order and Reasons, p. 23.

Brown's allegation that Fidelity participated by providing her with credit, which she then

voluntarily used to gamble, simply does not constitute an allegation that Fidelity is

engaged in the business of betting or wagering. *See, e.g., Cie v. Comdata Network*, 656

N.E.2d 123, 125-26 (Ill. Ct. App. 1995).

    **b.**  **Brown has pled no facts to support her bald
assertion that Fidelity "knowingly" used a wire
communication facility.**

Moreover, the Wire Act requires a showing of <u>knowledge</u>. *See* 18 U.S.C. §

1084(a) ("Whoever...knowingly uses a wire communication facility..."). However,

Brown pleads <u>no facts</u> supporting an inference that Fidelity knew or should have known

that her illicit purchase was actually a gambling transaction. Without explaining how or why, Brown simply "assign[s]" to Fidelity detailed knowledge of the nature of the plaintiff's transactions. The Complaint attempts to place an impossible burden of discovery on Fidelity without articulating any manner in which Fidelity could have discovered the true nature of the transaction. Fidelity did not know, and had no duty to discover, that the charge for $24 from "EasyBets" originated from a so-called internet casino.

Brown's declaratory judgment action premised on the Wire Act should be dismissed with prejudice.

### 2.      The Travel Act, 18 U.S.C. § 1952

This Court summarily dismissed, as it should here, the "test" plaintiffs' Travel Act claim stating "there simply is no cause of action for those crimes unless the defendants committed an unlawful activity in violation of some other state or federal law." Out of an abundance of caution, Fidelity argues that the Travel Act cannot be a basis for Brown's declaratory judgment action.

#### a.      No private cause of action.

The Travel Act does not provide a private cause of action for the violation independently of RICO claims. *See* 18 U.S.C. § 1952; *Bajorat v. Columbia-Breckenridge Development Corp.*, 944 F.Supp. 1371 (N.D. Ill. 1996) (no private right of action under Travel Act).

#### b.      Brown cannot show the requisite intent to carry on
#### unlawful activity.

In addition, the Travel Act requires <u>intent</u> to carry on unlawful activity. *See* 18

U.S.C. § 1952(a) ("Whoever...uses the mail...with intent..."). As detailed above, Fidelity had no knowledge that Brown's purchase on her Fidelity Mastercard was actually a gambling transaction. Because the plaintiff cannot show that Fidelity acted with specific intent to promote any illegal activity, her claim based on the Travel Act are due to be dismissed. *United States v. Vaccaro*, 816 F.2d 443 (9th Cir. 1987); *United States v. Polowichak*, 783 F.2d 410 (4th Cir. 1986).

### 3.    Prohibition of Illegal Gambling Business, 18 U.S.C. § 1955

Brown has not sufficiently alleged any of the necessary elements of a violation of 18 U.S.C. § 1955. Particularly, Section 1955 requires, at a minimum, "general criminal intent," *i.e.*, "that a defendant knew that his or her act was one of participation in gambling." *See U.S. v. O'Brien*, 131 F.3d 1428, 1430 (10th Cir. 1997) and cases cited therein. As discussed previously, Fidelity did not have the requisite knowledge to violate this statute.

Section 1955 is reserved for those who, for example, own stock in illegal casinos, *United States v. Lee*, 173 F.3d 809 (11th Cir. 1999), operate elaborate bookmaking and money-laundering schemes, *United States v. Miller*, 22 F.3d 1075, 1077 (11th Cir. 1994), or place and operate illegal video poker machines, *United States v. Grey*, 56 F.3d 1219 (10th Cir. 1995). Fidelity's actions in merely processing one or two credit-card transactions initiated by the plaintiff can in no way be construed as conducting, financing, managing, supervising, directing, or owning an illegal gambling operation.

4.      **Engaging in Monetary Transactions in Criminally-Derived Property, 18 U.S.C. § 1957**

First, the declaratory judgment actions based on § 1957 fail because of the same *scienter* defect that proves fatal to the rest of the plaintiff's claims. Section 1957 requires actual knowledge that the defendant was engaging in transactions with criminally-derived property. *United States v. Baker*, 19 F.3d 605, 614 (11th Cir. 1994). "The statute requires that the defendant know that the property is 'criminally derived.'" *Id.*

Furthermore, § 1957 itself requires that a separate and distinct predicate criminal act be completed prior to the monetary transaction at issue. *United States v. Christo,* 129 F.3d 578, 579-80 (11th Cir. 1997); *United States v. Gregg*, 179 F.3d 1312, 1315-16 (11th Cir. 1999). As this Court has determined by dismissing the RICO claims, there are simply no predicate criminal acts in this case. Therefore, the plaintiff's claims premised on 18 U.S.C. § 1957 are without merit and are due to be dismissed.

