FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

SEP 2 9 2003

LORETTA G. WHYTE
CLERK

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

OO—MD—132?

DANIEL N. SILVERLIEB, on behalf of all     CIVIL ACTION NO. 00-MD-1990
others similarly situated,

                    Plaintiffs        SECTION "K" (5)

v.

MASTERCARD INTERNATIONAL, INC.,
and PEOPLE'S BANK CORPORATION,

                    Defendants

                         - and –

DANIEL N. SILVERLIEB, on behalf of all     CIVIL ACTION NO. 00-MD-1995
others similarly situated,

                    Plaintiffs        SECTION "K" (5)

v.

VISA INTERNATIONAL, INC.,
and PEOPLE'S BANK CORPORATION,

                    Defendants

### CONSOLIDATED MOTIONS OF DEFENDANT PEOPLE'S BANK TO DISMISS UNDER RULE 12, FED.R.CIV.P., FOR SUMMARY JUDGMENT UNDER RULE 56, FED.R.CIV.P. AND, IN THE ALTERNATIVE, TO TRANSFER

Defendant People's Bank, pursuant to the order of this Court, files its consolidated motions with regard to the claims that remain pending against it in each of the two above-captioned matters. Because the complaints involve the exact same parties, a single credit card account, and virtually identical factual allegations, and

Fee
Process
X Dktd
CtRmDep
Doc. No. 110

because each of the complaints suffers from the same fatal deficiencies, Defendant will assert the motions comprehensively with a single filing relevant to each of the two cases.

Defendant People's Bank moves to dismiss the remaining claims and causes of action against it on the following grounds:

1.     Under Rule 12(b)1 for lack of subject matter jurisdiction:  a) No justiciable case or controversy exists between the parties as any claims asserted have been rendered moot; and b) No federal questions remain pending in this case, and no diversity of citizenship exists between the parties.  Any remaining state law claims should be dismissed pursuant to 28 U.S.C. § 1367(c).

2.     Under Rule 12(b)2 for lack of personal jurisdiction over Defendant People's Bank.  People's Bank is a citizen of the State of Connecticut and does not conduct any business in the districts (the Southern District of New York and the Northern District of California) in which the corresponding actions were originally filed, nor do any of the acts or omissions complained of have any connection with the filing districts.

3.     Under Rule 12(b)3 for improper venue, as venue does not lie in either of the districts in which this matter was originally commenced.

4.     Under Rule 12(b)6 on the basis that the complaint fails to state a claim upon which relief can be granted.  Based on the decisions of this Court and the Fifth Circuit Court of Appeals in corresponding litigation (the "Test Cases"), it has been determined that the alleged actions of Defendant in extending credit are not illegal and are not causally connected to Plaintiff's voluntary gambling.

5.     Additionally, People's Bank seeks the entry of summary judgment under Rule 56 Fed.R.Civ.P. for the reasons that no genuine dispute exists as to the material fact that the transactions identified by Plaintiff as a basis for the complaint were not disclosed to the Defendant or identifiable as constituting gambling transactions.  Any approval by People's of the credit transactions was without knowledge that they related to internet gambling.

6.     Alternatively, Defendant People's Bank seeks transfer of any remaining claims or causes of action to the United States District Court for the District of Connecticut, pursuant to 28 U.S.C. §§ 1404 or 1406.  Both Plaintiff Silverlieb and Defendant People's are citizens of the State of Connecticut.  Mr. Silverlieb is a resident of Connecticut, and People's Bank has all its offices and employees in Connecticut. None of the claims or events giving rise to the complaint took place other than in Connecticut, and to the extent any claims remain, they will be determined based on Connecticut law.

7.     In support of these consolidated motions, Defendant People's Bank submits an accompanying memorandum of law, supporting exhibits and an affidavit.

8.     Defendant People's Bank does not now request oral argument with regard to such motions, but respectfully reserves the right to request same pending submission of all papers involving these motions, or the request of the Court if it determines that oral argument would be of benefit.

Respectfully submitted,

By: _____

    R. Patrick Vance (LA Bar No. 130008)
    Jones, Walker, Waechter, Poitevent,
    Carrère & Denègre, LLP
    201 St. Charles Avenue, 49th Fl.
    New Orleans, LA  70170-5100
    (504)582-8194
    Facsimile:  (504) 589-8194

           - and-

Of Counsel:

William J. Wenzel (ct 06056)
Pullman & Comley, LLC
850 Main Street, P.O. Box 7006
Bridgeport, CT  06601-7006
(203) 330-2000
Facsimile:  (203) 576-8888

Attorneys for Defendant, People's Bank

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Consolidated Motions to Dismiss has been served on the below-named parties by placing a copy of same in the U. S. Mail, postage prepaid and properly addressed, this 29th day of September, 2003.

W. Lewis Garrison, Jr.
Garrison, Scott, Gamble & Rosenthal, P.C.
2224 1st Avenue North
Post Office Box 11310
Birmingham, Alabama 35202

Barry G. Reed
Zimmerman Reed L.L.P.
651 Nicollet Mall, Suite 501
Minneapolis, Minnesota 55402

BPRT/610.02/WJW/491796v1

5

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

DANIEL N. SILVERLIEB, on behalf of all
others similarly situated,

CIVIL ACTION NO. 00-MD-1990

                Plaintiffs

SECTION "K" (5)

v.

MASTERCARD INTERNATIONAL, INC.,
and PEOPLE'S BANK CORPORATION,

                Defendants

– and –

DANIEL N. SILVERLIEB, on behalf of all
others similarly situated,

CIVIL ACTION NO. 00-MD-1995

                Plaintiffs

SECTION "K" (5)

v.

VISA INTERNATIONAL, INC.,
and PEOPLE'S BANK CORPORATION,

                Defendants

## NOTICE OF HEARING

PLEASE TAKE NOTICE that defendant, People's Bank, will bring on for hearing

the attached Consolidated Motions to Dismiss Under Rule 12, Fed. R. Civ. P., for

Summary Judgment Under Rule 56, Fed. R. Civ. P. and, In the Alternative, to Transfer,

before this Court at the United States District Court, 500 Camp Street, Room C352, New Orleans, Louisiana, on the 3rd day of December, 2003, at 10:00 a.m., or as soon thereafter as can be heard.

