

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: MASTERCARD INTERNATIONAL
INTERNET GAMBLING LITIGATION

MDL Docket No: MDL-1321 & 1322

Sect K

FROM THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

LARRY THOMPSON

v.                                                    CV-00-1171(N.D. Ca.)

VISA INTERNATIONAL SERVICE
ASSOCIATION AND WACHOVIA BANK, N.A.
WACHOVIA BANK CARD SERVICES

PLAINTIFF'S RESPONSE AND OPPOSITION TO
WACHOVIA BANK'S MOTION TO DISMISS

STATEMENT OF JURISDICTION

This Court has jurisdiction to and authority to exercise supplemental jurisdiction over the remaining counts alleged in the amended complaint. 28 U.S.C. §1367(a) provides the

statutory authority for this Court to retain jurisdiction when the remaining claims form part of the same case or controversy. Defendant, Wachovia National Bank and Wachovia Card Services, ("Wachovia") concedes this point in its brief. Def. Brief at 2. Plaintiff Thompson has two counts pending that have not been fully adjudicated on the merits. These claims are for federal and state declaratory judgement under the Declaratory Judgment Act, 28 U.S.C. § 2201 and Georgia state law respectively. This Court retains broad discretion when deciding whether or not to exercise its jurisdiction on declaratory judgment actions brought under federal law. *Brillhart v. Excess Ins. Co. of America,* 316 U.S. 491, 494-496, 62 S.Ct. 1173, 1175-1176, 86 L.Ed. 1620 (1942). Indeed, there are numerous compelling reasons that favor this Court retaining jurisdiction over these remaining claims.

This Court has spent considerable time and effort on this case and the others that comprise and made the basis for this MDL panel. This particular action was filed over two years ago and any further delay in resolving the remaining issues would hinder the goals of preserving judicial resources and avoiding unnecessary delay. Both of these considerations weigh heavily in favor of this Court retaining jurisdiction over this matter. Again, Wachovia and the Plaintiff in this matter are in full accord that this Court should retain jurisdiction over the remaining claims. Def. Brief at 2. This Court may also exercise its powers of supplemental jurisdiction to adjudicate the state law declaratory action. *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966).

All parties to this litigation are in agreement that this Court has the authority to retain jurisdiction over the remaining causes of action in this matter and that the Court use the discretion allowed by federal statute and case law to do so.

## **LEGAL STANDARD**

The fact that motions to dismiss are virtually a reflex response of defendants cannot alter the fact that dismissal under Federal Rule of Civil Procedure 12(b)(6) is an extreme remedy that should not be granted unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of the claims in the complaint. *Jackam v. Hospital Corp. of America Mideast, Ltd.*, 800 F.2d 1577, 1579 (11th Cir. 1986) quoting *Bracewell v. Nicholson Air Services, Inc.*, 680 F.2d 103, 104 (11th Cir. 1982).

The Movant on a motion to dismiss must sustain the very high burden of showing that the plaintiff can prove *no* set of facts that could support the claims in the complaint. *Mays v. United States Postal Service*, 928 F. Supp. 1552, 1557 (M.D. Ala. 1996). The standard on a 12(b)(6) motion is not whether the plaintiff will ultimately prevail on the theories, but whether the allegations are sufficient to allow discovery in an attempt to prove the allegations. *Jackam*, 800 F.2d at 1579.

In his complaint, Plaintiff has specifically alleged that Wachovia has charged and attempted to or has collected debts that are a direct result of illegal gambling activity over the internet. Cmplt. at ¶56. The complaint is replete with the allegations concerning the involvement of Wachovia. Plaintiff's Complaint fully exposes Wachovia's involvement in the internet gambling industry for what it is – the critical link in the chain which enables the gambler to place a bet on an internet gambling web site. (Complaint ¶¶ 25, 26, 27, 30, 32, 33, 34, 35, 36, 39, 76, 77, 78, 81 and 89).

The allegations in the Complaint which describe Wachovia's role in the Internet gambling industry are to be taken as true, and Wachovia will be free to offer evidence to the contrary during discovery.

## ARGUMENT

I. **Neither the MDL nor the Fifth Circuit has ruled on the applicability of Georgia law to Plaintiff's claims.**

The Defendant in this case has mischaracterized the Fifth Circuit's opinion regarding the legality of the transactions between Wachovia and the Plaintiff, a Georgia resident. Specifically, Wachovia makes broad statements and conclusory allegations that all of the federal and state law claims alleged by the Plaintiff in this case were disposed of in the MDL proceeding and that the Plaintiff has no legal cause of action remaining. This self-serving position vastly overstates the true holding of the Fifth Circuit's opinion regarding the Internet Gambling MDL's conclusions.

