

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: MASTERCARD INTERNATIONAL
INTERNET GAMBLING LITIGATION

MDL Docket No: MDL-1321 & 1322

Sect K

FROM THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA

MARK FREEMAN

v.                                                          CV-99-D-108-N

VISA INTERNATIONAL SERVICE
ASSOCIATION AND PROVIDIAN
NATIONAL BANK

PLAINTIFF'S RESPONSE AND OPPOSITION TO
PROVIDIAN FEDERAL BANK'S MOTION TO DISMISS

INTRODUCTION

Plaintiff filed a motion to amend his complaint in the Middle District of Alabama on June 18, 1999. The amendment requested will add state law claims for declaratory judgment in addition to the other counts already alleged. As of this filing, no ruling has been made on

the motion to amend the pleadings by this Court or any other. Plaintiff is entitled to have his complaint amended as requested. Plaintiff's ability to amend the complaint should be freely given by the court under rule 15(a) of the F. R. Civ. P. Plaintiff will show that the amendment is not futile and the underlying request for declaratory judgment is due to be granted.

## STATEMENT OF JURISDICTION

The United States District Court for the Middle District of Alabama had original jurisdiction over this matter. Complaint at ¶ 8. Following the filing of the Complaint, this action was consolidated and coordinated under the authority of 28 U.S.C. §1407 for pretrial proceedings in the Internet Gambling MultiDistirct Litigation Panel. Undisputedly, this Court exercises federal question or original jurisdiction to decide the issues presented in the Complaint. This Court also has the authority to exercise supplemental authority as shown below.

**A.   This Court has jurisdiction to and authority to exercise supplemental jurisdiction.**

28 U.S.C. §1367(a) provides that a federal district court shall have supplemental jurisdiction over all other claims in the action within the court's original jurisdiction that form part of the same case or controversy. The requested declaratory judgment action that Plaintiff seeks leave to add are related to the same nucleus of facts to form part of the same case or controversy.

This Court should find that the claims comprise the same case or controversy for purposes of supplemental jurisdiction because the remedies stem from a single wrong. *ITT Commercial Fin. Corp. v. Unlimited Automotive, Inc.*, 814 F.Supp. 664 (N.D. Ill. 1992). When claims arise from the same conduct, and are controlled by the same legal issues, the

court has supplemental jurisdiction over related claims even if it lacks independent basis for federal subject mater jurisdiction. *Patterson Enterprises v. Bridgestone/Firestone, Inc.*, 812 F.Supp. 1152 (D. Kan. 1993).

It is inconsequential that the proposed amendment to the complaint asserts violations of state law as a basis for a declaratory judgment action. In *Miller v. Brooks (In re Am. Honda Motor Co.), 315* F.3d 417 (4th Cir. 2003), the district court determined that it possessed subject matter jurisdiction over the MDL proceedings under the federal question statute and the supplemental jurisdiction statute when the class action complaint raised claims under bother federal and state law. Federal courts may exercise jurisdiction over a state claim if the state and federal claims "derive from a common nucleus of operative fact." *United Mine Workers v. Gibbs,* 383 U.S. 715, 725 (1966). In *Gibbs*, the Supreme Court held that jurisdiction may properly be exercised if "plaintiff's claims are such that he ordinarily be expected to try them all in one judicial proceeding." *Id.*

This court does have discretion on whether to exercise supplemental jurisdiction over a state law declaratory judgment action. A district court may decline to exercise its authority to hear supplemental jurisdiction issues when:

(1) the claim raises a novel or complex issue of state law;

(2) if the state law claim substantially predominates;

(3) if all federal claims have been dismissed; or

(4) if, in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. §1367(c).

Only section is applicable in this instance if the Court allows Plaintiff to amend his

3

complaint. Even then, there exists a question as to whether all the federal claims have been dismissed, as plaintiff seeks a remedy under a federal statute: the Federal Declaratory Judgment Act. Nevertheless, this Court is not required to decline jurisdiction. 28 U.S.C. §1367(c)(3).

