

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: MASTERCARD INTERNATIONAL
INTERNET GAMBLING LITIGATION

MDL Docket No: MDL-1321 & 1322

Sect K

---

FROM THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA

EVELYN BROWN

v.                                              CV-99-A-778-N

MASTERCARD INTERNATIONAL
AND FIDELITY NATIONAL BANK

---

PLAINTIFF'S RESPONSE AND OPPOSITION TO
FIDELITY FEDERAL BANK'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT OR ALTERNATIVELY,
MOTION FOR SUMMARY JUDGMENT

---

STATEMENT OF JURISDICTION

This Court has jurisdiction to and authority to exercise supplemental jurisdiction over the remaining counts alleged in the amended complaint. 28 U.S.C. §1367(a) provides the

___ Fee_____
___ Process___
 X  Dktd_____
 ✓  CtRmDep___
___ Doc. No.___

statutory authority for this Court to retain jurisdiction when the remaining claims form part of the same case or controversy. Defendant, Fidelity Federal Bank, ("Fidelity") concedes this point in its brief. Def. Brief at 6. Plaintiff Brown has two counts pending that have not been fully adjudicated on the merits. These claims are for federal and state declaratory judgement under the Declaratory Judgment Act, 28 U.S.C. § 2201 and Alabama state law respectively. This Court retains broad discretion when deciding whether or not to exercise its jurisdiction on declaratory judgment actions brought under federal law. *Brillhart v. Excess Ins. Co. of America,* 316 U.S. 491, 494-496, 62 S.Ct. 1173, 1175-1176, 86 L.Ed. 1620 (1942). Indeed, there are numerous compelling reasons that favor this Court retaining jurisdiction over these remaining claims.

This Court has spent considerable time and effort on this case and the others that comprise and made the basis for this MDL panel. This particular action was filed over three years ago and any further delay in resolving the remaining issues would hinder the goals of preserving judicial resources and avoiding unnecessary delay. Both of these considerations weigh heavily in favor of this Court retaining jurisdiction over this matter. Again, Fidelity and the Plaintiff in this mater are in full accord that this Court should retain jurisdiction over the remaining claims. Def. Brief at 9. This Court may also exercise its powers of supplemental jurisdiction to adjudicate the state law declaratory action. *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966).

All parties to this litigation are in agreement that this Court has the authority to retain jurisdiction over the remaining causes of action in this matter and that the Court use the discretion allowed by federal statute and case law to do so.

2

## **LEGAL STANDARD**

The fact that motions to dismiss are virtually a reflex response of defendants cannot alter the fact that dismissal under Federal Rule of Civil Procedure 12(b)(6) is an extreme remedy that should not be granted unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of the claims in the complaint. *Jackam v. Hospital Corp. of America Mideast, Ltd.*, 800 F.2d 1577, 1579 (11th Cir. 1986) quoting *Bracewell v. Nicholson Air Services, Inc.*, 680 F.2d 103, 104 (11th Cir. 1982).

The Movant on a motion to dismiss must sustain the very high burden of showing that the plaintiff can prove *no* set of facts that could support the claims in the complaint. *Mays v. United States Postal Service*, 928 F. Supp. 1552, 1557 (M.D. Ala. 1996). The standard on a 12(b)(6) motion is not whether the plaintiff will ultimately prevail on the theories, but whether the allegations are sufficient to allow discovery in an attempt to prove the allegations. *Jackam*, 800 F.2d at 1579.

In her complaint, Plaintiff has specifically alleged that Fidelity has charged and attempted to or has collected debts that are a direct result of illegal gambling activity over the internet. Cmplt. at ¶56. The complaint is replete with the allegations concerning the involvement of Fidelity. Plaintiff's Complaint fully exposes Fidelity's involvement in the internet gambling industry for what it is – the critical link in the chain which enables the gambler to place a bet on an internet gambling web site. (Complaint ¶¶ 25, 26, 27, 30, 32, 33, 34, 35, 36, 39, 76, 77, 78, 81 and 89).

