

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: MASTERCARD INTERNATIONAL<br>INTERNET GAMBLING LITIGATION | MDL Docket No: MDL-1321 & 1322 |

| | |
|---|---|
| DANIEL N. SILVERLIEB, on behalf of all<br>others similarly situated,<br>               Plaintiffs<br>v.<br><br>MASTERCARD INTERNATIONAL, INC.,<br>and PEOPLE'S BANK CORPORATION,<br>               Defendants | CIVIL ACTION NO. 00-MD-1990<br><br>SECTION "K" (5) |
| – and – | |
| DANIEL N. SILVERLIEB, on behalf of all<br>others similarly situated,<br>               Plaintiffs<br>v.<br><br>VISA INTERNATIONAL, INC.,<br>and PEOPLE'S BANK CORPORATION,<br>               Defendants | CIVIL ACTION NO. 00-MD-1995<br><br>SECTION "K" (5) |

**PLAINTIFF'S RESPONSE AND OPPOSITION TO
PEOPLE'S BANK CORPORATION'S MOTION TO DISMISS**

# I.
# INTRODUCTION

Plaintiff commenced these actions against People's Bank and Visa International Service Association ("Visa") and People's Bank and MasterCard International ("MC") in separate Federal District Courts where MasterCard (Southern District of New York) and Visa (Northern District of California) have their principal places of business. The complaints each alleged original jurisdiction through violations of substantive federal law and pendant jurisdiction as to related state law claims that the underlying gambling transactions should be declared unlawful under the laws of the state of Connecticut, where they were entered into by the Plaintiff, and where Plaintiff resides.

The cases were subsequently transferred to this Court as part of MDL 1321 and 1322.

# II.
# STATEMENT OF JURISDICTION

It is indisputable that the two United States District Courts where their cases were filed had original jurisdiction over these cases, including the pendant state law claims. Consequently, this Court had jurisdiction when the cases came to it as part of the MDL proceedings. As the following makes clear, the Court still has jurisdiction and authority to rule in these cases.

**A.    This Court has jurisdiction and authority to exercise supplemental jurisdiction.**

28 U.S.C. §1367(a) provides that a federal district court shall have supplemental jurisdiction over all other claims in the action within the court's original jurisdiction that form part of the same case or controversy. The requested declaratory judgment action that Plaintiff has pled is clearly related to the same nucleus of facts and forms part of the same

2

case or controversy.

This Court should find that the claims comprise the same case or controversy for purposes of supplemental jurisdiction because the remedies stem from a single wrong. *ITT Commercial Fin. Corp. v. Unlimited Automotive, Inc.*, 814 F.Supp. 664 (N.D. Ill. 1992). When claims arise from the same conduct, and are controlled by the same legal issues, the court has supplemental jurisdiction over related claims, even if it lacks independent basis for federal subject matter jurisdiction. *Patterson Enterprises v. Bridgestone/Firestone, Inc.*, 812 F.Supp. 1152 (D. Kan. 1993).

It is inconsequential that the state law claims assert violations of Connecticut law as a basis for a declaratory judgment action. In *Miller v. Brooks (In re Am. Honda Motor Co.), 315* F.3d 417 (4th Cir. 2003), the district court determined that it possessed subject matter jurisdiction over the MDL proceedings under the federal question statute and the supplemental jurisdiction statute when the class action complaint raised claims under both federal and state law. Federal courts may exercise jurisdiction over a state claim if the state and federal claims "derive from a common nucleus of operative fact." *United Mine Workers v. Gibbs,* 383 U.S. 715, 725 (1966). In *Gibbs*, the Supreme Court held that jurisdiction may properly be exercised if "plaintiff's claims are such that he ordinarily be expected to try them all in one judicial proceeding." *Id.*

This court does have discretion as to whether to exercise supplemental jurisdiction over a state law declaratory judgment action. A district court may decline to exercise its authority to hear supplemental jurisdiction issues when:

    (1)    the claim raises a novel or complex issue of state law;

    (2)    if the state law claim substantially predominates;

    (3)    if all federal claims have been dismissed; or

(4) if, in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. §1367(c).

