FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2003 NOV 13 PM 4:12

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW ORLEANS

| | |
|---|---|
| IN RE: MASTERCARD INTERNATIONAL, INC. INTERNET GAMBLING LITIGATION, | CIVIL ACTION NO. MDL NOS. 1321 AND 1322 |
| | SECTION K |
| LARRY A. THOMPSON, on behalf of himself and all others similarly situated, | JUDGE STANWOOD R. DUVALL, JR. |
| Plaintiffs, | |
| vs. | |
| VISA INTERNATIONAL SERVICE ASSOCIATION, WACHOVIA BANK, N.A. WACHOVIA BANK CARD SERVICES | |
| Defendants. | |

This Document Relates To:

Civil Action No. 00-1171
Original Docket No. 99-5069 (N.D. Ca.)

---

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS
WACHOVIA BANK, N.A. AND WACHOVIA BANK CARD SERVICES'
MOTION TO DISMISS PLAINTIFF LARRY A. THOMPSON'S COMPLAINT**

---

On the brief:
    Lawrence E. Miller
    Kevin R.J. Schroth
    Laura A. Dwyer

___ Fee
___ Process
_X_ Dktd
_✓_ CtRmDep
___ Doc. No. 123

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

PROCEDURAL HISTORY AND FACTUAL BACKGROUND .................................................2

ARGUMENT .................................................................................................................................3

I. THOMPSON'S COMPLAINT FAILS TO STATE A CLAIM .................................................3

    A. Thompson's Count I For A Declaratory Judgment
       Under Federal Law is Without Merit..............................................................................4

    B. Thompson's Claim for a Declaratory Judgment Under State Law
       Fails To State a Claim....................................................................................................6

        1. California's Choice of Law Rules Apply Because it is the Forum
           State of the Transferor District Court ...................................................................6

        2. The "Governmental Interests" in This Case Rest with Kansas............................7

        3. Thompson Fails to State a Claim Under Kansas Law .........................................7

        4. Thompson Fails to State a Claim Under Georgia Law ........................................7

        5. Thompson's Arguments That Wachovia Violated the Law
           Are Without Merit..................................................................................................8

CONCLUSION...............................................................................................................................10

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Gold Bond Stamp Co. of Georgia v. Bradfute Corp.*,
463 F.2d 1158 (2d Cir. 1972).................................................................................8

*Gonzalez v. Government Employees Ins. Group*, 2000 WL 1576793,
*1 (E.D. La. Oct. 23, 2000).................................................................................4

*Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270 (1941) ..........................4

*Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487 (1941)..........................6

*In re MasterCard*, 132 F. Supp. 2d 468 (E.D. La. 2001)..........................................1, 3, 5, 7

*In re MasterCard II*, 313 F.3d 257 (5th Cir. 2002)....................................................1, 3, 5, 7

*In Re MasterCard III*, Nos. 00MD-1321 & 00-1322
2003 U.S.Dist. LEXIS 13534 (E.D. La. 2003) .............................................3,4

*In Re Nucorp. Energy Sec. Litig.*, 772 F. 2d 1486 (9th Cir. 1985) ......................................6

*Niagara Mohawk Power Corp. v. Tonawanda Band of Seneca Indians*,

94 F.3d 747 (2d Cir. 1996)..................................................................................4

*North Atlantic Instruments Inc. v. Haber*, 188 F.3d 38 (2d Cir. 1999)...............................6

*Otix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891 (5th Cir. 2000).......................................4

*Rowan Companies, Inc. v. Griffin*, 876 F.2d 26 (5th Cir. 1989) .........................................5

*State v. Coeur D'Alene Tribe*, 164 F.3d 1102 (8th Cir. 1999) ....................................7, 8, 9

*Thompson v. On-Line International*, Nos. 97-C-706-S and 97-C-741-S, 1998
U.S.Dist. LEXIS 22754 (W.D. Wis. Apr. 21, 1998) ......................................8

### STATE CASES

*Early Detection Ctr. v. Wilson*, 811 P.2d 860 (Kan. 1991) ................................................5

*Gaddy v. Silverman*, 71 S.E.2d 277 (Ga. Ct. App. 1952) ...................................................5

