FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2003 NOV 13  PH 4: 11

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW ORLEANS

IN RE: MASTERCARD INTERNATIONAL, INC. INTERNET GAMBLING LITIGATION,

:
:
:

CIVIL ACTION NO. MDL NOS. 1321 AND 1322

SECTION K

MARK D. EISELE, on behalf of himself and all others SIMILARLY situated,

Plaintiffs,

vs.

MASTERCARD INTERNATIONAL, INC. and FIRST UNION NATIONAL BANK

Defendants.

:
:
:
:
:
:
:
:
:
:
:
:
:
:

JUDGE STANWOOD R. DUVALL, JR.

This Document Relates To:

Civil Action No. 00-0660 (S.D.N.Y.)
Original Docket No. 99-8784 (S.D.N.Y.)

---

## REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT WACHOVIA BANK, N.A.'S MOTION TO DISMISS PLAINTIFF MARK D. EISELE'S COMPLAINT

---

On the brief:
    Lawrence E. Miller
    Kevin R.J. Schroth
    Laura A. Dwyer

Fee_____
X  Process_____
    Dktd._____
    CtRmDep._____
    Doc. No._____

## Table of Contents

Page

PRELIMINARY STATEMENT ................................................................................................1

PROCEDURAL HISTORY AND FACTUAL BACKGROUND ................................................2

ARGUMENT .........................................................................................................................3

   I. EISELE'S COMPLAINT FAILS TO STATE A CLAIM.................................................3

      A. Eisele's Count I For A Declaratory Judgment Under Federal
         Law is Without Merit ...................................................................................4

      B. Eisele's Claim for a Declaratory Judgment Under State Law
         Fails To State a Claim .................................................................................6

         1. New York's Choice of Law Rules Apply Because it is
            the Forum State of the Transferor District Court..............................6

         2. There is No Basis For Applying New York Law in This Case
            Because The "Center of Gravity" of This Case is in North Carolina ...............6

         3. Eisele Fails to State a Claim Under North Carolina Law ...................8

         4. If the Court Considers Eisele's Claim Under New York Law,
            It Fails to State a Claim....................................................................8

         5. Eisele's Arguments That Wachovia Violated the Law Are
            Without Merit...................................................................................9

CONCLUSION...................................................................................................................11

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Erie v. Tomkins*, 304 U.S. 64 (1938)...................................................................................7

*Gonzalez v. Government Employees Ins. Group*, 2000 WL 1576793 *1 (E.D. La. Oct. 23, 2000) ..................................................................................................................4

*Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487 (1941)..........................6

*Lazard Freres & Co. v. Protective Life Insurance Co.*, 108 F.3d 1531 (2d Cir. 1997) .................................................................................................................................6

*Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270 (1941) ..........................4

*In re MasterCard I*, 132 F.Supp.2d 468 (E.D. La. 2001) ....................................1,3, 5, 8, 9

*In re MasterCard II*, 313 F.3d 257 (5th Cir. 2002)..............................................1, 3, 5, 8, 9

*In re MasterCard III*, Nos. 00MD-1321 & 00-1322, 2003 U.S.Dist. LEXIS 13534 (E.D. La. 2003) ................................................................................................3, 4, 8

*In re Nucorp Energy Sec. Litig.*, 772 F.2d 1486 (9th Cir. 1985) .......................................6

*Niagara Mohawk Power Corp. v. Tonawanda Band of Seneca Indians*, 94 F.3d 747 (2d Cir. 1996)............................................................................................................4

*North Atlantic Instruments Inc. v. Haber*, 188 F.3d 38 (2d Cir. 1999)...............................6

*Otix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891 (5th Cir. 2000).......................................4

*Rowan Companies, Inc. v. Griffin*, 876 F.2d 26 (5th Cir. 1989)..........................................6

*State v. Coeur D'Alene Tribe*, 164 F.3d 1102 (8th Cir. 1999) .......................................7, 10

*Thompson v. On-Line International*, Nos. 97-C-706-S and 97-C-741-S, 1998 U.S.Dist. LEXIS 22754 (W.D. Wis. Apr. 21, 1998) .....................................................10

## STATE CASES

*Aspinall's Club Ltd. v. Aryeh*, 86 A.D.2d 428 (App. Div. 1982).......................................7

*Bamman v. Erickson*, 41 N.E.2d 920 (N.Y. 1942)..............................................................9

*Benisch v. Mandelbaum*, 160 A.D. 206 (App. Div. 1913)..................................................9

*DiTomasso v. Loverro*, 293 N.Y.S. 912 (App. Div. 1937)..............................................5, 9

i

*Intercontinental Hotels Corp. v. Golden*, 203 N.E.2d 210 (N.Y. 1964)..............................7

*Judd v. Harrington*, 19 N.Y.S. 406 (N.Y. Ct. C.P. 1892)....................................................5

*People v. McLaughlin*, 606 N.E.2d 1357 (N.Y. 1992) ........................................................7

*State v. Granite Gate Resorts, Inc.*, 568 N.W.2d 715 (Minn. Ct. App. 1997)....................9

*State v. Hair*, 442 S.E.2d 163 (N.C. Ct. App. 1994)...........................................................5

*State v. World Interactive Gaming Corp.*, 714 N.Y.S.2d 844 (Sup. Ct. 1999)..............7, 10

## FEDERAL STATUTES

28 U.S.C. § 2201 ...................................................................................................................4

18 U.S.C. § 1341 ...................................................................................................................5

18 U.S.C. § 1955 ...................................................................................................................5

18 U.S.C. §§ 1961-68 ........................................................................................................1, 5

18 U.S.C. § 1952 ...................................................................................................................5

18 U.S.C. § 1084...................................................................................................................5

18 U.S.C. § 1343...................................................................................................................5

## STATE STATUTES

N.C. Gen. Stat. § 14-292.......................................................................................................8

N.C. Gen. Stat. § 16-1 (2003) ...............................................................................................8

N.Y. Gen. Oblig. Law § 5-411...........................................................................................8, 9

N.Y. Gen. Oblig. Law § 5-413...........................................................................................8, 9

N.Y. Gen. Oblig. Law § 5-401...............................................................................................9

## MISCELLANEOUS

17A Moore's Federal Practice § 112.07[2][b] (Matthew Bender 3d ed.)............................6

Manual for Complex Litigation § 31.132 (3d ed. 1995).......................................................6

## PRELIMINARY STATEMENT

Defendant Wachovia Bank, N.A. ("Wachovia") submits this reply brief in further support of its motion to dismiss the remaining claims in plaintiff Mark D. Eisele's complaint.