5.      **RICO Enterprise Liability, 18 U.S.C. § 1962(a)**

This Court has already addressed liability under 1962(a) against issuing banks like Fidelity and determined that two of the three RICO prerequisites necessary to establish such a violation, *i.e.*, a pattern of racketeering activity and an enterprise, had not been met. Order and Reasons, pp. 25-33. Accordingly, Fidelity is entitled to the same finding in the *Brown* case.

6.      **RICO Aiding and Abetting Liability, 18 U.S.C. § 1962(c)**

Since this Court also addressed 1962(c) in the "test" cases and found that liability under this section "was eliminated by the Court's holding in Central Bank", Fidelity is

entitled to the same finding in this case.  Order and Reasons, pp. 44-48.

Because Fidelity has not engaged in the conduct, or violated the federal laws, implicated by Brown, she is not entitled to declaratory relief.

> **B.    Brown's claims under the Declaratory Judgment Act should be dismissed because Fidelity has not engaged in conduct that violates the state statutes cited in the Complaint and thus no actual controversy exists for purposes of  28 U.S.C. § 2201.**

In support of her second declaratory judgment action, Brown states that an

> actual and justiciable controversy exists between the parties within the meaning of 28 U.S.C. § 2201.  [Fidelity has] alleged that Plaintiff is indebted to them, and have undertaken efforts to collect gambling debts... Plaintiff denies owing any such obligation, because such obligations are unenforceable, illegal, and void gambling debts under Alabama law.

*Complaint*, at ¶ 60.  Plaintiff here, like in Count I, also seeks a declaratory judgment, but under state law, that her gambling contracts are unenforceable and uncollectible.  *Id.* at ¶ 66.

This Court has ruled on this issue.  In its recent Order and Reasons dated July 30, 2003, it expressly held that "the relevant credit card transactions occurred prior to any gambling and thus there is no possibility that plaintiffs can prevail on their claim that the defendants violated state law by 'gambling over the Internet.'"  As such, Brown's claim for declaratory judgment is due to be dismissed without more.

Fidelity, out of an abundance of caution, shows why Brown's alleged state violations under sections 13A-12-20, 13A-12-22, 13A-12-27, and 8-1-150(a) of the Alabama Code are insufficient for a declaratory judgment action.

### 1.    Ala. Code § 13A-12-20

Plaintiff Brown asserts § 13A-12-20 "criminalizes gambling." This code section merely defines gambling and related terms and therefore does not present a state law upon which a declaratory judgment could lie.

Accepting her allegations as true, Brown is guilty of a crime. Alabama Code section 13A-12-21 provides a "person commits the crime of simple gambling if he knowingly advances or profits from unlawful gambling activity as a player." Brown acknowledges that gambling is illegal in Alabama and affirms that she voluntarily gambled on an internet website. *Complaint*, at ¶ 23, 62. As stated by this Court, she is in

> a precarious situation because of [her] own voluntary act[] of internet gambling. Plaintiff's own acts of accessing the internet, locating the casinos, entering [her] information, and playing...games, are all intervening causes that break the chain of causation with respect to the defendants' alleged activities, even if they were illegal. See generally Laborers Local 17 Health and Benefit Fund v. Philip Morris, Inc., 191 F.3d 229, 240 (2d Cir. 1999).

Order and Reasons, p. 51. Under Alabama law, a party who has violated the law is not entitled to recover. *Thagard v. Brock*, 210 So. 2d 821 (Ala. 1968) ("a party who has violated the law does not come with clean hands"); *Treadwell v. Torbert*, 119 Ala. 279, 281, 24 So. 54, 55 (1898).

Due to her voluntary conduct, plaintiff is estopped from proceeding with this action against Fidelity as she waived her right to recover under the unclean hands defense and the doctrine of *in pari delicto. See, e.g., Oden v. Pepsi-Cola Bottling Co.*, 621 So.2d 953 (Ala. 1993); *Boykin v. Magnolia Bay, Inc.*, 570 So.2d 639 (Ala. 1990).