R. Patrick Vance (LA Bar No. 130008)
Jones, Walker, Waechter, Poitevent,
Carrère & Denègre, LLP
201 St. Charles Avenue, 49th Fl.
New Orleans, LA  70170-5100
(504)582-8194
Facsimile:  (504) 589-8194

- and-

Of Counsel:

William J. Wenzel (ct 06056)
Pullman & Comley, LLC
850 Main Street, P.O. Box 7006
Bridgeport, CT  06601-7006
(203) 330-2000
Facsimile:  (203) 576-8888

Attorneys for Defendant, People's Bank



## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Notice of Hearing has been served on the below-named parties by placing a copy of same in the U. S. Mail, postage prepaid and properly addressed, this 29th day of September, 2003.

W. Lewis Garrison, Jr.
Garrison, Scott, Gamble & Rosenthal, P.C.
2224 1st Avenue North
Post Office Box 11310
Birmingham, Alabama 35202

Barry G. Reed
Zimmerman Reed L.L.P.
651 Nicollet Mall, Suite 501
Minneapolis, Minnesota 55402

RT/610.02/WJW/491796v1

{N1043397.1}3

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

DANIEL N. SILVERLIEB, on behalf of all
others similarly situated,

                    Plaintiffs

v.

MASTERCARD INTERNATIONAL, INC.,
and PEOPLE'S BANK CORPORATION,

                    Defendants

CIVIL ACTION NO. 00-MD-1990

SECTION "K" (5)

 

                          - and –

DANIEL N. SILVERLIEB, on behalf of all
others similarly situated,

                    Plaintiffs

v.

VISA INTERNATIONAL, INC.,
and PEOPLE'S BANK CORPORATION,

                    Defendants

CIVIL ACTION NO. 00-MD-1995

SECTION "K" (5)

## MEMORANDUM OF LAW IN SUPPORT OF CONSOLIDATED MOTIONS TO DISMISS, FOR SUMMARY JUDGMENT OR, ALTERNATIVELY, TO TRANSFER

This memorandum of law is submitted by Defendant People's Bank ("Defendant" or "People's") in support of its consolidated motions seeking the following relief:

1.     Dismissal under Rule 12(b)(1), Fed. R. Civ. P., for lack of subject matter jurisdiction, as all claims asserted herein have been rendered moot. Also, as no federal

questions remain pending in this case, and no diversity of citizenship exists between the parties, any remaining state law claims should be dismissed in accordance with 28 U.S.C. § 1367(c).

2.    Dismissal under Rule 12(b)(2), Fed. R. Civ. P., for lack of jurisdiction over Defendant People's Bank.  People's Bank is a citizen of the State of Connecticut and does not conduct any business in the districts (the Southern District of New York and the Northern District of California) in which the corresponding actions were originally filed, nor do any of the acts or omissions complained of have any connection with the filing districts.

3.    Under Rule 12(b)(3),  Fed. R. Civ. P., for improper venue, as venue does not lie in either of the districts in which this matter was originally commenced.

4.    Under Rule 12(b)(6), Fed. R. Civ. P., on the basis that the complaint fails to state a claim upon which relief can be granted.  Based on the decisions of this Court and the Fifth Circuit Court of Appeals in corresponding litigation (the "Test Cases"), it has been determined that the alleged actions of defendant in extending credit are not causally connected to or constitute part of Plaintiff's gambling on the internet.

5.    Additionally, Defendant seeks the entry of summary judgment pursuant to Rule 56, Fed. R. Civ. P., on the remaining claims, on the basis that no genuine dispute can exist that at the time the transactions alleged in the complaint were authorized, People's had no knowledge they related to internet gambling.

6.    Alternatively, should any claims survive this motion, Defendant moves that they be transferred to the District of Connecticut.

2

## Description of Pending Complaints

In May 2000, Daniel N. Silverlieb ("Silverlieb" or "Plaintiff") commenced two actions against People's. The first, No. 00 MD-1990, was brought against People's and co-defendant MasterCard International, Inc. in the Southern District of New York (the "MasterCard Action"). The second, No. 00 MD-1995, was brought against People's and Visa International Service Association ("Visa") in the Northern District of California (the "Visa Action"). The complaints in each case are virtually identical.

Plaintiff alleges himself to be a resident of Connecticut who had a MasterCard and Visa credit card which had been issued by People's.[1] In the complaints, Plaintiff alleged that on certain specific dates (four dates in the MasterCard Action and seven dates in the Visa Action) he used his People's credit card to purchase certain "credits" for each dollar deposited, which credits were then used to gamble. (MasterCard Complaint ¶ 23, 25 and Visa Complaint, ¶ 24, 26.) Specifically, Plaintiff alleges that he used the credits for gambling at internet casino websites and was billed by People's for such charges. Plaintiff alleges that, through counsel, he contacted People's and disputed the debt, but People's responded stating it would continue to seek payment of the debts in question. (MasterCard Complaint, ¶ 27-29 and Visa Complaint, ¶ 28-29.)

In each complaint, Plaintiff repeatedly asserted generalized allegations that "Defendants," presumably including local bank People's, understood the purpose of the extensions of these credits to be illegal internet gambling. (E.g., MasterCard Complaint at 36, 38 and Visa Complaint at 35, 36.)

---

[1] At the time, People's allowed a credit card account with joint MasterCard and Visa credit card logos.

The complaints claim the conduct of People's was in violation of numerous federal statutes, including the Wire Act, 18 U.S.C. § 1084(a), the Travel Act, 18 U.S.C. § 1952, the Prohibition on Illegal Gambling Business, 18 U.S.C. § 1955, and the Racketeer Influenced Corrupt Organization Act ("RICO"), 18 U.S.C. § 1962.    Each complaint sought identical relief based upon these common allegations:

Count One alleged the existence of an actual controversy between the parties and sought a declaratory judgment that, under the Federal statutes in question, Defendants' efforts to collect debts resulting from the internet gambling transactions were illegal and unenforceable.

Count Two alleged an actual controversy between the parties and sought a declaratory judgment declaring the contracts in question to be illegal and unenforceable, and preventing Defendants from any further extensions of credit in association with internet gambling transactions.

Count Three asserts claims for violations of RICO.

Additionally, the Visa Complaint included a Count Four alleging aiding and abetting liability under RICO.