It is obvious to even the most casual reader of the Fifth Circuit's opinion in *In re Mastercard International Inc., Internet Gambling Litigation,* 132 F.Supp.2d 468, (5th Cir. 2001) that the decision does not reach the Georgia state law claims for declaratory judgment. Indeed, the only state law mentioned in the entire opinion are the anti-gambling statues of New Hampshire and Kansas. *Internet Gambling Litigation*, 132 F. Supp. 2d at 478. The Fifth Circuit ruled that the RICO allegations could not stand because the anti-gambling laws of New Hampshire and Kansas failed as a matter of law to support the predicate acts necessary to prosecute RICO claims. *Id*. at 478, 479. That was the whole extent of the state law examination and analysis conducted by the Fifth Circuit. Georgia law was never mentioned in the opinion. The omission of Georgia law in the opinion clearly allows Plaintiff's state law declaratory judgment count to survive.

Federal courts in a diversity case are to apply the law of the state in which the suit was originally filed. *Guaranty Trust Co. Of New York v. York,* 326 U.S. 99, 112, 65 S.Ct. 1464,

4

1471 (1945); *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). This particular action was brought in the United States District Court for the Northern District of California. It is indisputable that an MDL panel when ruling on dispositive motions that may bar recovery in a case must rely on the substantive law of the state in which the proceeding was originally filed. *See Weathersby v. Lincoln Elec. Co.* Slip Copy E.D.La.,2003. May 9, 2003 (citing *Guaranty Trust Co. Of New York v. York,* 326 U.S. 99, 112, 65 S.Ct. 1464, 1471 (1945); *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

Although this case was filed in a California District Court, California choice of law provisions would require that Georgia statutes be used as the applicable substantive law. Where the parties to a contract, oral or written, have not made an effective choice of law, §§ 188 of the Restatement controls. See Robert Allen Sedler, "The Contracts Provisions of the Restatement (Second): An Analysis and A Critique," 72 Colum. L. Rev. 279, 280-81 (1972); Gary J. Simson, Issues and Perspectives in Conflict of Laws (Durham: Carolina Academic Press, 1985), at 128-30 n.2. Under § 188, tile law of the state with the "most significant relationship" to the transaction at issue is applied. Id. California has adopted the rule of § 188. *See Edwards v. United States Fidelity and Guar. Co.*, 848 F. Supp. 1460 (N.D. Cal. 1994); *Stonewall Surplus Lines Ins. Co. v. Johnson Controls, Inc.*, 14 Cal. App.4th 637, 17 Cal. Rptr.2d 713 (1993); *Sotirakis v. United Services Automobile Assoc.*, 106 Nev. 123, 787 P.2d 788 (1990). §§ 188 reads, in its entirety:

> Law Governing in Absence of Effective Choice by the Parties
>
> The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in §§ 6.

> In the absence of an effective choice of law by the parties (see §§ 187), the contacts to be taken into account in applying the principles of §§ 6 to determine the law applicable to an issue include:
>
> (a) the place of contracting,
>
> (b) the place of negotiating of the contract,
>
> (c) the place of performance,
>
> (d) the location of the subject matter of the contract, and
>
> (e) the domicile, residence, nationality, place of incorporation and place of business of the parties.
>
> These contacts are to be evaluated according to their relative importance with respect to the particular issue.
>
> (3) If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied, except as otherwise provided in §§§ 189-199 and 203.

Restatement 2nd §188.

II.  **Georgia law prohibits the enforcement of debts resulting from illegal gambling activity of the type alleged in the complaint.**

Georgia law is quite clear that illegal gambling contracts are void and unenforceable and that those who provide financing for those illegal wagers are estopped from trying to collect on them. *St. Paul Fire and Marine Ins. Co. v. Mitchell*, 296 S.E.2d 126, 132(Ga. App. 1982). Georgia will not enforce contacts based on gambling debts and has enacted statutes specifically designed to accomplish this laudable goal. §13-8-3a, Georgia Code(2002) spells this out specifically saying: "Gambling contracts are void; and all evidences of a debt, except negotiable instruments in the hands of holders in due course or encumbrances or liens on property, executed upon a gambling consideration, are void in the hands of any person."

Wachovia is not a holder in due course. Wachovia did not purchase the note from anyone and in fact was the very institution that facilitated the credit extension for the gambling to take place. The plain language of the statute holds that this debt is not enforceable under Georgia law and that the Plaintiff is entitled to the relief requested in his state law declaratory judgment action.