It is clear that the interests of judicial economy and efficiency in multi district litigation proceedings are best served by retaining supplemental jurisdiction over the declaratory judgment counts. Courts may consider various factors when exercising its powers of supplemental jurisdiction, such as length of time the case has been pending, the procedural posture of the case, complexity of supplemental claims, convenience to the parties, and judicial economy. Each of these factors weighs heavily in favor of the Court exercising its supplemental jurisdiction authority. This case has been pending for over three years and has been vigorously contested.

Remand would waste judicial resources and result in additional delay for the parties in concluding this mater. "After there has been substantial expenditure in time, effort and money in preparing the dependent claims, knocking them down with a belated rejection of supplemental jurisdiction may not be fair. Nor is it by any means necessary." *Purgess v. Shamrock*, 33 F.3d. 134, 138 (2d Cir. 1994).

The Alabama gambling statutes cited in the proposed amendment to the complaint are straightforward and have already been added by amendment in other cases in this MDL.[1] The following portions of this brief will show unequivocally that Plaintiff is entitled to the relief requested. Remand of this case back to the Middle District of Alabama would thwart the

---

[1] *Evelyn Brown v. Mastercard International and Fidelity National Bank*, CV-99-A-778-N, (M.D. Ala.)

4

purposes and rational behind the entire MDL process.

## LEGAL STANDARD

The fact that motions to dismiss are virtually a reflex response of defendants cannot alter the fact that dismissal under Federal Rule of Civil Procedure 12(b)(6) is an extreme remedy that should not be granted unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of the claims in the complaint. *Jackam v. Hospital Corp. of America Mideast, Ltd.*, 800 F.2d 1577, 1579 (11th Cir. 1986) quoting *Bracewell v. Nicholson Air Services, Inc.*, 680 F.2d 103, 104 (11th Cir. 1982).

The Movant on a motion to dismiss must sustain the very high burden of showing that the plaintiff can prove *no* set of facts that could support the claims in the complaint. *Mays v. United States Postal Service*, 928 F. Supp. 1552, 1557 (M.D. Ala. 1996). The standard on a 12(b)(6) motion is not whether the plaintiff will ultimately prevail on the theories, but whether the allegations are sufficient to allow discovery in an attempt to prove the allegations. *Jackam*, 800 F.2d at 1579.

In her complaint, Plaintiff has specifically alleged that Providian has charged and attempted to or has collected debts that are a direct result of illegal gambling activity over the internet. Cmplt. at ¶56. The complaint is replete with the allegations concerning the involvement of Providian. Plaintiff's Complaint fully exposes Providian's involvement in the internet gambling industry for what it is – the critical link in the chain which enables the gambler to place a bet on an internet gambling web site. (Complaint ¶¶ 25, 26, 27, 30, 32, 33, 34, 35, 36, 39, 76, 77, 78, 81 and 89).

The allegations in the Complaint which describe Providian's role in the Internet gambling industry are to be taken as true, and Providian will be free to offer evidence to the

5

contrary during discovery.

## ARGUMENT

I. **Neither the MDL nor the Fifth Circuit has ruled on the applicability of Alabama law to Plaintiff's claims.**

The Defendant in this case has mischaracterized the Fifth Circuit's opinion regarding the legality of the transactions between Providian and the Plaintiff, an Alabama resident. Specifically, Providian makes broad statements and conclusory allegations that all of the federal and state law claims alleged by the Plaintiff in this case were disposed of in the MDL proceeding and that the Plaintiff has no legal cause of action remaining. This self-serving position vastly overstates the true holding of the Fifth Circuit's opinion regarding the Internet Gambling MDL's conclusions.