The allegations in the Complaint which describe Fidelity's role in the Internet gambling industry are to be taken as true, and Fidelity will be free to offer evidence to the contrary during discovery.

## ARGUMENT

**I.   Neither the MDL nor the Fifth Circuit has ruled on the applicability of Alabama law to Plaintiff's claims.**

The Defendant in this case has mischaracterized the Fifth Circuit's opinion regarding the legality of the transactions between Fidelity and the Plaintiff, an Alabama resident. Specifically, Fidelity makes broad statements and conclusory allegations that all of the federal and state law claims alleged by the Plaintiff in this case were disposed of in the MDL proceeding and that the Plaintiff has no legal cause of action remaining. This self-serving position vastly overstates the true holding of the Fifth Circuit's opinion regarding the Internet Gambling MDL's conclusions.

It is obvious to even the most casual reader of the Fifth Circuit's opinion in *In re Mastercard International Inc., Internet Gambling Litigation,* 132 F.Supp.2d 468, (5th Cir. 2001) that the decision does not reach the Alabama state law claims for declaratory judgment. Indeed, the only state law mentioned in the entire opinion are the anti-gambling statues of New Hampshire and Kansas, two states that have never been confused with Alabama. *Internet Gambling Litigation*, 132 F. Supp. 2d at 478. The Fifth Circuit ruled that the RICO allegations could not stand because the anti-gambling laws of New Hampshire and Kansas failed as a matter of law to support the predicate acts necessary to prosecute RICO claims. *Id.* at 478, 479. That was the whole extent of the state law examination and analysis conducted by the Fifth Circuit. Alabama law was never mentioned in the opinion. The omission of Alabama law in the opinion clearly allows Plaintiff's state law declaratory judgment count to survive.

Federal courts in a diversity case are to apply the law of the state in which the suit was originally filed. *Guaranty Trust Co. Of New York v. York,* 326 U.S. 99, 112, 65 S.Ct. 1464,

4

1471 (1945); *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). This particular action was brought in the United States District Court for the Middle District of Alabama. It is indisputable that an MDL panel when ruling on dispositive motions that may bar recovery in a case must rely on the substantive law of the state in which the proceeding was originally filed. See *Weathersby v. Lincoln Elec. Co.* Slip Copy E.D.La.,2003. May 9, 2003 (citing *Guaranty Trust Co. Of New York v. York,* 326 U.S. 99, 112, 65 S.Ct. 1464, 1471 (1945); *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

II. **Alabama law prohibits the enforcement of debts resulting from illegal gambling activity of the type alleged in the complaint.**

Alabama law is quite clear that illegal gambling contracts are void and unenforceable and that those who provide financing for those illegal wagers are estopped from trying to collect on them. Section 8-1-150(a) Ala. Code (1975). This has been the law in Alabama for over one hundred years. See *Kuhl v. M. Gally Universal Press Co.,* 26 So. 535, (Ala. 1899). The facts of the Kuhl case are particularly persuasive and binding on this Court. *Kuhl* involved a foreclosure action commenced by M. Gally Universal Press Co. Kuhl purchased on credit several dozen "dice fortune telling machines", which patrons in her establishment would gamble on in hopes of winning cigars each time they played a game on the machine. *Id.* at 536. Kuhl was unable to keep up the payments on the machines and M. Gally moved to foreclose on the machines. M. Gally was not a party to the original transaction in which Kuhl purchased the machines, but instead, was the assignee on the note from the original seller. The Alabama Supreme Court ruled that the debt owed by Ms. Kuhl was null and unenforceable against her by M. Gally. *Id.* at 536. The Court held that the generally established rule, independent of statute, is that contracts made in furtherance of gambling transactions, though