It is clear that the interests of judicial economy and efficiency in multi district litigation proceedings are best served by retaining supplemental jurisdiction over the declaratory judgment counts. Courts may consider various factors when exercising their powers of supplemental jurisdiction, such as length of time the case has been pending, the procedural posture of the case, complexity of supplemental claims, convenience to the parties, and judicial economy. Each of these factors weighs heavily in favor of the Court exercising its supplemental jurisdiction. This case has been pending for over three years and has been vigorously contested.

Remand would waste judicial resources and result in additional delay for the parties in concluding this matter. "After there has been substantial expenditure in time, effort and money in preparing the dependent claims, knocking them down with a belated rejection of supplemental jurisdiction may not be fair. Nor is it by any means necessary." *Purgess v. Shamrock,* 33 F.3d. 134, 138 (2d Cir. 1994).

The Connecticut gambling statutes cited in the Complaint are straightforward and have long been part of these cases. The following will demonstrate that Plaintiff is entitled to the relief requested. Dismissal of these claims would thwart the purposes and rational behind the entire MDL process, and put this case back to square one in state court. That is both unfair and unnecessary where the violation of state law could hardly be clearer.

### III.
### LEGAL STANDARD

The fact that motions to dismiss are virtually a reflex response of defendants cannot alter the fact that dismissal under Federal Rule of Civil Procedure 12(b)(6) is an extreme remedy that should not be granted unless it appears beyond a doubt that the plaintiff can

prove no set of facts in support of the claims in the complaint. *Jackam v. Hospital Corp. of America Mideast, Ltd.,* 800 F.2d 1577, 1579 (11th Cir. 1986) quoting *Bracewell v. Nicholson Air Services, Inc.*, 680 F.2d 103, 104 (11th Cir. 1982).

The Movant on a motion to dismiss must sustain the very high burden of showing that the plaintiff can prove *no* set of facts that could support the claims in the complaint. *Mays v. United States Postal Service*, 928 F. Supp. 1552, 1557 (M.D. Ala. 1996). The standard on a 12(b)(6) motion is not whether the plaintiff will ultimately prevail on his or her theories, but whether the allegations are sufficient to allow discovery in an attempt to prove the allegations. *Jackam*, 800 F.2d at 1579.

In his complaint, Plaintiff has specifically alleged that People's has charged and attempted to or has collected debts that are a direct result of illegal gambling activity over the internet. The complaint is replete with the allegations concerning the involvement of People's in this patently illegal activity. Plaintiff's Complaint fully exposes People's involvement in the internet gambling industry for what it is – the critical link in the chain which enables the gambler to place a bet on an internet gambling web site. (Complaint ¶¶ 25, 26, 27, 30, 32, 33, 34, 35, 36, 39, 76, 77, 78, 81 and 89). In short, People's facilitates and collect wagers in Connecticut.

The allegations in the Complaint which describe People's role in the Internet gambling industry are to be taken as true, and People's will be free to offer evidence to the contrary during discovery.

## IV.
## ARGUMENT

A.  **Neither the MDL nor the Fifth Circuit has ruled on the applicability of Connecticut law to Plaintiff's claims.**

The Defendants in these cases have all blithely mischaracterized the Fifth Circuit's

5

opinion regarding the legality of the transactions between card issuers and these Plaintiffs. They make broad statements and conclusory allegations that all of the federal and state law claims alleged by the Plaintiff in this case were disposed of in the MDL proceeding and that the Plaintiff has no viable cause of action remaining. This is self-serving nonsense and vastly overstates the true holding of the Fifth Circuit's opinion regarding Internet Gambling.

It is obvious to even the most casual reader of the Fifth Circuit's opinion in *In re Mastercard International Inc., Internet Gambling Litigation,* 132 F.Supp.2d 468, (5th Cir. 2001) that the decision does not reach these Connecticut state law claims for declaratory judgment. Indeed, the only state laws mentioned in the entire opinion are the anti-gambling statues of New Hampshire and Kansas. *Internet Gambling Litigation*, 132 F. Supp. 2d at 478. The Fifth Circuit ruled that the RICO allegations could not stand because the anti-gambling laws of New Hampshire and Kansas failed as a matter of law to support the predicate acts necessary to prosecute RICO claims. *Id.* at 478, 479. That was the whole extent of the state law examination and analysis conducted by the Fifth Circuit. Connecticut law was never mentioned in the opinion. The state law claims plainly survive the RICO dismissal in this case.