*Henderson v. Superior Court*, 77 Cal. App. 3d 583 (1978)................................................6

*Janzen v. Workers' Com. Appeals Board*, 61 Cal. App. 4th 109
(Cal. Ct. App. 1998)............................................................................................6

*State v. Granite Gate Resorts, Inc.*, 568 N.W.2d 715
(Minn. Ct. App. 1997).................................................................................................8

*State v. Gunzelman*, 434 P.2d 543 (KAN. 1967)..............................................................5

*State v. World Interactive Gaming Corp.*, 714 N.Y.S.2d 844 (Sup. Ct. 1999)............7, 8, 9

*Talley v. Mathis*, 453 S.E.2d 704 (Ga. 1995)...................................................................7

## FEDERAL STATUTES

28 U.S.C. § 2201.............................................................................................................4

18 U.S.C. § 1341.............................................................................................................5

18 U.S.C. § 1955.............................................................................................................5

18 U.S.C. §§ 1961-68.....................................................................................................5

18 U.S.C. § 1952.............................................................................................................5

18 U.S.C. § 1084.............................................................................................................5

18 U.S.C. § 1343.............................................................................................................5

## STATE STATUTES

Ga. Code Ann. § 13-8-2..................................................................................................8

Kan. Stat. Ann. 21-4304..................................................................................................7

## MISCELLANEOUS

17A *Moore's Federal Practice*, § 112.07[2][b] (Mathew Bender 3d ed.)..........................6

*Manual for Complex Litigation*, § 31.132 (3d. Ed. 1995).................................................6

Restatement, Conflict of Laws 2d, § 188.........................................................................6

## PRELIMINARY STATEMENT

Defendants Wachovia Bank, N.A. and Wachovia Bank Card Services (together "Wachovia") submit this reply brief in further support of their motion to dismiss the remaining claims in plaintiff Larry A. Thompson's complaint.

Thompson's two remaining claims, which seek declaratory judgments, should be dismissed.[1] Thompson's Count I seeks a declaratory judgment under federal law that Wachovia sought to collect unenforceable, illegal gambling debts from Thompson, that certain contracts are void and/or voidable and should be cancelled, and that Thompson should be reimbursed all payments made upon such gambling debts. Compl. ¶¶ 59-63. Count II seeks the same basic relief under Georgia and Kansas law and under "the statutory and common law of the various states" in which class members reside. *Id.* ¶¶ 64-68.

Thompson's Counts I and II fail to state a claim because they assume that Wachovia collected unenforceable, illegal gambling debts from Thompson. Wachovia, however, did not collect gambling debt, nor did it violate federal or state law. Thompson's Brief opposing this motion to dismiss ignores or fails to appreciate the significance of the decisions of this Court and the Fifth Circuit addressing nearly identical internet gambling transactions in the "test cases." In the test cases, two plaintiffs purchased chips using their credit cards before they gambled.[2] *MasterCard I*, 132 F. Supp. 2d 468, 479 (E.D. La. 2001). The Court held "It is a temporal impossibility for the defendants to have completed their transaction with the plaintiff before he gambled and to then be prosecuted for collecting the proceeds of a gambling device,

---

[1] In two "test cases" from the multidistrict litigation ("MDL"), this Court dismissed the plaintiffs' claims alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq*. *In re MasterCard*, 132 F.Supp. 2d 468 (E.D. La 2001) (*"MasterCard I"*). The United States Court of Appeals of the Fifth Circuit affirmed that decision. *In re MasterCard*, 313 F.3d 257, 260 (5th Cir. 2002) (*"MasterCard II"*). By Order dated September 5, 2003, this Court applied the "test case" decisions to Thompson's claims against Wachovia.

[2] Larry Thompson was also the plaintiff in the test case captioned *Thompson v. Visa Int. Svc. Assoc., et al.*, C.A. 00-1171 (originally C.A. 99-5069) (N.D. Cal.)

which can only take place after some form of gambling is completed."[3] *Id., aff'd, MasterCard II*, 313 F.3d 257, 260 (5th Cir. 2002).

This line of analysis from the test cases captures a central flaw in Thompson's claims for declaratory judgments. Thompson's purchase of chips with his Wachovia credit card and his subsequent gambling constitute separate acts. Because Wachovia was not involved in Thompson's gambling, it did not violate federal or state law as Thompson alleged.