Eisele's two remaining claims, which seek declaratory judgments, should be dismissed.[1] Eisele's Count I seeks a declaratory judgment under federal law that Wachovia sought to collect unenforceable, illegal gambling debts from Eisele, that certain contracts are void and/or voidable and should be cancelled, and that Eisele should be reimbursed all payments made upon such gambling debts. Am. Compl. ¶¶ 56-59. Count II seeks the same basic relief under New York law and under "the statutory and common law of the other states in which class members reside...." *Id.* ¶¶ 62-65.

Eisele's Counts I and II fail to state a claim because they assume that Wachovia collected unenforceable, illegal gambling debts from Eisele. Eisele's Brief opposing this motion to dismiss ignores or fails to appreciate the significance of the decisions of this Court and the Fifth Circuit addressing nearly identical internet gambling transactions in the "test cases." In the test cases, two plaintiffs purchased chips using their credit cards before they gambled. *MasterCard I*, 132 F. Supp. 2d at 479. The Court held "It is a temporal impossibility for the defendants to have completed their transaction with the plaintiff before he gambled and to then be prosecuted for collecting the proceeds of a gambling device, which can only take place after some form of gambling is completed."[2] *Id., aff'd, MasterCard II*, 313 F.3d at 260.

This line of analysis from the test cases captures a central flaw in Eisele's claims for declaratory judgments. Eisele's purchase of chips with his Wachovia credit card and his

---

[1]    In two "test cases" from the multidistrict litigation ("MDL"), this Court dismissed the plaintiffs' claims alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq. In re MasterCard*, 132 F.Supp. 2d 468 (E.D. La 2001) (*"MasterCard I"*). The United States Court of Appeals of the Fifth Circuit affirmed that decision. *In re MasterCard*, 313 F.3d 257, 260 (5th Cir. 2002) ("*MasterCard II*"). By Order dated September 5, 2003, this Court applied the "test case" decisions to Eisele's claims against Wachovia.

[2]    The defendants in the test cases were MasterCard International, Inc. ("MasterCard"), Visa Int'l. Service Assoc. ("Visa"), and numerous defendant banks including Wachovia.

subsequent gambling constitute separate acts. Because Wachovia was not involved in Eisele's gambling, it did not violate federal or state law as Eisele alleged.

For the reasons set forth below, if the Court exercises supplemental jurisdiction over Eisele's remaining claims, Eisele's claims should be dismissed on the merits for failure to state a claim upon which relief can be granted. Alternatively, Eisele's remaining claims should be dismissed for lack of subject matter jurisdiction. *See* Wachovia's Memorandum of Law dated September 29, 2003 (the Wachovia Brief).

## PROCEDURAL HISTORY AND FACTUAL BACKGROUND

Wachovia refers to its Brief, dated September 29, 2003, for a more complete recitation of the procedural history. Notably, Eisele commenced this action in the United States District Court for the Southern District of New York against First Union National Bank ("First Union").[3] First Union later merged with Wachovia and will be referenced as "Wachovia" hereinafter, unless it is necessary to distinguish them.[4] Eisele is a resident of North Carolina without any connection to New York State whatsoever. Am. Complaint ¶ 5. When Eisele commenced this action, First Union was a national banking corporation, duly organized and existing under and by virtue of the laws of the United States, with its principal place of business in Charlotte, North Carolina. The same is now true of Wachovia.

Eisele acquired a First Union credit card pursuant to the terms of a cardmember agreement. *See* Sample Cardmember Agreement and Disclosure Statement ("Cardmember Agreement"), attached as Exhibit A. Eisele alleged that he was "physically located within North Carolina" when he accessed the internet to gamble. Am. Compl. ¶ 14. Eisele alleged that in May of 1998 he placed wagers via telephone with the "Oasis Casino," *id.* ¶ 23, which is located

---

[3]    Eisele's complaint also names MasterCard as a defendant. MasterCard is no longer a party to this action.
[4]    After the merger, First Union was the surviving entity. The merged First Union then changed its name to Wachovia.

2

in Curacao in the southwestern Carribean.  *See*  http://www.oasiscasino.com/about-online-casino-sportsbook.asp  In August of 1998, Eisele placed wagers via the internet with the same casino.  *Id.*

Eisele's bills were sent to his address in Charlotte, North Carolina, and he has made full payment

on all charges to his credit card, including those related to internet gambling.  *Id.* ¶ 23; Eisele

Billing Statements, attached as Exhibit B.

## ARGUMENT

### I.    EISELE'S COMPLAINT FAILS TO STATE A CLAIM

This Court has already determined that the transactions described in the test cases

were not violations of federal or state law.  *MasterCard I*, 132 F. Supp. 2d at 479, *aff'd*,

*MasterCard II*, 313 F.3d at 262; *MasterCard III*, 2003 U.S. Dist. LEXIS 13534, at *18.  The

transactions were comprised of two separate events.  *Id.*  First, plaintiffs purchased chips with

credit cards issued by the defendant banks.  *Id.*  Subsequently, plaintiffs gambled.  *Id.*  In the test

cases, the defendants were only involved in the first event (the purchase of chips) through

plaintiffs' use of credit cards.  *Id.*  Since it was a "temporal impossibility" for the defendants in

the test cases to be implicated in a violation of gambling statutes, Eisele's claims against

Wachovia are plainly without merit for the same reasons.

Because *MasterCard II* expressly references Kansas and New Hampshire law,

Eisele argues that *MasterCard II* does not apply to Count II of the complaint, which seeks a

declaratory judgment under New York state law.[5]  Eisele Br. at 4.  Eisele's argument, however,

ignores the more expansive scope of the Court's decision in *In re MasterCard III*, 2003 U.S.