### 2. Ala. Code § 13A-12-22

Brown also relies on Alabama Code § 13A-12-22 as a basis for her declaratory judgment action. This section provides that a "person commits the crime of promoting gambling if he knowingly advances or profits from unlawful gambling activity otherwise than as a player." Ala. Code § 13A-12-22 (1975).

A "person 'advances gambling activity' if he engages in conduct that materially aids in any form of gambling activity," such as arranging financial phases or other phase of operation. § 13A-12-20(1). Brown's declaratory judgment action based on § 13A-12-22 fails because of the same *scienter* defect that proves fatal above as it requires actual knowledge that the defendant was advancing or profiting from gambling, and Fidelity had no such knowledge. Brown has failed to plead facts showing otherwise.

### 3. Ala. Code § 13A-12-27

Section 13A-12-27 of the Alabama Code makes it a crime to knowingly possess a slot machine or other gambling device with the intent that it be used in the advancement of gambling. Brown suggests Fidelity's possession of a computer violates this section. To date, an Alabama court has not found a computer to be violative of this section. Besides, this argument reaches ludicrous results, as a significant number of households possessing computers would be guilty of this crime.

Like 13A-12-22, this Code section requires knowledge and, when not a slot machine, an intent to use the device in gambling activities. As shown above, Fidelity had no such knowledge and Brown has failed to show any such intent by Fidelity.

{N1042117.1}                                    -19-

4.    **Ala. Code § 8-1-150(a)**

Brown cites Alabama Code § 8-1-150(a), which is also inapplicable to Fidelity:

> All contracts founded in whole or in part on a gambling consideration are void.  Any person who has paid any money or delivered anything of value lost upon any game or wager may recover such money, thing, or its value by an action commenced within six months from the time of such payment or delivery.

Ala. Code § 8-1-150 (1975) is of no avail unless the lender <u>knew</u> that the credit advanced was being used for wagering.  *Osborn v. Pointer*, 128 So.2d 530 (Ala. App. 1961).  As established earlier, Fidelity did not know, and had no reason to know, that Brown's illicit purchase from "Easybets" was used for wagering.  Brown has further presented no facts to support such a finding.

C.    **Brown has failed to join an indispensable party.**

In addition, Brown's complaint should also be dismissed because Brown has failed to join EasyBets, the Internet casino, which is an indispensable party under Fed. R. Civ. P. 19(a).  *See, e.g.*, *Tick v. Cohen*, 787 F.2d 1490, 1493 (11th Cir. 1986).  If Brown fails to join EasyBets, or is unable to join it, her Complaint should be dismissed.

## CONCLUSION

For the foregoing reasons, Fidelity moves the Court to dismiss each and every claim made in the plaintiff's First Amended Class Action Complaint with prejudice, and award the defendants such other, further, relief as the Court deems just and proper as there are no justiciable claims surviving the orders entered and there are no material disputes of fact or law related or pertaining to the claims in this case.

Respectfully submitted,

R. PATRICK VANCE (LA Bar 13008)
Jones, Walker, Waechter, Poitevent,
    Carrère & Denègre L.L.P.
201 St. Charles Avenue, 49th Floor
New Orleans, Louisiana 70170-5100
Telephone (504) 582-8194
Telefax (504) 589-8194


ROGER L. BATES
TRACY R. DAVIS
Hand Arendall, L.L.C.
900 Park Place Tower
2001 Park Place North
Birmingham, Alabama 35203
Telephone (205) 324-4400

**Attorneys for Fidelity Federal Bank**

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing Motion of Fidelity Federal Bank to Dismiss First Amended Complaint Or Alternatively, Motion for Summary Judgment, has been served by United States Mail, properly addressed and postage affixed, this the _2th_ day of September, 2003, upon all counsel of record, to-wit:

W. Lewis Garrison, Jr., Esq.
Kathryn H. Sumrall, Esq.
Honza J. Prchal, Esq.
Garrison and Sumrall, P.C.
2117 Magnolia Avenue South
Birmingham, Alabama 35205

Zimmerman Reed, P.L.L.P.
901 North Third Street
Minneapolis, Minnesota 55401