**Prior Proceedings**

As this Court is well aware, the essential allegations concerning the manner in which the transactions in question occurred are nearly identical to those presented in numerous other cases brought by the same counsel on behalf of other individual credit card holders.    Typically, each Plaintiff filed a set of two complaints; one where the bank issuing the credit card was sued in association with MasterCard, the other in association

4

with Visa.[2]   Each Complaint alleged that the defendant financial institution extended credit with knowledge that the credit was to be used for and in furtherance of internet casino gambling.  Based on this contention, the Plaintiff characterized the Defendant's conduct as illegal.

To efficiently address the novel legal issues raised by these complaints, Plaintiffs selected, in two test cases,  those complaints which presented such claims in the best possible legal light.   The legal sufficiency of the complaints in the test cases were considered by the Court, and its determination was stated in In Re MasterCard International, Inc. Internet Gambling Litigation, 132 F.Supp. 2d 468 (E.D.La. 2001). That determination is fundamentally inconsistent with the theory upon which the remaining claims and causes of action rest.

This Court's determination was carefully reviewed on appeal before the Fifth Circuit Court of Appeals.  The Circuit Court wholeheartedly endorsed the decision of this Court.   See In Re MasterCard International, Inc., 313 F.3d 257 (5th Cir. 2002).   In subsequent proceedings, leave to further amend the complaints was denied to Plaintiff, and the federal claims asserted in the complaints were disposed of by application of the Court's decision in the test cases.

The sole claims remaining for adjudication here are the claims in Count Two, seeking declaratory judgment that the debts in question were uncollectable under state law, and that People's must stop authorizing extensions of credit for internet gambling. This consolidated motion addresses those claims.

---

[2]   Visa and MasterCard have been dismissed from all pending suits.

## I.    **INTRODUCTION AND SUMMARY OF ARGUMENTS**

Defendant's initially seeks dismissal of the Complaints under Rule 12(b)(1) for lack of subject matter jurisdiction due to mootness. The sole count remaining in these cases seek declaratory judgments to prevent the collection of charges incurred in internet gambling transactions under Connecticut state law. This Court's subject matter jurisdiction to issue declaratory judgments, however, is strictly limited to those instances in which an actual "case or controversy" exists. The Court is without jurisdiction to issue advisory opinions or to determine legal relationships absent the existence of such jucticiable controversies. Whenever in the course of litigation it appears to the Court that a case or controversy no longer exists, the Court is required to dismiss the case for lack of jurisdiction.

In this instance, no case or controversy presently exists. Shortly after commencement of these cases, Plaintiff's account was closed, and Plaintiff voluntarily paid off his account in full. Since February 2002, no amount has been claimed by People's, and the account in question has been closed. Today, any debate between these parties over the collectibility of internet gambling debts is one of mere academic interest.[3]

Even were these actions not completely moot, no independent basis of federal court jurisdiction remains. Any lingering supplemental jurisdiction should be declined, as every relevant factor favors dismissal of such non-federal claims.

---

[3]    Additionally, to the extent that Plaintiff seeks a determination of the proprietary of People's continuing approval of credit card transactions involving internet gambling, there is no case or controversy. Not only does Plaintiff have no personal interest in that abstract issue, but during 2002, People's voluntarily ceased authorizing any transactions.

People's would next urge this Court to dispose of this matter under Rule 12(b)(6), as the remaining claims are insufficient under state law. The fundamental basis of this Court's prior rejection of the RICO claims included an assessment of the causal connection between the extension of credit by the financial institutions and the claimed act of internet gambling. This Court determined that the debts themselves are not illegal and were not related to Plaintiff's decision to gamble. This determination by the Court completely undermines the similar claims based on state law raised by the Plaintiff. So long as the extension of credit alleged in the complaint is not causally connected to an instance of illegal internet gambling, Plaintiff's complaints will always fail to state legally cognizable claims.

With regard to the Motion for Summary Judgment, it is clear that People's is entitled to judgment on all remaining claims based upon facts not genuinely in dispute. Crucial to this issue are Plaintiff's repeated contentions that the extensions of credit identified were known by People's to be part of internet gambling transactions. The undisputed facts demonstrate that this contention is utterly meritless. Plaintiff's complaint identifies the specific instances of internet gambling that serve as a basis for the complaints. People's has carefully reviewed each identified transaction and can demonstrate that at the time the transactions were submitted for electronic approval, they were not coded as internet gambling transactions, but rather coded as innocent internet services, totally unrelated to gambling or any other opposed illegal activity. While Plaintiff certainly knew and appreciated that he was engaged in internet gambling, that information was never available to People's, and thus, its processing involved a

7

transaction that was perfectly legal and appropriate based on all information available to the bank.

With regard to the motions concerning personal jurisdiction and venue, the facts alleged fail to justify the maintenance of this suit. The Plaintiff resides in Connecticut, about 20 miles from People's corporate offices and all events took place in Connecticut. Plaintiff chose to file these actions in the districts for the Southern District of New York and the Northern District of California. People's does not generally do business in either of those jurisdictions, nor did any of the acts giving rise to these causes of action occur in such jurisdictions. Under the applicable principles for the exercise of general or specific jurisdiction over People's in those districts, the filing districts did not have jurisdiction over People's.

For those same reasons, venue did not lie in either of the filing districts, thus requiring dismissal of each action. Alternatively, should the Court not dismiss these matters under Rules 12 or 56, People's would request that the Court transfer this matter to the District of Connecticut for further proceedings. The transfer would obviate the need for immediate dismissal, allow consolidation of both actions in the single forum most convenient to both parties, and permit the District Court for the District of Connecticut to address the remaining issues of Connecticut law.

In summary, now that this Court has disposed of the RICO claims common to all complaints, the balance of claims remaining against People's are so utterly lacking in any procedural or substantive merit as to warrant dismissal by the Court.

## II.    THIS COURT LACKS SUBJECT MATTER JURISDICTION AS ALL PENDING CLAIMS HAVE BEEN RENDERED MOOT

In the relevant Complaints, the Plaintiff seeks to invoke this Court's jurisdiction under 28 U.S.C. § 2201, to obtain a declaratory judgment as to the enforceability of contracts to collect "gambling debts."  Section 2201 of Title 28 extends the jurisdiction of the United States courts to determine rights and legal relations of interested parties "[i]n a case of actual controversy within its jurisdiction."   Because § 2201 extends the jurisdiction of the Court beyond those cases where traditional remedies are sought, the remedy of declaratory judgment is expressly limited to cases of actual controversy and the courts have typically been more vigilant in these instances of ensuring that claims brought before it fall within the limited subject matter jurisdiction of United States courts.