Any doubt that Georgia law does not permit the collection of gambling debts is surely laid to rest by the *Mitchell* decision and the applicable statutes. Wachovia is the maker of a note that was generated by illegal gambling activity prohibited by law in Georgia. Section 16-12-21 of the Georgia Code and Georgia's long standing public policy against enforcing gambling debts are irrefutable for the proposition that such debts are unenforceable in Georgia. It is precisely this type of activity that the statutes in Georgia were designed to prevent. The only possible way for Wachovia to escape the rule of law in Georgia is if this Court decides that internet gambling in Georgia is a legal activity. This the Court cannot do.

**A.     It is indisputable that gambling over the internet violates Georgia law.**

Internet gambling has become a scourge on the land. Billions of dollars are wagered every year by individuals though these unlicensed and unregulated, indeed, illegal, online casinos. Numerous states have vigorously prosecuted the owners and operators of these casinos for violations of state and federal law. In Minnesota, the Attorney General brought a civil action for violation of a Minnesota consumer fraud statute against an internet gambling operation located in Belize. *Humphrey v. Granite Gate Resorts, Inc.*, 568 N.W.2d 715, 717 (Minn.Ct.App. 1997). The Attorney General successfully shut down the operation after a ruling from the Minnesota Supreme Court which held that the internet gambling operation was soliciting Minnesota consumers to gamble illegally.

In Wisconsin, the Attorney General brought a civil action against the Coeur d'Alene Idaho Tribe seeking to bar the tribe from establishing an internet lottery. *State of Wisconsin v. Coeur D'Alene Tribe, et al.,* No. 97-C-711-S (W.D.Wisc. Feb. 18, 1998). While the court dismissed the tribe as a party due to its sovereign immunity, the court did not dismiss its internet gambling industry partners, as parties. As a result of the ruling, the remaining parties agreed not to proceed with the internet lottery. *On-Line International, Inc. v. Thompson,* No. 97-C-0706-S and 97-C-741-S (W.D.Wisc. April 17, 1998).

In Missouri, the Attorney General brought a civil action against the same Coeur d'Alene Idaho Tribe seeking to prevent the same activity occurring in Wisconsin. The United States Court of Appeals for the Eighth Circuit ruled that gambling over the internet occurs in the state where the transaction occurs, not in the foreign land of the internet gambling operation. *State of Missouri v. Coeur D'Alene Tribe, et al.,* 164 F.3d, 1102, 1108 (8th Cir. 1999).

In New York, the Attorney General brought a civil action against Internet gambling operators seeking to enjoin them from operating within or offering to residents of New York gambling over the internet. The state court held that defendants were violating New York state's gambling laws and "several federal laws," including the Wire Act. *The People of the State of New York by Dennis C. Vacco, v. World Interactive Gaming Corp., et al.,* Index No. 404428/98, 1999 WL 591995, (N.Y. Sup. Ct. July 22, 1999).

> Statutes such as the Wire Act, the Travel Act and the Interstate Transportation of Wagering Paraphernalia Act are just three examples of the federal government's policy against gambling.

*Id.* at 5.

The court firmly established:

> ...[U]se of the Internet to conduct [] illegal gambling business violates federal

8

law.

...[T]he Internet is accessed by using a telephone wire. When the telephone wire is connected to a modem attached to a user's computer, the user's phone line actually connects the user to the Internet server and then the user may log onto this illegal gambling website from any location in the United States. After selecting from the multitude of illegal games offered by [defendants], the information is transmitted to the server in Antigua. [Defendants'] server then transmits betting information back to the user which is against the Wire Act. **The Internet site creates a virtual casino within the user's computer terminal. By hosting this casino and exchanging betting information with the user, an illegal communication in violation of the Wire Act and the Travel Act has occurred.**

*Id.* at 15.

In conclusion, the Court held:

The [defendants'] total activities unambiguously advance gambling in direct violation of the explicit safeguards that New York and the federal laws have placed against unauthorized gambling activity.

*Id.* at 17.

The inescapable conclusion drawn from each of these cases is that internet gambling is *per se* illegal when the internet gambling companies are not licensed or regulated by the states in which they are accessed. There is zero dispute on this point, nor can there be.