It is obvious to even the most casual reader of the Fifth Circuit's opinion in *In re Mastercard International Inc., Internet Gambling Litigation,* 132 F.Supp.2d 468, (5th Cir. 2001) that the decision does not reach the Alabama state law claims for declaratory judgment if allowed to be amended to the complaint. Indeed, the only state law mentioned in the entire opinion are the anti-gambling statues of New Hampshire and Kansas, two states that have never been confused with Alabama. *Internet Gambling Litigation*, 132 F. Supp. 2d at 478. The Fifth Circuit ruled that the RICO allegations could not stand because the anti-gambling laws of New Hampshire and Kansas failed as a matter of law to support the predicate acts necessary to prosecute RICO claims. *Id.* at 478, 479. That was the whole extent of the state law examination and analysis conducted by the Fifth Circuit. Alabama law was never mentioned in the opinion. The omission of Alabama law in the opinion clearly allows Plaintiff's state law declaratory judgment count to survive if amended in the complaint.

6

Federal courts in a diversity case are to apply the law of the state in which the suit was originally filed. *Guaranty Trust Co. Of New York v. York,* 326 U.S. 99, 112, 65 S.Ct. 1464, 1471 (1945); *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). This particular action was brought in the United States District Court for the Middle District of Alabama. It is indisputable that an MDL panel when ruling on dispositive motions that may bar recovery in a case must rely on the substantive law of the state in which the proceeding was originally filed. *See Weathersby v. Lincoln Elec. Co.* Slip Copy E.D.La.,2003. May 9, 2003 (citing *Guaranty Trust Co. Of New York v. York,* 326 U.S. 99, 112, 65 S.Ct. 1464, 1471 (1945); *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

II. **Alabama law prohibits the enforcement of debts resulting from illegal gambling activity of the type alleged in the complaint.**

Alabama law is quite clear that illegal gambling contracts are void and unenforceable and that those who provide financing for those illegal wagers are estopped from trying to collect on them. Section 8-1-150(a) Ala. Code (1975). This has been the law in Alabama for over one hundred years. See *Kuhl v. M. Gally Universal Press Co.*, 26 So. 535, (Ala. 1899). The facts of the Kuhl case are particularly persuasive and binding on this Court. *Kuhl* involved a foreclosure action commenced M. Gally Universal Press Co. Kuhl purchased on credit several dozen "dice fortune telling machines", which patrons in her establishment would gamble on in hopes of winning cigars each time they played a game on the machine. *Id.* at 536. Kuhl was unable to keep up the payments on the machines and M. Gally moved to foreclose on the machines. M. Gally was not a party to the original transaction in which Kuhl purchased the machines, but instead, was the assignee on the note from the original seller. The Alabama Supreme Court ruled that the debt owed by Ms. Kuhl was null and unenforceable

against her by M. Gally. *Id.* at 536. The Court held that the generally established rule, independent of statute, is that contracts made in furtherance of gambling transactions, though not immediately involving a wager, are void, as against public policy. *Id.* The Court further noted that it did not matter at all that the M. Gally was not a party to the original transaction involving the sale and purchase of gambling devices. *Id.* It was no defense at all to assert that the holder of the note was innocent in the formation of the contract. *Id.* The Court explained this result by holding:

> The surrender of those first papers and an extension of time of payment formed the only consideration moving from the machine company to her for the second papers. Long prior to their execution the company had parted with all its interest in the machines, and their transfer to defendant was a consideration moving to her only from Schimpf. Whatever taint of illegality existed in the first notes and mortgage infected the last notes and mortgage, and the same defense can be made to the last as to the first. *Embrey v. Jemison*, supra; *Hynds v. Hays*, 25 Ind. 31. Illegality of consideration for negotiable paper, arising merely from its being offensive to public policy, does not affect the rights of an innocent holder for value; but the rule is otherwise when the instrument is made absolutely void by statute, as in contracts founded in whole or in part on a gambling consideration. Manning v. Manning, 8 Ala. 138; *Saltmarsh v. Tuthill*, 13 Ala. 390; *Finn v. Barclay*, 15 Ala. 626; *Hawley v. Bibb,* 69 Ala. 52. But it is contended for the complainant that though the contract be *contra bonos mores*, as in furtherance of gambling, it is not a gambling contract, within the meaning of the annulling statute, and that, therefore, complainant should be protected, as an innocent holder of the notes. **The moral principle which the contract offends is precisely that which the statute is designed to protect. The terms of the statute do not require its restriction to actual wagers, or to contracts made in settlement of betting losses. Such has not been its interpretation in this court.** (emphasis added). The case of *Hawley v. Bibb*, supra, involved a bill filed by a transferee of a bill of exchange to foreclose a mortgage given to secure the bill, the consideration of which was a loan of money furnished the borrower as a stake with which to engage in the buying and selling of cotton futures. Upon the ground that the contract was governed by the laws of New York, it was held enforceable here; but it was said that, "if the contract had contemplated that the money should have been advanced and loaned in this state upon transactions made here, the bill of exchange would fall within the interdiction of the statute, and would be void even in the hands of an innocent holder for value." In *Peet v. Hatcher*, 112 Ala. 514, 21 South. 711, a similar transaction was under consideration by this court; and the case of *Hawley v. Bibb* was referred to approvingly, as showing that the statute was applicable to such a case. The principle so declared in those cases is applicable to the transaction here involved, and the conclusion follows that the notes and mortgage in suit must be held void under the statute referred to. Ordinarily, courts of equity will refuse assistance to all the parties to an illegal transaction. But section 638 of the Code extends the jurisdiction of courts of

8

> equity "to all cases founded on a gambling consideration so far as to sustain a bill of discovery and grant relief." The policy of this statute is not to aid a loser, but to discourage gambling; and accordingly the courts are bound to exercise the jurisdiction, and to relieve, in proper cases, without imposing upon the party seeking it the usual condition of doing equity. *Finn v. Barclay,* supra; *Cheatham v. Young*, 5 Ala. 353. Therefore, under the cross bill, the notes and mortgage must be declared void unconditionally; but the decree will also direct the delivery up of 125 machines to the complainant, according to the defendant's offer made in her cross bill. The decree appealed from will be reversed, and a decree here rendered dismissing the original bill, and granting relief under the cross bill, as has been indicated. The appellee will pay the costs in this court and in the chancery court.

*Id.*

Any doubt that Alabama law does not permit the collection of gambling debts is surely laid to rest by the *Kuhl* decision which has been, and still is, the law in Alabama. The facts in the current case are strikingly similar to the ones found in the *Kuhl* case. Providian is the holder of note that was generated by illegal gambling activity prohibited by law in Alabama. Section 8-1-150 of the Alabama Code and the *Kuhl* decision that interprets the section are irrefutable for the proposition that such debts are unenforceable in Alabama. It makes no difference whatsoever if Providian had knowledge of the transaction or not. *Kuhl*, 26 So. at 536. It is precisely this type of activity that the statutes in Alabama were designed to prevent. The only possible way for Providian to escape the rule of law in Alabama is if this Court decides that internet gambling in Alabama is a legal activity. This the Court cannot do.

**A.     It is indisputable that gambling over the internet violates Alabama law.**

Internet gambling has become a scourge on the land. Billions of dollars are wagered every year by individuals though these unlicensed and unregulated, indeed, illegal, online casinos. Numerous states have vigorously prosecuted the owners and operators of these casinos for violations of state and federal law. In Minnesota, the Attorney General brought a civil action for violation of a Minnesota consumer fraud statute against an internet gambling

operation located in Belize. *Humphrey v. Granite Gate Resorts, Inc.,* 568 N.W.2d 715, 717 (Minn.Ct.App. 1997). The Attorney General successfully shut down the operation after a ruling from the Minnesota Supreme Court which held that the internet gambling operation was soliciting Minnesota consumers to gamble illegally.