5

not immediately involving a wager, are void, as against public policy. *Id.* The Court further noted that it did not matter at all that the M. Gally was not a party to the original transaction involving the sale and purchase of gambling devices. *Id.* It was no defense at all to assert that the holder of the note was innocent in the formation of the contract. *Id.* The Court explained this result by holding:

> The surrender of those first papers and an extension of time of payment formed the only consideration moving from the machine company to her for the second papers. Long prior to their execution the company had parted with all its interest in the machines, and their transfer to defendant was a consideration moving to her only from Schimpf. Whatever taint of illegality existed in the first notes and mortgage infected the last notes and mortgage, and the same defense can be made to the last as to the first. *Embrey v. Jemison*, supra; *Hynds v. Hays,* 25 Ind. 31. Illegality of consideration for negotiable paper, arising merely from its being offensive to public policy, does not affect the rights of an innocent holder for value; but the rule is otherwise when the instrument is made absolutely void by statute, as in contracts founded in whole or in part on a gambling consideration. Manning v. Manning, 8 Ala. 138; *Saltmarsh v. Tuthill*, 13 Ala. 390; *Finn v. Barclay*, 15 Ala. 626; *Hawley v. Bibb,* 69 Ala. 52. But it is contended for the complainant that though the contract be *contra bonos mores*, as in furtherance of gambling, it is not a gambling contract, within the meaning of the annulling statute, and that, therefore, complainant should be protected, as an innocent holder of the notes. ***The moral principle which the contract offends is precisely that which the statute is designed to protect. The terms of the statute do not require its restriction to actual wagers, or to contracts made in settlement of betting losses. Such has not been its interpretation in this court.*** (emphasis added). The case of *Hawley v. Bibb*, supra, involved a bill filed by a transferee of a bill of exchange to foreclose a mortgage given to secure the bill, the consideration of which was a loan of money furnished the borrower as a stake with which to engage in the buying and selling of cotton futures. Upon the ground that the contract was governed by the laws of New York, it was held enforceable here; but it was said that, "if the contract had contemplated that the money should have been advanced and loaned in this state upon transactions made here, the bill of exchange would fall within the interdiction of the statute, and would be void even in the hands of an innocent holder for value." In *Peet v. Hatcher*, 112 Ala. 514, 21 South. 711, a similar transaction was under consideration by this court; and the case of *Hawley v. Bibb* was referred to approvingly, as showing that the statute was applicable to such a case. The principle so declared in those cases is applicable to the transaction here involved, and the conclusion follows that the notes and mortgage in suit must be held void under the statute referred to. Ordinarily, courts of equity will refuse assistance to all the parties to an illegal transaction. But section 638 of the Code extends the jurisdiction of courts of equity "to all cases founded on a gambling consideration so far as to sustain a bill of discovery and grant relief." The policy of this statute is not to aid a loser, but to discourage gambling; and accordingly the courts are bound to exercise the jurisdiction, and to relieve, in proper cases, without imposing upon the party seeking it the usual condition of doing equity. *Finn v. Barclay,* supra;

> *Cheatham v. Young*, 5 Ala. 353. Therefore, under the cross bill, the notes and mortgage must be declared void unconditionally; but the decree will also direct the delivery up of 125 machines to the complainant, according to the defendant's offer made in her cross bill. The decree appealed from will be reversed, and a decree here rendered dismissing the original bill, and granting relief under the cross bill, as has been indicated. The appellee will pay the costs in this court and in the chancery court.

*Id.*

Any doubt that Alabama law does not permit the collection of gambling debts is surely laid to rest by the *Kuhl* decision which has been, and still is, the law in Alabama. The facts in the current case are strikingly similar to the ones found in the *Kuhl* case. Fidelity is the holder of note that was generated by illegal gambling activity prohibited by law in Alabama. Section 8-1-150 of the Alabama Code and the *Kuhl* decision that interprets the section are irrefutable for the proposition that such debts are unenforceable in Alabama. It makes no difference whatsoever if Fidelity had knowledge of the transaction or not. *Kuhl*, 26 So. at 536. It is precisely this type of activity that the statutes in Alabama were designed to prevent. The only possible way for Fidelity to escape the rule of law in Alabama is if this Court decides that internet gambling in Alabama is a legal activity. This the Court cannot do.