**B.    Connecticut law prohibits the enforcement of debts resulting from illegal gambling activity of the type alleged in the complaint.**

Connecticut law is quite clear that a plaintiff may seek a declaration of "rights and other legal regulations". Conn. Gen. Stats. §52-29, and that illegal gambling contracts are void and unenforceable, Gambling, facilitation of gambling and the electronic facilitation of gambling are unlawful.

Connecticut laws could hardly be clearer on the enforceability of

6

debits of this sort.

### § 52-553. Wagering contract void

All wagers, and all contracts and securities of which the whole or any part of the consideration is money or other valuable thing won, laid or bet, at any game, horse race, sport or pastime, <u>and all contracts to repay any money knowingly lent at the time and place of such game, race, sport or pastime, to any person so gaming, betting or wagering, or to repay any money lent to any person who, at such time and place, so pays, bets or watgers, shall be void,</u> provided nothing in this section shall (1) affect the validity of any negotiable instrument held by any person who acquired the same for value and in good faith without notice of illegality in the consideration, or (2) apply to the sale of a raffle ticket pursuant to section 7-172. (Emphasis added)

Debts incurred in order to immediately facilitate gambling are void under Connecticut law. Section 52-553 could not be any clearer.

This Court has gained a unique perspective upon the operation of internet gaming and the role of card issuers in that process. It also knows that the issuer knows about why it is advancing money through MasterCard and Visa's transaction coding system. Hence, it is in a unique position to recognize, probably on a summary basis, the state law violation so obviously at issue.

This is hardly a matter of esoteric state law or fine distinctions. The statute speaks for itself.

There is no question remaining then that the Defendant has failed to show that the Plaintiff is unable to prove any set of facts necessary to support the allegations contained in the declaratory judgment count. To the contrary. The Plaintiff has shown beyond a doubt that Connecticut law prohibits gambling and that the collection of gambling debts or wagering contracts are unenforceable as a matter of law. Defendant has failed utterly to prove the necessary requirements in order to prevail on a 12(b)(6) motion to dismiss. Indeed, the facts mandate that this Court find for the Plaintiff on this issue and declare the

contract null and void and require People's to disgorge itself of any monies received from internet gambling debts and prohibit Defendant from attempting to collect these debts in the future.

### C. Plaintiff has suffered injury in fact due to Defendant's participation in collecting gambling debts.

Defendant's laughable position that there is no damage to the Plaintiff because none was alleged hardly merits a response. Plaintiff did allege that money was lost on gambling over the internet and that the money used to place the bet came from credit cards issues by People's. What more could be necessary?

## V.
## CONCLUSION

This Court has the authority to retain supplemental jurisdiction over the remaining claims in the Plaintiff's Complaint. Having come this far with this novel issue, this Court should go the final mile and rule upon the self-evident violation. Defendant has failed to prove any facts or to any legal certainty that Plaintiff cannot prove facts necessary to support the state law declaratory judgment requested. Defendant's motion is therefore due to be denied on the 12(b)(6) relief requested and in the alternative for summary judgment.

Respectfully submitted,

Barry G. Reed
Attorney for Plaintiff and Class
ZIMMERMAN REED, P.L.L.P.
14646 N. Kierland Blvd., Suite 145
Scottsdale, AZ 85254-2762

W. Lewis Garrison, Jr.
GARISON SCOTT GAMBLE &
ROSENTHAL, P.C
2224 1st Avenue North
P.O. Box 11310
Birmingham, AL 35202

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the above and foregoing upon all counsel of record by Federal Express on this 31st day of October, 2003:

R. Patrick Vance, Esq.
JONES, WALKER, WAECHTER, POITEVENT,
 CARRERE & DENEGRE, LLP
201 St. Charles Avenue, 49th Floor
New Orleans, LA 70170

William J. Wenzel
PULLMAN & COMLEY
850 Main Street, PO Box 7006
Bridgeport, CT 06601-7006