For the reasons set forth below, if the Court exercises supplemental jurisdiction over Thompson's remaining claims, Thompson's claims should be dismissed on the merits for failure to state a claim upon which relief can be granted. Alternatively, Thompson's remaining claims should be dismissed for lack of subject matter jurisdiction. *See* Wachovia's Memorandum of Law dated September 29, 2003 (the Wachovia Brief).

**PROCEDURAL HISTORY AND FACTUAL BACKGROUND**

Wachovia refers to its Brief, dated September 29, 2003, for a more complete recitation of the procedural history. Notably, Thompson commenced this action in the United States District Court for the Northern District of California against Wachovia.[4] Thompson is a resident of Kansas without any connection to California State whatsoever. Complaint ¶ 5. At the time the Thompson Complaint was filed, Wachovia was a national banking association, with its principal place of business in Georgia.[5]

Thompson acquired a Wachovia credit card and accessed the internet to gamble while he was physically located within Kansas. Compl. ¶ 15. Thompson alleged that in January and February of 1999 he placed wagers via the internet with English Harbor Casino and Golden

---

[3] The defendants in the test cases were MasterCard International, Inc. ("MasterCard"), Visa Int'l. Service Assoc. ("Visa"), and numerous defendant banks including Wachovia.

[4] Thompson's complaint also names Visa International Service Association as a defendant. Visa is no longer a party to this action.

[5] First Union National Bank ("First Union") merged with Wachovia, with First Union as the surviving entity. The merged First Union then changed its name to Wachovia.

2

Palace Casino, which are located in St. John's-Antigua and the Mohawk Territory of Kahnawake, Canada, respectively.[6] *Id.* at ¶¶ 24, 28  Thompson has made partial payments on charges to his credit card, including those related to internet gambling. *Id.* ¶ 32.

## ARGUMENT

### I.  THOMPSON'S COMPLAINT FAILS TO STATE A CLAIM

This Court has already determined that the transactions described in the test cases were not violations of federal or state law. *MasterCard I*, 132 F. Supp. 2d at 479, *aff'd*, *MasterCard II*, 313 F.3d at 262; *MasterCard III*, Nos. 00MD.1321 & 00-1322, 2003 U.S. Dist. LEXIS 13534, at *18 (E.D. La. 2003) ("*MasterCard III*"). The transactions were comprised of two separate events. *Id.* First, plaintiffs purchased chips with credit cards issued by the defendant banks. *Id.* Subsequently, plaintiffs gambled. *Id.* In the test cases, the defendants were only involved in the first event (the purchase of chips) through plaintiffs' use of credit cards. *Id.* Since it was a "temporal impossibility" for the defendants in the test cases to be implicated in a violation of gambling statutes, Thompson's claims against Wachovia are plainly without merit for the same reasons.

Because *MasterCard II* expressly references Kansas and New Hampshire law, Thompson argues that *MasterCard II* does not apply to Count II of the complaint, which seeks a declaratory judgment under Georgia state law, in addition to Kansas state law.[7] Thompson Br. at 4-5. Thompson does not address, and therefore appears to concede, MasterCard II's dismissal of his claims regarding Kansas law. Thompson's argument regarding Georgia law ignores the more expansive scope of the Court's decision in *In re MasterCard III*, 2003 U.S. Dist. LEXIS 13534,

---

[6]  See <http://www.englishharbour.com/index.html> and <http://www.goldenpalace.com/welcome.php>
[7]  *MasterCard I* discussed Kansas's statute in detail. Of the alleged violations of Kansas law, the Court found that only one aspect of the statute was "remotely applicable," the section that prohibited setting up for use or collecting the proceeds of any gambling device. *MasterCard I*, 132 F. Supp. 2d at 479 (citing Kan. Stat. Ann. 21-4304(e)).