Dist. LEXIS 13534, which extends the Court's decision to state laws besides Kansas and New

Hampshire.  Plaintiffs' proposed amended complaint (the "Rejected Complaint") asked for

---

[5]        *MasterCard I* discussed Kansas's statute in detail.  Of the alleged violations of Kansas law, the Court found that only one aspect of the statute was "remotely applicable," the section that prohibited setting up for use or collecting the proceeds of any gambling device.  *MasterCard I*, 132 F. Supp. 2d at 479 (citing Kan. Stat. Ann. 21-4304(e)).

"declaratory relief determining that debt incurred while gambling over the internet constitutes gambling debt that is unenforceable and uncollectible" under the state law where the various plaintiffs reside. *MasterCard III*, 2003 U.S. Dist. LEXIS 13534, at *3, *18. The Court denied plaintiffs' motion to amend stating: "there is no possibility that plaintiffs can prevail on their claim that the defendants violated state law by 'gambling over the Internet.'" *Id.* at *18. The scope of *MasterCard III*, therefore, clearly contemplates and covers the laws of states where the various plaintiffs reside. In this case, Eisele resides in North Carolina. By virtue of *MasterCard III* and as discussed below, there is indeed no possibility that Eisele can prevail on his declaratory judgment claim against Wachovia.

### A. Eisele's Count I For A Declaratory Judgment Under Federal Law is Without Merit

The Declaratory Judgment Act permits declaratory relief only in cases presenting "actual controversies." 28 U.S.C. § 2201(a); *Otix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000); *Niagara Mohawk Power Corp.*, 94 F.3d 747, 752 (2d Cir. 1996). Thus, the Declaratory Judgment Act incorporates the "case or controversy" limitation on federal jurisdiction found in Article III of the U.S. Constitution. *Ortix Credit*, 212 F.3d at 896; *Niagara Mohawk*, 94 F.3d at 752. Consequently, for a court to have subject matter jurisdiction, there must be a "substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941). The Court may exercise its declaratory judgment jurisdiction to determine which state's law governs. *Gonzalez v. Government Employees Ins. Group*, 2000 WL 1576793, at *1 (E.D. La. Oct. 23, 2000).

Eisele's Count I under the Declaratory Judgment Act fails in several respects. First, Count I fails because Eisele paid his credit card obligations to Wachovia. *See* Exhibit B.

Thus, to the extent Eisele seeks existing obligations to be nullified, his claim is moot. Eisele's complaint does not seek prospective relief.

Second, Eisele's prior debt to Wachovia was not a gambling debt under federal law. Eisele's complaint referenced numerous federal statutes in an effort to establish a pattern of racketeering activity under RICO, 18 U.S.C. §§ 1961-68.[6]  *Cf. MasterCard I*, 132 F.Supp. 2d at 473. In the test cases, the Court found that plaintiffs had no cause of action for the alleged violations of federal law because defendants' conduct was not illegal. *Id*. at 479-84, *aff'd*, *MasterCard II*, 313 F.3d at 262-64.

Eisele's claim for a declaratory judgment under federal law is based upon the same alleged violations of federal law that failed to constitute racketeering activity under RICO. For the reasons set forth in the test cases, Wachovia's conduct did not violate the federal law. Absent a violation of federal law by Wachovia, there is not an actual controversy between Eisele and Wachovia, and Eisele's Count I fails to state a claim. *Rowan Companies, Inc. v. Griffin*, 876 F.2d 26, 28 (5th Cir. 1989).

Third, even if the Court were to find that Wachovia and Eisele entered an illegal contract, it is well settled that the court would not grant relief to Eisele.   *State v. Hair*, 442 S.E.2d 163, 166 (N.C. Ct. App. 1994); *DiTomasso v. Loverro*, 293 N.Y.S. 912, 916 (App. Div. 1937); *Judd v. Harrington*, 19 N.Y.S. 406, 414 (N.Y. Ct. C.P. 1892). When two parties, being equally at fault, enter into an illegal contract, courts will not aid in enforcement or order restitution if one of the parties has performed its obligations in whole or in part. *Id*.

---

[6]     Eisele's complaint alleges violations of the Wire Act, 18 U.S.C. § 1084, which applies to bets on sporting events; the Travel Act, 18 U.S.C. § 1952; the Prohibition of Illegal Gambling Business, 18 U.S.C. § 1955; the Mail Fraud Act, 18 U.S.C. § 1341; and the Wire Fraud Act, 18 U.S.C. § 1343.

**B.      Eisele's Claim for a Declaratory Judgment Under State Law Fails To State a Claim**

      **1.      New York's Choice of Law Rules Apply Because it is the Forum State of the Transferor District Court**

In multidistrict litigation that has been transferred to a central forum for pretrial proceedings, the transferee federal district court must apply the substantive state law of the transferor district, including its choice of law rules. 17A *Moore's Federal Practice*, § 112.07[2][b] (Mathew Bender 3d ed.) (citing *In re Nucorp Energy Sec. Litig.*, 772 F.2d 1486, 1492 (9th Cir. 1985)); *Manual for Complex Litigation*, § 31.132 at 254 (3d ed 1995). A federal court adjudicating a supplemental state law claim applies the choice of law rules of the forum state. *North Atlantic Instruments Inc. v. Haber*, 188 F.3d 38, 44 (2d Cir. 1999); *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941)). Here, because New York was the forum state of the transferor U.S. District Court, the Court must apply New York State's choice of law rules to determine the applicable body of substantive state law.

In contract cases, New York courts apply a "center of gravity" or "grouping of contacts" approach. *Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531, 1539 (2d Cir. 1997). Under this approach, courts may consider a spectrum of significant contacts, including the place of contracting, the places of negotiation and performance, the location of the subject matter, and the domicile or place of business of the contracting parties. *Id.* The heaviest weight in this analysis is given to the places of contracting and performance. *Id.*

      **2.      There is No Basis For Applying New York Law in This Case Because The "Center of Gravity" of This Case is in North Carolina**

There is simply no connection to the State of New York that could justify the application of New York law. Eisele is a North Carolina resident, and he was physically located in North Carolina when he accessed internet casinos located outside of the U.S. and gambled.