The limitation of the Declaratory Judgment Act to instances of actual controversies simply reinforces the fact that the judicial power of the United States courts under Article III, Section 2 of the United States Constitution extends only to "cases or controversies" brought before it.  Tilley Lamp Co. v. Thacker, 454 F.2d 805, 807-08 (5th Cir. 1972).  To  establish the existence of a case or controversy, Plaintiff must establish that he or she has a personal stake in the outcome of the litigation, assuring an adversarial nature to the proceeding and the proper presentation of the issues.  See O'Shea v. Littleton, 414 U.S. 488, 494 (1974).  It is not enough to show some abstract difference of opinions or disagreement.  Ashcroft v. Mattis, 431 U.S. 171, 173 (1977).  If questions brought before the court cannot affect the concrete rights of the litigants in the case before the court, the case or controversy requirement of Article III prohibits federal courts from considering such questions.  Bayou Liberty Association,

Inc. v. United States Army Corp of Engineers, 217 F.3d 393, 397 (5th Cir. 2000); C & H Nationwide, inc. v. Norwest Bank Texas, 208 F.3d 490, 493 (5th Cir. 2000).

The interest asserted here by Plaintiff pertained to Defendant's efforts to collect purportedly illegal gambling debts that had arisen through instances of internet gambling described earlier in the Complaint. Plaintiff claimed he was "entitled to a declaratory judgment declaring said contracts [to repay credit extended on his credit card] to be illegal and unenforceable and preventing ... People's Bank from doing business with internet casinos." (MasterCard Complaint at ¶ 71; see also Visa Complaint at ¶ 69-73.)

It is not enough, however, that a case or controversy exists at the start of the action. A dispute must continue to exist throughout each and every stage of the proceeding. See Rocky v. King, 900 F.2d 864, 866 (5th Cir. 1990). This doctrine, referred to as the mootness doctrine, requires that a dispute between the parties exists not only at the time the Plaintiff files the complaint but throughout the litigation. C & H Nationwide, 208 F.3d at 493; Spencer v. Kemma, 523 U.S. 1, 7 (1988). See also Harris v. City of Houston, 153 F.3d 186, 189 (5th Cir. 1989). If during the course of litigation, the issues presented no longer remain alive or the parties do not continue to have a legally cognizable interest in the outcome of the litigation, the claims become moot and the case must be dismissed. Piggly Wiggly Clarksville, Inc. v. Mrs. Baird's Bakeries, 177 F.3d 380, 383 (5th Cir. 1999); Karaha Bodas Co. LLC v. Perusahaan, Pertambangan Minyak Dan Gas Bumi Negara, 335 F.3d 357, 365 (5th Cir. 2003). Here, the facts conclusively demonstrate that shortly after commencement of these two actions, any case or controversy between the Plaintiff and People's ceased to exist.

The affidavit of Faisal Ali ("Ali Affidavit") fully supports People's position in this regard. The charges associated with the internet gambling alleged in the Complaints were made on Plaintiff's People's Bank's MasterCard/Visa credit card account. The credit card in question, like other credit card accounts, allows the cardholder to charge various amounts up to the applicable credit limit and to pay down the account by making a payment not less than the requisite minimum monthly amount and up to the balance due on the account. On May 26, 2000, shortly after the commencement of these actions, Mr. Silverlieb's account was closed and no new charges were permitted. *See* Ali Affidavit ¶ 7. During the course of the litigation, Plaintiff continued to make voluntary payments toward his account balance, and on February 12, 2002, he made a payment that paid off the remaining balance. *See* Ali Affidavit ¶ 8. Since that date, there have been no new charges on the account; there have been no amounts due on the account; and the account has been closed. In short, since February 2002, Plaintiff has not had any credit card debts to People's and no claims have been made for repayment of credit charges by People's against Plaintiff.

It is clear that whatever disputes might have existed as to the collectibility of charges incurred as a result of Plaintiff's internet gambling, since February 12, 2002, the dispute has become one of mere academic interest. The facts demonstrate that there is no debt or claimed debt about which the parties can fight. Whatever abstract legal principle or arcane point of honor might linger since the payment and closing of the account, such is not a concrete legal interest to be resolved within the jurisdiction of a United States District Court.

The remedy upon determination by this Court that the case or controversy has become moot is the dismissal of this action. See Fed. R. Civ. P. 12(b)(1).

## A.    Any Remaining Supplemental Jurisdiction Should be Declined.

Even were some lingering state law claim to remain marginally alive, there is no arguable basis on which it should remain pending in federal court. All federal claims have been found wanting and dismissed from these actions. No diversity jurisdiction has been pled, nor given the affirmative allegations of non-diverse citizenship, could such be made.

Under the provisions of 28 U.S.C. § 1367(c)(3), this Court is authorized to decline any further exercise of supplemental jurisdiction upon dismissal of the federal claims. See West v. Congemi, 28 F. Supp. 2d 385, 395 (E.D. La. 1998) (recognizing that "when federal law claims that serve as the basis of subject matter jurisdiction are dismissed, and only state law claims based on supplemental jurisdiction remain, a district court has broad discretion to remand the state law claims"). It has also been recognized that "[w]hen a court dismisses all federal claims in advance of trial, the general rule is that any pendent state law claims should be dismissed". Hamilton v. Trover Solutions, Inc., No. Civ. A. 01-650, 2003 WL 21105100, at *5 (E.D.La. May 13, 2003). It is also clear that any remaining claims will be based entirely on Connecticut state law and will require application of such in the context of novel and complex circumstances – internet gambling. Such questions should be addressed in the Connecticut state court system, where expertise in state law issues and important matters of that state's public policy can be brought to bear. Section 1367(c)(1) recognizes the comity and mutual respect that should exist in these circumstances.

## III. MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

### A. The Standard for Motion to Dismiss

This Court's decision in In Re MasterCard International, Inc., Internet Gambling Litigation, 132 F.Supp. 2d 468 (E.D.L.A. 2001) thoroughly and correctly states the standard of law upon which motions to dismiss should be assessed. Rather than attempt to duplicate that statement of the law, Defendant would simply incorporate by reference that portion of the Court's prior order as the relevant standard of law. 132 F.Supp. 2d at 475-76.