Georgia has several statutes that prohibit gambling by unauthorized persons or entities. *See,* §16-12-21 *et seq,* Georgia Code (2002). These statutes are very similar to the laws prohibiting gambling in the cases mentioned above. Georgia courts have not yet had to determine if internet gambling is illegal, but there is ample reason to believe and predict that courts in Georgia would so hold. Georgia law strictly prohibits gambling operations within the state unless the gambling is authorized by the state legislature. Gambling over the internet requires the individual to "log on" to the internet gambling site and consummate the transaction at home. The wagering contract is ultimately accepted by the

9

individual at home in Georgia, thus triggering the applicability of Georgia law. It logically follows then that if the contract was formed in Georgia and the contract is one for gambling, then Georgia law will not enforce the contract due to the provisions of Section 13-8-3 of the Georgia Code.

There is no question remaining then that the Defendant has failed to show that the Plaintiff is unable to prove any set of facts necessary to support the allegations contained in the declaratory judgment count. To the contrary. The Plaintiff has shown beyond a doubt that Georgia law prohibits gambling and that the collection of gambling debts or wagering contracts are unenforceable as a matter of law. Defendant has failed utterly to prove the necessary requirements in order to prevail on a 12(b)(6) motion to dismiss. Indeed, the facts mandate that this Court find for the Plaintiff on this issue and declare the contract null and void and require Wachovia to disgorge itself of any monies received from internet gambling debts and prohibit Defendant from attempting to collect these debts in the future.

Defendant is simply incorrect as a matter of law that Georgia law does not protect gamblers from creditors attempting to collect a debt resulting from illegal wagering activities. Defendant does not cite to the relevant law in its brief. Wachovia's active participation in supplying the means for these transactions to occur and the illegality of those transactions is the basis for the declaratory judgment sought by the Plaintiff under Georgia law.

Defendant's motion to dismiss under F.R. Civ. P 12(b)(6) is due to be denied for the above reasons. The Plaintiff clearly has colorable claims under Georgia law and there is no legal justification cited to by the Defendant that would preclude this Court from issuing a declaratory judgment in favor of the Plaintiff declaring the debts null and void as unenforceable gambling debts under the applicable law in Georgia.

III. **Defendant's alternative motion for summary judgment is due to be denied on the same grounds.**

Summary judgment may be entered on a claim only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). *Gallups v. City of Alexander City*, 2003 WL 22391253 M.D.Ala.,2003. Oct. 21, 2003. The Defendant has failed to meet its burden of showing that there is no question of material fact in this matter. Plaintiff has made it abundantly clear under Georgia law that the debts complained of are illegal and unenforceable in Georgia. At the very least, Plaintiff has created a genuine issue of material fact as to the applicability of 13-8-3 Ga. Code (2002) as it applies to Plaintiff's transactions with the Defendant. Defendant is not entitled to summary judgment for this very reason. Plaintiff respectfully requests this Court to deny this alternative request for summary judgment for the reasons set forth above.

## CONCLUSION

This Court has the authority to retain supplemental jurisdiction over the remaining claims in the Plaintiff's Complaint. Plaintiff's state declaratory judgment request is due to be granted with a ruling that the debts charged on the accounts held by Wachovia constitute illegal gambling debts and are unenforceable under Georgia law. Defendant has failed to prove any facts or to any legal certainty that Plaintiff cannot prove facts necessary to support the state law declaratory judgment requested. Defendant's motion is therefore due to be denied on the 12(b)(6) relief requested and in the alternative for summary judgment.

Respectfully submitted,

*/s/ Lewis Garrison*

W. Lewis Garrison, Jr. (GAR008)
Attorney for Plaintiff and Class

OF COUNSEL:
GARRISON SCOTT GAMBLE & ROSENTHAL, P.C.
2224 1st Avenue North
P.O. Box 11310
Birmingham, AL 35202


Barry G. Reed
ZIMMERMAN REED, P.C.
14646 N. Kierland BLVD, Suite 145
Scottsdale, AZ 85254-2762


## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the above and foregoing upon all counsel of record by placing same in the United States Mail, postage prepaid and properly addressed, this 28 day of October, 2003:

R. Patrick Vance, Esq.
JONES, WALKER, WAECHTER, POITEVENT,
  CARRERE & DENEGRE, LLP
201 St. Charles Avenue, 49th Floor
New Orleans, LA 70170

Lawrence E. Miller, Esq.
Kevin R.J. Schroth, Esq.
LEBOEUF LAMB GREEN & MCRAE, LLP
One Riverfront Plaza
Newark, NJ 07102-5490
900 Park Place Tower
2001 Park Place North
Birmingham, AL 35203

*/s/*
OF COUNSEL

12