In Wisconsin, the Attorney General brought a civil action against the Coeur d'Alene Idaho Tribe seeking to bar the tribe from establishing an internet lottery. *State of Wisconsin v. Coeur D'Alene Tribe, et al.,* No. 97-C-711-S (W.D.Wisc. Feb. 18, 1998). While the court dismissed the tribe as a party due to its sovereign immunity, the court did not dismiss its internet gambling industry partners, as parties. As a result of the ruling, the remaining parties agreed not to proceed with the internet lottery. *On-Line International, Inc. v. Thompson,* No. 97-C-0706-S and 97-C-741-S (W.D.Wisc. April 17, 1998).

In Missouri, the Attorney General brought a civil action against the same Coeur d'Alene Idaho Tribe seeking to prevent the same activity occurring in Wisconsin. The United States Court of Appeals for the Eighth Circuit ruled that gambling over the internet occurs in the state where the transaction occurs, not in the foreign land of the internet gambling operation. *State of Missouri v. Coeur D'Alene Tribe, et al.,* 164 F.3d, 1102, 1108 (8th Cir. 1999).

In New York, the Attorney General brought a civil action against Internet gambling operators seeking to enjoin them from operating within or offering to residents of New York gambling over the internet. The state court held that defendants were violating New York state's gambling laws and "several federal laws," including the Wire Act. *The People of the State of New York by Dennis C. Vacco, v. World Interactive Gaming Corp., et al.,* Index No. 404428/98, 1999 WL 591995, (N.Y. Sup. Ct. July 22, 1999).

Statutes such as the Wire Act, the Travel Act and the Interstate Transportation

of Wagering Paraphernalia Act are just three examples of the federal government's policy against gambling.

*Id.* at 5.

The court firmly established:

> ...[U]se of the Internet to conduct [] illegal gambling business violates federal law.
> ...[T]he Internet is accessed by using a telephone wire. When the telephone wire is connected to a modem attached to a user's computer, the user's phone line actually connects the user to the Internet server and then the user may log onto this illegal gambling website from any location in the United States. After selecting from the multitude of illegal games offered by [defendants], the information is transmitted to the server in Antigua. [Defendants'] server then transmits betting information back to the user which is against the Wire Act. **The Internet site creates a virtual casino within the user's computer terminal. By hosting this casino and exchanging betting information with the user, an illegal communication in violation of the Wire Act and the Travel Act has occurred.**

*Id.* at 15.

In conclusion, the Court held:

> The [defendants'] total activities unambiguously advance gambling in direct violation of the explicit safeguards that New York and the federal laws have placed against unauthorized gambling activity.

*Id.* at 17.

The inescapable conclusion drawn from each of these cases is that internet gambling is *per se* illegal when the internet gambling companies are not licensed or regulated by the states in which they are accessed. There is zero dispute on this point, nor can there be.

Alabama has several statutes that prohibit gambling by unauthorized persons or entities. *See*, §§13A-12-20, 27, Alabama Code (1975). These statutes are very similar to the laws prohibiting gambling in the cases mentioned above. In fact, the Defendant has already assumed that internet gambling is unlawful in Alabama and constitutes illegal

11

wagering of the type that the statutes were enacted to combat. Def. Brief at 11. Alabama courts have not yet had to determine if internet gambling is illegal, but there is ample reason to believe and predict that courts in Alabama would so hold. Alabama law strictly prohibits gambling operations within the state unless the gambling is authorized by the state legislature. In fact, the only gaming allowed in Alabama is for greyhound parks and pari-mutual betting on horse racing at those same facilities. All other forms of gambling are strictly prohibited. *See*, §§13A-12-20, 27, Alabama Code (1975). Alabama also follows the *lex loci contractus* rule for determining where a transaction takes place. *Chazen v. Parton*, 739 So.2d 1104, (Ala. 1999). Gambling over the internet requires the individual to "log on" to the internet gambling site and consummate the transaction at home. Under the *lex loci contractus* rule, the wagering contract is ultimately accepted by the individual at home in Alabama, thus triggering the applicability of Alabama law. It logically follows then that if the contract was formed in Labama and the contract is one for gambling, then Alabama law will not enforce the contract due to the provisions of Section 8-1-150 of the Alabama Code.