A. **It is indisputable that gambling over the internet violates Alabama law.**

Internet gambling has become a scourge on the land. Billions of dollars are wagered every year by individuals though these unlicensed and unregulated, indeed, illegal, online casinos. Numerous states have vigorously prosecuted the owners and operators of these casinos for violations of state and federal law. In Minnesota, the Attorney General brought a civil action for violation of a Minnesota consumer fraud statute against an internet gambling operation located in Belize. *Humphrey v. Granite Gate Resorts, Inc.*, 568 N.W.2d 715, 717 (Minn.Ct.App. 1997). The Attorney General successfully shut down the operation after a ruling

from the Minnesota Supreme Court which held that the internet gambling operation was soliciting Minnesota consumers to gamble illegally.

In Wisconsin, the Attorney General brought a civil action against the Coeur d'Alene Idaho Tribe seeking to bar the tribe from establishing an internet lottery. *State of Wisconsin v. Coeur D'Alene Tribe, et al.,* No. 97-C-711-S (W.D.Wisc. Feb. 18, 1998). While the court dismissed the tribe as a party due to its sovereign immunity, the court did not dismiss its internet gambling industry partners, as parties. As a result of the ruling, the remaining parties agreed not to proceed with the internet lottery. *On-Line International, Inc. v. Thompson,* No. 97-C-0706-S and 97-C-741-S (W.D.Wisc. April 17, 1998).

In Missouri, the Attorney General brought a civil action against the same Coeur d'Alene Idaho Tribe seeking to prevent the same activity occurring in Wisconsin. The United States Court of Appeals for the Eighth Circuit ruled that gambling over the internet occurs in the state where the transaction occurs, not in the foreign land of the internet gambling operation. *State of Missouri v. Coeur D'Alene Tribe, et al.,* 164 F.3d, 1102, 1108 (8th Cir. 1999).

In New York, the Attorney General brought a civil action against Internet gambling operators seeking to enjoin them from operating within or offering to residents of New York gambling over the internet. The state court held that defendants were violating New York state's gambling laws and "several federal laws," including the Wire Act. *The People of the State of New York by Dennis C. Vacco, v. World Interactive Gaming Corp., et al.,* Index No. 404428/98, 1999 WL 591995, (N.Y. Sup. Ct. July 22, 1999).

> Statutes such as the Wire Act, the Travel Act and the Interstate Transportation of Wagering Paraphernalia Act are just three examples of the federal government's policy against gambling.

*Id.* at 5.

The court firmly established:

> ...[U]se of the Internet to conduct [] illegal gambling business violates federal law.
> ...[T]he Internet is accessed by using a telephone wire. When the telephone wire is connected to a modem attached to a user's computer, the user's phone line actually connects the user to the Internet server and then the user may log onto this illegal gambling website from any location in the United States. After selecting from the multitude of illegal games offered by [defendants], the information is transmitted to the server in Antigua. [Defendants'] server then transmits betting information back to the user which is against the Wire Act. **The Internet site creates a virtual casino within the user's computer terminal. By hosting this casino and exchanging betting information with the user, an illegal communication in violation of the Wire Act and the Travel Act has occurred.**

*Id.* at 15.

In conclusion, the Court held:

> The [defendants'] total activities unambiguously advance gambling in direct violation of the explicit safeguards that New York and the federal laws have placed against unauthorized gambling activity.

*Id.* at 17.

The inescapable conclusion drawn from each of these cases is that internet gambling is *per se* illegal when the internet gambling companies are not licensed or regulated by the states in which they are accessed. There is zero dispute on this point, nor can there be.