3

which extends *MasterCard I* and *II* to state laws besides Kansas and New Hampshire. Plaintiffs' proposed amended complaint (the "Rejected Complaint") asked for "declaratory relief determining that debt incurred while gambling over the internet constitutes gambling debt that is unenforceable and uncollectible" under the state law where the various plaintiffs reside. *MasterCard III*, 2003 U.S. Dist. LEXIS 13534, at *3, *18. The Court denied plaintiffs' motion to amend stating: "there is no possibility that plaintiffs can prevail on their claim that the defendants violated state law by 'gambling over the Internet.'" *Id.* at *18. The scope of *MasterCard III*, therefore, clearly contemplates and covers the laws of states where the various plaintiffs reside. In this case, Thompson resides in Kansas. By virtue of *MasterCard III* and as discussed below, there is indeed no possibility that Thompson can prevail on his declaratory judgment claims against Wachovia.

### A. Thompson's Count I For A Declaratory Judgment Under Federal Law is Without Merit

The Declaratory Judgment Act permits declaratory relief only in cases presenting "actual controversies." 28 U.S.C. § 2201(a); *Otix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000); *Niagara Mohawk Power Corp. v. Tonawanda Band of Seneca Indians*, 94 F.3d 747, 752 (2d Cir. 1996). Thus, the Declaratory Judgment Act incorporates the "case or controversy" limitation on federal jurisdiction found in Article III of the U.S. Constitution. *Ortix Credit*, 212 F.3d at 896; *Niagara Mohawk*, 94 F.3d at 752. Consequently, for a court to have subject matter jurisdiction, there must be a "substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941). The Court may exercise its declaratory judgment jurisdiction to determine which state's

law governs. *Gonzalez v. Government Employees Ins. Group*, 2000 WL 1576793, at *1 (E.D. La. Oct. 23, 2000).

Thompson's Count I under the Declaratory Judgment Act fails in several respects. First, Thompson's debt to Wachovia is not a gambling debt under federal law. Thompson's complaint referenced numerous federal statutes in an effort to establish a pattern of racketeering activity under RICO, 18 U.S.C. §§ 1961-68.[8] *Cf. MasterCard I*, 132 F.Supp. 2d at 473. In the test cases, the Court found that plaintiffs had no cause of action for the alleged violations of federal law because defendants' conduct was not illegal. *Id.* at 479-84, *aff'd, MasterCard II*, 313 F.3d at 262-64.

Thompson's claim for a declaratory judgment under federal law is based upon the same alleged violations of federal law that failed to constitute racketeering activity under RICO. For the reasons set forth in the test cases, Wachovia's conduct did not violate the federal law. Absent a violation of federal law by Wachovia, there is not an actual controversy between Thompson and Wachovia, and Thompson's Count I fails to state a claim. *Rowan Companies, Inc. v. Griffin*, 876 F.2d 26, 28 (5th Cir. 1989).

Second, even if the Court were to find that Wachovia and Thompson entered an illegal contract, it is well settled that the court would not grant relief to Thompson. *Gaddy v. Silverman*, 71 S.E.2d 277, 282 (Ga. Ct. App. 1952); *Early Detection Ctr. v. Wilson*, 811 P.2d 860, 867-68 (Kan. 1991); *State v. Gunzelman*, 434 P.2d 543, 546 (Kan. 1967). When a contract is illegal and the parties are equally at fault, a court will not interpose to give relief to either party, but will leave the parties where they find them. *Gaddy*, 71 S.E.2d at 282; *Early Detection*

---

[8] To the extent Thompson's complaint deals with Wachovia, it references the Wire Act, 18 U.S.C. § 1084, which applies to bets on sporting events; the Travel Act, 18 U.S.C. § 1952; the Prohibition of Illegal Gambling Business, 18 U.S.C. § 1955; the Mail Fraud Act, 18 U.S.C. § 1341; and the Wire Fraud Act, 18 U.S.C. § 1343.

*Ctr.*, 811 P.2d at 867 ("[I]t is well settled . . . that the courts will not aid either party to an illegal agreement. The law leaves the parties where it found them.").