6

Am. Compl. ¶¶ 5, 14, 21, 25. Furthermore, his credit card bills were sent to his address in Charlotte, North Carolina, where he paid them. *See* Eisele Billing Statements, attached as Ex. B.

If Eisele's gambling were deemed to have taken place where he was located when he accessed the internet and gambled on-line, North Carolina law would apply. In fact, Eisele cites case law indicating that this is indeed the general trend that some courts follow. Eisele Br. at 7 (citing *State v. Coeur D'Alene Tribe*, 164 F.3d 1102 (8th Cir. 1999) and *State v. World Interactive Gaming Corp.*, 714 N.Y.S.2d 844 (Sup. Ct. 1999)). Without a cogent explanation, Eisele simply states that it is not the rule here. Eisele Br. at 7.

Eisele argues, without any valid authority, that New York law should govern Count II of the complaint simply because the complaint was filed in New York. Eisele Br. at 4-5. Eisele's argument has no merit. In fact, it completely misconstrues *Erie v. Tomkins*, 304 U.S. 64 (1938), and its progeny by failing to consider choice of law principles.

To violate New York State's penal laws, "the alleged conduct or some consequence of it must have occurred within the State." *People v. McLaughlin*, 606 N.E.2d 1357, 1359 (N.Y. 1992). Because Eisele has made no specific allegations that would connect Wachovia's supposed unlawful activities with the State of New York, its criminal laws do not apply.

Nonetheless, if New York law were to apply and Eisele's gambling were deemed to have taken place in a foreign jurisdiction where gambling is legal, a New York court would enforce his gambling debts. New York courts look to the laws of the jurisdiction where the debt was incurred to determine the validity and enforceability of such debt. *Aspinall's Club Ltd. v. Aryeh*, 86 A.D.2d 428, 434 (2nd Dep't 1982) (enforcing a gambling debt validly incurred in London, England); *Intercontinental Hotels Corp. v. Golden*, 203 N.E.2d 210, 212 (N.Y. 1964)

(enforcing gambling debt validly incurred in Puerto Rico). Here, Eisele has conceded, "Internet Casinos operate in foreign countries where their presence may be legal." Am. Compl. ¶ 25.

### 3.    Eisele Fails to State a Claim Under North Carolina Law

Eisele's declaratory judgment claim would fail under North Carolina law for the reasons set forth in *MasterCard I, II* and *III*. Under section 16-1 of North Carolina's General Statutes, to constitute an illegal gaming contract, money must have been "lent or advanced *for the purpose of* such wagering, betting or staking." *See* Wachovia Br. Ex. B, N.C. Gen. Stat. § 16-1 (2003) (emphasis added). Eisele has not alleged that Wachovia knew, when it entered into a Cardmember Agreement with him, that Eisele intended to use his credit card to gamble. Nor has Eisele alleged that Wachovia knew that Eisele purchased chips with his credit card for the purpose of gambling.   Because Eisele's purchase of chips was a separate act that necessarily took place before his gambling, Wachovia's conduct did not violate North Carolina law.

Section 14-292 of the North Carolina statutes prohibits playing or operating games of chance involving monetary bets: "...any person or organization that operates any game of chance or any person who plays at or bets on any game of chance at which any money, property or other thing of value is bet, whether the same be in stake or not, shall be guilty of a Class 2 misdemeanor." N.C. Gen. Stat. § 14-292 (2003). Thus, this section is completely inapplicable to Wachovia because it did not operate, play, or bet on a game of chance. In contrast, Eisele's act of gambling on the internet may constitute a misdemeanor in North Carolina.

### 4.    If the Court Considers Eisele's Claim Under New York Law, It Fails to State a Claim

In addition to violations of New York Penal Laws previously discussed, Eisele's complaint alleges violations of New York's General Obligation Laws §§ 5-411 and 5-413. If

Eisele's conduct took place in New York State, where gambling is illegal, he fails to allege a viable claim under these statutes.

Under section 5-411, "All contracts for or on account of money or property, or thing in action wagered, bet or staked, as provided in section 5-401, shall be void." N.Y. GEN. OBLIG. LAW § 5-411; *see also* Wachovia Br. Ex. B, N.Y. GEN. OBLIG. LAW § 5-401. Here, as noted above, Wachovia entered into an enforceable credit card agreement with Eisele without knowing Eisele would use it to gamble on the internet. In addition, Eisele purchased chips using his Wachovia credit card before any gambling took place. Therefore, Wachovia was not involved in any gambling or in a contract related to gambling. *See MasterCard I*, 132 F. Supp. at 479, *aff'd, MasterCard II*, 313 F.3d at 262.

Section 5-413 provides that a lawsuit cannot be maintained to compel the return of a security given for payment of money lost through gambling. *Benisch v. Mandelbaum*, 160 A.D. 206 (App. Div. 1913); *Bamman v. Erickson*, 41 N.E.2d 920 (N.Y. 1942) (under gaming statutes, the winner of a bet cannot recover the amount of the wager from a loser who declines to pay); *see also* Wachovia Br. at Ex. B, N.Y. GEN. OBLIG. LAW § 5-413. This statute simply does not support Eisele's claim for a declaratory judgment. Instead, it means that if Eisele's conduct constituted gambling under New York law, Eisele would not be entitled to a judgment compelling Wachovia to return his credit card payments. The court would leave the parties in the position in which it found them. *DiTomasso*, 293 N.Y.S. at 916; *Judd*, 19 N.Y.S. at 414.

### 5. Eisele's Arguments That Wachovia Violated the Law Are Without Merit

The cases upon which Eisele relies in support of his argument that gambling over the internet violates New York law (Eisele Br. at 6-8) are simply inapposite. Each case involves a state using its own state laws to protect its own residents to sue a gambling owner or operator, i.e., a casino. *State v. Granite Gate Resorts, Inc.*, 568 N.W.2d 715 (Minn. Ct. App. 1997);

*Thompson v. On-Line Int'l*, Nos. 97-C-706-S and 97-C-741-S, 1998 U.S. Dist. LEXIS 22754 (W.D. Wis. Apr. 21, 1998); *State v. Coeur D'Alene Tribe*, 164 F.3d 1102 (8th Cir. 1999); and *State v. World Interactive Gaming Corp.*, 714 N.Y.S.2d 844 (Sup. Ct. 1999).