### B. Count Two Lacks the Contemporaneous Element Required Under Connecticut Law.

The citations of law given by Plaintiff are to "Conn. R. Civ. Pro. § 17-55 (sic) and Conn. Gen. Stat. Ann. §§ 52-29, 52-553." The first citation is actually to § 17-55 of the Connecticut Practice Book, which sets forth the rules of court adopted by the judges of the Superior Court. For the convenience of the Court, a copy of § 17-55 is attached hereto as Exhibit A. Section 17-55 of the Connecticut Practice Book is entitled Conditions for Declaratory Judgment, and simply sets forth the procedure and terms upon which a declaratory judgment action may be maintained in Connecticut State Superior Court. It is not a substantive provision of law, and Defendant would respectfully suggest to the Court, is not otherwise applicable in light of the provisions of 28 U.S.C. § 2201.

Section 52-29 of the Connecticut General Statutes simply authorizes a Connecticut Superior Court to declare the rights and other legal relations request of parties. It is not applicable in any way to Plaintiff's request for declaratory relief in

13

federal court. As such, the Court need not waste its time considering this statutory reference.

> The remaining statute, Conn. Gen. Stat. § 52-553, provides as follows:
>
>> All wagers, and all contracts and securities whereof the whole or any part of the consideration is money or other valuable thing won, laid or bet, any game, horse race, sport or pastime, and all contracts to repay any money knowingly lent at the time and place of such game, race, sport or pastime, to any person so gaming, betting or wagering, or to repay any money lent to any person who, at such time and place, so pays, bets or wagers, shall be void, provided nothing herein contained shall affect the validity of any negotiable instrument held by any person who acquired the same for value and in good faith without notice of illegality in the consideration.

For the purposes of this motion, People's must accept the allegations of the complaint as true.[4] That decision of the Court, made applicable to this complaint under the prior order of the Court realized the conduct complained of was in the context of credit extensions used for internet gambling. As recognized by the Court and all parties, the complaints filed by counsel on behalf of various individual plaintiffs contain virtually identical allegations. The Court's assessment of those allegations in the order applied to this case are therefore relevant. In the Court's order of dismissal, the Court correctly analyzed the common allegations as follows: "The credit cards are used to purchase credits which the bettor may then use, or not use, as he pleases." 132 F.Supp. 2d at 474. This Court went on to determine, in the context of RICO, other federal statutes, and state laws from other jurisdictions, the acts alleged did not

---

[4]    Defendant has submitted in association with the other grounds asserted in this motion, an affidavit and documentation that addresses factual issues properly addressable in association with those other motions. Although Defendant will subsequently demonstrate and argue that at the time the extensions of credit in question were made, the transactions were identified to People's as ones lawful and not involving gambling, People's recognizes that for the 12(b)(6) motion, such should not be considered by the Court.

14

constitute illegal activities. The same result should be determined on the basis of the Connecticut statute in question.

In analyzing the sufficiency of such allegations in the context of Kansas state law, the Fifth Circuit Court of Appeals addressed a significant deficiency in the allegations:

> Because the Defendants completed their transaction with the Plaintiffs **before** any gambling occurred, that transaction cannot have involved taking custody of something bet or collecting the proceeds of a gambling device.

313 F.3d at 262. That same analysis is dispositive under the Connecticut statute. Connecticut's statute expressly requires that the consideration bet be made "at any game, horse race, sport or pastime," or that any money be "knowingly lent at the time and place of such game, race, sport or pastime." Clearly, the requirements that the consideration be lent at the same time and place of the bet is absent under these allegations. Such assessment has already been made by this Court, and the Federal Court of Appeals and, Plaintiffs having taken their best shot, cannot now seek to reargue that element of the complaints.

Accordingly, Count Two should be dismissed under Rule 12(b)(6).

## IV.   ALTERNATIVELY, DEFENDANT MOVES FOR SUMMARY JUDGMENT UNDER RULE 56 FED.R.CIV.P.

### A.   Standard of Review

The standard for summary judgment has been accurately articulated by this Court as follows:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving parties is entitled to judgment as a matter of law. The party moving for summary judgment bears the initial responsibility

of informing the district court of the basis of its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. The nonmoving party must come forward with specific facts showing there is a genuine issue for trial. Thus, where the record taken as a whole cannot lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. . . . The substantive law determines materiality of facts and only facts that might affect the outcome of the suit under the governing law or properly preclude the entry of summary judgment.

Price v. Housing Authority of New Orleans, No. Civ. A. 01-3016, 2003 WL 22038409, at

*1 and 2 (E.D.La. Aug. 27, 2003) (internal quotation marks and citations omitted).

In this instance, there are no genuine issues of material fact in dispute, and judgment in favor of defendant must be entered. An essential part of Plaintiff's claims, and a clear prerequisite to application of the prohibition under Conn. Gen. Stat. § 52-553, is its restriction to "contracts to repay any money **knowingly** lent at the time and place ... to any person so gaming, betting or wagering." This element is not present under the facts before this Court.

As the Court understands from review of the prior proceedings in this case, internet gambling takes place through the purchase of credits, usually through a third party source, which credits may then be utilized at an internet casino site often operated outside the jurisdiction of the United States. Credits are purchased, typically, by the card holder, contacting via phone or internet, the third party source and purchasing credits or "chips" utilizing a charge against his or her credit card.

The bank or financial institution that issues the credit card, of course, has no direct information as to the activity of the internet gambler and does not participate in

16

the transaction. The transaction is presented to the card issuer in the same manner as literally tens of millions of other transactions occurring at merchants throughout the world. The only information presented to the card issuer is a string of electronic digits or data fields that represent the limited information made available to the card issuer and permits the card issuer to determine whether, according to prearranged parameters, the transaction will be approved or disapproved. The information provided to the issuer includes such information as the cardholder's account number, the amount of the proposed transaction, the identity of the merchant (and the merchant's financial institution) and some very limited information concerning the nature of the transaction.

As shown by the Ali Affidavit, the only information available to a card issuer from which it can determine if the transaction involves internet gambling is contained in two data fields. Ali Affidavit ¶¶ 11, 12. The first data field is referenced as a "merchant code." This is an agreed upon system of coding that identifies the area of business in which the merchant is engaged (e.g., airline, food sales, etc.). The second relevant data field, referred to as the POS field, contains coded information as to the point of sale or manner in which the card was presented for approval. Options for this data field include such things as a "card swipe," mail and telephone orders and the like.