There is no question remaining then that the Defendant has failed to show that the Plaintiff is unable to prove any set of facts necessary to support the allegations contained in the declaratory judgment count. To the contrary. The Plaintiff has shown beyond a doubt that Alabama law prohibits gambling and that the collection of gambling debts or wagering contracts is unenforceable as a matter of law. Defendant has failed utterly to prove the necessary requirements in order to prevail on a 12(b)(6) motion to dismiss. Indeed, the facts mandate that this Court find for the Plaintiff on this issue and declare the contract null and void and require Providian to disgorge itself of any monies received from internet gambling debts and prohibit Defendant from attempting to collect these debts in the future.

**B.    Plaintiff has suffered injury in fact due to Defendant's participation in collecting gambling debts.**

Defendant's laughable position that there is no damage to the Plaintiff because none was alleged hardly merits a response. Plaintiff did allege in ¶ 24 and 25 that money was lost

on gambling over the internet and that the money used to place the bet came from a Visa credit card issued by Providian. Surely the Defendants do mean to suggest that this money charged was never billed or collected by Providian? Perhaps it is Providian's policy to write off such charges in a show of largess and generosity that Providian is known for in the credit industry? Could it be that Providian recognizes the pernicious character of internet gambling and chooses not to be a party to it? Perhaps, but one should not bet on it. Providian has absolutely charged and attempted to collect or collected money owed as a result of an illegal wagering contract and provided the financial conduit and means necessary to carry out illegal transactions involving gambling over the internet in clear violation of Alabama law. It is an absurdity that Providian should even hint at something otherwise. Defendant's arguments to show a lack of injury must fail on their face because there is no rational basis to support such a ridiculous assertion. Defendant's arguments should be dismissed out of hand by this Court and the declaratory judgment requested by the Plaintiff added to the complaint and granted.

## CONCLUSION

This Court has the authority to retain supplemental jurisdiction over the remaining claims in the Plaintiff's Complaint. Plaintiff's motion to the amend the complaint to add state declaratory judgment request is due to be granted with a ruling that the debts charged on the accounts held by Providian constitute illegal gambling debts and are unenforceable under Alabama law. Defendant has failed to prove any facts or to any legal certainty that Plaintiff cannot prove facts necessary to support the state law declaratory judgment requested. Defendant's motion is therefore due to be denied on the 12(b)(6) relief requested and in the alternative for summary judgment.

Respectfully submitted,

W. Lewis Garrison, Jr. (GAR008)
Attorney for Plaintiff and Class

13

OF COUNSEL:
GARISON SCOTT GAMBLE & ROSENTHAL, P.C
2224 1st Avenue North
P.O. Box 11310
Birmingham, AL 35202


Barry G. Reed
ZIMMERMAN REED, P.C.
14646 N. Kierland BLVD, Suite 145
Scottsdale, AZ 85254-2762


## CERTIFICATE OF SERVICE

      I hereby certify that I have served a copy of the above and foregoing upon all counsel of record by placing same in the United States Mail, postage prepaid and properly addressed, this ___ day of _____, 2003:

R. Patrick Vance, Esq.
JONES, WALKER, WAECHTER, POITEVENT,
  CARRERE & DENEGRE, LLP
201 St. Charles Avenue, 49th Floor
New Orleans, LA 70170

John M. Johnson, Esq.
Jackson R. Sharmon III, Esq.
William H. Morrow, Esq.
LIGHTFOOT FRANKLIN & WHITE, L.L.C.
The Clark Building
400 North 20th Street
Birmingham, AL 35203-3200


_____
OF COUNSEL