Alabama has several statutes that prohibit gambling by unauthorized persons or entities. *See,* §§13A-12-20, 27, Alabama Code (1975). These statutes are very similar to the laws prohibiting gambling in the cases mentioned above. In fact, the Defendant has already assumed that internet gambling is unlawful in Alabama and constitutes illegal wagering of the type that the statutes were enacted to combat. Def. Brief at 11. Alabama courts have not yet had to determine if internet gambling is illegal, but there is ample reason to believe and predict that courts in Alabama would so hold. Alabama law strictly prohibits

gambling operations within the state unless the gambling is authorized by the state legislature. In fact, the only gaming allowed in Alabama is for greyhound parks and pari-mutual betting on horse racing at those same facilities. All other forms of gambling are strictly prohibited. See, §§13A-12-20, 27, Alabama Code (1975). Alabama also follows the *lex loci contractus* rule for determining where a transaction takes place. *Chazen v. Parton*, 739 So.2d 1104, (Ala. 1999). Gambling over the internet requires the individual to "log on" to the internet gambling site and consummate the transaction at home. Under the *lex loci contractus* rule, the wagering contract is ultimately accepted by the individual at home in Alabama, thus triggering the applicability of Alabama law. It logically follows then that if the contract was formed in Alabama and the contract is one for gambling, then Alabama law will not enforce the contract due to the provisions of Section 8-1-150 of the Alabama Code.

There is no question remaining then that the Defendant has failed to show that the Plaintiff is unable to prove any set of facts necessary to support the allegations contained in the declaratory judgment count. To the contrary. The Plaintiff has shown beyond a doubt that Alabama law prohibits gambling and that the collection of gambling debts or wagering contracts are unenforceable as a matter of law. Defendant has failed utterly to prove the necessary requirements in order to prevail on a 12(b)(6) motion to dismiss. Indeed, the facts mandate that this Court find for the Plaintiff on this issue and declare the contract null and void and require Fidelity to disgorge itself of any monies received from internet gambling debts and prohibit Defendant from attempting to collect these debts in the future.

**B.     Defendant's *in pari delicto* or unclean hands defense is not available where gambling contracts are concerned.**

Black's Law Dictionary defines one who is *in pari delicto* as being, "In equal fault; equally culpable or criminal; in a case of equal fault or guilt." Black's Law Dictionary 791 (6th ed. 1990). In Alabama the "mere bettor" is specifically excluded from the operation of this legal rule. See §8-1-150, Ala. Code (1975); *Kuhl v M. Gally Universal Press Co.*, 26 So. 535, (Ala. 1899). Indeed, the language in the statute is clear and unambiguous in that it is only

concerned with the actions of those who are involved in the illegal operation of or facilitating the operation of illegal gambling. The role of the individual gambler is the beneficiary of the above mentioned statute. Therefore, there can be no *in pari delicto* defense if the actions of the gambler are specifically excluded from consideration in the application of the statute.

While it may be the purpose of the *in pari delicto* doctrine to deter illegal activity, it may not stand as a shield to prevent individuals from asserting the rights guaranteed to them by the laws of their state. To allow for the defense of *in pari delicto* in the case at bar would in the same way seriously undermine the legislative intent and public policy requirements of deterring unlawful gambling activity as established by state laws. Defendant's position seems to be that since Plaintiff cannot challenge them because they are *in pari delicto* for placing a bet, Defendant should be free to provide financing for illegal gambling and collect on the debts. This turns the law regarding the unenforceability of gambling debts and same public policy inside out.

Defendant is simply incorrect as a matter of law that Alabama law does not protect gamblers from creditors attempting to collect a debt resulting from illegal wagering activities. Defendant does not cite to the relevant law in its brief. Instead, Defendant makes assertions based on equity that are not relevant when deciding gambling debts. Def. Brief at 18. All of Defendant's arguments on this issue completely miss the point of the law in Alabama and the law they do cite is inapplicable, irrelevant and immaterial.