> **B.** **Thompson's Claim for a Declaratory Judgment Under State Law Fails To State a Claim**
>
> **1.** **California's Choice of Law Rules Apply Because it is the Forum State of the Transferor District Court**

In multidistrict litigation that has been transferred to a central forum for pretrial proceedings, the transferee federal district court must apply the substantive state law of the transferor district, including its choice of law rules. 17A *Moore's Federal Practice*, § 112.07[2][b] (Mathew Bender 3d ed.) (citing *In re Nucorp Energy Sec. Litig.*, 772 F.2d 1486, 1492 (9th Cir. 1985)); *Manual for Complex Litigation*, § 31.132 at 254 (3d ed. 1995). A federal court adjudicating a supplemental state law claim applies the choice of law rules of the forum state. *North Atlantic Instruments Inc. v. Haber*, 188 F.3d 38, 44 (2d Cir. 1999); *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941). Here, because California was the forum state of the transferor U.S. District Court, the Court must apply California's choice of law rules to determine the applicable body of substantive state law.

In contract cases, California courts apply a "governmental interests" approach to choice of law questions guided by the Restatement, Conflict of Laws 2d, section 188. *Janzen v. Workers' Com. Appeals Bd.*, 61 Cal. App. 4th 109, 115 n.3 (Cal. Ct. App. 1998); *Henderson v. Superior Court*, 77 Cal. App. 3d 583, 592-93 (1978). Under this approach, courts may consider a spectrum of significant contacts, including the place of contracting, the places of negotiation and performance, the location of the subject matter, and the domicile or place of business of the contracting parties. *Id.*

6

### 2. The "Governmental Interests" in This Case Rest with Kansas

Thompson is a Kansas resident who was physically located in Kansas when he accessed internet casinos located outside of the U.S. and gambled. Compl. ¶¶ 5, 22. If Thompson's gambling were deemed to have taken place where he was located when he accessed the internet and gambled on-line, Kansas law would apply. In fact, Thompson cites case law indicating that this is indeed the general trend that some courts follow. Thompson Br. at 7 (citing *State v. Coeur D'Alene Tribe*, 164 F.3d 1102 (8th Cir. 1999) and *State v. World Interactive Gaming Corp.*, 714 N.Y.S.2d 844 (Sup. Ct. 1999)). Without a cogent explanation, Thompson simply states that it is not the rule here. Thompson Br. at 7.

### 3. Thompson Fails to State a Claim Under Kansas Law

*MasterCard I* and *II* have already held that Thompson, in one of the test cases, failed to allege a violation of Kansas law. 132 F. Supp. 2d. at 479, *aff'd MasterCard II*, 313 F.3d at 262. Of the alleged violations of Kansas law, the Court found that only one aspect of the statute was "remotely applicable," Kan. Stat. Ann. 21-4304(e). That section prohibits setting up for use or collecting the proceeds of any gambling device. *MasterCard I*, 132 F. Supp. 2d at 479 (citing Kan. Stat. Ann. 21-4304(e)). In the test cases, the Court noted that Thompson purchased credits using his credit card before he gambled, but that Thompson did not allege that the issuing bank collected the proceeds of a gambling device. *Id.* As a result, the Court held that Thompson failed to allege that the defendants violated Kansas law. *Id.*

### 4. Thompson Fails to State a Claim Under Georgia Law

If the Court applies Georgia law, as Thompson argues, it is also clear that Thompson's Count II fails to state a claim against Wachovia. While gambling contracts are often unenforceable, a contract collateral to gambling is enforceable in Georgia. *Talley v. Mathis*, 453 S.E.2d 704 (Ga. 1995). In *Talley*, the plaintiff filed suit seeking to recover his share of the

7

proceeds of a winning lottery ticket purchased out-of-state by the defendants. According to the plaintiff, he and the defendants had agreed "to purchase the ticket jointly and to share the proceeds if they won." *Id.* at 705. The defendants moved to dismiss the complaint "on the ground that the alleged agreement was unenforceable as against public policy." *Id.*

Noting that "gambling contracts are void" under Georgia law, Ga. Code Ann. § 13-8-2, the Supreme Court of Georgia recited the following definition of a gambling contract: "[I]n a gambling contract one of [the parties] is certain to lose. By the terms of such a contract the consideration must fall to the one or the other upon the determination of the specified event." *Id.* (citation omitted). Applying this definition, the Court concluded that "the only 'gambling contract' involved in this case is that which exists between the State of Kentucky and the holder of the winning lottery ticket," and held that the agreement was enforceable. *Id.* at 705-706.