Here, we have a gambler from North Carolina trying to enforce the gambling laws of another state (New York) against a bank, from whom he obtained a credit card, whose principal place of business was in North Carolina. Eisele is curiously not suing the casinos themselves for the alleged gambling law violations. Indeed, the cases cited by Eisele simply establish that the Oasis Casino may have violated the laws of North Carolina and other states.

Additionally, it is unclear why Eisele, who was "physically located in North Carolina" when he accessed the internet to gamble, is trying to invoke the laws of New York. He relies upon cases supporting the application of North Carolina law. Eisele Br. at 7. In *Coeur D'Alene Tribe*, the Eighth Circuit, suggested in *dicta*, as it remanded the case back to state court for a determination of the location of the gambling, that gambling occurs in the state in which the gambler was located at the time he placed the bet. 164 F.3d at 1109 & n.5. The New York court in *World Interactive Gaming* also recognized that gambling occurs in the state in which the gambler was located when he placed his bet over the internet. *World Interactive Gaming*, 714 N.Y.S.2d at 859-60.

These cases are nothing more than red herrings aimed at confusing the issue before this Court. The simple fact is Wachovia could not have violated state gambling statutes. Unlike the cases upon which Eisele relies, Wachovia is not a casino and it did not violate state gambling laws. As this Court and the Fifth Circuit noted, such a violation of state laws is simply a "temporal impossibility."

## CONCLUSION

For the foregoing reasons, and for the reasons stated in the Wachovia Brief, if Counts I and II of the Eisele complaint should be dismissed on the merits. Alternatively, it should be dismissed for lack of subject matter jurisdiction.

Respectfully submitted,

By: _____

Dated:  New Orleans, Louisiana
        November 13, 2003

R. Patrick Vance (LA Bar No. 13008)
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, L.L.P.
201 St. Charles Avenue, 49th Floor
New Orleans, Louisiana 70170-5100
Telephone (504) 582-8194
Facsimile (504) 589-8194

Lawrence E. Miller
Kevin R.J. Schroth
LeBoeuf, Lamb, Greene & MacRae, L.L.P.
One Riverfront Plaza
Newark, NJ 07102-5490
Telephone (973) 643-8000
Facsimile (973) 643-6111
*Counsel for Defendant Wachovia Bank, N.A.*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Memorandum of Law has

been served on the below-named parties through U. S. Mail on this /3 th day of November, 2003.

W. Lewis Garrison, Jr.
Garrison, Scott, Gamble & Rosenthal, P.C.
2224 1st Avenue North
Post Office Box 11310
Birmingham, Alabama 35202

Barry G. Reed
Zimmerman Reed L.L.P.
651 Nicollet Mall, Suite 501
Minneapolis, Minnesota 55402

# FIRST UNION®

# Cardmember Agreement

## and

# Disclosure Statement

Visa/MasterCard
Visa Gold/Gold MasterCard

This Agreement and Disclosure statement contains the terms and disclosures which apply to my Visa or MasterCard or Visa Gold or Gold MasterCard credit card account ("Account") issued by First Union National Bank of Georgia. The words "I", "me" and "my" which also mean "us", "we" and "our", I mean the words "I", "me" and "my" which also mean "us", "we" and "our", one owner, mean the person or persons who use or authorize the use of the Visa or MasterCard or Visa Gold or Gold MasterCard credit card. The words "you", "your" and "yours" mean First Union National Bank of Georgia.

(a) A "Purchase" is a merchant sale of goods and services ("Purchases") from a merchant up to my maximum credit limit by presenting my Visa or MasterCard or Visa Gold or Gold MasterCard ("Card") and sign a sales slip for the amount of the purchase. I may also use my card to obtain cash loans ("Cash Advance") up to my maximum credit limit.

(b) By receiving a Cash Advance from financial institutions that accept Visa and/or MasterCard credit card, or

(c) By use of pre-printed checks (Access Checks) that you may have on my Visa and/or MasterCard credit card.

(d) By making withdrawals with the Card on my First Union First Union Bank or Card/CheckCard at an automated teller machine, or

(e) By lending checks or drafts or the accrual of any charges against a personal checking or money market investment account (Checking) a First Union Bank in excess of its balance (if overdraft protect available). Advances made by automatic transfer of funds directly from pre-designated Checking Account(s) may be in multiples of $100.00 or the amount of the overdraft depending upon option(s) available.

(f) By receiving other transactions that are equivalent to cash including but not limited to, purchase of data transfers, money orders, travelers checks, lottery tickets, and casino gambling chips obtained with a Card.

(g) By requesting a balance transfer to pay off all or certain Maximum Credit Limit. You will provide me with notice of my maximum credit limit, and I agree that my maximum credit limit may change from time to time and I may use my Card when the use will not cause my maximum credit limit to exceed that you are not obligated to extend to me credit in an amount that would...

---

20. **Other Provisions.** Each of us who signed the Application or use the Account are individually and jointly obligated on all payments due under this Account. The Account has been applied for...Application approved and Agreement. The Account has been applied for, approved, and issued in the State of Georgia, I agree that all transactions shall be governed by Agreement is not valid, at other parts will remain enforceable.

21. **Automatic Payment Option.** If I have requested the Automatic Payment Option, all Minimum Payments due will automatically be deducted from my designated checking account before the Minimum Due...

22. **Liability for Unauthorized Use.** I may be liable for the unauthorized use of my Card or my First Union 24 Hour Banking Card/CheckCard if used to access the Account. I will not be liable...

23. **Lost and Stolen Cards.** If I report my Card lost or stolen as provided in paragraph 22, I shall thereafter or find my Card and fail to notify you immediately...