To the extent that the transmission of an electronic data burst for a few brief nanoseconds constitutes knowledge to the card issuer, such knowledge can only be disclosed by the linkage of these two specific data fields. In the merchant code field, the code for "gambling" must be present. In the point of sale field, the code for "internet transaction" must be present. It is only when both fields contain these precise codes

that the card issuer can be arguably charged with knowledge of the transaction. (Ali Affidavit, ¶ 13.)

In the two complaints before the Court, Plaintiff has identified a small number of specific transactions that are alleged to constitute credit charges associated with internet gambling. (*See* MasterCard Complaint, ¶ 23, VISA Complaint, ¶ 24.) People's has reviewed its available records and documentation, and the specific electronic information provided to it in association with each of these transactions. An analysis of those data fields demonstrates that when the third party payor submitted the request by Plaintiff for a charge authorization, it did not utilize the code fields associated with internet gambling. It did not submit the merchant code for gambling, nor did it utilize the merchant code for an internet transaction. (*See* Ali Affidavit at 14.) Instead, the vendor disguised the transactions by disclosing them utilizing codes for provision of internet-related services and mail and telephone purchases. Such designation did not provide any notice to People's that the transaction relates to internet gambling. (*See* Ali Affidavit at 14.)

Plaintiff cannot meaningfully argue that People's has some responsibility to ignore the information it does receive about a transaction and some how divine his secret intention to engage in conduct he alleges is illegal. Under Plaintiff's own legal theories, the extensions of credit by People's cannot serve as a basis for suit. For these reasons, People's moves in the alternative for entry of summary judgment in its favor with regard to Count Two of the Complaint.

## V.    THIS ACTION SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION

The two suits brought by Silverlieb were, for inexplicable reasons, brought in districts in which neither party resides and which had absolutely nothing to do with any of the transactions in question.  Under the relevant statutes controlling the jurisdictional reach of those courts, neither court acquired nor could transfer to this Court personal jurisdiction over the Defendant.

### New York Law

New York law provides two general grounds for personal jurisdiction, N.Y.C.P.L.R. §§ 301, 302.  Section 301 pertains to persons generally or systematically doing business in New York.  Neither Movant fits that category.  People's is a Connecticut state-chartered bank doing business in Connecticut.  (*See* Affidavit of Faisal Ali ("Ali Affidavit") ¶ 3.)  People's does not operate or maintain any offices or branches in New York (id. ¶¶ 4-5) and has no ongoing operations in that state.  (Id.)  Under § 301, there is no basis for Plaintiff to contend either Movant is subject to personal jurisdiction in New York.

Section 302 provides for specific or limited jurisdiction over nonresidents.  It provides very limited circumstances under which a defendant is subject to jurisdiction:

> § 302. Personal jurisdiction by acts of non-domiciliaries
>
> (a) Acts which are the basis of jurisdiction.  As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:
>
> 1.    transacts any business within the state or contracts anywhere to supply goods or services in the state; or

19

2.      commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or

3.      commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he

(i)      regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

(ii)      expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or

4.      owns, uses or possesses any real property situated within the state.

Most importantly, the present action must arise from the enumerated contacts or conduct within the State of New York. Bank Brussels v. Fiddler, Gonzalez & Rodriquez, 171 F.3d 779, 787 (2nd Cir. 1999); George Reiner & Co. v. Schwartz, 41 N.Y.S. 2d 648, 651, 394 N.Y.S.2d 844, 363 N.E.2d 551 (1977). Compliance with § 302 is impossible, because none of the allegations set forth in the complaints appear to have anything to do with the State of New York or the Southern District of New York. Plaintiff is alleged to reside in Newtown, Connecticut. While no act or omission by Plaintiff is referenced, it does not appear that even were such to be alleged, it would have taken place in New York. The same holds true for People's. The allegations of the complaints relate to activities solely within the State of Connecticut, relating to a series of activities occurring at his residence, also located in Connecticut.

**California Law**

Under California law, personal jurisdiction falls into two categories, general or specific.  See Pavlovich v. Superior Court, 58 P. 3d 2, 6 (Cal. 2002).  Specific jurisdiction may be exercised over a non-resident defendant under three circumstances: "(1) the defendant has purposefully availed himself or herself of forum benefits; (2) the controversy is related to or arises out of the defendant's context with the forum; and (3) the assertion of personal jurisdiction will comport with fair play and substantial justice." Id. at 7 (internal citation and quotation marks omitted).  "A non-resident defendant may be subject to the general jurisdiction of the forum if his or her contacts in the forum state are substantial . . . continuous and systematic." Vons Companies, Inc. v. Sea Best Foods, Inc., 926 P.2d 1085, 1092 (Cal. 1996).  For general jurisdiction to be established, "it is not necessary that the specific cause of action alleged be connected with the defendant's business relations to the forum[,]" but rather "[s]uch a defendant's contacts with the forum are so wide-ranging that they take the place of physical presence in the forum as a basis for jurisdiction." Id. (citations omitted).

As with the analysis under New York law, the allegations contained in the Complaint have no relationship to the State of California.  The activities at issue occurred within the State of Connecticut and involve Connecticut citizens.

Accordingly, Defendant believes this Court lacks jurisdiction over its person, as it was not amenable to personal jurisdiction within the originating districts with regard to the allegations of the complaints.

## VI.    **THIS DISTRICT LACKS VENUE**

While Plaintiff does not plead any particular statute as serving as the basis for venue, it would appear that this action would be governed under the provisions of 28

U.S.C. § 1391(b). Under that section, proper venue would lie only in the judicial district (i) where any defendant resides, if all defendants reside in the same state; or (ii) a judicial district in which a substantial part of the acts or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated; or (iii) a judicial district in which any defendant may be found if there is no district in which the action may otherwise be brought.

As can be ascertained from the complaint, People's resides within the State of Connecticut. Under Subsection (b)(1), the Judicial District of Connecticut would appear to be the only appropriate venue.