Fidelity attempts further obfuscation of the obvious by making generalized assertions that Fidelity had no knowledge of the transaction's connection to illegal wagering. Def. Brief at 19. Paragraph 26 of Plaintiff's Complaint makes it obvious that Fidelity is aware that authorized merchants use their status to generate and "facilitate illegal bets and to finance their operations." Defendants have established a merchant agreement with Easybets in order to process these transactions. It is this fact that establishes actual knowledge of the gambling activity as required in Ala. Code § 8-1-150. It is well established in Alabama law that a loan is void when a lender knows it is for gambling purposes. *See generally, Osborn v. Pointer,* 128 So. 2d 530 (Ala. Ct. App. 1961), *Lee v. Boyd,* 86 Ala. 283, 5 So. 489 (1889).

Hence, Fidelity is fully aware that its cards are being systematically used for gambling purposes in violation of Alabama law, and that Fidelity undertakes efforts to collect these illegal debts. Fidelity's active participation in supplying the means for these transactions to occur and the illegality of those transactions is the basis for the declaratory judgment sought by the Plaintiff under Alabama law.

Defendant's motion to dismiss under F.R. Civ. P 12(b)(6) is due to be denied for the above reasons. The Plaintiff clearly has colorable claims under Alabama law and there is no legal justification cited to by the Defendant that would preclude this Court from issuing a declaratory judgment in favor of the Plaintiff declaring the debts null and void as unenforceable gambling debts under the applicable law in Alabama.

### III. Defendant's alternative motion for summary judgment is due to be denied on the same grounds.

Summary judgment may be entered on a claim only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). *Gallups v. City of Alexander City*, 2003 WL 22391253 M.D.Ala.,2003. Oct. 21, 2003. The Defendant has failed to meet its burden of showing that there is no question of material fact in this matter. Plaintiff has made it abundantly clear under Alabama law that the debts complained of are illegal and unenforceable in Alabama. At the very least, Plaintiff has created a genuine issue of material fact as to the applicability of 8-1-150 Ala. Code (1975) as it applies to Plaintiff's transactions with the Defendant. Defendant is not entitled to summary judgment for this very reason. Plaintiff respectfully requests this Court to deny this alternative request for summary judgment for the reasons set forth above.

### CONCLUSION

This Court has the authority to retain supplemental jurisdiction over the remaining claims in the Plaintiff's Complaint. Plaintiff's state declaratory judgment request is due to be granted with a ruling that the debts charged on the accounts held by Fidelity constitute illegal

gambling debts and are unenforceable under Alabama law. Defendant has failed to prove any facts or to any legal certainty that Plaintiff cannot prove facts necessary to support the state law declaratory judgment requested. Defendant's motion is therefore due to be denied on the 12(b)(6) relief requested and in the alternative for summary judgment.

Respectfully submitted,

W. Lewis Garrison, Jr. (GAR008)
Attorney for Plaintiff and Class

OF COUNSEL:
GARISON SCOTT GAMBLE & ROSENTHAL, P.C
2224 1st Avenue North
P.O. Box 11310
Birmingham, AL 35202


Barry G. Reed
ZIMMERMAN REED, P.C.
14646 N. Kierland BLVD, Suite 145
Scottsdale, AZ 85254-2762

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the above and foregoing upon all counsel of record by placing same in the United States Mail, postage prepaid and properly addressed, this 28 day of October, 2003:

R. Patrick Vance, Esq.
JONES, WALKER, WAECHTER, POITEVENT,
  CARRERE & DENEGRE, LLP
201 St. Charles Avenue, 49th Floor
New Orleans, LA 70170

Roger L. Bates, Esq.
Tracy R. Davis, Esq.
900 Park Place Tower
2001 Park Place North
Birmingham, AL 35203

_____
OF COUNSEL