Applying these principles to Thompson's case, it is clear that there was no gambling contract between Thompson and Wachovia. The only "gambling contract" here was between Thompson and English Harbor and Golden Palace Casinos. Thus, there is no basis to find Thompson's alleged debt unenforceable. *Cf. also Gold Bond Stamp Co. of Georgia v. Bradfute Corp.*, 463 F.2d 1158, 1163 (2d Cir. 1972) ("[A] party's peripheral participation in the illegal scheme of the other, in addition to knowledge that the scheme is illegal, does not necessarily prevent that party from having a collateral agreement enforced.").

### 5. Thompson's Arguments That Wachovia Violated the Law Are Without Merit

The cases upon which Thompson relies in support of his argument that gambling over the internet violates Georgia law (Thompson Br. at 6-8) are simply inapposite. Each case involves a state using its own state laws to protect its own residents to sue a gambling owner or operator, i.e., a casino. *State v. Granite Gate Resorts, Inc.*, 568 N.W.2d 715 (Minn. Ct. App.

8

1997); *Thompson v. On-Line Int'l*, Nos. 97-C-706-S and 97-C-741-S, 1998 U.S. Dist. LEXIS 22754 (W.D. Wis. Apr. 21, 1998); *State v. Coeur D'Alene Tribe*, 164 F.3d 1102 (8th Cir. 1999); and *State v. World Interactive Gaming Corp.*, 714 N.Y.S.2d 844 (Sup. Ct. 1999).

Here, we have a gambler from Kansas trying to enforce the gambling laws of another state (Georgia) against a national banking association, with whom he had a credit card, and whose principal place of business was in Georgia. Thompson is curiously not suing the casinos themselves for the alleged gambling law violations. Indeed, the cases cited by Thompson simply establish that the casinos may have violated the laws of Kansas or Georgia.

Additionally, Thompson is trying to invoke the laws of Georgia because this Court already ruled that Kansas law was not violated. However, he relies upon cases supporting the application of Kansas law. Thompson Br. at 7. In *Coeur D'Alene Tribe*, the Eighth Circuit, suggested in *dicta*, as it remanded the case back to state court for a determination of the location of gambling, that gambling occurs in the state in which the gambler was located at the time he placed the bet. 164 F.3d at 1109, n.5. The *World Interactive Gaming* court also recognized that gambling occurs in the state in which the gambler was located when he placed his bets over the internet. *World Interactive Gaming Corp.*, 714 N.Y.S.2d at 859-60.

These cases are nothing more than red herrings aimed at confusing the issue before this Court -- that Wachovia could not have violated state gambling statutes. Quite simply, unlike the cases upon which Thompson relies, Wachovia is not a casino and it did not violate state gambling laws. As this Court and the Fifth Circuit noted, such a violation of state laws is simply a "temporal impossibility."

## CONCLUSION

For the foregoing reasons, and for the reasons stated in the Wachovia Brief, if Counts I and II of the Thompson complaint are not dismissed for lack of subject matter jurisdiction, they should be dismissed on the merits.

Respectfully submitted,

By: _____
R. Patrick Vance (LA Bar No. 13008)
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, L.L.P.
201 St. Charles Avenue, 49th Floor
New Orleans, Louisiana 70170-5100
Telephone (504) 582-8194
Facsimile (504) 589-8194

Lawrence E. Miller
Kevin R.J. Schroth
LeBoeuf, Lamb, Greene & MacRae, L.L.P.
One Riverfront Plaza
Newark, NJ 07102-5490
Telephone (973) 643-8000
Facsimile (973) 643-6111
*Counsel for Defendant Wachovia Bank, N.A.*

Dated:  New Orleans, Louisiana
        November 13, 2003

10

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Memorandum of Law has been served on the below-named parties through U. S. Mail on this _13_ th day of November, 2003.

> W. Lewis Garrison, Jr.
> Garrison, Scott, Gamble & Rosenthal, P.C.
> 2224 1st Avenue North
> Post Office Box 11310
> Birmingham, Alabama 35202
>
> Barry G. Reed
> Zimmerman Reed L.L.P.
> 651 Nicollet Mall, Suite 501
> Minneapolis, Minnesota 55402

*[signature]*