24. Use of my card constitutes acceptance of all terms and conditions contained herein.

**BILLING RIGHTS - KEEP THIS NOTICE FOR FUTURE USE**

This notice contains important information about my rights and your responsibilities under the Fair Credit Billing Act.

**Notify Me In Case of Errors or Questions About My Monthly Statement.**

If I think my monthly statement is wrong, or if I need more information about a transaction on my monthly statement...

**My Rights and Your Responsibilities After You Receive My Written Notice.**

---

maximum credit limit. I do not have to pay any questioned amount while you are investigating, but I am still obligated to pay the parts of my monthly statement that are not in question.

If you find that you made a mistake on my monthly statement, I will not have to pay any Finance Charges related to any questioned amount...

If I fail to pay the amount that you think I owe, you may report me as delinquent. However, if your explanation does not satisfy me and I write to you within ten days telling you that I still refuse to pay...

**Special Rule for Credit Card Purchases**

If I have a problem with the quality of property or services that I purchased with a credit card, and I have tried in good faith to correct the problem with the merchant, I may have the right not to pay the remaining amount due on the property or service. These are two limitations on this right:

(a) I must have made the purchase in my home state or, if not within my home state, within 100 miles of my current mailing address; and

(b) The purchase price must have been more than $50.

There is no obligation to not apply if I you own or operate the property or service, or if you mailed me the advertisement for the property or service.

**Toll-Free Customer Relations**

**1-800-359-3862**

**Outside the US and Canada**

**1-703-561-9300**



EXHIBIT
A

5∧

5

GOLD
MASTERCARD
Closing Date: 06/24/98

Customer   MARK D EISELE
Name:

Account
Number:    5410-5301-3028-8227

Page 1 of

## Account Summary

| | | |
|---|---|---|
| Beginning balance | $4,510.82 | Number of days in billing cycle: |
| Payments and credits | -4,528.82 | Credit limit:        $6,500... |
| Purchases and adjustments | 18.00 | Available credit:    $6,500... |
| Cash advances | 0.00 | Cash limit:          $3,300... |
| Finance charges | 0.00 | Available cash:      $3,300... |
| Balance 6/24/98 | $0.00 | |

Payment due date.........................7/20/19:
New minimum payment due...................$C..

## Transactions

| Tran Date | Post Date | Reference Number | Description | Amour |
|---|---|---|---|---|
| 5/27 | 5/27 | 75410538147913009158026 | PAYMENT - THANK YOU.................... | -36.5 |
| 5/31 | 6/02 | 87415758152089510501008 | CITG00150 PETRO EXPRES CHARLOTTE NC.................... | 18.0 |
| 6/22 | 6/22 | 75410538173101001040163 | PAYMENT - THANK YOU.................... | -4,492.2 |

## News From First Union

RECEIVE A $5 CREDIT WITH A TRIAL MEMBERSHIP IN BUYER'S ADVANTAGE FOR JUST $1.
GET EXCLUSIVE MONEY-BACK PRIVILEGES ON REPAIR COSTS ON ITEMS YOU ALREADY OWN.
CALL 1-800-722-5698 FOR TERMS AND CONDITIONS OF THIS OFFER.

## Rate Summary

| | Average daily balance | Periodic rate (may vary) | Corresponding annual percentage rate | Annual Percentage Rate |
|---|---|---|---|---|
| Purchases | $4,025.02 | 1.3667% | 16.40% | 16.40% |
| Cash advances | $0.00 | 1.3667% | 16.40% | 16.40% |

## Payment Coupon

24-HOUR CUSTOMER SERVICE:1-800-359-386

| | |
|---|---|
| Account number | 5410-5301-3028-8227 |
| Balance 6/24/98 | $0.00 |
| Payment due date | 7/20/1998 |
| New minimum payment due | $0.00 |

EXHIBIT
B
tabbies

74
MARK D EISELE
6449 TIVOLI CT
CHARLOTTE, NC 28211-6266

Amount enclosed  $

Make check payable and mail to:

FIRST UNION
P.O. BOX 2357
BRUNSWICK, GA 31521-2357

ROUTING NUMBER 5150-51502

00000000   00000000                    5410530130288227

GOLD
MASTERCARD
Closing Date:  07/27/98

Name:

Account
Number:   5410-5301-3028-8227

Page 1 of

## Account Summary

| | | | |
|---|---|---|---|
| | | Number of days in billing cycle: | |
| Beginning balance | $0.00 | Credit limit: | $6,500. |
| Payments and credits | 0.00 | Available credit: | $0. |
| Purchases and adjustments | 0.00 | Cash limit: | $3,300. |
| Cash advances | 6,500.00 | Available cash: | $0. |
| Finance charges | 25.93 | | |
| Balance 7/27/98 | $6,525.93 | Payment due date.........................8/21/199 | |
| | | New minimum payment due...................$131.0 | |

## Transactions

| Tran Date | Post Date | Reference Number | Description | Amount |
|---|---|---|---|---|
| 7/08 | 7/09 | 75410538190501376862886 | CONVENIENCE CHK # 9031 CHARLOTTE NC................6,500.0 | |
| 7/27 | 7/27 | 75410538208000208064209 | *FINANCE CHARGE (BASED ON PERIODIC RATE)..............25.9 | |

## Important Information

YOUR ACCOUNT IS CURRENTLY $ 25.93 OVER YOUR CREDIT LINE. PLEASE REMIT THIS TO
US IMMEDIATELY.