Review of the complaints show that none of the acts and events are alleged to have occurred in New York or California. The events in question all appear to have occurred in Connecticut, where Plaintiff resides and Defendant operates.[5]

## VII. ALTERNATIVELY, PEOPLE'S MOVES THIS COURT TO TRANSFER THIS ACTION TO THE DISTRICT OF CONNECTICUT

In the event this Court is unable to dispose of this matter in its entirety by virtue of one of the prior motions, Defendant would move the Court to transfer this action to the United States District Court for the District of Connecticut for any further or subsequent proceedings. In support of this application, People's would show the Court that this transfer would be in the interest of both parties and in the interest of justice.

This Court has admirably served the purposes of the multidistrict referral. It has analyzed and successfully resolved all claims relating to the federal statutes. To the extent that Plaintiffs truly wish to proceed with a myriad of claims under a hodgepodge

---

[5] The Plaintiff cannot seek solace, under § 1391 (b)(3), as it is clear that there is a judicial district in which venue would lie -- the Judicial District of Connecticut.

of state laws, it does not appear that any further efficiency can be served by continued administration in this district.  This service, were the Court willing, would be an undue burden on this district and an inconvenience for the parties, which are scattered about the United States.

Likewise, a referral back to the originating districts, the Southern District of New York, and the Northern District of California, would make little sense.  Plaintiff is an individual who at all times has resided in the State of Connecticut, in an area approximately 20 miles from the main office of People's in Bridgeport, Connecticut. Neither Plaintiff nor Defendant have any apparent connections with either district in which the cases were filed, and such location appears to have been chosen either with reference to a now dismissed party or the convenience of Plaintiff's counsel.  Not only would referral to the District of Connecticut aid the parties in discovery, further proceedings would permit any necessary hearings or trials at a location minimizing the inconvenience to the parties.

Issues of Connecticut state law, which appear to be the only law germane to the remaining dispute, could be made by a federal district court judge sitting in Connecticut and dealing with Connecticut state and common law on a daily basis.

Most important, and to the obvious benefit of both Plaintiff and Defendant, a referral to Connecticut would permit the dispute to be resolved in a single proceeding. Either by consolidation or joinder, claims in the two cases could be heard at the same time, before the same judge and the same trier of fact.  Indeed, the claims asserted arise from a single credit card account held by Plaintiff, which, for a period of time, contained both a MasterCard and Visa logo.  For Plaintiff's own interest, the single

claims were split, apparently so separate suits involving both MasterCard and Visa could be filed on the far ends of the United States. Since those parties have been dismissed, it makes absolutely no sense for any further disputes to be resolved in those distant forums.[6]

Whether operating under 28 U.S.C. § 1404 or 28 U.S.C. § 1406, it is clear that the District of Connecticut is a district that would have had jurisdiction over both Plaintiff and Defendant and is a district in which the action could have originally been brought. People's respectfully suggests that to the extent any further proceedings should take place, the matter should be transferred to the District of Connecticut.

## VIII. **CONCLUSION**

For all those reasons set forth above, People's respectfully requests that this action be dismissed for lack of subject matter jurisdiction, lack of personal jurisdiction, improper venue and/or for the failure to state a claim upon which relief can be granted. People's, in the alternative, additionally seeks an entry of summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Finally, in the event the Court declines to dismiss or grant summary judgment, People's respectfully requests that the instant matter be transferred to the United States District Court for the District of Connecticut.

---

[6] To participate in proceedings in those foreign districts, the Plaintiff would literally have to drive within a few hundred yards of People's headquarters and within feet of the federal courthouse in Bridgeport, Connecticut.

Respectfully submitted,

By:

R. Patrick Vance (LA Bar No. 130008
Jones, Walker, Waechter, Poitevent,
       Carrère & Denègre, LLP
201 St. Charles Avenue, 49th Fl.
New Orleans, LA  70170-5100
Telephone (504)582-8194
Facsimile (504) 589-8194

- and –

William J. Wenzel (ct 06056)
Pullman & Comley, LLC
850 Main Street, P.O. Box 7006
Bridgeport, CT  06601-7006
Telephone (203) 330-2000
Facsimile (203) 576-8888

Attorneys for Defendant, People's Bank

25

CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Memorandum of Law in Support of Consolidated Motions to Dismiss has been served on the below-named parties by placing a copy of same in the U. S. Mail, postage prepaid and properly addressed, this 29th day of September, 2003.

W. Lewis Garrison, Jr.
Garrison, Scott, Gamble & Rosenthal, P.C.
2224 1st Avenue North
Post Office Box 11310
Birmingham, Alabama 35202

Barry G. Reed
Zimmerman Reed L.L.P.
651 Nicollet Mall, Suite 501
Minneapolis, Minnesota 55402

BPRT/610.02/WJW/491963v1

### Sec. 17-47. —When Appropriate Documents Are Unavailable

Should it appear from the affidavits of a party opposing the motion that such party cannot, for reasons stated, present facts essential to justify opposition, the judicial authority may deny the motion for judgment or may order a continuance to permit affidavits to be obtained or discovery to be had or may make such other order as is just.

(P B 1978-1997, Sec 382.)

### Sec. 17-48. —Affidavits Made in Bad Faith

Should it appear to the satisfaction of the judicial authority at any time that any affidavit is made or presented in bad faith or solely for the purpose of delay, the judicial authority shall forthwith order the offending party to pay to the other party the reasonable expenses which the filing of the affidavit caused that party to incur, including attorney's fees. Any offending party or attorney may be adjudged guilty of contempt, and any offending attorney may also be disciplined by the judicial authority.

(P.B. 1978-1997, Sec. 383.)

### Sec. 17-49. —Judgment

The judgment sought shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

(P.B. 1978-1997, Sec. 384.)

### Sec. 17-50. —Triable Issue as to Damages Only

A summary judgment, interlocutory in character, may be rendered on the issue of liability alone, although there is a genuine issue as to damages. In such case the judicial authority shall order an immediate hearing before a judge trial referee, before the court, or before a jury, whichever may be proper, to determine the amount of the damages. If the determination is by a jury, the usual procedure for setting aside the verdict shall be applicable. Upon the conclusion of these proceedings, the judicial authority shall forthwith render the appropriate summary judgment.

(P.B. 1978-1997, Sec. 385.)

### Sec. 17-51. —Judgment for Part of Claim

If it appears that the defense applies to only part of the claim, or that any part is admitted, the moving party may have final judgment forthwith for so much of the claim as the defense does not apply to, or as is admitted, on such terms as may be just; and the action may be severed and proceeded with as respects the remainder of the claim.