## News From First Union

ORDER FLOWERS FROM GLOBAL FLORIST AND RECEIVE $5 CREDIT ON ALL PURCHASES OVER
$30. WE ALSO OFFER BALLOONS, PLANTS, AND FRUIT BASKETS, ALL BACKED BY A 100%
MONEY-BACK GUARANTEE. NATIONWIDE, SAME DAY DELIVERY, 24-HOUR SERVICE. CALL
1-888-400-ROSE (7673) FOR DETAILS. REF OFFER SP5D.

| Rate Summary | Average daily balance | Periodic rate (may vary) | Corresponding annual percentage rate | Annual Percentage Rate |
|---|---|---|---|---|
| Purchases | $0.00 | 1.3667% | 16.40% | 16.40% |
| Cash advances | $0.00 | 1.3667% | 16.40% | 16.40% |
| Promotional | $3,939.39 | 0.6583% | 7.90% | 7.90% |

## Payment Coupon

24-HOUR CUSTOMER SERVICE:1-800-359-3862

| | |
|---|---|
| Account number | 5410-5301-3028-8227 |
| Balance 7/27/98 | $6,525.93 |
| Payment due date | 8/21/1998 |
| New minimum payment due | $131.00 |

74
MARK D EISELE
6449 TIVOLI CT
CHARLOTTE, NC 28211-6266

Amount enclosed  $

Make check payable and mail to:

FIRST UNION
P.O. BOX 2357
BRUNSWICK, GA 31521-2357

ROUTING NUMBER 5150-51502

00013100   00652593

5410530130288227

GOLD
MASTERCARD
Closing Date:   08/25/98

Customer
Name:   MARK D EISELE

Account
Number:    5410-5301-3028-8227

Page 1 of

| Account Summary | | | |
|---|---|---|---|
| | | Number of days in billing cycle: | |
| Beginning balance | $6,525.93 | Credit limit: | $6,500.0 |
| Payments and credits | -1,525.93 | Available credit: | $1,463.0 |
| Purchases and adjustments | 0.00 | Cash limit: | $3,300.0 |
| Cash advances | 0.00 | Available cash: | $1,463.0 |
| Finance charges | 36.38 | | |
| Balance 8/25/98 | $5,036.38 | Payment due date.........................9/21/199 | |
| | | New minimum payment due.....................$0.0 | |

Transactions

| Tran Date | Post Date | Reference Number | Description | Amoun |
|---|---|---|---|---|
| 8/07 | 8/07 | 75410538219101001040169 | PAYMENT - THANK YOU.................................. | -1,525.9 |
| 8/25 | 8/25 | 75410538237000237064209 | *FINANCE CHARGE (BASED ON PERIODIC RATE)............. | 36.3 |

News From First Union

FIND OUT WHAT IS ON YOUR CREDIT REPORT AND WHO PUT IT THERE. RECEIVE A
CONFIDENTIAL FREE CREDIT REPORT JUST FOR TRYING A 3 MONTH TRIAL MEMBERSHIP IN
PRIVACY GUARD FOR $1. CALL TOLL FREE 1-877-287-9310 FOR FULL DETAILS.

| Rate Summary | Average daily balance | Periodic rate (may vary) | Corresponding annual percentage rate | Annual Percentage Rate |
|---|---|---|---|---|
| Purchases | $0.00 | 1.3667% | 16.40% | 16.40% |
| Cash advances | $0.00 | 1.3667% | 16.40% | 16.40% |
| Promotional | $5,526.18 | 0.6583% | 7.90% | 7.90% |

Payment Coupon

24-HOUR CUSTOMER SERVICE:1-800-359-3862

| | |
|---|---|
| Account number | 5410-5301-3028-8227 |
| Balance 8/25/98 | $5,036.38 |
| Payment due date | 9/21/1998 |
| New minimum payment due | $0.00 |

Amount enclosed  $

74
MARK D EISELE
6449 TIVOLI CT
CHARLOTTE, NC 28211-6266

Make check payable and mail to:

FIRST UNION
P.O. BOX 2357
BRUNSWICK, GA 31521-2357

ROUTING NUMBER 5150-51502

00000000    00503638

5410530130288227

GOLD
MASTERCARD
Closing Date: 09/25/98

Customer
Name: MARK D EISELE

Account
Number:    5410-5301-3028-8227

Account Summary

Page 1 of

| | | | |
|---|---|---|---|
| Beginning balance | $5,036.38 | Number of days in billing cycle: | 3 |
| Payments and credits | 0.00 | Credit limit: | $6,500.00 |
| Purchases and adjustments | 35.90 | Available credit: | $1,394.00 |
| Cash advances | 0.00 | Cash limit: | $3,300.00 |
| Finance charges | 33.31 | Available cash: | $1,394.00 |
| Balance 9/25/98 | $5,105.59 | | |

Payment due date........................10/20/1998
New minimum payment due......................$0.00

## Transactions

| Tran Date | Post Date | Reference Number | Description | Amount |
|---|---|---|---|---|
| 9/16 | 9/17 | 78432868259000643295811 | PCG*PRO 600 COMPUTER G 800-626-4901 NY................ | 35.90 |
| 9/25 | 9/25 | 75410538268000268064005 | *FINANCE CHARGE (BASED ON PERIODIC RATE)............. | 33.31 |

EFFECTIVE OCTOBER 1, 1998, FIRST UNION WILL NO LONGER AUTOMATICALLY INCREASE
THE APR ON ACCOUNTS THAT BECOME 60 DAYS PAST DUE. THEREFORE, THE INTEREST RATE
ADJUSTMENT PARAGRAPH CONTAINED IN SECTION 4 OF YOUR CARDHOLDER AND DISCLOSURE
STATEMENT IS DELETED IN ITS ENTIRETY.

News From First Union

CONGRATULATIONS TO DR. MICHAEL WEXLER, WINNER OF THE FIRST UNION "A PLACE IN
THE SUN" SWEEPSTAKES.