(P.B. 1978-1997, Sec. 386.)

### Sec. 17-52. Executions

Pursuant to the General Statutes, the judgment creditor or the attorney for the judgment creditor may file a written application with the court for an execution to collect an unsatisfied money judgment.

(P.B. 1978-1997, Sec. 387.)

### Sec. 17-53. Summary Process Executions

Whenever a summary process execution is requested because of a violation of a term in a judgment by stipulation or a judgment with a stay of execution beyond the statutory stay, a hearing shall be required. If the violation consists of non-payment of a sum certain, an affidavit with service certified in accordance with Sections 10-12 through 10-17 shall be accepted in lieu of a hearing unless an objection to the execution is filed by the defendant prior to the issuance of the execution. The execution shall issue on the third business day after the filing of the affidavit.

(P.B. 1978-1997, Sec. 387A.) (Amended June 26, 2000, to take effect Jan. 1, 2001; amended June 25, 2001, to take effect Jan 1, 2002.)

### Sec. 17-54. Declaratory Judgment; Scope

The judicial authority will, in cases not herein excepted, render declaratory judgments as to the existence or nonexistence (1) of any right, power, privilege or immunity; or (2) of any fact upon which the existence or nonexistence of such right, power, privilege or immunity does or may depend, whether such right, power, privilege or immunity now exists or will arise in the future.

(P B 1978-1997, Sec. 389.)

### Sec. 17-55. —Conditions for Declaratory Judgment

A declaratory judgment action may be maintained if all of the following conditions have been met:

(1) The party seeking the declaratory judgment has an interest, legal or equitable, by reason of danger of loss or of uncertainty as to the party's rights or other jural relations;

(2) There is an actual bona fide and substantial question or issue in dispute or substantial uncertainty of legal relations which requires settlement between the parties; and

(3) In the event that there is another form of proceeding that can provide the party seeking the declaratory judgment immediate redress, the court is of the opinion that such party should be allowed to proceed with the claim for declaratory judgment despite the existence of such alternate procedure.

(P.B. 1978-1997, Sec. 390.) (Amended June 28, 1999, to take effect Jan. 1, 2000.)



EXHIBIT
A

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

DANIEL N. SILVERLIEB, on behalf of all            CIVIL ACTION NO. 00-MD-1990
others similarly situated,

                Plaintiffs            SECTION "K" (5)

v.

MASTERCARD INTERNATIONAL, INC.,
and PEOPLE'S BANK CORPORATION,

                Defendants

                – and –

DANIEL N. SILVERLIEB, on behalf of all            CIVIL ACTION NO. 00-MD-1995
others similarly situated,

                Plaintiffs            SECTION "K" (5)

v.

VISA INTERNATIONAL, INC.,
and PEOPLE'S BANK CORPORATION,

                Defendants

### AFFIDAVIT OF FAISAL ALI IN SUPPORT OF MOTION TO DISMISS

I, Faisal Ali, of lawful age, being first duly sworn and believing in the solemnity of an oath, do hereby state and show to the Court as follows:

1.     I am Director of Credit Card Operations at the Credit Card Division of People's Bank.

2.     I have been asked to prepare this affidavit concerning the account of Daniel Silverlieb, pertaining to the allegations I understand have been made against the bank in this case.

3.    People's Bank is a bank chartered under the laws of the State of Connecticut. Its principal place of business is located in Bridgeport, Connecticut.

4.    People's Bank does not generally or systematically do business in the States of New York or California.

5.    People's Bank does not own or operate any property, facilities or offices in the States of New York or California.

6.    At all times, we show the mailing address for Mr. Silverlieb to be in Newtown, a city about 20 miles from our office headquarters in Bridgeport, Connecticut.

7.    I have reviewed the account records for Mr. Silverlieb's account at People's Bank. The account (Account No. 5416 5100 0344 5462) was open from at least 1992 until May 26, 2000, when it was closed and no new charges were permitted.

8.    After the date his account was closed, Mr. Silverlieb continued to make payments reducing his account balance. The records of People's Bank pertaining to the account show that Mr. Silverlieb's balance was paid in full on February 12, 2002, by virtue of a payment made by Mr. Silverlieb in the amount of $740.00.

9.    Since that date, February 12, 2002, there has been no amount due from Mr. Silverlieb to People's Bank with regard to any account that is the subject of either of the pending actions that he brought against People's Bank.

10.    Since February 12, 2002, Mr. Silverlieb's account has been both closed and no debt to People's bank has been claimed.

11.    When a cardholder uses a People's Bank credit card to make a "charge," the merchant submits information electronically to have the transaction authorized.

2

12.     The information in question includes, inter alia, the account number, the account number of the merchant, the time and date of the transaction, the amount of the charge, a "merchant code" and a point of sale ("POS") code.

13.     Among the hundreds of possible merchant codes is one that represents gambling.   When this merchant code is used in association with a POS code representing the internet, the paired code is, arguably, indicative of internet gambling.

14.     I have reviewed the coded information submitted for authorization of the transactions identified in the complaints filed by Mr. Silverlieb.  Neither the merchant codes nor the POS codes are indicative of internet gambling.  The merchant codes submitted at the time People's Bank approved those transactions are not the merchant code that would indicate internet gambling.   Rather than showing gambling, the merchant codes show another area of merchant business; namely, computer network/information services.  The POS code was not internet but MOTO, representing mail or telephone order.  This information would not permit People's Bank, at the time the specific transactions were approved, to determine that these were indeed internet gambling transactions.

15.     During calendar year 2002, People's Bank made the decision to stop authorizing or approving any credit card transaction involving any charge coded for gambling, including internet gambling; gave notice of this proposed change in policy to cardholders; and adopted and implemented the change in policy.

3

16.     Any credit card transaction submitted showing the appropriate merchant code and POS code that indicated internet gambling stopped being approved during calendar year 2002. This policy remains in effect through the date of this affidavit, and, to the best of my knowledge, is intended to remain in force.

_____
Faisal Ali

Subscribed and sworn to
before me this 24th day of
September 2003.

_____
Notary Public
My Commission Expires:

BPRT/610.02/WJW/492644v1

**TONI VALENTIN**
*Notary Public*
My Commission Expires July 31, 2005