YOU CAN NOW TRANSFER BALANCES TO FIRST UNION OVER THE PHONE. JUST CALL
1-800-359-3862 AND WE WILL DO THE REST.

| Rate Summary | Average daily balance | Periodic rate (may vary) | Corresponding annual percentage rate | Annual Percentage Rate |
|---|---|---|---|---|
| Purchases | $11.58 | 1.3667% | 16.40% | 16.40% |
| Cash advances | $0.00 | 1.3667% | 16.40% | 16.40% |
| Promotional | $5,036.38 | 0.6583% | 7.90% | 7.90% |

Payment Coupon                                    24-HOUR CUSTOMER SERVICE:1-800-359-3862

| | |
|---|---|
| Account number | 5410-5301-3028-8227 |
| Balance 9/25/98 | $5,105.59 |
| Payment due date | 10/20/1998 |
| New minimum payment due | $0.00 |

74
MARK D EISELE
6449 TIVOLI CT
CHARLOTTE, NC 28211-6266

Amount enclosed  $

Make check payable and mail to:

FIRST UNION
P.O. BOX 2357
BRUNSWICK, GA 31521-2357

ROUTING NUMBER 5150-51502

00000000    00510559                 5410530130288227

GOLD
MASTERCARD
Closing Date:   10/27/98

Customer
Name:

Account
Number:   5410-5301-3028-8227

Page 1 of 3

**Account Summary**

| | |
|---|---|
| Beginning balance | $5,105.59 |
| Payments and credits | 0.00 |
| Purchases and adjustments | 498.75 |
| Cash advances | 0.00 |
| Finance charges | 40.68 |
| Balance 10/27/98 | $5,645.02 |

| | |
|---|---|
| Number of days in billing cycle: | 3 |
| Credit limit: | $6,500.0 |
| Available credit: | $854.0 |
| Cash limit: | $3,300.0 |
| Available cash: | $854.0 |
| Payment due date............................ | 11/23/199 |
| New minimum payment due................... | $113.0 |

**Transactions**

| Tran Date | Post Date | Reference Number | Description | Amount |
|---|---|---|---|---|
| 9/26 | 9/28 | 85410048270500750607174 | MPACT OASIS (800)835-7 HAMILTON BM................... | 498.7 |
| 10/27 | 10/27 | 75410538300000300064005 | *FINANCE CHARGE (BASED ON PERIODIC RATE)............. | 40.6 |

**News From First Union**

RECEIVE A DATABANK FOR TRYING SHOPPERS ADVANTAGE FOR THE NEXT 3 MONTHS FOR JUST
$1. CHOOSE FROM OVER 250,000 NAME BRAND ITEMS AT 10% TO 50% OFF THE MSLP. CALL
1-877-242-2575 FOR FULL DETAILS.

| Rate Summary | Average daily balance | Periodic rate (may vary) | Corresponding annual percentage rate | Annual Percentage Rate |
|---|---|---|---|---|
| Purchases | $534.81 | 1.3667% | 16.40% | 16.40% |
| Cash advances | $0.00 | 1.3667% | 16.40% | 16.40% |
| Promotional | $5,069.53 | 0.6583% | 7.90% | 7.90% |

**Payment Coupon**

24-HOUR CUSTOMER SERVICE:1-800-359-3862

| | |
|---|---|
| Account number | 5410-5301-3028-8227 |
| Balance 10/27/98 | $5,645.02 |
| Payment due date | 11/23/1998 |
| New minimum payment due | $113.00 |

Amount enclosed  $

74
MARK D EISELE
6449 TIVOLI CT
CHARLOTTE, NC 28211-6266

Make check payable and mail to:

FIRST UNION
P.O. BOX 2357
BRUNSWICK, GA 31521-2357

ROUTING NUMBER 5150-51502

00011300   00564502

5410530130288227

MASTERCARD
Closing Date:   11/24/98

Name:

Account
Number:   5410-5301-3028-8227

Page 1 of

| Account Summary | | | Number of days in billing cycle: | |
|---|---|---|---|---|
| Beginning balance | $5,645.02 | | Credit limit: | $6,500.0 |
| Payments and credits | -5,677.26 | | Available credit: | $6,500.0 |
| Purchases and adjustments | 0.00 | | Cash limit: | $3,300.0 |
| Cash advances | 0.00 | | Available cash: | $3,300.0 |
| Finance charges | 22.79 | | | |
| Balance 11/24/98 | - $9.45 | | Payment due date........................12/21/199 | |
| | | | New minimum payment due.....................$0.0 | |

Transactions

| Tran Date | Post Date | Reference Number | Description | Amoun |
|---|---|---|---|---|
| 10/28 | 10/29 | 78432868301000326706678 | RETURN ITEM PCG*PRO 600 C800-626-4901 NY.............-29.9 |
| 11/11 | 11/12 | 15410538316000815030010 | FINANCE CHARGE CREDIT..................................-7.3 |
| 11/16 | 11/16 | 75410538320900000100007 | ELECT PMT 001 0000000   .......................-5,640.00 |
| 11/24 | 11/24 | 75410538328000328064209 | *FINANCE CHARGE (BASED ON PERIODIC RATE).............22.7 |

IF YOU WISH TO OBTAIN A REFUND ON YOUR CREDIT BALANCE OF $ 9.45 PLEASE CONTACT
CUSTOMER SERVICE.

News From First Union

YOU CAN TRANSFER BALANCES TO FIRST UNION OVER THE PHONE. JUST CALL
1-800-359-3862 AND WE WILL DO THE REST.

WHAT BETTER A HOLIDAY GIFT THAN A BEAUTIFUL BOUQUET OF FLOWERS? SEND
FLOWERS WITH YOUR FIRST UNION CARD! ORDER TOLL FREE 24 HOURS EVERYDAY
1-800-800-SEND. SIMPLY THE BEST WAY TO SEND FLOWERS.

| Rate Summary | Average daily balance | Periodic rate (may vary) | Corresponding annual percentage rate | Annual Percentage Rate |
|---|---|---|---|---|
| Purchases | $346.24 | 1.3458% | 16.15% | 16.15% |
| Cash advances | $0.00 | 1.3458% | 16.15% | 16.15% |
| Promotional | $3,462.68 | 0.6583% | 7.90% | 7.90% |

Payment Coupon                              24-HOUR CUSTOMER SERVICE:1-800-359-3862

| Account number | 5410-5301-3028-8227 |
|---|---|
| Balance 11/24/98 | - $9.45 |
| Payment due date | 12/21/1998 |
| New minimum payment due | $0.00 |

74
MARK D EISELE
6449 TIVOLI CT
CHARLOTTE, NC 28211-6266

Amount enclosed  $

Make check payable and mail to:

FIRST UNION
P.O. BOX 2357
BRUNSWICK, GA 31521-2357

ROUTING NUMBER 5150-51502

00000000   00000945                   5410530130288227